**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JACKERLY MCFADDEN and CASSANDRA WILSON, *On Behalf of Themselves and All Others Similarly Situated*, | |
| Plaintiffs, | Case No. 1:20-cv-00166-EGS |
| v. | **[ORAL ARGUMENT REQUESTED]** |
| NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER, | |
| Defendant. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ................................................................................... 5

LEGAL STANDARD ............................................................................................. 6

ARGUMENT .......................................................................................................... 7

I.   PLAINTIFFS' BREACH OF CONTRACT CLAIMS FAIL BECAUSE THEY DO
     NOT PLAUSIBLY PLEAD BREACH ........................................................... 7

     A.   Mr. Cooper Did Not Breach Plaintiffs' Mortgage Agreements, Which Authorize
          The Pay-By-Phone Fees. ...................................................................... 7

     B.   Even If The Mortgage Agreements Do Not Expressly Permit The Pay-By-Phone
          Fees, Nothing In Those Agreements Prohibits Them. ............................... 9

     C.   The Breach Claims Fail For The Alternative Reason That Plaintiffs Voluntarily
          Entered Into Separate Oral Agreements Regarding The Pay-By-Phone Fees. ........ 12

II.  PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL AS A
     MATTER OF LAW ....................................................................................... 15

     A.   The Unjust Enrichment Claims Should Be Dismissed Because The Purported
          Dispute Arises Out Of A Contractual Relationship. ................................. 15

     B.   The Unjust Enrichment Claims Also Fail Because Plaintiffs Failed To Furnish
          Sufficient Pre-Suit Notice, As Required By The Mortgage Agreements. ............... 17

III. PLAINTIFFS' COMMON LAW BREACH OF CONTRACT AND UNJUST
     ENRICHMENT CLAIMS ARE BARRED BY THE VOLUNTARY PAYMENT
     DOCTRINE ................................................................................................. 18

IV.  MR. COOPER DID NOT VIOLATE THE FDCPA BY ALLOWING PLAINTIFF
     MCFADDEN TO CHOOSE TO PAY HER MORTGAGE BY PHONE FOR AN
     ADDITIONAL FEE ...................................................................................... 19

     A.   The Complaint Fails To Plausibly Plead Facts Showing That Plaintiff McFadden
          Was In Default At The Time Servicing Was Transferred To Mr. Cooper. ............ 20

     B.   The FDCPA Claim Fails Because The Pay-By-Phone Fees Are Authorized By The
          Mortgage Agreements And Permitted By Law. ...................................... 21

     C.   Voluntary And Reasonably Avoidable Fees, Such As The Pay-By-Phone Fees
          Here, Do Not Violate The FDCPA. ....................................................... 23

ii

**V.    MR. COOPER DID NOT VIOLATE THE D.C. OR FLORIDA STATUES BY GIVING PLAINTIFFS THE OPTION TO PAY THEIR MORTGAGES BY PHONE FOR AN ADDITIONAL FEE.** ........................................................................ 24

    A.    Plaintiff McFadden's Florida Statutory Claims Are Defective On Their Face. ...... 24

        1.    The FCCPA Claims Fail To Establish *Scienter* Or That The Pay-By-Phone Fees Are "Illegitimate." ................................................................................................. 24

        2.    The FDUTPA Claim Fails To Plead Any Underlying Legal Violation Or Any Deception Or Unfairness. ...................................................................................... 25

    B.    Plaintiff Wilson's D.C. Statutory Claims Likewise Fail As A Matter Of Law. ...... 27

        1.    The DCCPPA Claim Fails Because It Establishes No Misrepresentations Or A Requisite Consumer-Merchant Relationship. .................................................... 27

        2.    The MLBA Claims Fail For The Same Reasons As The Other State Statutory Claims. ................................................................................................................. 28

**CONCLUSION** ............................................................................................................... 29

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Agritrade, LP v. Quercia*,
   253 So.3d 28 (Fla. 3d DCA 2017) ........................................................................16

*Alhassid v. Bank of Am., N.A.*,
   60 F. Supp. 3d 1302 (S.D. Fla. 2014) ..................................................................15

*Armao v. McKenney*,
   218 So. 3d 481 (Fla. Dist. Ct. App. 2017) ...........................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................................6

*Ashrafi v. Fernandez*,
   193 A.3d 129 (D.C. 2018) ...................................................................................13

*Baylor v. Mitchell Rubenstein & Assocs., P.C.*,
   857 F.3d 939 (D.C. Cir. 2017) .............................................................................28

*Beer v. Nationstar Mortg. Holdings, Inc.*,
   No. 14-cv-13365, 2015 WL 13037309 (E.D. Mich. July 15, 2015) ...............10, 22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................21

*Blackstone v. Brink*,
   63 F. Supp. 3d 68 (D.D.C. 2014) ........................................................................14

*Bryant v. Aargon Collection Agency, Inc.*,
   No. 17-CV-14096, 2017 WL 2955532 (S.D. Fla. June 30, 2017) ...................4, 23

*Burns v. Barfield*,
   732 So. 2d 1202 (Fla. 4th DCA 1999) ................................................................10

*Busby v. Capital One, N.A.*,
   772 F. Supp. 2d 268 (D.D.C. 2011) ....................................................................28

*Caban v. Rushmore Loan Mgmt. Servs.*,
   No. 1:18-CV-00393-MHC-JFK, 2018 WL 5260063 (N.D. Ga. July 23, 2018) ......9

*City of Miami v. Keton*,
   115 So.2d 547 (Fla. 1959) ...................................................................................19

*Coleman v. CubeSmart*,
   328 F. Supp. 3d 1349 (S.D. Fla. 2018) ...............................................................26

*Cornette v. I.C. System, Inc.*,
   280 F. Supp. 3d 1362 (S.D. Fla. 2017) ...............................................................25

*Davis v. Sheridan Healthcare, Inc.*,
   281 So.3d 1259 (Fla. 2nd DCA 2019) ..................................................................24

*Demissie v. Starbucks Corp. Office & Headquarters*,
   118 F. Supp. 3d 29 (D.D.C. 2015), *aff'd,* 688 F. App'x 13 (D.C. Cir. 2017).........14

*Eagle Maint. Servs., Inc. v. D.C. Contract Appeals Bd.*,
   893 A.2d 569 (D.C. 2006) ...............................................................................3, 18

*Fed. Nat'l Mortg. Ass'n v. LeCrone*,
   868 F.2d 190 (6th Cir. 1989) ................................................................................9

*Fed. Trade Comm'n. v. Life Mgmt. Servs. of Orange County, LLC*,
   350 F. Supp. 3d 1246 (M.D. Fla. 2018)................................................................26

*Green v. Obergfell*,
   121 F.2d 46 (D.C. Cir. 1941) ................................................................................9

*Hart v. Elec. Arts, Inc.*,
   740 F. Supp. 2d 658 (D.N.J. 2010) ......................................................................17

*Hassen v. Mediaone of Greater Fla., Inc.*,
   751 So. 2d 1289 (Fla. 1st DCA 2000) ..................................................................19

*Heald v. Ocwen Loan Servicing, LLC*,
   No. 3:13-cv-993-J-34JRK, 2014 WL 4639410 (M.D. Fla. Sept. 16, 2014) ...........24

*Hill v. Nationstar Mortg. LLC*,
   No. 15-60106-CIV, 2015 WL 4478061 (S.D. Fla. July 2, 2015) ...........................18

*Hinton v. Corr. Corp. of Am.*,
   624 F. Supp. 2d 45 (D.D.C. 2009) .......................................................................17

*Jacobson v. Hofgard*,
   168 F. Supp. 3d 187 (D.D.C. 2016) ......................................................................16

*Johnson v. Riddle*,
   305 F.3d 1107 (10th Cir. 2002) ...........................................................................22

*In re Kachkar*,
   769 F. App'x 673 (11th Cir. 2019) .......................................................................16

*Kirchner v. Ocwen Loan Servicing, LLC*,
   257 F. Supp. 3d 1314 (S.D. Fla. 2017), *appeal dismissed,* 2017 WL 5185306
   (11th Cir. Sept. 21, 2017)...........................................................................2, 15, 16

*Koski v. Carrier Corp.*,
  347 F. Supp. 3d 1185 (S.D. Fla. 2017) ................................................................16

*Lombardo v. Johnson & Johnson Consumer Cos., Inc.*,
  124 F. Supp. 3d 1283 (S.D. Fla. 2015) ................................................................26

*Mohamed v. Select Portfolio Servicing, Inc.*,
  215 F. Supp. 3d 85 (D.D.C. 2016) .........................................................................7

*Motley v. Homecomings Fin., LLC*,
  557 F. Supp. 2d 1005 (D. Minn. 2008) ...........................................................20, 21

*Mushala v. US Bank, Nat'l Ass'n*,
  No. CV 18-1680 (JDB), 2019 WL 1429523 (D.D.C. Mar. 29, 2019) ...............28, 29

*Nardolilli v. Bank of Am. Corp.*,
  No. 12-81312, 2013 WL 12154541 (S.D. Fla. Dec. 5, 2013)................................24

*New Dirt, Inc. v. Harrison*,
  182 So. 3d 773 (Fla. Dist. Ct. App. 2015) ...........................................................14

*News World Commc'ns, Inc. v. Thompsen*,
  878 A.2d 1218 (D.C. 2005) ..................................................................................16

*Nichols v. BAC Home Loans Servicing LP*,
  No. 1:13-CV-00224, 2013 WL 5723072 (N.D.N.Y. Oct. 18, 2013) ......................12

*Oya v. Wells Fargo Bank, N.A.*,
  No. 3:18-CV-01999-H-BGS, 2019 WL 157802 (S.D. Cal. Jan. 9, 2019) ...........2, 20, 21

*Roth v. CitiMortgage Inc.*,
  756 F.3d 178 (2d Cir. 2014)...................................................................................20

*Sanchez v. Time Warner, Inc.*,
  No. 98-211-CIV-T-26A, 1998 WL 834345 (M.D. Fla. Nov. 4, 1998)................3, 18

*Smith v. Rubicon Advisors, LLC*,
  254 F. Supp. 3d 245 (D.D.C. 2017) ......................................................................15

*St. Joe Corp. v. McIver*,
  875 So. 2d 375 (Fla. 2004)....................................................................................14

*State Farm Mut. Auto. Ins. Co. v. Health and Wellness Servs, Inc.*,
  389 F. Supp. 3d 1137 (S.D. Fla. 2018) ................................................................26

*Trevathan v. Select Portfolio Servicing, Inc.*,
  142 F. Supp. 3d 1283 (S.D. Fla. 2015) ................................................................18

*W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*,
    728 So.2d 297 (Fla. 1st DCA 1999) ....................................................13

*Waddell v. U.S. Bank Nat'l Ass'n*,
    395 F. Supp. 3d 676 (E.D.N.C. 2019)...........................................11, 12

*Ward v. D.C. Dep't of Youth Rehab. Servs.*,
    768 F. Supp. 2d 117 (D.D.C. 2011) ...................................................17

*Washington v. LaSalle Bank Nat. Ass'n*,
    817 F. Supp. 2d 1345 (S.D. Fla.2011) ...............................................26

*Washkoviak v. Student Loan Mkt'g Ass'n*,
    900 A.2d 168 (D.C. 2006) ..................................................................17

*Weller v. JP Morgan Chase Bank, Nat'l Ass'n*,
    No. 3:16-cv-110, 2017 WL 3581099 (N.D. W.Va. Aug. 18, 2017) ......................10

*Zlotnick v. Premier Sales Grp., Inc.*,
    480 F.3d 1281 (11th Cir. 2007) ..........................................................27

**Statutes**

D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901, *et. seq.* ................1, 27, 28, 29

D.C. Mortgage Lender and Broker Act, D.C. Code § 26-1101, *et seq.* ..............................1, 28, 29

Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(1)............................1, 2, 3, 4, 7, 8, 19, 20,
                                                                                          21, 22, 23, 24, 29

Fla. Stat. Ann. § 725.04 ...............................................................................18

Florida Consumer Protection Practices Act, Fla. Stat. § 555.72(9)......................................1, 24, 25

Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.203(3),
    501.204...............................................................................1, 25, 26, 27, 29

**Other Authorities**

Cooper Payment Methods, Support,
    https://www.mrcooper.com/support/payments/payment_methods (last visited
    March 27, 2020).............................................................................5, 15, 23

Federal Rules of Civil Procedure 8(a) and 12.............................................................2, 3, 4, 6, 29

## PRELIMINARY STATEMENT

Plaintiffs Jackerly McFadden and Cassandra Wilson (together "Plaintiffs") have filed this putative class action alleging that their mortgage loan servicer, Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Mr. Cooper"), improperly charged them fees related to certain monthly mortgage payments that Plaintiffs chose to make by phone (the "pay-by-phone" fees).  Plaintiffs' Complaint alleges that, by offering them the option to make payments by phone in exchange for a nominal fee—while also offering them other available no-fee payment methods—Mr. Cooper violated various federal and state statutes and common law.

The Complaint purports to bring the following claims on behalf of Plaintiffs individually and putative classes, all related to Mr. Cooper's offering of a fee-based phone payment option: (1) Breach of Contract under Florida and District common law; (2) Unjust Enrichment under Florida and District common law; (3) violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(1) ("FDCPA"); (4) violations of the Florida Consumer Protection Practices Act, Fla. Stat. § 555.72(9) ("FCPPA"); (5) violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.203(3), 501.204 ("FDUTPA"); (6) violations of the D.C. Mortgage Lender and Broker Act, D.C. Code § 26-1101, *et seq.* ("MLBA"); and (7) violations of the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901, *et. seq.* ("DCCPPA").

As set forth further below, the Complaint and each of its counts are defective for the following reasons:

***First,*** Plaintiffs' breach of contract claims fail for several reasons.  To begin with, the breach claims are defective because the Complaint fails to identify any specific provision of Plaintiffs' mortgage agreements that was allegedly breached by the pay-by-phone fees.  In reality, the express language of the mortgage agreements permits these payment processing fees,

foreclosing Plaintiffs' misinterpretation of alleged breach.  Next, in the event the Court finds that the mortgage agreements do not squarely address the parties' rights and obligations with regard to the pay-by-phone fees, then these same agreements cannot somehow be deemed breached with respect to these fees.  Alternatively, third, the pay-by-phone fees were governed by separate oral agreements that Plaintiffs entered into with Mr. Cooper in exchange for its agreement to process their mortgage payments by phone.  *See infra* p. 14.  The Complaint neither references the oral agreements, nor alleges that they were breached; accordingly Plaintiffs' breach of contract claims should be dismissed on this additional ground.

**Second,** Plaintiffs' common law unjust enrichment claims fail because they are duplicative of the Complaint's breach of contract claims.  The allegations forming the bases of the unjust enrichment claims arise out of the parties' contractual relationship (whether through the mortgage agreements or separate oral contracts).  *See Kirchner v. Ocwen Loan Servicing, LLC*, 257 F. Supp. 3d 1314, 1324 (S.D. Fla. 2017), *appeal dismissed,* 2017 WL 5185306 (11th Cir. Sept. 21, 2017) (citing *Martorella v. Deutsche Bank Nat. Trust Co.*, 931 F. Supp. 2d 1218, 1227 (S.D. Fla. 2013)).  Plaintiffs may not simply piggyback purported equitable claims on their contractual disputes.  Plaintiffs' unjust enrichment claims also are defective because Plaintiffs failed to provide Mr. Cooper proper notice of these claims prior to filing the instant Complaint.  *See* Compl., Ex. A at 10 (¶ 20), Ex. C at 10 (¶ 19) (provisions in mortgage agreements requiring that Plaintiffs provide Mr. Cooper with pre-suit notice of any alleged claim arising from the borrower-servicer relationship, as well as a reasonable opportunity to cure).  Although Plaintiffs appear to have provided partial notice of their threatened claims, they never even referenced their unjust enrichment claims, or Plaintiff Wilson's MLBA claim.  *See* Exs. 1-2 (Plaintiffs' partial notices).  Accordingly, these un-noticed claims must be dismissed.

**Third,** Plaintiffs' common law breach of contract and unjust enrichment claims are barred by the voluntary payment doctrine recognized in the District and Florida.  *See Eagle Maint. Servs., Inc. v. D.C. Contract Appeals Bd.*, 893 A.2d 569, 582 (D.C. 2006); *Sanchez v. Time Warner, Inc.*, No. 98-211-CIV-T-26A, 1998 WL 834345, at *2 (M.D. Fla. Nov. 4, 1998).  Under this doctrine, individuals who voluntarily submit payment are barred from later seeking to impose liability on the basis of that same payment.  The common law claims here are barred because Plaintiffs concede that they voluntarily paid the alleged fees in exchange for Mr. Cooper processing their mortgage payments by phone.  Compl. ¶¶ 136, 147.  They are thus barred from now seeking to impose liability on Mr. Cooper for those same voluntary payments.

**Fourth,** Plaintiff McFadden's claim under the FDCPA is defective on a number of grounds.  First, Plaintiff McFadden fails to plead any plausible facts showing that the FDCPA applies here, *i.e.,* that Mr. Cooper qualifies as a "debt collector," as is required for coverage under the statute.  *See* 15 U.S.C. § 1692a(6)(F)(iii) ("The term 'debt collector'. . . does not include . . . any person collecting or attempting to collect any debt owed . . . to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person.").  Instead, the Complaint contains only threadbare and conclusory assertions that McFadden was "in default" when Mr. Cooper obtained servicing rights (Compl. ¶ 67), which is insufficient pursuant to Federal Rules 8(a) and 12.  *See Oya v. Wells Fargo Bank, N.A.*, No. 3:18-CV-01999-H-BGS, 2019 WL 157802, at *3 (S.D. Cal. Jan. 9, 2019) (dismissing FDCPA claim for failure to plausibly plead facts in support of conclusory allegation of default).  Next, the FDCPA claim should be dismissed because the pay-by-phone fees do not violate the mortgage agreements or applicable law.  In addition, FDCPA liability does not arise from voluntarily paid and reasonably avoidable fees, such as the pay-by-phone fees here.  *See, e.g., Bryant v. Aargon*

*Collection Agency, Inc.*, No. 17-CV-14096, 2017 WL 2955532, at *1 (S.D. Fla. June 30, 2017). Plaintiff McFadden was fully aware that she was being charged these fees, she agreed to the amount of fees that actually were collected, and she obtained the benefit of having her mortgage payments processed by phone in exchange for paying these fees. She may not now pursue FDCPA claims after knowingly making the decision to utilize one of several payment options, and after already receiving the benefit of the services offered by that option.

*Finally,* Plaintiffs' statutory claims under Florida and District consumer protection law should be dismissed for the straightforward reason that Plaintiffs never claim to have been deceived into making the pay-by-phone fees, nor do they point to any statute outlawing these fees. Instead, the Complaint concedes that Plaintiff McFadden only "sometimes" chose to incur the pay-by-phone fees (Compl. ¶ 69; *see also id.* ¶ 83), and that Plaintiff Wilson "occasionally" did so but only identifies one such instance (*id.* ¶¶ 13, 147 )—while other times Plaintiffs apparently paid their monthly mortgage statements via other methods that did not incur a fee. Plaintiffs may not knowingly agree to pay certain fees in exchange for a service permitting payments by phone, and then after the fact claim to have been the victim under state consumer protection statutes. Nor, as outlined throughout this brief, did the pay-by-phone fees violate any other state or federal law that would entitle Plaintiffs to protection under the state statutes.

For the foregoing reasons and those discussed at further length below, Mr. Cooper respectfully requests that the Court dismiss the Complaint for failure to state a claim pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

Both Plaintiffs allege that they took out mortgage loans secured by their real property, and that Mr. Cooper ultimately acted as their mortgage servicer for their loans. Compl. ¶¶ 12-14. Plaintiff McFadden alleges that she "sometimes" chose to make payments by phone for the mortgage loan on her Broward County, FL property. *Id.* ¶¶ 66, 69. Although Mr. Cooper offers borrowers numerous no-fee payment methods, such as online AutoPay or mailed payments, Mr. Cooper also offers customers the option to make telephone payments and pays a third party (Western Union) to process the telephone transactions. *Id.* ¶ 6. Mr. Cooper charges customers a fee to make these phone payments using the third-party. *Id.* These telephone payment fees are disclosed to borrowers each time they seek to make a phone payment as well as on the Company's website.[1] Plaintiff McFadden alleges that she paid a fee in July and August 2019 in exchange for making payments through a live phone representative. *Id.* ¶¶ 12, 61, 69.

McFadden's mortgage contains the following provision covering loan charges:

> **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

Compl., Ex. A at 8 (¶ 14).

Plaintiff Wilson likewise alleges that she elected "occasionally" to make payments by phone for the mortgage loan on her Washington, D.C. property, although the Complaint only identifies one such instance, in July 2019. *Id.* ¶¶ 13, 147. Plaintiff Wilson claims that she chose

---

[1] *See* Mr. Cooper Payment Methods, Support, https://www.mrcooper.com/support/payments/payment_methods (last visited March 27, 2020).

to make one mortgage payment via Mr. Cooper's Interactive Voice Response system, which

resulted in her paying a $14 fee. *Id.* Wilson's operative mortgage states in relevant part:[2]

> **Loan Charges.** Lender may charge Borrower fees for services performed in connection
> with Borrower's default, for the purpose of protecting Lender's interest in the Property
> and rights under this Security Instrument, including, but not limited to, attorneys' fees,
> property inspection and valuation fees. Lender may collect fees and charges authorized
> by the Secretary. Lender may not charge fees that are expressly prohibited by this
> Security Instrument or by Applicable Law.

Compl., Ex. C at 8 (¶ 13).

## **LEGAL STANDARD**

 "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although

a court must accept the factual allegations contained in a complaint as true for purposes of

considering a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 677-78.

In order to survive a Rule 12(b)(6) motion, a complaint also must conform to the pleading

requirements set forth in Rule 8(a)(2) of the Federal Rules of Civil Procedure, which require "a

short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal,* 556

U.S. at 677-78.

---

[2] Plaintiff Wilson entered into an earlier mortgage agreement in 2018 (Compl., Ex. B), which the Complaint alleges
was replaced by the operative 2019 mortgage (Compl., Ex. C). Compl. ¶ 81 (Ex. C. "is believed to have replaced
Ms. Wilson's 2018 Deed of Trust [Ex. B]").

<u>**ARGUMENT**</u>

**I.    PLAINTIFFS' BREACH OF CONTRACT CLAIMS FAIL BECAUSE THEY DO NOT PLAUSIBLY PLEAD BREACH**

**A.    Mr. Cooper Did Not Breach Plaintiffs' Mortgage Agreements, Which Authorize The Pay-By-Phone Fees.**

The Complaint's breach of contract claims should be dismissed because Plaintiffs do not identify any specific provision of their mortgage agreements that was allegedly breached by the payment of pay-by-phone fees; instead, the express language of each mortgage agreement forecloses Plaintiffs' misinterpretation of alleged breach. Neither Plaintiff McFadden nor Plaintiff Wilson identifies any supposed actual contractual prohibitions on charging or collecting the pay-by-phone fees—because no such provision exists. Instead, Plaintiff McFadden alleges that Mr. Cooper breached "paragraphs 14 and 16" of her Security Instrument, as a result of purported underlying violations of the FCCPA and FDCPA. Compl. ¶ 142. As a threshold matter, Mr. Cooper did not violate the FDCPA or FCCPA with regard to the pay-by-phone fees for the reasons described *infra* pp. 19-24.

Further, Plaintiff McFadden's mortgage agreement (like Plaintiff Wilson's) contains affirmative terms that expressly permit Mr. Cooper to charge certain fees—such as those for services necessary to protect its right as servicer to obtain payment of the mortgage loan. Her mortgage agreement, like Plaintiff Wilson's, provides:

> *Lender may charge Borrower fees for services performed* in connection with Borrower's default, *for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument*, including, but not limited to, attorneys' fees, property inspection and valuation fees.

Compl. Ex. A at 8 (¶ 14); *id.* Ex. C at 8 (¶ 13) (emphases added). Central among any loan servicer's rights is the right to receive and process payments from borrowers. *See Mohamed v. Select Portfolio Servicing, Inc.*, 215 F. Supp. 3d 85, 89 (D.D.C. 2016) ("Typically, a loan

servicer processes your loan payments. . . .") (internal quotations omitted) (citing CFPB, What's the Difference Between a Mortgage Lender and a Servicer? (Sept. 13, 2017)).  Accordingly, Mr. Cooper's offering of an additional payment mechanism for a nominal fee—which Plaintiffs knowingly utilized—is authorized under the mortgage agreement as a function of protecting Mr. Cooper's interest in Plaintiffs' property and its rights under the relevant security instruments. Nothing can be more basic to a mortgage servicer's rights and responsibilities than the right to receive customer payments to prevent default.  That includes the right to charge a customer a convenience fee for using a third-party to process telephone payments, which are often made right before the payment due date to avoid default.

Similarly, Plaintiff Wilson alleges breach of paragraph 13 of her mortgage agreement, due to alleged violations of the FDCPA and guidelines issued by the Fair Housing Administration ("FHA") and the Department of Housing and Urban Development ("HUD"). Compl. ¶¶ 152, 154.  As with Plaintiff McFadden, the language of Plaintiff Wilson's mortgage agreement expressly permits Mr. Cooper to charge fees "for the purpose of protecting [its] interest in the Property and rights under this Security Instrument," including the right to receive payment.  Compl., Ex. C at 8 (¶ 13).

In addition, Plaintiff Wilson's theory that an underlying FDCPA violation (Compl. ¶ 154) comprises a breach of her mortgage agreement does not hold water.  Plaintiff Wilson does not even claim that the FDCPA applies to Mr. Cooper's servicing relationship with her or her mortgage in the first place.[3]  Notably, Plaintiff Wilson is not a party to Count I of the Complaint under the FDCPA.

---

[3] As discussed *infra* pp. 19-24, the FDCPA only applies to loan servicers when, among other requirements, they obtain servicing rights while a borrower is already in default.  Plaintiff Wilson does not allege that she was in default at the time Mr. Cooper began servicing her mortgage loan.

Plaintiff Wilson's theory that FHA/HUD guideline violations form the basis of her breach claims similarly fails. As an initial matter, Plaintiffs have no standing to allege that Mr. Cooper violated FHA guidelines, which do not convey a private right of action. *See Fed. Nat'l Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 193 (6th Cir. 1989) (holding "no express or implied right of action in favor of the mortgagor exists for violation of HUD mortgage servicing policies"); *Caban v. Rushmore Loan Mgmt. Servs.*, No. 1:18-CV-00393-MHC-JFK, 2018 WL 5260063 at *5 (N.D. Ga. July 23, 2018) (dismissing claim because "Defendant's alleged failure to comply with HUD/FHA servicing guidelines does not impose a duty on Defendant owed to Plaintiff"). So they are left to allege breach of contract apparently predicated on an underlying breach of FHA guidelines. But as described above, nothing in Plaintiff Wilson's mortgage agreement prohibits the charging of phone payment fees. Rather, the mortgage agreement authorizes Mr. Cooper to collect fees associated with protecting its servicing rights, including the right to receive payment. Compl., Ex. C at 8 (¶ 13). Moreover, as explained *infra* § I.B, the mortgage agreement permits Mr. Cooper to collect fees so long as they are not "expressly prohibited" by applicable law, and Plaintiffs point to no such express prohibition in any guidance, rule, or statute—state or federal.

**B.    Even If The Mortgage Agreements Do Not Expressly Permit The Pay-By-Phone Fees, Nothing In Those Agreements Prohibits Them.**

In the event the Court finds that the mortgage agreements do not expressly address the permissibility of pay-by-phone fees (*see supra* §I.A), then these same mortgage agreements cannot be construed to prohibit these fees either. In other words, the mortgage agreements cannot be breached by conduct not contemplated by the language of those agreements. *See Green v. Obergfell*, 121 F.2d 46, 59 (D.C. Cir. 1941) ("Generally speaking, the cardinal rule of interpretation is to ascertain, if possible, from the instrument itself the intention of the parties,

16

and to give effect to that intention."); *Burns v. Barfield*, 732 So. 2d 1202, 1205 (Fla. 4th DCA 1999) ("In the absence of ambiguity, the language itself is the best evidence of the parties' intent and its plain meaning controls. Contracts are to be construed in accordance with the plain meaning of the words contained therein.").

The mortgage agreements themselves do not at any point prohibit the pay-by-phone fees. In fact, the only express restriction on fees in the Mortgage Agreements states: "Lender may not charge fees that are expressly prohibited by this Security Instrument or Applicable Law." Compl., Ex. A at 8 (¶ 14), Ex. C at 8 (¶ 13). This provision does not prevent Mr. Cooper from charging or collecting pay-by-phone fees, as no provision of the agreements "expressly prohibited" them—nor, as detailed below, are these fees "expressly prohibited" by any applicable law.

Moreover, Plaintiff McFadden's mortgage agreement contains an additional provision regarding Mr. Cooper's ability to apply additional fees, to which—tellingly—the Complaint fails to make any reference. Paragraph 14 of her Mortgage Agreement states:

> In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.

Compl., Ex. A at 8 (¶ 14). This provision unambiguously states that Mr. Cooper may charge additional fees not expressly addressed elsewhere in the agreement, and Plaintiff McFadden does not plead any facts showing why this provision does not apply to the pay-by-phone fees here. *See, e.g.*, *Beer v. Nationstar Mortg. Holdings, Inc.,* No. 14-cv-13365, 2015 WL 13037309, at *3 (E.D. Mich. July 15, 2015) (finding no breach as to challenged fees where mortgage contained similar "Loan Charges" provision to Plaintiff McFadden's); *Weller v. JP Morgan Chase Bank, Nat'l Ass'n*, No. 3:16-cv-110, 2017 WL 3581099, at *7 (N.D. W.Va. Aug. 18, 2017) (same).

17

Accordingly, Mr. Cooper did not breach any provision of Plaintiff McFadden's—or Plaintiff Wilson's—mortgage agreements by offering or charging the pay-by-phone fees.

In addition, Plaintiff Wilson's claim that the pay-by-phone fees breached her mortgage agreement because they violate certain FHA/HUD guideline violations likewise is not supported by the plain text of her agreement. As with Plaintiff McFadden, Plaintiff Wilson's mortgage likewise states that the only prohibited fees are those "that are expressly prohibited by this Security Instrument or by Applicable Law." Compl., Ex. C at 8 (¶ 13). Plaintiffs point to no FHA/HUD guideline that "expressly prohibits" the pay-by-phone fees, because none exists. Instead, Plaintiffs cite inapposite guideline language describing that certain other fees are permitted, and they ask the Court to draw the inverse conclusion—that the absence of express reference to the pay-by-phone fees means they are not permitted. *See* Compl. ¶ 151 ("The Handbook does not authorize Pay-to-Pay Fees."); ¶ 152 ("Lender may collect fees and charges authorized by the Secretary"). However, Plaintiffs may not insert their preferred interpretation of the mortgage agreement for the actual text, which only restricts fees that are "expressly prohibited" by applicable law. The FHA/HUD guidelines that Plaintiffs cite in the Complaint contain no prohibition whatsoever, implied or express, of Mr. Cooper's ability to offer or collect pay-by-phone fees.

The Eastern District of North Carolina recently examined a similar situation where the plaintiff alleged that her loan servicer breached the mortgage agreement (among other claims) by charging fees for processing an optional payment method. *Waddell v. U.S. Bank Nat'l Ass'n*, 395 F. Supp. 3d 676 (E.D.N.C. 2019). There, the court found that the plaintiff's mortgage agreement "d[id] not expressly address whether [defendant] can charge a service fee for an optional payment method . . . while [also] providing other payment options that involve no fee."

*Id.* at 685.  The court noted that "[i]f the parties to the contract had intended to limit a party's right to charge a service fee for an optional payment method (such as pay-by-phone), it would have been easy to include such language in the contract."  *Id.* (internal citation omitted).  As a result, the *Waddell* court dismissed the plaintiff's breach claim, finding that she "ha[d] not plausibly alleged . . . any express or implied terms that prohibit [defendant] from charging a service fee authorized by federal law for an optional payment method (such as pay-by-phone)." *Id.* at 685-86.

Here too, Plaintiffs point to no provision in the mortgage agreements that reflects an intent to limit Mr. Cooper's ability to charge the pay-by-phone fees; if the parties had intended to do so, they would have included such language in the agreements.  *Id.* at 685.  Accordingly, if the Court concludes that the language of the mortgage agreements does not expressly address the pay-by-phone fees, then the Court should conclude that these agreements likewise do not prohibit these same fees.[4]

### C.    The Breach Claims Fail For The Alternative Reason That Plaintiffs Voluntarily Entered Into Separate Oral Agreements Regarding The Pay-By-Phone Fees.

The Complaint's breach of contract claims fail for the alternative reason that Plaintiffs' decisions to pay their monthly mortgages by phone on limited occasions, incurring the pay-by-phone fee, created a separate oral contract not governed by the four corners of the parties' mortgage agreements or notes.  The Complaint alleges that Plaintiffs from time to time decided to pay monthly mortgage bills by phone using a third party, and each time they were assessed

---

[4] Furthermore, Plaintiffs fail to allege that they themselves were in compliance with the terms of the Mortgage Agreement, in particular that they were current on their payment obligations.  To allege a breach of contract claim, a plaintiff must plead performance of all of his obligations under a contract.  *See Nichols v. BAC Home Loans Servicing LP,* No. 1:13-CV-00224, 2013 WL 5723072, at *10 (N.D.N.Y. Oct. 18, 2013) (finding failure to state a claim where the plaintiff failed to allege his own performance under the contract).  Here, Plaintiffs fail to do so— and Plaintiff McFadden even alleges that at one point she was in default but pleads no facts showing that her purported default was cured.  *See* Compl. ¶ 67.

related fees by Mr. Cooper.  Compl. ¶¶ 12, 13, 136, 147.  At no time do Plaintiffs allege that they

were unaware that these fees would be assessed as a result of their phone payment, or that Mr.

Cooper took any action to deceive them or mislead them with regard to the amount of fees, or

what service they would receive in exchange.  *Id.* ¶ 12 ("In July 2019 and again in August 2019,

Cooper charged Ms. McFadden $19.00 Pay-to-Pay Fees when she made mortgage payments over

the phone."); ¶ 13 ("On or about July 3, 2019, Cooper charged Ms. Wilson a $14.00 Pay-to-Pay

Fee when she made a mortgage payment over the phone.").  Based on the Complaint's plain

pleading, Plaintiffs separately agreed to pay these fees in exchange for the convenience of

processing their mortgage payments by phone, which Mr. Cooper indeed did.

Plaintiffs' agreement to pay the pay-by-phone fees at the stated amount, in exchange for

Mr. Cooper accepting that phone payment, constitutes a separate oral agreement under the

common laws of Florida and the District.  In Florida, an oral contract is created wherever the

basic requirements of contract law are satisfied, "[such as] an offer, an acceptance, consideration

and sufficient specification of essential terms."  *See W.R. Townsend Contracting, Inc. v. Jensen*

*Civil Constr., Inc.*, 728 So.2d 297, 302 (Fla. 1st DCA 1999) (describing basic contract principles

as applied to an oral contract claim).  Similarly, in D.C., the elements of an oral contract are "(1)

an agreement to all material terms and (2) intent of the parties to be bound."  *Ashrafi v.*

*Fernandez*, 193 A.3d 129, 131 (D.C. 2018) (quoting *EastBanc, Inc. v. Georgetown Park Assocs,*

*II, L.P.*, 940 A.2d 996, 1002 (D.C. 2008)).

Under both jurisdictions' standards, Plaintiffs and Mr. Cooper created and executed their

respective duties under an oral agreement regarding the pay-by-phone fees.  Plaintiff McFadden

accepted Mr. Cooper's offer to handle a mortgage payment by phone in exchange for the

consideration of the stated fee, which Mr. Cooper indeed did—thus satisfying the contractual

definition under Florida common law.  *See St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004) (finding valid oral contract between real estate broker and landowner for commission of sale of property); *Armao v. McKenney*, 218 So. 3d 481, 485 (Fla. Dist. Ct. App. 2017) (finding valid oral agreement existed); *New Dirt, Inc. v. Harrison*, 182 So. 3d 773, 775 (Fla. Dist. Ct. App. 2015) (finding valid employment agreement between company and co-founder).

Likewise, Plaintiff Wilson orally contracted with Mr. Cooper when, after being informed of payment options, she assented to the payment of the relevant fees in order to process her monthly mortgage payment, which Mr. Cooper in fact did, creating and perfecting a contract under District common law.  Compl. ¶¶ 13, 66, 68, 83.  *See Blackstone v. Brink*, 63 F. Supp. 3d 68, 83 (D.D.C. 2014) (finding enforceable oral agreement between Plaintiff's attorney and State Farm representative regarding settlement of fatal car accident claim); *Demissie v. Starbucks Corp. Office & Headquarters*, 118 F. Supp. 3d 29 (D.D.C. 2015), *aff'd*, 688 F. App'x 13 (D.C. Cir. 2017) (finding enforceable oral agreement between Starbucks and former employee regarding settlement of alleged violations of Title VII).  Accordingly, a separate oral agreement was created among the parties under the common laws of Florida and the District.

Moreover, the conclusion that Plaintiffs entered into a separate oral agreement with Mr. Cooper is supported by language in Plaintiffs' loan notes (attached as Exs. 3-4), in particular, the "Borrower's Promise to Pay:"

> **BORROWER'S PROMISE TO PAY**
>
> In return for a loan that I have received, I promise to pay U.S. $[ ] (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is [NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER /AMERICA'S WHOLESALE LENDER].  *I will make all payments under this Note in the form of cash, check or money order*.

Exs. 3-4 ¶ 1 (emphasis added).  If the parties were operating strictly within the parameters of the mortgage agreements or notes, Plaintiffs would not have the option to make monthly mortgage

payments by phone (potentially incurring late fees if not otherwise timely and/or default on the mortgage).[5]  Instead, for the convenience and benefit of its customers, Mr. Cooper granted borrowers the option of selecting payment methods other than the three prescribed methods above, including by phone for a nominal fee.  Mr. Cooper's decision to offer such alternate payment arrangements acts effectively as a waiver of the notes' payment method requirements, which Plaintiffs accepted when they voluntarily chose to make certain mortgage payments by phone—a method not contemplated by the note.

The Complaint, however, fails to address the fact that Plaintiffs entered into separate oral agreements with Mr. Cooper when they consented to payment of the pay-by-phone fees, much less that Mr. Cooper breached somehow those separate agreements.  Accordingly, Plaintiffs' breach claims should be dismissed for this additional reason.

## II.  PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL AS A MATTER OF LAW

### A.  The Unjust Enrichment Claims Should Be Dismissed Because The Purported Dispute Arises Out Of A Contractual Relationship.

The Complaint's unjust enrichment claims fail because this dispute arises out of the parties' contractual relationship.  *See Kirchner* 257 F. Supp. 3d at 1324.  Unjust enrichment claims may not simply be contractual disputes dressed in equitable clothing.  *Smith v. Rubicon Advisors, LLC*, 254 F. Supp. 3d 245, 249–50 (D.D.C. 2017) ("In general, a plaintiff cannot maintain an unjust enrichment claim concerning an aspect of the parties' relationship that was governed by a contract.") (citing *In re APA Assessment Fee Litig*., 766 F.3d 39, 46 (D.C. Cir. 2014)); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1322 (S.D. Fla. 2014) (same).

---

[5] In many, if not most, cases, the pay-by-phone fees are lower than late payment fees, which may be a certain percentage of a late mortgage payment, rather than a set nominal payment processing fee.  *Compare* Mr. Cooper Payment Methods, Support, https://www.mrcooper.com/support/payments/payment_methods (last visited March 27, 2020) *with* Plaintiffs' Notes Ex. 1-2 ¶ 6.A (late charges equal 4-5% of total overdue principal and interest payment).

In short, the unjust enrichment claims must be dismissed as duplicative of the breach claims; both cannot be maintained. *In re Kachkar,* 769 F. App'x 673, 681 (11th Cir. 2019) ("[Plaintiff's] claim for unjust enrichment fails because [under Florida law] an unjust-enrichment claim cannot lie where an express contract exists"); *Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 209 (D.D.C. 2016); *see also Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1196 (S.D. Fla. 2017) ("[W]here the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those causes of action and warrants dismissal.") (internal citation omitted); *Kirchner*, 257 F. Supp. 3d at 1324 (dismissing unjust enrichment claim pled in the alternative).

Plaintiffs' duplicative unjust enrichment claims are defective for the additional reason that they fail to establish that any unjustness or inequity arose from Plaintiffs being offered an alternative payment method to which they agreed for a nominal fee. The elements of an unjust enrichment claim under both District of Columbia and Florida law are that: (1) plaintiff confers a benefit on defendant; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) under the circumstances, defendant's retention of the benefit would be unfair or unjust. *See News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005); *Agritrade, LP v. Quercia*, 253 So.3d 28, 33 (Fla. 3d DCA 2017).

Here, Plaintiffs have not met—and cannot meet—the third element of either jurisdiction's standard. Based on their own pleading, Plaintiffs agreed to make certain mortgage payments by phone in exchange for paying a nominal fee. Plaintiffs were aware that other, no-fee payment options were available, as they only "sometimes" or "occasionally" made phone payments. Compl. ¶¶ 136, 147. Yet, they voluntarily did so—whether for Plaintiffs' convenience, in order to avoid late fees that likely would have exceeded the pay-by-phone fees (*see supra* n.5), to

avoid default on the mortgage, or for other reasons. Nowhere do Plaintiffs claim (nor could

they) that there were unaware of the fee Mr. Cooper charged to make a phone payment.

Regardless, Plaintiffs indisputably recognized a benefit for making certain mortgage payments

by phone despite the associated fees that they voluntarily paid, and no unjustness arises where

they receive the benefit of the specific bargain they struck.

      **B.**    **The Unjust Enrichment Claims Also Fail Because Plaintiffs Failed To Furnish Sufficient Pre-Suit Notice, As Required By The Mortgage Agreements.**

      Plaintiffs' mortgage agreements both contain express provisions stating that borrowers

must provide Mr. Cooper with written notice of an alleged violation of the security instruments

and a reasonable opportunity to cure. This provision states in relevant part:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section [15/14]) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

Compl., Ex. A at 10 (¶ 20), Ex. C at 10 (¶ 19). Although the Complaint alleges that Plaintiffs

"made a written pre-suit demand upon Cooper" (Compl. ¶¶ 79, 93), the notices themselves are

defective because they fail to include any reference to the Complaint's alleged unjust enrichment

claims (and Plaintiff Wilson's notice fails to cite her MLBA claim). *See* Exs. 1-2.[6]

---

[6] Documents that are integral to and referenced in the Complaint may properly be considered on a motion to dismiss. *See* Compl. ¶¶ 79, 93 (citing pre-suit demands). *See Washkoviak v. Student Loan Mkt'g Ass'n*, 900 A.2d 168, 178 (D.C. 2006); *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119–20 (D.D.C. 2011) ("Matters that are not 'outside' the pleadings a court may consider on a motion to dismiss to include 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint….'"); *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46–47 (D.D.C. 2009) (same); *see also Hart v. Elec. Arts, Inc.*, 740 F. Supp. 2d 658, 662–63 (D.N.J. 2010) ("[I]t has been long established that 'a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" (internal citations omitted)).

As described above, Plaintiffs' unjust enrichment claims are based entirely on conduct related to the parties' contractual borrower-servicer relationship—or in the words of the security instrument, each claim: "arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument." Compl., Ex. A at 10 (¶ 20), Ex. C at 10 (¶ 19). *See Hill v. Nationstar Mortg. LLC*, No. 15-60106-CIV, 2015 WL 4478061, at *3 (S.D. Fla. July 2, 2015) ("Thus, regardless of the cause of actions alleged, the Homeowners' claims are entirely based on their mortgage contracts, . . . includ[ing] the unjust enrichment claim in this case, as the alleged enrichment was the alleged overcharging of property inspection fees pursuant to the terms of the mortgage contracts."); *Trevathan v. Select Portfolio Servicing, Inc.*, 142 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) (dismissing claims including unjust enrichment, and tortious interference with business relations where plaintiff failed to allege compliance with notice and cure provision in mortgage). Accordingly, Plaintiffs' unnoticed unjust enrichment claims must be dismissed for failure to comply with this basic provision of the mortgage agreements.

## III.    PLAINTIFFS' COMMON LAW BREACH OF CONTRACT AND UNJUST ENRICHMENT CLAIMS ARE BARRED BY THE VOLUNTARY PAYMENT DOCTRINE

Both the District and Florida[7] recognize the "voluntary payment" doctrine, which bars individuals who voluntary submit payment from later seeking to recover that same payment. *See Eagle Maint. Servs., Inc.*, 893 A.2d at 582 (District common law recognizes the "voluntary payment doctrine," which provides that money knowingly and voluntarily paid under

---

[7] Although Florida has partially abrogated the voluntary payment doctrine through statute, Fla. Stat. Ann. § 725.04, courts still have applied the doctrine, explaining that "money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered back, and this is true even though the claim thus paid was illegal." *Sanchez v. Time Warner, Inc.*, 1998 WL 834345, at *2 (M.D. Fla. Nov. 4, 1998).

a claim of right to the payment cannot be recovered solely because the payor later believes the claim was illegal) (citing *Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325, 1329 (Ill. App. Ct. 1995)); *City of Miami v. Keton*, 115 So.2d 547, 551 (Fla. 1959) (explaining that voluntary payment doctrine provides that "where one makes a payment of any sum under a claim of right with knowledge of the facts, such a payment is voluntary and cannot be recovered"). "It does not matter that the payment may have been made upon a mistaken belief as to the enforceability of the demand, or liability under the law, as long as payment is made with knowledge of the factual circumstances." *Hassen v. Mediaone of Greater Fla., Inc.*, 751 So. 2d 1289, 1290 (Fla. 1st DCA 2000). Here, Plaintiffs concede that they voluntarily—and occasionally—paid the relevant fees in exchange for Mr. Cooper processing their mortgage payments by phone through a third party. Compl. ¶¶ 136, 147. They may not now seek to impose liability on Mr. Cooper for that same voluntary payment. For this additional reason, Plaintiffs' common law breach of contract and unjust enrichment claims should be dismissed.

## IV. MR. COOPER DID NOT VIOLATE THE FDCPA BY ALLOWING PLAINTIFF MCFADDEN TO CHOOSE TO PAY HER MORTGAGE BY PHONE FOR AN ADDITIONAL FEE

Plaintiff McFadden's claim under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(1) fails for a number of reasons, including that: (A) McFadden fails to plausibly allege that the FDCPA even applies to her or that she was in default at the time Mr. Cooper obtained servicing rights to her mortgage; (B) the pay-by-phone fees are authorized by the mortgage agreements and permitted by law; and (C) voluntary and reasonably avoidable fees, such as the pay-by-phone fees here cannot form the basis of an FDCPA violation.

**A.    The Complaint Fails To Plausibly Plead Facts Showing That Plaintiff McFadden Was In Default At The Time Servicing Was Transferred To Mr. Cooper.**

The FDCPA applies only to "debt collectors," which in the context of mortgage servicers requires that servicing must have been transferred after a borrower already was in default on his or her payment obligations.  *See* 15 U.S.C. § 1692a(6)(F)(iii) ("The term 'debt collector' . . . does not include . . . any person collecting or attempting to collect any debt owed . . . to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."); *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 183 (2d Cir. 2014) (dismissing FDCPA claim for failure to plead that borrower was in default when loan servicing was assigned).

The Complaint here does not contain any plausibly-pleaded factual allegations showing that Plaintiff McFadden was in default when servicing rights of her mortgage were obtained by Mr. Cooper.  Instead, it only cursorily alleges that:  "At the time Cooper acquired the servicing rights, Ms. McFadden's mortgage was in default."  Compl. ¶ 67.  McFadden pleads no separate factual allegations in support of the legal conclusion that she purports to have been "in default" at the time servicing was acquired by Mr. Cooper, such as any facts showing when she allegedly went into default, when servicing allegedly was obtained by Mr. Cooper, or any details regarding what conduct Plaintiff contends constitutes her "default" under the law.  *See, e.g., Oya*, 2019 WL 157802, at *3 (S.D. Cal. Jan. 9, 2019); *Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1009 (D. Minn. 2008) (dismissing conclusory allegations that defendant was a debt collector).

The court in *Oya* addressed similar deficiencies in FDCPA claims.  2019 WL 157802. There, the court dismissed the FDCPA claims where the plaintiffs similarly pleaded no facts describing what allegedly comprised "default," or how the defendant actually qualified as an "FDCPA debt collector."  *Id.* at *3.  The court explained:  "Plaintiffs provide no factual allegations supporting the legal conclusion that the loan was in default when it was assigned.

For example, they do not provide the date the loan went into default, whether a notice of default was sent to them, or the date that the loan was assigned to Defendants.  They simply allege, 'on information and belief' that the loan was in default when it was assigned."  *Id.*  Hence, the *Oya* court concluded that "Plaintiffs have not adequately pled facts to support their conclusion that the loan was in default before it was assigned to Defendants. . . . As a result, Plaintiffs have failed to allege sufficiently that [defendant] is a 'debt collector' within the meaning of the FDCPA."  *Id.* (citing *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.")).  Likewise here, Plaintiff McFadden's conclusory claim of default is insufficient, and for this reason the FDCPA claim should be dismissed.[8]

### B.    The FDCPA Claim Fails Because The Pay-By-Phone Fees Are Authorized By The Mortgage Agreements And Permitted By Law.

Further, even if Mr. Cooper is deemed a covered "debt collector" with respect to Plaintiff McFadden's claim, the pay-by-phone fees do not give rise to an FDCPA violation, because the fees are "expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).  As outlined above in Section I.A, Plaintiff McFadden's mortgage agreement expressly contemplates Mr. Cooper's ability to collect additional fees, such as the pay-by-phone fees here.  Compl., Ex. A at 8 (¶ 14); *id.* Ex. C at 8 (¶ 13) ("Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of

---

[8] As explained in *Motley*, 557 F. Supp. 2d at 1009, this deficiency may not simply be cured by inserting additional cursory allegations regarding alleged default:

> Under *Twombly,* Plaintiffs cannot simply hope that discovery will uncover facts indicating some of their mortgages were transferred to Homecomings in a default status.  127 S.Ct. at 1968  (complaint cannot simply "le[ave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery").  Rather, Plaintiffs are required to plead facts that would, if proved, establish their entitlement to relief on their FDCPA claim; in other words, they must plead facts establishing that Homecomings is a 'debt collector' within the meaning of the Act.  Insofar as they have not done so, their FDCPA claim fails.

protecting Lender's interest in the Property and rights under this Security Instrument. . . .").[9]  In addition, Plaintiff McFadden's mortgage agreement contains an additional provision regarding Mr. Cooper's ability to apply additional fees:  "In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee."  Compl., Ex. A at 8 (¶ 14).  This provision unambiguously states that Mr. Cooper may charge additional fees not expressly addressed elsewhere in the agreement, and Plaintiff McFadden does not plead any facts showing why this plain provision does not apply to the pay-by-phone fees here.  *See, e.g.*, *Beer,* 2015 WL 13037309, at *3 (challenged fees did not violate agreement containing similar "Loan Charges" provision to Plaintiff McFadden's).

Moreover, these fees are permitted by law, and Plaintiff has not identified any case, statute, rule, or regulation—state or federal—that prohibits lenders from charging fees associated with certain payment methods to which borrowers affirmatively agree.  As common sense suggests, an FDCPA violation cannot lie unless a specific legal prohibition exists for a particular practice, which is certainly not the case here.  *See Johnson v. Riddle*, 305 F.3d 1107, 1117–18 (10th Cir. 2002) (noting that, "in interpreting the phrase permitted by law, 'a general statutory authorization' satisfies the FDCPA").  Indeed, the practice of offering additional fee-based payment services is far from prohibited, and is commonplace in many facets of consumer banking and payments.

---

[9] In fact, although not plausibly pleaded in the Complaint, to the extent Plaintiff McFadden was in default at the time Mr. Cooper obtained servicing rights of her mortgage loan, Mr. Cooper's interest in protecting its right to receive payment would be especially strong, and permitting phone payments (for an associated fee) would have been a helpful way to ensure that the borrower did not go further into default through a late payment.

C.      **Voluntary And Reasonably Avoidable Fees, Such As The Pay-By-Phone Fees Here, Do Not Violate The FDCPA.**

In addition, the pay-by-phone fees do not violate the FDCPA because they were voluntarily paid and reasonably avoidable by Plaintiffs.  The Complaint alleges only that Plaintiffs "sometimes" or "occasionally" chose to make mortgage payments by phone, incurring pay-by-phone fees.  Compl. ¶¶ 136, 147.  Any good faith interpretation of these allegations yields the conclusion that Plaintiffs were aware of other, no-fee, payment methods[10]—which indeed they utilized on many other occasions—but that Plaintiffs voluntarily chose to make a handful of mortgage payments via phone, pursuant to which they incurred associated fees because of the additional third-party and internal costs.  The law does not support FDCPA liability in such a case, where individuals choose to pay a certain fee and then claim to have been the victim of an unfair debt collection practice as a result.

Other courts considering this issue have agreed.  For instance, in *Bryant v. Aargon Collection Agency, Inc*., the District Court for the Southern District of Florida dismissed the plaintiff's FDCPA claim where a collection letter included options for payment via credit card for an additional fee (a payment option not included in the agreement creating the debt).  2017 WL 2955532, at *1.  In finding that this conduct did not violate the FDCPA, the court noted, in part, that such an additional fee was "reasonably avoidable by the least sophisticated consumer," as the debt collector offered multiple payment options that did not include an additional fee.  *Id.* at *6 (citing *Lee v. Main Accounts, Inc.*, 125 F.3d 855 (6th Cir. 1997) (finding 5% charge on "optional payment choice" to pay by credit card was "not an unconscionable or deceptive debt collection practice")).  Accordingly, Plaintiffs may not retroactively seek to hold the debt

---

[10] Mr. Cooper offers a number of other non-fee payment methods.  *See* Mr. Cooper Payment Methods, Support, https://www.mrcooper.com/support/payments/payment_methods (last visited March 27, 2020).

collector liable for furnishing this payment option.  *See also Heald v. Ocwen Loan Servicing, LLC,* No. 3:13-cv-993-J-34JRK, 2014 WL 4639410, at *5 (M.D. Fla. Sept. 16, 2014) (dismissing FDCPA claim for mortgage that contained similar "Loan Charges" provision).  Plaintiffs here had every opportunity to decide whether to make a payment by phone for a fee or utilize another (no fee) payment method, as they appear to have done for the majority of their mortgage payments.  They may not seek to impose FDCPA liability on Mr. Cooper for offering these additional payments options.  For this additional reason, Plaintiffs' FDCPA claims must be dismissed.

**V.      MR. COOPER DID NOT VIOLATE THE D.C. OR FLORIDA STATUES BY GIVING PLAINTIFFS THE OPTION TO PAY THEIR MORTGAGES BY PHONE FOR AN ADDITIONAL FEE**

> **A.      Plaintiff McFadden's Florida Statutory Claims Are Defective On Their Face.**

> > **1.      The FCCPA Claims Fail To Establish *Scienter* Or That The Pay-By-Phone Fees Are "Illegitimate."**

First, Plaintiff McFadden's claims under the Florida Consumer Collection Practices Act, § 559.55, Florida Statutes, *et seq.* ("FCCPA") should be dismissed because the Complaint does not plausibly allege that Mr. Cooper had "actual knowledge" that it did not have a legal right to charge the processing fees, as required under the FCCPA.  *Nardolilli v. Bank of Am. Corp.,* No. 12-81312, 2013 WL 12154541, at *4 (S.D. Fla. Dec. 5, 2013); Fla. Stat. § 559.72(9).  In general, an FCCPA claim for illegal debt collection has three elements:  (1) an illegitimate debt, (2) a threat or attempt to enforce that debt, and (3) knowledge that the debt is illegitimate.  Fla. Ann. Stat. § 559.72(9).  *Davis v. Sheridan Healthcare, Inc.*, 281 So.3d 1259 (Fla. 2nd DCA 2019).

Plaintiff McFadden's FCCPA claim is based on Section 559.72(9), which provides:  "In collecting consumer debts, no person shall . . . [c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other

legal right when such person knows that the right does not exist."  Compl. ¶ 25 (citing Fla. Stat. § 559.72(9)).  "Actual knowledge" is required under this section, and the FCCPA does not provide for liability where a creditor merely should have known that a debt was not legitimate. *Cornette v. I.C. System, Inc.*, 280 F. Supp. 3d 1362, 1371 (S.D. Fla. 2017) (recovery requires "actual knowledge that the right did not exist" to collect the debt).

The Complaint alleges only that Mr. Cooper "attempted to enforce, claimed, and asserted a known non-existent legal right to a debt" in purported violation of the FCCPA, with no factual allegations of actual knowledge—an essential FCCPA element.  Compl. ¶ 121.  Moreover, any post-hoc claim of "actual knowledge" is belied by the terms of Plaintiff McFadden's mortgage agreement that actually addresses Mr. Cooper's ability to collect "Loan Charges."  Compl. ¶ 122; *id.*, Ex. A at 9 ("In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.").  The Complaint's conclusory allegations that Mr. Cooper "knew" the pay-by-phone fees were improper cannot be reconciled with the actual text of the agreements permitting these fees.[11]

### 2.    The FDUTPA Claim Fails To Plead Any Underlying Legal Violation Or Any Deception Or Unfairness.

Count III alleges two types of Florida Deceptive and Unfair Trade Practices Act (FDUTPA) violations, both of which are defective:  (i) violation of FCCPA as a *per se* violation of FDUTPA under Fla. Stat. § 501.203(3), and (ii) violation of FDUTPA under Fla. Stat. § 501.204(1) as general unfair and deceptive practices in trade or commerce.

---

[11] Moreover, the pay-by-phone fees were not an "illegal" or "illegitimate" debt under any statute or other governing law, and Plaintiff does not provide any operative authority otherwise, defeating the FCCPA's first essential element of an "illegitimate debt."  Fla. Ann. Stat. § 559.72(9).

As outlined above, Plaintiff failed to allege any FCCPA violation and therefore the first theory fails. Regarding the second FDUTPA theory, Plaintiffs' decision to voluntarily pay the pay-by-phone fee is neither deceptive nor unfair. The elements of "general unfair and deceptive practices" FDUTPA violations are (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. *State Farm Mut. Auto. Ins. Co. v. Health and Wellness Servs, Inc*., 389 F. Supp. 3d 1137, 1149 (S.D. Fla. 2018). An "unfair practice" is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. *Lombardo v. Johnson & Johnson Consumer Cos., Inc.*, 124 F. Supp. 3d 1283, 1287 (S.D. Fla. 2015). "Deception" is an objective standard that occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment. *Id*. Federal Trade Commission ("FTC") Act standards are incorporated into the FDUTPA, and courts give due consideration and great weight to FTC cases in applying FDUTPA standards. *See Coleman v. CubeSmart*, 328 F. Supp. 3d 1349, 1361 n.4 (S.D. Fla. 2018); *see also Fed. Trade Comm'n. v. Life Mgmt. Servs. of Orange County, LLC*, 350 F. Supp. 3d 1246, 1264 (M.D. Fla. 2018).

Here, no deception or unfairness occurred, nor any plausibly-pleaded factual allegations thereof. Plaintiffs voluntarily chose a payment method involving a fee among various options, and there is no allegation of any deceit or misrepresentation that a fee would be assessed, its amount, or what Plaintiffs were to receive in exchange.[12] *See Washington v. LaSalle Bank Nat. Ass'n*, 817 F. Supp. 2d 1345, 1350 (S.D. Fla.2011) ($899 lender administration fee did not

---

[12] Plaintiffs point to no authority—and Mr. Cooper is aware of none—to support the proposition that a mortgage servicer is required to disclose its actual costs of processing certain transactions, however that could be defined. *See* Compl. ¶ 130. In reality, the mortgage agreements contemplate various fees and charges relating to loan servicing activities, such as late charges (Ex. A at 3, Ex. C at 3), or real estate tax verification charges (Ex. A at 5). Loan servicers have never been required to disclose to borrowers their internal costs, which will often change from time to time depending on region, third-party vendors, prevailing interest rates, and other variables.

violate FDUTPA where fee was disclosed on the settlement statement that borrower saw at closing, the fee was not misleading, and charging the fee, after its disclosure, was not immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers).  Nor does the Complaint allege that Mr. Cooper made any material misstatement or omission with regard to the pay-by-phone fee, such as its cost or what Plaintiffs would receive in exchange.  *See Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) ("The Florida Supreme Court has noted that 'deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment . . . This standard requires a showing of 'probable, not possible, deception' that is 'likely to cause injury to a reasonable relying consumer.'" (internal citation omitted)).  For these reasons, the Complaint's FDUTPA claims should be dismissed.

### B. Plaintiff Wilson's D.C. Statutory Claims Likewise Fail As A Matter Of Law.

#### 1. The DCCPPA Claim Fails Because It Establishes No Misrepresentations Or A Requisite Consumer-Merchant Relationship.

The Complaint also alleges that the pay-by-phone fees violated the District of Columbia Consumer Protection Procedures Act ("DCCPPA"), which prohibits (i) misrepresenting a material fact that has a tendency to mislead; (ii) representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; and (iii) failing to state a material fact that has a tendency to mislead.  *See* D.C. Code § 28-3904(e), (e-1), (f).

The DCCPPA claim fails for the elemental reason that the pay-by-phone fees were neither misleading, nor are they plausibly alleged to be.  As set forth above, Plaintiff Wilson voluntarily elected to make certain payments by phone, and nowhere does the Complaint allege (nor could it allege), that Mr. Cooper misled her about the associated fee to make such payments

34

by phone.  The Complaint states merely that Mr. Cooper failed to disclose to Plaintiff Wilson

that its internal cost to process a phone payment was allegedly lower than the phone payment fee

it assessed.  Compl. ¶ 92.  As noted above, the Complaint points to no authority supporting the

notion that Mr. Cooper was required to disclose its internal processing costs, and Mr. Cooper is

aware of no such authority.  Charging a fee to a borrower it is legally permitted to charge cannot

be an unlawful trade practice, regardless of the costs to Mr. Cooper.

Further, the DCCPPA claim fails on the separate grounds that the statute applies only to

"consumer-merchant relationships."  *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d

939, 948 (D.C. Cir. 2017).  The borrower-loan servicer relationship here does not qualify as a

consumer-merchant relationship under the DCCPPA because mortgage servicers like Mr. Cooper

are not "merchants" as contemplated by the law.  *See Busby v. Capital One, N.A.*, 772 F. Supp.

2d 268, 280 (D.D.C. 2011) (dismissing DCCPPA claim where plaintiff failed to establish

servicer was merchant, noting "[a]lthough the plaintiff notes that the [DC]CPPA applies to

lenders in residential mortgage transactions, . . . the plaintiff has alleged here that Capital One

was not the lender and that its role in the lender-borrower relationship was limited to serving as

the loan servicer, at best. . .").  *See also Mushala v. US Bank, Nat'l Ass'n*, No. CV 18-1680

(JDB), 2019 WL 1429523, at *9 (D.D.C. Mar. 29, 2019).  Thus, the DCCPPA claim is defective

as a matter of law and should be dismissed.

> **2.    The MLBA Claims Fail For The Same Reasons As The Other State
> Statutory Claims.**

Plaintiff also alleges that the pay-by-phone fees violated the D.C. Mortgage Lender and

Broker Act, D.C. Code § 26-1101, *et seq.* ("MLBA") on the grounds that Mr. Cooper allegedly

(i) employed a scheme to mislead borrowers and engaged in a deceptive practice by assessing

Fees not authorized under the terms of the D.C. Mortgage Agreement, and (ii) employed a

scheme to mislead borrowers and engaged in a deceptive practice by failing to disclose that the cost for Defendant to process the transactions is well below the amount of the fees charged to its borrowers.  *See* D.C. Code § 26-1114(d)(1), (2).

These claims fail for the same reasons as Plaintiffs' DCCPPA and FDUTPA claims. First, the Complaint contains no plausible allegations that Mr. Cooper made any misleading representations or omissions regarding the assessment, amount, or services provided in exchange for the pay-by-phone fees.  Next, the MLBA claims are premised on the same alleged conduct that forms the basis of the Complaint's defective FDCPA claim, and the D.C. courts have explained that duplicative MLBA claims based on the same predicate facts should be dismissed on these grounds alone.  *See Mushala*, 2019 WL 1429523, at *9 (D.D.C. Mar. 29, 2019) ("Even assuming Mushala has a cognizable MLBA claim, *res judicata* bars it.  Mushala identifies the same factual predicates for the MLBA claim as she alleged under the heading of the FDCPA").

Further, the MLBA claim fails for the additional reason that Plaintiff Wilson failed to provide Mr. Cooper pre-suit notice of this claim, as she is required to do under her mortgage agreement.  *See supra* § II.B; Ex. 2 (Wilson pre-suit notice).  Accordingly, the Complaint's MLBA claims, as with the unjust enrichment claims, should be dismissed.

## **CONCLUSION**

For the foregoing reasons, pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6), Mr. Cooper respectfully requests that the Court dismiss the Complaint in its entirety for failure to state a claim upon which relief may be granted.

**Date**:  March 30, 2020

Respectfully Submitted,

**BUCKLEY LLP**

_/s/ Matthew P. Previn_

Matthew P. Previn (Bar No. 460228)
1133 Avenue of the Americas, Suite 3100
New York, NY 10036
mprevin@buckleyfirm.com
(212) 600-2310

Timothy J. Coley (Bar No. 997762)
2001 M Street NW, Suite 500
Washington, DC 20036
tcoley@buckleyfirm.com
(202) 349-8036

_Counsel for Defendant Nationstar
Mortgage LLC d/b/a Mr. Cooper_