# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JACKERLY MCFADDEN
and
CASSANDRA WILSON,
*On Behalf of Themselves and*
*All Others Similarly Situated*,

      Plaintiffs,　　　　　　　　　　　　　　　**Case No. 1:20-cv-00166-EGS**

v.

NATIONSTAR MORTGAGE LLC
d/b/a MR. COOPER,

      Defendant.
_____/

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT
NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER'S MOTION TO DISMISS**

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................1

II.     FACTUAL BACKGROUND .......................................................................................3

III.    LEGAL STANDARD ..................................................................................................5

IV.     ARGUMENT ...............................................................................................................5

        A.      Plaintiffs state a claim for violation of the federal Fair Debt Collection
                Practices Act. ..................................................................................................5

                1.      Ms. McFadden has sufficiently alleged Mr. Cooper is a debt collector
                        with respect to Ms. McFadden's loan. ..................................................6

                2.      Pay-to-Pay Fees are not expressly authorized by the mortgage
                        agreement or permitted by law...............................................................8

                3.      Pay-to-Pay Fees violate the FDCPA regardless of other payment options. ..10

        B.      Plaintiffs have plausibly alleged violations of District of Columbia and Florida
                consumer protection law. ...............................................................................11

                1.      Ms. McFadden has plausibly alleged violations of the FCCPA. .....................11

                2.      Ms. McFadden has plausibly alleged violations of FDUTPA. ........................13

                        a.      Requirements under FDUTPA ..............................................13

                        b.      Mr. Cooper's collection of Pay-to-Pay fees is an unfair trade
                                practice, as confirmed by the FDCPA and FCCPA............................13

                3.      Ms. Wilson has plausibly alleged violations of the DCCPPA. ......................15

                        a.      The DCCPPA applies to Mr. Cooper in its role as mortgage
                                servicer and lender. ..............................................................16

                        b.      The DCCPPA applies to Mr. Cooper's Pay-to-Pay Fees. ...................21

                4.      Ms. Wilson has plausibly alleged violations of the MLBA.............................24

        C.      Plaintiffs state a claim for breach of contract.................................................25

                1.      Mr. Cooper breached the provision of Ms. Wilson's FHA uniform
                        deed of trust that prohibits the charging of fees not authorized
                        by the Secretary of HUD. .....................................................................26

                2.      Mr. Cooper breached the provision in Plaintiffs' deeds of trust
                        foreclosing the charging of fees prohibited by "Applicable Law."................29

                3.      There were no separate oral contracts and the Court should reject
                        Mr. Cooper's attempt to insert facts outside the pleadings. ...........................30

        D.      Plaintiffs properly plead unjust enrichment claims in the alternative to
                their contract claims. ......................................................................................32

        E.      The voluntary payment doctrine does not apply. ............................................34

1.      It would be premature for the Court to dismiss Plaintiffs' claims
        based on the affirmative defense of the voluntary payment doctrine.............34

2.      The voluntary payment doctrine does not apply because Plaintiffs
        lacked full knowledge regarding the Pay-To-Pay Fees. ....................................36

F.      Plaintiffs provided the required notice. .........................................................37

V.      CONCLUSION ..........................................................................................................40

# TABLE OF AUTHORITIES

## Cases

*Abby v. Paige,*
  No. 10-23589-CIV, 2013 WL 141145 (S.D. Fla. Jan. 11, 2013) ........................................10

*Allen v. CitiMortgage, Inc.,*
  No. CCB-10-2740, 2011 WL 3425665 (D. Md. Aug. 4, 2011) ........................................20

*Allen v. Mnuchin,*
  No. 18-1214(RC), 2019 WL 2581323 (D.D.C. June 24, 2019) ..........................................5

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...........................................................................................................5

*Avianca, Inc. v. Corriea,*
  Civ. A. No. 85–3277(RCL), 1992 WL 93128 (D. D.C. 1992) .........................................10

*Bates v. JPMorgan Chase Bank, NA,*
  768 F.3d 1126 (11th Cir. 2014) .......................................................................................27

*Beck v. Test Masters Educ. Servs., Inc.,*
  994 F. Supp. 2d 90 (D.D.C. 2013) ............................................................................21, 23

*Beer v. Nationstar Mortgage Holdings, Inc.,*
  No. 14-cv-13365, 2015 WL 13037309 (E.D. Mich., 2015) ..............................................9

*Bell Atl. Corp. v. Twombley,*
  550 U.S. 544 (2007) ...........................................................................................................5

*Beyer v. Countrywide Home Loans Servicing LP,*
  No. C07–1512MJP, 2008 WL 1791506 (W.D. Wash. Apr. 18, 2008) ..............................40

*Blake v. Seterus, Inc.,*
  No. 16-21225-CIV-JLK, 2017 WL 543223 (S.D. Fla. Feb. 9, 2017) .......................1, 2, 12

*Bourff v. Rubin Lublin, LLC,*
  674 F.3d 1238 (11th Cir. 2012) ........................................................................................6

*Brink v. Raymond James & Assocs., Inc.,*
  341 F. Supp. 3d 1314 (S.D. Fla. 2018) ...........................................................................36

*Buffington v. U.S. Bank, N.A.,*
  No. CV-14-00615-PHX-DJH, 2014 WL 7648937 (D. Ariz. Oct. 28, 2014) ...................6, 7

*Buford v. Ocwen Loan Servicing, LLC,*
  No. 2:18cv154, 2018 WL 6790656 (E.D. Va. Nov. 2, 2018) ...........................................20

*Busby v. Capital One, N.A.,*
  772 F. Supp. 2d 268 (D.D.C. 2011) ...........................................................................16, 20

*Busby v. Capital One, N.A.,*
  932 F. Supp. 2d 114 (D.D.C. 2013) ...................................................................................5

*Cableview Comm'ns of Jacksonville, Inc. v. Time Warner Cable SE LLC,*
  No. 3:13–cv–306–J–34JRK, 2014 WL 1268584 (M.D. Fla. March 27, 2014) ..................35

*Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh,*
  130 F. Supp. 3d 236 (D.D.C. 2015) ..................................................................23

*Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach County, Inc.,*
  169 So.3d 164 (Fla. 4th Dist. Ct. App. 2015) ................................................13

*Carrero v. LVNV Funding, LLC,*
  No. 11-62439-civ, 2014 WL 6433214 (S.D. Fla. Oct. 27, 2014) ............ 34, 36

*Coleman v. CubeSmart,*
  328 F. Supp. 3d 1349 (S.D. Fla. 2018)..........................................................14

*Davis v. Powertel, Inc.,*
  776 So.2d 971 (Fla. 1st Dist. Ct. App. 2000) ................................................13

*DeBerry v. First Gov't Mortg. & Investors Corp.,*
  743 A.2d 699 (D.C. 1999) ..............................................................2, 17, 18, 19

*District Cablevision Ltd. P'ship v. Bassin,*
  828 A.2d 714 (D.C. 2003) ..............................................................................18

*Donlon v. Evolve Bank & Trust,*
  No. CIV. JFM-12-2384, 2014 WL 1330522 (W.D. Tenn. Mar. 31, 2014) ................ 27, 28

*Dorado v. Bank of Am., N.A.,*
  1:16-CV-21147-UU, 2016 WL 3924115 (S.D. Fla. July 21, 2016)..................27

*Eagle Maintenance Services, Inc. v. District of Columbia Contract Appeals Bd.,*
  893 A.2d 569 (D.C. 2006) ..............................................................................10

*Edmond v. Am. Educ. Servs.,*
  No. 10-0578(JDB), 2010 WL 4269129 (D.D.C. Oct. 28, 2010) ................. 6, 7

*Falconi-Sachs v. LPF Sen. Square, LLC,*
  142 A.3d 550 (D.C. 2016) ..............................................................35, 36, 37

*Fed. Deposit Ins. Corp. v. Bank of Am., N.A.,*
  308 F. Supp. 3d 197 (D.D.C. 2018) ........................................................ 32, 33

*Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.,*
  944 A.2d 1055 (D.C. 2008) ............................................................................22

*Fowler v. Wells Fargo Bank, N.A.,*
  17-CV-02092-HSG, 2017 WL 3977385 (N.D. Cal. Sept. 11, 2017) ..............27

*Frankeny v. District Hospital Partners, LP,*
  --- A.3d ---, 2020 WL 950107 (D.C. 2020) ..................................................21

*Franklin v. BAC Home Loans Servicing, L.P.,*
  No. 3:10-CV-1174-M, 2011 WL 248445 (N.D. Tex. Jan. 26, 2011)..............28

*Gerber v. First Horizon Home Loans Corp.,*
  No. C05–1554P, 2006 WL 581082 (W.D. Wash. Mar. 8, 2006) ..................39

*Gomez v. Independence Mgmt. of Delaware, Inc.,*
  967 A.2d 1276 (D.C. 2009) ............................................................................18

v

*Gustave–Schmidt v. Chao,*
  226 F.Supp.2d 191 (D.D.C.2002) ............................................................................31

*Hassen v. Mediaone of Greater Fla., Inc.,*
  751 So. 2d 1289 (Fla. 1st Dist. Ct. App. 2000) ......................................................37

*Henok v. Chase Home Finance, LLC. Et al.,*
  922 F. Supp. 2d 110 (D.D.C. 2013) ........................................................................39

*Hernandez v. Home Sav. Ass'n of Dallas Cty.,*
  606 F.2d 596 (5th Cir. 1979) ..................................................................................28

*Hill v. Nationstar Mortgage, LLC.,*
  NO. 1560106–CIV, 2015 WL 4478061 (S.D. FL. July 2, 2015) ..................... 39, 40

*Howard Univ. v. Watkins,*
  857 F. Supp. 2d 67 (D.D.C. 2012) ..........................................................................31

*Hughes v. Abell,*
  867 F. Supp. 2d 76 (D.D.C. 2012) ..........................................................................19

*In re APA Assessment Fee Litig.,*
  766 F.3d 39 (D.C. Cir. 2014) ........................................................................... 33, 34

*JI-EE Indus. Co. v. Paragon Metals, Inc.,*
  No. 09-81590-CIV, 2010 WL 1141103 (S.D. Fla. Mar. 23, 2010) .........................32

*Johns-Manville Sales Corp. v. Janssens,*
  463 So. 2d 242 (Fla. 1st Dist. App. 1984) ..............................................................12

*Johnson v. Long Beach Mortg. Loan Trust 2001-4,*
  451 F. Supp. 2d 16 (D.D.C. 2006) ..........................................................................19

*Johnson-Morris v. Santander Consumer USA, Inc.,*
  194 F. Supp. 3d 757 (N.D. Ill. 2016) ......................................................................10

*Key v. Allstate Ins. Co.,*
  90 F.3d 1546 (11th Cir. 1996) .................................................................................38

*Latman v. Costa Cruise Lines, N.V.,*
  758 So.2d 699 (Fla. 3d Dist. Ct. App. 2000) ..........................................................14

*Levick v. Kiser,*
  206 F. Supp. 3d 337 (D.D.C. 2016) ........................................................................19

*Liable v. Rockport Fin., LLC,*
  No. 4:15–CV–00306–ERW, 2015 WL 4771664 (E.D. Mo. Aug. 12, 2015) ...........11

*Lindblom v. Santander Consumer USA, Inc.,*
  No. 1:15-cv-990-LJO-BAM, 2016 WL 2841495 (E.D. Cal. May 9, 2016) .......... 9, 10, 11

*Logan v. LaSalle Bank Nat'l Ass'n,*
  80 A.3d 1014 (D.C. 2013) ............................................................................. 2, 18, 25

*Manicini Enterprises, Inc. v. Am. Exp. Co.,*
  236 F.R.D. 695 (S.D. Fla. 2006) ...................................................................... 32, 33

*Maor v. Dollar Thrifty Auto. Grp., Inc.,*
   303 F.Supp.3d 1320 (S.D. Fla. 2017) ............................................................36

*Markel Ins. Co. v. Am. Safety Risk Retention Grp., Inc.,*
   No. 3:15-CV-240/RV-CJK, 2016 WL 10611374 (N.D. Fla. Aug. 3, 2016) ......................36

*McCollough v. Johnson, Rodenburg & Lauinger, LLC,*
   637 F.3d 939 (9th Cir. 2011) ..................................................................9

*McKell v. Washington Mut., Inc.,*
   49 Cal. Rptr. 3d 227 (Cal. Ct. App. 2006) ................................................ 14, 15

*McWhorter v. Ocwen Loan Serv., LLC,*
   No. 2:15-cv-01831, 2017 WL 3315375 (N.D. Ala. Aug. 3, 201 ...........................8, 9, 10, 11

*Millennium Communic'ns & Fulfillment, Inc. v. Office of the Attorney Gen.,*
   761 So.2d 1256 (Fla. 3d Dist. Ct. App. 2000) ..............................................13

*Mills v. Select Portfolio Servicing, Inc.,*
   No. 18-cv-61012-BLOOM/Valle, 2018 WL 5113001 (S.D. Fla. Oct. 19, 2018) ......................40

*Moses v. The Law Office of Harrison Ross Byck,*
   No. 3:08cv1939, 2009 WL 2411085 (M.D. Pa. Aug. 4, 2009) .....................................7

*Muhammad v. PNC Bank, N.A.,*
   No. 2:15-cv-16190, 2016 WL 815289 (S.D. W. Va. Feb. 29, 2016) ..............................15

*Mushala v. US Bank, Nat'l Ass'n,*
   No. CV 18-1680 (JDB), 2019 WL 1429523 (D.D.C. Mar. 29, 2019) ...................... 16, 20, 24, 25

*Newman v. Checkrite California, Inc.,*
   912 F. Supp. 1354 (E.D. Cal. 1995) ........................................................10

*Oya v. Wells Fargo Bank, N.A.,*
   No. 3:18-CV-01999-H-BGS, 2019 WL 157802 (S.D. Cal. Jan. 9, 2019) ............................7

*Parr v. Ebrahimian,*
   70 F. Supp. 3d 123 (D.D.C. 2014) ..........................................................19

*Parr v. Maesbury Homes, Inc.,*
   No. 09-cv-1268, 2009 WL 5171770 (M.D. Fla. Dec. 22, 2009) ..................................14

*Prescott v. Seterus, Inc.,*
   684 Fed. Appx. 947 (11th Cir. 2017) .................................................... 11, 12

*Quinteros v. MBI Associates, Inc.,*
   999 F.Supp. 2d 434 (E.D.N.Y. 2014) ........................................................15

*Randazzo v. Harris Bank Palatine, N.A.,*
   262 F.3d 663 (7th Cir. 2001) ..............................................................35

*Reed v. Litton Loan Servicing, LP,*
   No. LR-2617-1, 2004 WL 1386314 (Va. Cir. Ct. May 26, 2004) ................................20

*Ruiz v. Brink's Home Sec., Inc.,*
   777 So.2d 1062 (Fla. 2nd Dist. Ct. App. 2001) ............................................36

*Samuels v. King Motor Co. of Fort Lauderdale,*
  782 So.2d 489 (Fla. 4th Dist. Ct. App. 2001) ...................................................13

*Saucier v. Countrywide Home Loans,*
  64 A.3d 428 (D.C. 2013) ...............................................................19, 20, 23

*Schwarm v. Craighead,*
  552 F. Supp. 2d 1056 (E.D. Cal. 2008) ...............................................................9

*Shaw v. Marriott Intern., Inc.,*
  474 F.Supp.2d 141 (D.D.C. 2007) ...................................................................35

*Simmet v. Collection Consultants of California*
  No. 16-02273, 2016 WL 11002359 (C.D. Cal. July 7, 2016) ..............................10

*Smith v. Rubicon Advisors, LLC,*
  254 F. Supp 3d. 245 (D.D.C. 2017) ..................................................................33

*Trevathan v. Select Portfolio Servicing, Inc.,*
  142 FL. Supp. 3d 1283 (S.D. FL. 2015) ...................................................... 39, 40

*Turner Greenberg Assocs., Inc. v. Pathman,*
  885 So.2d 1004 (Fla. Dst. Ct. App. 2004) .................................................. 14, 15

*Tuttle v. Equifax Check,*
  190 F.3d 9 (2d Cir. 1999) ...............................................................................10

*United States v. Fairbanks Capital Corp.,*
  No. 1:03-cv-12219-DPW, 2004 WL 3322609 (D. Mass. May 12, 2004) ...............19

*Waddell v. U.S. Bank N.A.,*
  395 F.Supp.3d 676 (E.D. N.C. 2019) ...............................................................31

*Weast v. Rockport Fin., LLC,*
  115 F. Supp. 3d 1018 (E.D. Mo. 2015) ............................................................11

*Williams v. Bear Stearns & Co.,*
  725 So.2d 397 (Fla. 5th Dist. Ct. App. 1998) ....................................................32

*Williams v. First Gov't Mortg. & Inv. Corp.,*
  225 F.3d 738 (D.C. Cir. 2000) .........................................................................19

*Wittman v. CB1, Inc.,*
  No. CV15105BLGSPWCSO, 2016 WL 1411348 (D. Mont. Apr. 8, 2016) ...............11

*Wright v. Emory,*
  41 So.3d 290 (Fla. 4th Dist. Ct. App. 2010) ......................................................13

**Statutes**

15 U.S.C. § 1692(a)(6)...........................................................................................6

15 U.S.C. § 1692a(6)(F)(iii) ...................................................................................6

15 U.S.C. §1692f..................................................................................................14

15 U.S.C. § 1692f(1)..............................................................................8, 9, 10, 11

D.C. Code § 26-1101(11) ...........................................................................................25

D.C. Code § 26-1114(d) ............................................................................................25

D.C. Code § 28-3901 ........................................................................................... 15, 19

D.C. Code § 28-3901(a)(3) ..................................................................................... 2, 16

D.C. Code § 28-3901(a)(7) ................................................................................... 16, 17

D.C. Code § 28-3901(d) ............................................................................................15

D.C. Code § 28-3904 ................................................................................................24

D.C. Code § 28-3904(e) ............................................................................................21

D.C. Code § 28-3904(e-1) .........................................................................................21

D.C. Code §§ 28-3904(f) ...........................................................................................21

Fla. Stat. § 559.72 ....................................................................................................14

## Other Authorities

FTC Staff Commentary on the FDCPA, 53 Fed.Reg. 50097-02 (Dec. 13, 1988) ....................................9

Handbook 4000.1: *FHA Single-Family Housing Policy Handbook* ............................................*passim*

Making Payments to Your Mortgage Servicer, Federal Trade Commission (June 2010),
    https://www.consumer.ftc.gov/articles/0190-making-payments-your-mortgage-servicer .............20

Report of the Council of the District of Columbia Committee on Public Services & Consumer
    Affairs, on Bill 1-253,
    "The District of Columbia Consumer Protection Procedures Act," (Mar. 24, 1976) ......................18

*Restatement (Third) Of Restitution & Unjust Enrichment* (Am. Law Inst. 2011) ..............................33, 34, 37

## Rules

Fed. R. Civ. P. 8(a)(2) ................................................................................................5

Fed. R. Civ. P. 8(d)(2)-(3) .........................................................................................33

## Treatises

5 Charles Alan Wright et al, *Federal Practice and Procedure* (3d ed. 2004) ...................................35

## Regulations

24 C.F.R. § 203.552(a)(12) ................................................................................... 26, 28

## I.    INTRODUCTION

Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Mr. Cooper") purchases loan servicing rights for mortgages and makes money by collecting borrowers' regular monthly payments. Because borrowers do not choose Mr. Cooper as their debt collector, federal law, state law, and standard mortgage agreements protect borrowers from being charged excessive fees. Here, Mr. Cooper created an illegal profit center by collecting fees of between $14 and $19 ("Pay-to-Pay Fees") each time a borrower makes a mortgage payment over the phone ("Pay-to-Pay Transactions"). But the standard mortgage agreements (sometimes called "deeds of trust") governing borrowers' mortgage loans do not authorize Mr. Cooper to charge these fees. Where there is no explicit contractual basis to collect Pay-to-Pay Fees, the federal Fair Debt Collection Practices Act ("FDCPA") and an array of state consumer protection laws prohibit servicers from imposing them. Plaintiffs Jackerly McFadden, a Florida resident, and Cassandra Wilson, a District of Columbia resident, were charged and paid these illegal Pay-to-Pay Fees. They filed this lawsuit to recover funds and enjoin this practice.

Mr. Cooper asks the Court to jettison this case in its infancy, before Plaintiffs have had any opportunity to conduct discovery into its illegal and deceptive practices. But all of its arguments fail. First, Mr. Cooper argues that Ms. McFadden has not stated a claim under the FDCPA because, it claims, Ms. McFadden has not alleged that the FDCPA applies to her. But because Ms. McFadden has alleged that she was in default, she has satisfied the pleading standard under Rule 8. Further, Ms. McFadden has sufficiently alleged that no law or contract authorized Pay-to-Pay Fees, and thus, they are impermissible under the FDCPA.

Mr. Cooper next challenges Plaintiffs' state law claims. But its argument that Ms. McFadden has not alleged "actual knowledge" under the Florida Consumer Collection Practices Act ("FCCPA") fails because allegations that a servicer collected a fee it knew it had no right to collect are sufficient at the pleadings stage. *Blake v. Seterus, Inc.*, No. 16-21225-CIV-JLK, 2017 WL 543223, at *2 (S.D. Fla.

Feb. 9, 2017). Further, Ms. McFadden has alleged violations of the Florida Unfair and Deceptive Trade practices Act ("FUDTPA") both by alleging violations of the FCCPA and the FDCPA, and by alleging that Mr. Cooper deceitfully marked up its fees without disclosing that it was profiting.

Mr. Cooper also fails to show that the District of Columbia Consumer Protection Procedures Act ("DCCPPA") should not apply to it even though it is Ms. Wilson's mortgage lender, and even though, as a loan servicer that provides a number of services to borrowers in connection with their mortgages, the services Mr. Cooper offers are an inextricable component of the extension of consumer credit in connection with real estate transactions. *See* D.C. Code §§ 28-3901(a)(3), (7) (stating that the DCCPPA applies to persons who "sell, lease, or transfer," "directly or indirectly", "any and all parts of the economic output of society, at any stage or related or necessary point in the economic process, and includes consumer credit, . . . real estate transactions, and consumer services of all types"); *see also DeBerry v. First Gov't Mortg. & Investors Corp.*, 743 A.2d 699, 701-702 (D.C. 1999) (holding that a mortgage secured by real property was subject to the DCCPPA). Mr. Cooper also fails to distinguish binding D.C. Court of Appeals case law stating that the D.C. Mortgage Lender Broker Act ("MLBA") prohibits the assessment of improper fees. *See Logan v. LaSalle Bank Nat'l Ass'n*, 80 A.3d 1014 (D.C. 2013).

Mr. Cooper raises a number of arguments challenging Plaintiffs' breach of contract claims, but none of them have merit either. It incorrectly states that Plaintiffs do not identify specific provisions of their mortgage contracts prohibiting Mr. Cooper from charging Pay-to-Pay Fees, even though the Complaint does identify such provisions. It argues that the contracts allow the fees, even though they do not. And in a last-ditch effort to persuade the Court to dismiss Plaintiffs' well-pled claims, Mr. Cooper asks the Court to adopt its version of the facts—arguing that Plaintiffs formed separate contracts allowing it to charge fees—even though they did not form such separate contracts, and even though Mr. Cooper's facts contradict the allegations in the Complaint. Mr. Cooper also makes the

frivolous argument that Plaintiffs cannot plead claims for unjust enrichment in the alternative, even though D.C. and Florida law both permit them to do so.

Mr. Cooper's remaining arguments also fail. It asserts the so-called voluntary payment doctrine, even though that doctrine does not apply (and even if it did, it is not a proper topic for a motion to dismiss). And it claims that Plaintiffs were required to provide notice of every specific cause of action in the Complaint, even though there is no such requirement and Plaintiffs have pled they put Mr. Cooper on notice of the claims against it (which they did).

In short, Mr. Cooper's Motion has not given the Court any valid reason to dismiss the Complaint. For these reasons, and those that follow, its Motion must be denied.

## II.   FACTUAL BACKGROUND

Mr. Cooper is a loan servicer that operates around the country. Complaint ("Compl.") ¶ 60, Dkt. 1. Each time a mortgage borrower whose loan is serviced by Mr. Cooper makes a loan payment over the phone, Mr. Cooper charges the borrower a Pay-to-Pay Fee of up to $14 for using Mr. Cooper's interactive voice response ("IVR") system, or $19 for speaking directly with a representative. *Id.* ¶ 61. The cost for Mr. Cooper to process these Pay-to-Pay Transactions is well below the amounts charged to borrowers, and Mr. Cooper pockets the difference as profit. *Id.* ¶ 62. The trouble is that the uniform covenants of the mortgages signed by Mr. Cooper's borrowers do not allow Mr. Cooper to charge these fees, and at most, allow it only to pass along the actual cost of the Pay-to-Pay Transactions. *Id.* ¶ 64.

Plaintiffs Jackerly McFadden and Cassandra Wilson each took a note and mortgage to purchase homes—Ms. McFadden in the state of Florida, and Ms. Wilson in the District of Columbia. *Id.* ¶¶ 12-13, 66, 81, Exs. A-C. Ms. McFadden was in default on her mortgage at the time that Mr. Cooper took over the servicing rights to her loan. *Id.* ¶ 67. Ms. McFadden makes her mortgage payments over the phone, and each time she does so, Mr. Cooper charges a Pay-to-Pay Fee. *Id.* ¶ 69.

For example, Mr. Cooper charged Ms. McFadden $19 Pay-to-Pay Fees for making payments over the phone in July 2019 and August 2019. Those fees were not authorized by Ms. McFadden's mortgage agreement, which, like other mortgage agreements incorporating model language from Fannie Mae, states that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable law." *Id.* ¶ 71. Both the FDCPA and the FCCPA prohibit the imposition of fees that are not expressly authorized by the mortgage. *Id.* ¶¶ 73-74. Because the fees were not expressly authorized by the mortgage, the collection of those fees violated the prohibition on collecting fees prohibited by applicable law. *Id.* ¶¶ 71, 75. Even if the fees could somehow be considered a default-related fee under paragraph 9 of the mortgage, that paragraph limits the amount of fees that may be collected to amounts "disbursed" in connection with the Pay-to-Pay Transactions. *Id.* ¶ 76. Yet Mr. Cooper collected amounts well in excess of the amounts "disbursed" on behalf of Ms. McFadden. *Id.* ¶ 62.

Mr. Cooper was Ms. Wilson's mortgage lender and today acts as her servicer. *Id.* ¶¶ 81-82. Ms. Wilson also makes payments over the phone, and each time she does so, Mr. Cooper charges her a Pay-to-Pay Fee. *Id.* ¶ 83. But like the applicable law, the terms of Ms. Wilson's mortgage do not authorize Pay-to-Pay Fees, and in fact expressly prohibit them. Ms. Wilson, like many borrowers, has an FHA mortgage, meaning that her mortgage is issued by an FHA-approved lender and insured by the FHA. *Id.* ¶ 85. The uniform covenants of FHA mortgages state that the lender may only assess fees authorized by the Secretary of Housing and Urban Development ("HUD"). *Id.* Pay-to-Pay Fees are not among the fees authorized by HUD. *Id.* ¶ 86. Thus, by assessing such fees, Mr. Cooper violated the mortgage agreement limiting fees to those authorized by HUD. *Id.* Ms. Wilson's mortgage also states that Mr. Cooper may not assess fees prohibited under applicable law. *Id.* ¶ 89. By assessing fees not authorized by the Secretary of HUD and prohibited by the FDCPA, Mr. Cooper assessed fees prohibited under applicable law. Even if the fees could somehow be considered a default-related fee

under paragraph 9 of the mortgage, that paragraph limits the amount of fees that may be collected to amounts "disbursed" in connection with the Pay-to-Pay Transactions. Compl., Exs. A-C at ¶ 9. Yet Mr. Cooper collected amounts well in excess of the amounts it "disbursed" on behalf of Ms. McFadden. Compl. ¶ 62.

Both Ms. McFadden and Ms. Wilson gave Mr. Cooper notice of their intent to file suit regarding Pay-to-Pay Fees and a reasonable opportunity to cure these breaches, but Mr. Cooper failed to do so. *Id.* ¶¶ 79-80, 93-94.

## III.   LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain a "short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2). "Rather than requiring a determination of a plaintiff's ultimate likelihood of success on the merits, a motion to dismiss under Rule 12(b)(6) tests whether a plaintiff has properly stated a claim." *Allen v. Mnuchin*, No. 18-1214(RC), 2019 WL 2581323, at *6 (D.D.C. June 24, 2019). Taking the factual statements in the complaint as true, and construing them in the plaintiff's favor, the court must decide whether the complaint states a claim for relief that is plausible on its face. *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 133 (D.D.C. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.   ARGUMENT

### A.   Plaintiffs state a claim for violation of the federal Fair Debt Collection Practices Act.

Mr. Cooper argues that Ms. McFadden has not alleged that Mr. Cooper is a debt collector under the FDCPA, that the mortgage agreements and state law do not prohibit Pay to Pay fees, and that there is no FDCPA liability for fees voluntarily paid, repackaging a voluntary payment doctrine

argument. Each of these arguments has been rejected by the majority of courts that have addressed

them.

### 1.    Ms. McFadden has sufficiently alleged Mr. Cooper is a debt collector with respect to Ms. McFadden's loan.

Under the FDCPA, a "debt collector" is "any person . . . who regularly collects or attempts to

collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. §

1692(a)(6). Ms. McFadden has alleged sufficient facts to show Mr. Cooper meets this definition. Ms.

McFadden alleges that Mr. Cooper is one of the largest servicers of residential mortgage loans and

"routinely" violates the FDCPA and state law by its policy of collecting Pay-to-Pay fees when it

processes payment transaction by phone and internet. Compl. ¶ 1. Additionally, Ms. McFadden alleges

that because she has been charged this fee routinely whenever she pays Mr. Cooper by phone (*Id.* at

¶ 69) that Mr. Cooper's internal policy is to charge a Pay-to-Pay fee whenever a borrower pays by

phone.

The FDCPA's definition of debt collector exempts mortgage loan servicers that did not

acquire the mortgage loan while it was in default. *See* 15 U.S.C. § 1692a(6)(F)(iii). Mr. Cooper argues

that Ms. McFadden has not shown that Mr. Cooper does not fall within that exemption. But this

argument fails, because Ms. McFadden *did* allege that her loan was in default at the time that Mr.

Cooper acquired the servicing rights. Compl. ¶ 67 ("At the time Cooper acquired the servicing rights,

Ms. McFadden's mortgage was in default."). This allegation is sufficient, as all that is required at the

pleading stage is "an allegation that plaintiff's loan was in default when [the defendant] acquired it."

*Edmond v. Am. Educ. Servs.*, No. 10-0578(JDB), 2010 WL 4269129, at *5 (D.D.C. Oct. 28, 2010).[1]

Accepting Ms. McFadden's allegations as true, Mr. Cooper does not fall within the exemption.

---

[1] Courts around the country are in accord. *See, e.g.*, *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1241 (11th Cir. 2012) (servicer was "debt collector" under FDCPA where plaintiff alleged that servicer "received an assignment of the security deed and debt . . . while the Plaintiff's loan was in default"); *Buffington v. U.S. Bank, N.A.*, No. CV-14-00615-PHX-DJH, 2014 WL 7648937, at *12 (D. Ariz. Oct.

Moreover, Mr. Cooper effectively concedes that Ms. McFadden was in default when it argues, in defense of the breach of contract claim, that it was authorized to charge the Pay-to-Pay fees under the mortgage agreement for fees charged in connection with Ms. McFadden's *default*. Mot. at 12, 14. This further supports Ms. McFadden's claim that her loan was in default, even though it does not justify collection of the fees in excess of the amount "disbursed" to process the Pay-to-Pay transactions. *See infra* Part C. *See also* Compl. Ex. A ¶ 9.

Mr. Cooper relies primarily on a lone California district court's statement in *Oya v. Wells Fargo Bank, N.A.*, No. 3:18-CV-01999-H-BGS, 2019 WL 157802 (S.D. Cal. Jan. 9, 2019), to argue that a plaintiff must do more than simply allege that a loan was in default when it was acquired by a loan servicer to survive a Rule 12(b)(6) motion. There, the court required the plaintiff to provide additional details as to the date of default and the date the loan was assigned. *Id.* at *3. But these heightened requirements do not comport with the standard endorsed by this District, *see Edmond*, 2010 WL 4269129, at *5, which is consistent with the *Iqbal* and *Twombley* decisions and the holdings of myriad courts around the country. *See* fn. 1, *supra*.[2]

---

28, 2014) (plaintiffs stated a claim under FDCPA where complaint alleged defendant servicer took over servicing "well after the Note was alleged to be in default, and/or treated as though it were in default"); *Moses v. The Law Office of Harrison Ross Byck*, No. 3:08cv1939, 2009 WL 2411085, at *3 (M.D. Pa. Aug. 4, 2009) (finding plaintiff stated a claim where complaint alleged "that [defendant] . . . acquired the purported debt after it was in default").

[2] Moreover, adopting the approach endorsed by the *Oya* Court would have a chilling effect on these claims, as many FDCPA plaintiffs simply do not have in their possession, custody, or control information such as the date of acquisition of the loan by the servicer. Here, Cooper knows best the date it acquired Ms. McFadden's loan and can identify with more particularity than Ms. McFadden's recollection when it occurred. Further, Cooper maintains the loan servicing history for Ms. McFadden's loans, including what amounts and past due fees were transferred to Cooper when it took over servicing from the prior servicer. If this Court requires Ms. McFadden to amend her complaint to add additional allegations, Ms. McFadden requests that this Court first permit discovery, as Cooper blocked her online access to her account history, which prevents her from gathering the necessary information to plead accurate details of the default. Such discovery will be needed for Plaintiffs' other claims, which will proceed to litigation for the reasons set forth herein.

Ms. McFadden has alleged facts that demonstrate Mr. Cooper is a debt collector under the FDCPA, sufficient at the pleading stage to overcome Mr. Cooper's motion to dismiss.

> ### 2. Pay-to-Pay Fees are not expressly authorized by the mortgage agreement or permitted by law.

Mr. Cooper next argues that Ms. McFadden has not stated a claim under the FDCPA because supposedly nothing prohibits the assessment of these fees under the law. But it is mistaken because under the FDCPA, Mr. Cooper cannot collect any *amount* of Pay-to-Pay fees from Ms. McFadden unless the "*amount* is expressly authorized *by the agreement creating the debt*." 15 U.S.C. § 1692f(1) (emphasis added). Here, Mr. Cooper cannot point to any provision of the actual agreement creating the debt which would permit Pay-to-Pay Fees, let alone in a specific *amount* of $14.00 each, and thus cannot meet the "expressly authorized" requirement. *See McWhorter v. Ocwen Loan Serv., LLC*, No. 2:15-cv-01831, 2017 WL 3315375, at *7 (N.D. Ala. Aug. 3, 2017) ("*McWhorter I*") (rejecting same argument upon finding "plaintiffs did not expressly agree to the Speedpay fees in their contracts with [defendant], and [defendant] has presented no Alabama law that authorizes a debt collector to impose convenience fees and collect a portion of those fees."). This alone should end the inquiry into whether Ms. McFadden has sufficiently alleged that the FDCPA applies to the Pay-to-Pay Fees.

Mr. Cooper's reference to paragraph 14 of Ms. McFadden's mortgage (Compl. Ex. A. ¶¶ 9, 14) does not save it. Paragraph 14 of the mortgage agreement authorizes fees "for services performed in connection with borrower's default" and "for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument." *Id.* But Ms. McFadden's mortgage agreement caps the amount of default related fees to "amounts *disbursed* by Lender" in connection with a party's default. *Id.* ¶ 9. No paragraph of the mortgage agreement, however, allows Mr. Cooper to collect $14.00 in Pay-to-Pay Fees. Here, Ms. McFadden alleges that Mr. Cooper *disbursed* much less (typically $0.50) to a third-party vendor to process her payment, but up-charged her another $13.50 in an

amount not authorized by her mortgage agreement. These allegations state a claim under the FDCPA. *See McWhorter I,* 2017 WL 3315375 at *7.

Mr. Cooper cites only one authority, *Beer v. Nationstar Mortgage Holdings, Inc.*, No. 14-cv-13365, 2015 WL 13037309 (E.D. Mich., 2015), to support its assertion that Pay-to-Pay fees are authorized by the standard mortgage agreement. But in *Beer*, the court rejected the plaintiff's claim that the loan servicer imposed unauthorized fees because "the plaintiff fail[ed] to identify . . . the 'unnecessary fees and costs' allegedly charged to plaintiff." *Id.* Here, by contrast, Ms. McFadden specifically identifies the $14.00 Pay-to-Pay fee as unauthorized by her mortgage agreement. *See* Compl. ¶ 83.

Mr. Cooper's second argument, that Ms. McFadden fails to identify any statute, rule or regulation that expressly prohibits Pay-to-Pay fees, is equally misplaced. The FDCPA does not allow Mr. Cooper to charge any amount of fees unless such amount is "permitted by law." 15 U.S.C. § 1692f(1). It is not Ms. McFadden's burden to show that the fee is *expressly prohibited*; rather, courts have consistently held that a fee is impermissible if neither the applicable law nor the contract at issue *expressly authorizes* a fee. *See, e.g.*, *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 950 (9th Cir. 2011) (upholding district court's grant of summary judgment on a section 1691f claim in favor of the plaintiff where defendant failed to introduce evidence the contract explicitly authorized the fee); *Lindblom v. Santander Consumer USA, Inc.*, No. 1:15-cv-990-LJO-BAM, 2016 WL 2841495, at *6 (E.D. Cal. May 9, 2016) (holding that the "only inquiry" is "whether the amount collected was expressly authorized"); *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1080 (E.D. Cal. 2008) (holding that "to establish that a particular fee does not violate [the FDCPA] § 1692f(1), the debt collector must identify a state law that authorizes the fee").[3] Thus, in *McWhorter I*, the court explained that "the word 'permitted' requires that the defendants identify some state statute which 'permits,' i.e. authorizes or

---

[3] These opinions are also consistent with FTC guidance. *See* FTC Staff Commentary on the FDCPA, 53 Fed. Reg. 50097-02, 50,108 (Dec. 13, 1988).

allows, in however general a fashion, the fees or charges in question." *McWhorter I,* 2017 WL 3315375 at *7 (citing *Newman v. Checkrite California, Inc.*, 912 F. Supp. 1354, 1368 (E.D. Cal. 1995)). Likewise, as the Second Circuit explained, "[i]f state law neither affirmatively permits nor expressly prohibits service charges, a service charge can be imposed only if the customer expressly agrees to it in the contract." *Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2d Cir. 1999).

In sum, because Ms. McFadden alleged that the Pay-to-Pay fees were not expressly authorized by the agreement creating Ms. McFadden's obligation or permitted by any law, she has sufficiently pled her FDCPA claim.

### 3.    Pay-to-Pay Fees violate the FDCPA regardless of other payment options.

Finally, Mr. Cooper's argument that Pay-to-Pay fees do not violate the FDCPA because other payment options exist, Mot. at 30-31, is also meritless. First, this is a repackaging of Mr. Cooper's voluntary payment doctrine argument, which numerous courts have held does not apply to FDCPA claims. *Abby v. Paige*, No. 10-23589-CIV, 2013 WL 141145, at *9 (S.D. Fla. Jan. 11, 2013) ("[T]he voluntary payment doctrine does not have the effect of precluding FDCPA claims.").[4]

Other courts have soundly rejected this argument because "[i]t is immaterial that the fee was optional and fully disclosed if the fee is impermissible altogether." *Johnson-Morris v. Santander Consumer USA, Inc.*, 194 F. Supp. 3d 757, 765 (N.D. Ill. 2016). *See also McWhorter I*, 2017 WL 3315375, at *7 (rejecting argument that Pay-to-Pay fees cannot violate 1692f(1) because they are "optional" or "avoidable"); *Simmet v. Collection Consultants of California*, No. 16-02273, 2016 WL 11002359, at *5 (C.D. Cal. July 7, 2016) (rejecting argument that online payment fee did not violate 1692f(1) because it connected to optional payment method); *Lindblom*, 2016 WL 2841495, at *7 (finding that a Pay-to-Pay

---

[4] As explained below, the voluntary payment doctrine, aside from being "an old common law doctrine rarely cited by courts in modern, complex transactions," *Avianca, Inc. v. Corriea*, Civ. A. No. 85–3277(RCL), 1992 WL 93128, at *6 (D. D.C. 1992), is *an affirmative defense* to a suit for breach of contract. *Eagle Maintenance Services, Inc. v. District of Columbia Contract Appeals Bd.*, 893 A.2d 569, 582 (D.C. 2006).

fee collected for optional online and telephone debt payments violated § 1692f and the corresponding state debt collection statute); *Wittman v. CB1, Inc.*, No. CV15105BLGSPWCSO, 2016 WL 1411348, at *5 (D. Mont. Apr. 8, 2016) (following "the majority of courts" in finding a "transaction fee imposed for using a certain payment method" incidental to the underlying debt and therefore impermissible if not expressly authorized), *report and recommendation adopted*, No. CV 15-105-BLG-BMM, 2016 WL 3093427 (D. Mont. June 1, 2016); *Liable v. Rockport Fin., LLC,* No. 4:15–CV–00306–ERW, 2015 WL 4771664, at *3 (E.D. Mo. Aug. 12, 2015) (declining to dismiss 1692(f) claims based on argument that fee was optional). As one district court explained: "offering a payment option that does not violate the statute does not save offering a payment option that would violate the statute, as the latter is still an attempt to collect a fee which is prohibited by the FDCPA." *Weast v. Rockport Fin., LLC*, 115 F. Supp. 3d 1018, 1023 (E.D. Mo. 2015). Like the *Lindblom*, *Weast* and *McWhorter* courts, as well as the other courts above, this Court should reject Mr. Cooper's solitary view and adopt the opinion of the majority of courts nationwide recognizing that other optional non-violative payment options do not save Mr. Cooper from its FDCPA violation.

### B.    Plaintiffs have plausibly alleged violations of District of Columbia and Florida consumer protection law.

#### 1.    Ms. McFadden has plausibly alleged violations of the FCCPA.

Mr. Cooper's lone argument for dismissal of Ms. McFadden's FCCPA claim is that she failed to allege adequate facts that Mr. Cooper acted with actual knowledge in collecting Pay-to-Pay fees from her. But this argument fails because the question of actual knowledge is fact intensive and usually not susceptible to a determination under summary judgment, let alone a motion to dismiss. *See Prescott v. Seterus, Inc.,* 684 Fed. Appx. 947 (11th Cir. 2017) (reversing trial court's grant of summary judgment for loan servicer on actual knowledge and leaving question for trier of fact).

Under the FCCPA, an allegation that a loan servicer collected fees that are not authorized under the mortgage is sufficient for purposes of alleging actual knowledge. *Prescott,* 684 Fed. Appx. at

949. Such allegations are "sufficient at the dismissal stage . . . where, prior to discovery, Plaintiff could only allege circumstantial facts to demonstrate Defendant's actual knowledge of an FCCPA violation." *Blake*, 2017 WL 543223, at *2.[5]

Here, Ms. McFadden alleges many facts to support a finding that Mr. Cooper collected Pay-to-Pay fees with actual knowledge. Ms. McFadden alleges that Mr. Cooper services loans subject to the terms of the uniform mortgage agreements, and that Pay-to-Pay fees are found nowhere therein. Compl. ¶ 1. Under the Eleventh Circuit's holding in *Prescott*, that allegation and facts supporting the same alone are sufficient to overcome *summary judgment*, let alone a motion to dismiss. *Prescott,* 684 Fed. Appx. at 949 ("The Florida Act only requires proof that Seterus had actual knowledge that the mortgage did not authorize charging Prescott for estimated legal fees."). Second, Ms. McFadden alleges that Mr. Cooper contracts with Western Union or a similar third party to process Pay-to-Pay transactions, paying its vendor about $0.50 or less per transaction, but charges its borrowers much more than that, pocketing the difference as profit. *Id.* at ¶ 6. This is also circumstantial evidence tending to prove knowledge. Third, Ms. McFadden alleges that Mr. Cooper repeatedly collected Pay-to-Pay fees from thousands of borrowers both in Florida and nationwide. *Id.* at ¶ 100. Ms. McFadden's complaint contains ample allegations and supporting facts that Mr. Cooper acted with actual knowledge when collecting Pay-to-Pay fees and the motion to dismiss should be denied.

---

[5] And at a later stage in the case, circumstantial evidence, like following internal procedures to collect millions of dollars of Pay-to-Pay fees, can be used to prove a defendant acted with knowledge. *See Johns-Manville Sales Corp. v. Janssens*, 463 So. 2d 242, 256 (Fla. 1st Dist. App. 1984) ("But even if we assume that the evidence may be characterized as subsequent remedial measures, evidence of such measures is admissible to impeach a witness's testimony or to disprove the defendant's claimed lack of knowledge.") In *Montesi et al v. Seterus, Inc.,* a Florida circuit court explained that plaintiffs might prove a loan servicer acted with knowledge when collecting Pay-to-Pay fees by showing that the defendant created a profit center through its practices, repeatedly employed those practices, and instituted policies and practices to collect the fees while electing not to instruct its call center or customer service employees of the actual cost of those transactions. *Montesi et. al. v. Seterus, Inc.*, Order Granting Class Certification, Case No. 50-2015-CA-101910 (Fla. 15th Cir. Ct. Mar. 27, 2019) (attached as **Exhibit A**).

2.    **Ms. McFadden has plausibly alleged violations of FDUTPA.**

a.    **Requirements under FDUTPA**

Mr. Cooper's motion should also be denied with respect to Ms. McFadden's FDUTPA claim. A claim for damages under FDUTPA has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach County, Inc.*, 169 So.3d 164, 167 (Fla. 4th Dist. Ct. App. 2015). Mr. Cooper's arguments that its actions did not constitute deceptive acts or unfair practices are premature at the motion to dismiss stage where the pleadings control. *Wright v. Emory*, 41 So.3d 290, 292–93 (Fla. 4th Dist. Ct. App. 2010) ("Whether [Defendants'] representations constitute 'deceptive and unfair' conduct is an issue of fact to be resolved by the judge at the conclusion of the trial.").

With regard to the first prong, the plaintiff must prove *either* a deceptive act or unfair practice. *Id.* The concept of "unfair" or "deceptive" conduct is extremely broad. *See, e.g., Millennium Communic'ns & Fulfillment, Inc. v. Office of the Attorney Gen.*, 761 So.2d 1256, 1263 (Fla. 3d Dist. Ct. App. 2000). An unfair practice is one that "offends established public policy" and one that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So.2d 489, 499 (Fla. 4th Dist. Ct. App. 2001). Thus, an unfair practice is actionable under FDUTPA even if the offending party is very explicit about how it will take unfair advantage of a customer. A deceptive practice is one that is "likely to mislead" consumers. *Davis v. Powertel, Inc.*, 776 So.2d 971, 974 (Fla. 1st Dist. Ct. App. 2000). Therefore, even if a court finds a practice not to be unfair, the court still may find it to be deceptive if the practice is likely to mislead consumers.

b.    **Mr. Cooper's collection of Pay-to-Pay fees is an unfair trade practice, as confirmed by the FDCPA and FCCPA.**

Mr. Cooper's conduct violates FDUTPA for two independent reasons. First, Mr. Cooper's collection of Pay-to-Pay Fees *per se* violates FDUTPA because it is a violation of the FCCPA and FDCPA. *See supra* Parts IV.B.1-2. A *per se* violation of FDUTPA can be established if the "law, statute,

rule or ordinance . . . proscribes unconscionable, deceptive, or unfair acts or practices" and therefore operates as an implied FDUTPA predicate. *Parr v. Maesbury Homes, Inc.,* No. 09-cv-1268, 2009 WL 5171770, at *7 (M.D. Fla. Dec. 22, 2009). An FCCPA violation is a *per se* FDUTPA violation because the FCCPA prohibits any person from engaging in certain abusive practices in the collection of consumer debts, and serves as a predicate statute for a FDUTPA violation. *See* generally Fla. Stat. § 559.72. Likewise, the FDCPA's section 1692f prohibits specific debt collection acts that are expressly defined as unfair and unconscionable. 15 U.S.C. §1692f. When the statute at issue proscribes deceptive or unfair acts or practices, like the FCCPA or FDUTPA, the first element of a FDUTPA claim is satisfied. *See Parr*, 2009 WL 5171770, at *8. Mr. Cooper's violations of the FCCPA and FDCPA are sufficient to meet the first prong of the FDUTPA claim.

Additionally, Mr. Cooper's collection of Pay-to-Pay fees is an unfair practice that offends public policy. Plaintiffs and class members generally did not *choose* Mr. Cooper as their loan servicers. Moreover, Mr. Cooper leads consumers to believe that its fees are authorized fees for services rendered when, in fact, they are unauthorized and vastly inflated. This conduct violates public policy established by the FDCPA and FCCPA. It is also misleading, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers. *See, e.g., Coleman v. CubeSmart*, 328 F. Supp. 3d 1349, 1364-65 (S.D. Fla. 2018) (finding that plaintiff's allegation that defendant's failure to disclose that it retained portion of a premium in excess of expenses stated claim under FDUTPA); *Latman v. Costa Cruise Lines, N.V.*, 758 So.2d 699, 703 (Fla. 3d Dist Ct. App. 2000). ("We therefore conclude that where the cruise line bills the passenger for port charges but keeps part of the money for itself, that is a deceptive practice under FDUTPA."); *Turner Greenberg Assocs., Inc. v. Pathman*, 885 So.2d 1004, 1008 (Fla. Dst. Ct. App. 2004). *Accord McKell v. Washington Mut., Inc.,* 49 Cal. Rptr. 3d 227, 241 (Cal. Ct. App. 2006) (holding that allegation the defendant led "borrowers to believe it is charging them for the cost of certain services . . . when in reality it is charging them substantially in excess" satisfied the

"unfair" prong of California's Unfair Competition Law). In *Pathman*, for example, the plaintiff alleged that the defendant failed to disclose that a "freight/insurance charge included an element of profit." *Pathman*, 885 So.2d at 1008. Affirming the trial court's order granting class certification, the Florida appellate court explained that "an appropriate amount of damages" was therefore the difference between the costs spent and the amount charged (the profit). Ms. McFadden's claims are no different.

Mr. Cooper nevertheless contends that its practice of up-charging class members $13.50 per transaction is not deceptive or unfair because it discloses the fees themselves to consumers. Def. Mem. at 26-27. This assertion misses the point, which is that failing to disclose the fact that Mr. Cooper was not legally entitled to the Pay-to-Pay fees, let alone in the grossed-up amount, constitutes deception. *See Quinteros v. MBI Associates, Inc.,* 999 F.Supp. 2d 434, 439 (E.D.N.Y. 2014) (rejecting argument that processing fee statement is not a false or misleading statement, finding the "'least sophisticated consumer' would likely be deceived by the Processing Fee Statement into believing that Defendant was legally entitled to collect the five-dollar fee. Indeed, even a shrewd consumer would be unlikely to question the legality of a seemingly reasonable five-dollar processing fee, much less turn to the statute books"); *see also Muhammad v. PNC Bank, N.A.,* No. 2:15-cv-16190, 2016 WL 815289, at n.2 (S.D. W. Va. Feb. 29, 2016) (recognizing that claim for false representation is "wholly dependent" upon dismissal of plaintiff's claim that speed pay fees were impermissible). In every transaction with a consumer, there is an unstated representation that the business is acting legally and not in knowing violation of the law. Thus, Mr. Cooper's scheme constituted an unfair trade practice under FDUTPA.

### 3. Ms. Wilson has plausibly alleged violations of the DCCPPA.

The D.C. Consumer Protection Procedures Act protects District of Columbia residents from unfair or deceptive trade practices of any kind. *See* D.C. Code §§ 28-3901 *et seq.* The DCCPPA must be "construed and applied liberally to promote its purpose." D.C. Code § 28-3901(d). Mr. Cooper argues that its Pay-to-Pay Fees do not violate the DCCPPA because, according to Mr. Cooper, (1) it

is exempt from the consumer protections afforded under the DCCPPA because it is supposedly not a "merchant," and (2) its fees were not misleading. Both arguments fail.

> a.    **The DCCPPA applies to Mr. Cooper in its role as mortgage servicer and lender.**

Mr. Cooper argues that mortgage servicers are not merchants and thus it is exempt from the DCCPPA. But this is not the law. Mr. Cooper relies on two non-binding federal court cases, *Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268 (D.D.C. 2011) and *Mushala v. US Bank, Nat'l Ass'n*, No. CV 18-1680 (JDB), 2019 WL 1429523 (D.D.C. Mar. 29, 2019), in support of its argument that it is exempt from the DCCPPA. But these cases are distinguishable, and do not mandate that mortgage services like Mr. Cooper not be covered by the DCCPPA.

The DCCPPA applies to "merchants," defined as persons who "sell, lease . . . or transfer, either directly or indirectly, consumer goods or services," or who "supply the goods or services which are or would be the subject matter of a trade practice." D.C. Code § 28-3901(a)(3). "Goods and services," in turn, are defined to mean "any and all parts of the economic output of society, at any stage or related or necessary point in the economic process, and includes ***consumer credit***, . . . ***real estate transactions***, and consumer services of all types." *See* D.C. Code § 28-3901(a)(7) (emphasis added). This broad definition encompasses Mr. Cooper's business and conduct alleged in this case.

***First***, with respect to Ms. Wilson, Mr. Cooper cannot dispute that it is a merchant because it was not *just* her mortgage servicer. It was also her mortgage *lender, see* Compl. ¶ 82; Exs. B, C. Thus, it is a "merchant" within the meaning of the DCCPPA, because Mr. Cooper's services include "consumer credit" and "real estate transactions." *See id.* That fact alone distinguishes this case from the two cases on which Mr. Cooper relies, *Busby* and *Mushala*. In those cases, both defendants were servicers like Mr. Cooper, but they were not lenders; in fact, they had not themselves extended any credit to the plaintiff. Here, in contrast, Mr. Cooper did extend "consumer credit" in connection with Ms. Wilson's "real estate transaction." And because the plain text of the statute specifies that "real

estate transactions" are covered, *id.,* courts agree that the DCCPPA applies to mortgage lenders. *See, e.g., DeBerry v. First Gov't Mortg. & Investors Corp.*, 743 A.2d 699, 701-702 (D.C. 1999) (holding that a mortgage secured by real property was subject to the DCCPPA). Ms. Wilson's claims arose in connection with a loan that Mr. Cooper itself offered. Thus, the fact that Mr. Cooper was Ms. Wilson's mortgage lender places their relationship squarely within the realm of transactions and merchant/consumer relationships that the DCCPPA governs.

**Second,** contrary to Mr. Cooper's arguments, the DCCPPA does not *only* apply to Mr. Cooper's conduct as to borrowers like Ms. Wilson, for whom Mr. Cooper actually extended consumer credit in connection with a real estate transaction. Rather, the DCCPPA applies more broadly to Mr. Cooper's conduct as a mortgage servicer, including for borrowers whose loans originated elsewhere. Although the D.C. Court of Appeals has not decided this issue, the plain language of the statute and the D.C. Court of Appeals' rulings on similar cases dealing with the mortgage industry support the conclusion that mortgage servicers who are not the original lenders are subject to the DCCPPA.

With respect to the statute, the text is clear that it is intended to apply broadly. The definition of "goods and services" includes anything that is "part[] of the economic output of society," *see* D.C. Code § 28-3901(a)(7), and it strains credulity to assert that mortgage loan servicing is not "economic output." Moreover, the DCCPPA's broad text applies to mortgage transactions. *See DeBerry*, 743 A.2d at 701-702 (holding that the DCCPPA applies to real estate mortgage finance transactions).[6] Thus, because mortgage servicers facilitate the repayment of "consumer credit" (the mortgage) entered into as part of a "real estate transaction" (the sale of property), the mortgage servicing is "related" to the "economic process" of the extension of the mortgage loan. Indeed, in addition to collecting mortgage

---

[6] The *DeBerry* court explained that prior to the enactment of the DCCPPA, the District's consumer protection laws were more narrowly focused on the purchase of goods and services only, finding that it was the intent of the legislature when enacting the DCCPPA to enact a law that encompassed a much broader array of economic activity. *Id.* at 702.

payments, and unlike servicers of other types of loans (like credit card debt, student debt, and medical debt), Mr. Cooper and other mortgage loan servicers offer various other services to borrowers in connection with their property, making this type of business's contribution to economic output indisputable. *See* Compl. ¶ 4 (noting that the servicer performs work for the borrower); Ex. B ¶ 19 (noting that the loan servicer "performs . . . mortgage loan servicing obligations under the Note). These services may include paying taxes and insurance from escrow accounts, modifying mortgages, and property preservation. *See id.* ¶ 3 (discussing payment from escrow), ¶ 5 (discussing the purchase of property insurance by the lender), ¶ 7 (noting that the lender may "disburse proceeds for the repairs and restoration" of the property). Because the DCCPPA applies to *any* trade practice, including "any action normally considered only incidental to the supply of goods and services to consumers," the trade practices of servicers fall within its scope. *See DeBerry*, 743 A.2d at 702 (quoting Report of the Council of the District of Columbia Committee on Public Services & Consumer Affairs, on Bill 1-253, "The District of Columbia Consumer Protection Procedures Act," at 14 (Mar. 24, 1976)).

While the D.C. Court of Appeals has not addressed the question of whether the DCCPPA applies to loan servicers, the only logical inference from its interpretations of the statute is that loan servicers like Mr. Cooper should be subject to the DCCPPA. In *Logan v. LaSalle Bank Nat'l Ass'n*, 80 A.3d 1014 (D.C. 2013), the D.C. Court of Appeals reiterated prior holdings that the statute should be read broadly to apply it to mortgage industry participants as well as billing practices generally:

> We have recognized that **the CPPA applies to real estate mortgage transactions**, *see Gomez v. Independence Mgmt. of Delaware, Inc.*, 967 A.2d 1276, 1287 n.12 (D.C. 2009) (discussing amendment of statute to include real estate transactions), and to mortgage refinancing, *see DeBerry v. First Gov't Mortg. & Investors Corp.*, 743 A.2d 699 (D.C. 1999). **The CPPA also applies to deceptive billing practices** related to a contract for consumer goods and services. *See District Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 723 (D.C. 2003) (noting enumerated violations of CPPA are not exclusive of trade practices that violate other laws).

*Logan*, 80 A.3d at 1027 (emphasis added). The court then remanded the case for further briefing on whether the loan servicer defendant's activities in that case fell within the scope. *See id.* The only reason

18

the court did not reach a formal conclusion as to the applicability of the statute to loan servicers was because of a briefing error before the trial court that rendered the record incomplete. *See id.* n. 14. On remand, the Superior Court permitted the DCCPPA claims against the servicer defendant to proceed. *See* **Exhibit B** (order denying motion to dismiss).

Consistent with the ruling in *Logan*, courts in the District of Columbia have found that the DCCPPA applies to every aspect of the mortgage industry. Sellers of property are subject to the DCCPPA. *See, e.g.*, *Levick v. Kiser*, 206 F. Supp. 3d 337, 346 (D.D.C. 2016); *Parr v. Ebrahimian*, 70 F. Supp. 3d 123, 135 (D.D.C. 2014). It applies to credit transactions secured by property. *See DeBerry*, 743 A.2d at 701-702; *see also Williams v. First Gov't Mortg. & Inv. Corp.*, 225 F.3d 738, 744 (D.C. Cir. 2000) (upholding jury verdict that mortgage lender violated DCCPPA by issuing mortgage it knew the plaintiff could never repay); *Hughes v. Abell*, 867 F. Supp. 2d 76, 87-88 (D.D.C. 2012) (concluding fact issues precluded summary judgment on DCCPPA claim against mortgage lender). And it applies to excessive mortgage payments. *See, e.g.*, *Johnson v. Long Beach Mortg. Loan Trust 2001-4*, 451 F. Supp. 2d 16, 38 (D.D.C. 2006) (permitting DCCPPA claim to proceed where plaintiff had to pay over half her monthly income to mortgage costs). Where the DCCPPA touches every aspect of the sale of property through a mortgage, exempting mortgage servicers from its reach would leave a significant gap that it is unlikely the D.C. Council intended.

Further, construing the DCCPPA to encompass mortgage servicers would be consistent with both the Federal Trade Commission ("FTC") guidance, *see* D.C. Code § 28-3901 (stating that "due consideration and weight shall be given to" opinions of the FTC), as well as consumer protection laws of neighboring states, *see Saucier v. Countrywide Home Loans*, 64 A.3d 428, 442 (D.C. 2013) ("We also look to Maryland law as instructive in our jurisdiction."). The FTC has brought enforcement actions against servicers for unfair and deceptive practices. *See, e.g.*, *United States v. Fairbanks Capital Corp.*, No. 1:03-cv-12219-DPW, 2004 WL 3322609 (D. Mass. May 12, 2004). And it provides guidance on its

website relating to servicers.[7] Likewise, the consumer protection laws of neighboring states apply to mortgage servicers like Mr. Cooper. *See, e.g., Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 WL 3425665, at *9 (D. Md. Aug. 4, 2011) (applying Maryland Consumer Protection Act claims to mortgage servicer); *Reed v. Litton Loan Servicing, LP*, No. LR-2617-1, 2004 WL 1386314 (Va. Cir. Ct. May 26, 2004).[8] The Court may consider the application of these similar, neighboring statutes as persuasive authority. *See Saucier*, 64 A.3d at 442.

Mr. Cooper's cases do not compel the conclusion that the "borrower-loan servicer relationship" is not subject to the DCCPPA. In *Busby*, the *pro se* plaintiff filed a complaint alleging that her loan servicer "lack[ed] the authority to commence foreclosure proceedings against a borrower like the plaintiff" and that the servicer misrepresented facts in connection with the plaintiff's loan obligations. *See* 772 F. Supp. 2d at 273, 279. The court concluded that the plaintiff had not alleged the servicer provided "services" in connection with the loan, and thus the DCCPPA did not apply. *See id.* at 279. Here, in contrast, Ms. Wilson has alleged that Mr. Cooper provides services in connection with servicing her mortgage in addition to collecting monthly payments.[9] *See* Compl. ¶ 4; Ex. B ¶¶ 3, 5, 7, 19. *Mushala* is distinguishable because there, the plaintiff's claims were precluded by *res judicata*. 2019 WL 1429523, at *9. Its brief discussion of the applicability of the DCCPPA is merely *dicta* and cannot be squared with the plain language of the DCCPPA itself and the broad body of caselaw applying it in the mortgage context.

---

[7] *E.g.*, Making Payments to Your Mortgage Servicer, Federal Trade Commission (June 2010), https://www.consumer.ftc.gov/articles/0190-making-payments-your-mortgage-servicer.

[8] The cases finding that the Virginia Consumer Protection Act do not apply to servicer defendants generally rely on a provision of the VCPA exempting banks. *See, e.g., Buford v. Ocwen Loan Servicing, LLC*, No. 2:18cv154, 2018 WL 6790656, at *11 (E.D. Va. Nov. 2, 2018). The DCCPPA does not have such a provision, further supporting the conclusion that it should apply to servicers.

[9] Plaintiffs also respectfully submit that because *Busby* involved a *pro se* plaintiff and did not benefit from thorough briefing by counsel, its persuasiveness is limited.

**b.      The DCCPPA applies to Mr. Cooper's Pay-to-Pay Fees.**

Mr. Cooper also incorrectly argues that the Complaint does not plausibly allege its fees are misleading. For claims of misrepresentation under the CPPA, "the statute merely provides that it is a violation of the CPPA that if the merchant 'misrepresented' or 'failed to state' a material fact." *Frankeny v. District Hospital Partners, LP*, --- A.3d ---, 2020 WL 950107, at *2 (D.C. 2020); *see also* D.C. Code §§ 28-3904(e), (e-1), (f). "[I]ntent or knowledge is not required[.]" *Frankeny*, 2020 WL 950107, at *3. A fact is "material" if a reasonable person would attach importance to its existence or non-existence in determining their choice of action in the transaction; or if the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his or her choice of action, even if a reasonable person would not so regard it. *See Beck v. Test Masters Educ. Servs., Inc.*, 994 F. Supp. 2d 90, 94 (D.D.C. 2013). A representation may be affirmative "*or implied.*" *Id.* at 96 (emphasis in original). Materiality is an issue for the jury. *See id.* at 94.

Here, the Complaint alleges that the Pay-to-Pay Fees are misleading in two ways. First, Plaintiffs allege that Mr. Cooper's Pay-to-Pay Fees are misleading because in assessing Pay-to-Pay Fees, Mr. Cooper represented to borrowers that it had the right to collect them, when in fact it had no such right. *See* Compl. ¶ 170 (alleging that Mr. Cooper's unlawful trade practices include misrepresenting its right to collect Pay-to-pay Fees and failing to advise borrowers that it did not have the right to collect them). In particular, Ms. Wilson's mortgage agreement (and the other standard mortgage agreements signed by Mr. Cooper's borrowers) do not authorize the assessment of Pay-to-Pay Fees. Moreover, Ms. Wilson's mortgage (and those of similar borrowers) prohibit it, because Mr. Cooper is an FHA-approved mortgagee subject to applicable rules and regulations of the U.S. Department of Housing and Urban Development ("HUD"). Compl. ¶¶ 48-49. HUD's servicing requirements restrict the fees and charges that Mr. Cooper may collect from a borrower whose mortgage is insured by the Federal Housing Administration (FHA), like Ms. Wilson. *Id.* ¶ 50. Thus,

Ms. Wilson's mortgage, which is insured by the FHA, limits the fees that Mr. Cooper may charge to those that are "authorized by the Secretary [of HUD]." *Id.* ¶ 88. The HUD Handbook, in turn, establishes what fees and charges are authorized by the Secretary and may be assessed. *Id.* ¶¶ 51, 86. But the HUD Handbook does not list Pay-to-Pay Fees. *Id.* ¶ 87. Nor has Mr. Cooper sought authorization to charge them, as required for fees not included in the Handbook. *Id.* ¶¶ 86-87.

The Pay-to-Pay Fees are also prohibited because they violate the FDCPA, yet Mr. Cooper collected them even though the mortgage states that fees prohibited under federal law may not be assessed. *Id.* ¶ 90. And even if the fees could be construed as authorized under Paragraph 9 of the mortgage agreement, the mortgage states that only "amounts *disbursed*" by the lender may become the additional debt of the borrower. *See* Compl. Ex. B ¶ 9. But the Complaint alleges that Mr. Cooper collected more than it "disbursed" to process the Pay-to-Pay Transactions. Compl. ¶ 6. In short, even though Ms. Wilson's mortgage did not give Mr. Cooper the right to charge Pay-to-Pay Fees, and in fact expressly prohibited it from doing so, Mr. Cooper charged her and other borrowers the fees. Mr. Cooper misrepresented its right to collect Pay-to-Pay Fees and omitted the fact that it had no right to do so.

The above facts are sufficient to state a claim under the DCCPPA, as misrepresenting and omitting one's actual rights and responsibilities constitutes a violation. For example, in *Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055 (D.C. 2008), the plaintiffs alleged that the defendant condominium sellers had failed to disclose that they were obligated to establish a non-profit organization that would benefit condominium residents, and instead implied that the residents were required to form and fund a community organization. *See id.* at 1071. At summary judgment, the D.C. Court of Appeals concluded that a triable issue of fact existed as to whether the defendants' failure to disclose its actual obligations and duties violated the DCCPPA. *See id.* at 1075. Likewise here, Ms. Wilson alleges that Mr. Cooper failed to disclose that it was obligated not to charge fees other than

those "authorized by the Secretary," and instead simply collected such unauthorized fees—implying that it had the right to charge them when it did not have such a right. That Mr. Cooper had no right to collect Pay-to-Pay Fees is a material fact because a reasonable consumer would not pay such fees if he or she knew the truth. In any event, whether these representations and omissions are material is a question of fact for the jury. *See Beck*, 994 F. Supp. 2d at 94.

In addition, the facts further establish a violation of the DCCPPA because charging a consumer in excess of what is permitted under a contract can be an unfair or deceptive trade practice within the meaning of the statute. *See Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 130 F. Supp. 3d 236, 265-66 (D.D.C. 2015) (permitting DCCPPA claim to proceed where plaintiff alleged defendant charged premiums in excess of her contractual obligation). Similarly, Ms. Wilson has alleged that Mr. Cooper charged her fees that were not permitted under her mortgage agreement, and that it charged more than allowed. Thus, she has stated a claim under the DCCPPA.

Plaintiffs' second theory of misrepresentation is that Mr. Cooper's Pay-to-Pay Fees are misleading because Mr. Cooper never disclosed to borrowers that it was collecting more than it cost to process the Pay-to-Pay Transactions and that it had created a profit center for itself. *See* Compl. ¶¶ 6, 62. While Mr. Cooper argues that this DCCPPA theory fails because Mr. Cooper was not under a duty to disclose the costs to process Pay-to-Pay Transactions, Mot. at 34-35, under the DCCPPA, there is no requirement that the plaintiff "plead and prove a duty to disclose information." *Saucier*, 64 A.3d at 444. Rather, the plaintiff need only show that the omitted facts were "material." *Id.* That requirement is satisfied here, where Ms. Wilson has alleged that the fact that the Fees were in excess of what was permitted under the mortgage was not disclosed, and the fact that the Pay-to-Pay Fees were in excesses of the cost to process Pay-to-Pay Transactions was not disclosed. Where Ms. Wilson has alleged these material facts, the pleading standard is satisfied and the issue of materiality must be decided by a jury.

Importantly, Mr. Cooper's suggestion that Ms. Wilson was required to "allege . . . that Mr. Mr. Cooper misled her" misstates the requirements of the DCCPPA. The DCCPPA *does not require* that any consumer was actually misled. Instead, the DCCPPA makes it illegal to "engage in an unfair or deceptive trade practice, *whether or not any consumer is in fact misled, deceived, or damaged thereby.*" D.C. Code § 28-3904 (emphasis added). It is therefore sufficient that Ms. Wilson alleged that Mr. Cooper engaged in an unfair or deceptive trade practice by collecting Pay-to-Pay Fees it had no right to collect, misrepresenting its right to collect them, and omitting the true nature of the fees as a profit center. There is no requirement that Ms. Wilson allege she was personally misled by these practices. Instead, she need only plead—as she has here—that the defendant engaged in a misleading practice. Since this requirement is satisfied, the motion to dismiss her DCCPPA claims must be denied.

### 4.    Ms. Wilson has plausibly alleged violations of the MLBA.

Mr. Cooper argues that Ms. Wilson's MLBA claims should be dismissed because they "are premised on the same alleged conduct that forms the basis of" Ms. McFadden's FDCPA claims. In support of this argument, Mr. Cooper cites *Mushala*, which Mr. Cooper claims states that a plaintiff cannot bring MLBA claims and FDCPA claims based on the same conduct. **That is not what *Mushala* says.** In *Mushala*, the plaintiff's FDCPA claims were barred by *res judicata* because they "ar[o]se from facts at the core of" an earlier foreclosure action between the same parties. *See Mushala*, 2019 WL 1429523, at **7-8 ("It therefore is clear that Mushala's FDCPA claims predicated on the illegitimacy of the Note or US Bank's lack of standing arise from facts at the core of the first action, and that she had 'ample opportunity' to press such claims there."). Because the *Mushala* plaintiff's MLBA claims were based on the same facts as the FDCPA claims, they were also barred by *res judicata*:

> Even assuming Mushala has a cognizable MLBA claim, res judicata bars it. Mushala identifies the same factual predicates for the MLBA claim as she alleged under the heading of the FDCPA; namely, that US Bank had no rights in the note or standing, that she paid an inflated amount, and that defendants assessed unfair fees on the loan. It is irrelevant that the claims are brought under the heading of the MLBA, rather than

the FDCPA or another cause of action. . . . [F]or the reasons earlier described, the Court finds any cognizable MLBA claims barred.

*Id.* at *9 (citations omitted). The Court should ignore Mr. Cooper's misrepresentation of *Mushala*.

In fact, Ms. Wilson's claims fit squarely within the scope of the MLBA. The MLBA makes it illegal for a lender or servicer (Mr. Cooper is both) to "engage in any unfair or deceptive practice towards any person." D.C. Code § 26-1114(d). *See also* D.C. Code § 26-1101(11) (defining "mortgage lender" to include anyone who "engages in the business of servicing mortgage loans for others"). The D.C. Court of Appeals has stated that "repeated assessment of improper fees" is a basis for a claim under the MLBA. *See Logan*, 80 A.3d at 1026 ("These allegations regarding repeated assessment of improper fees . . . make out a claim under the MLBA."). Like the plaintiff in *Logan*, Ms. Wilson has alleged that Mr. Cooper repeatedly assessed her, and similar borrowers, improper fees. This is enough to state a claim under the MLBA.

Unable to distinguish *Logan*, Mr. Cooper instead ignores it and makes the incorrect argument that the Complaint does not allege its fees were misleading. Because the Complaint *does* allege that its conduct in assessing fees it had no right to assess and omitting that it was collecting far more than the amount it disbursed to process Pay-to-Pay Transactions, this argument fails. *See supra* Part IV.B.3.b. *See also* Compl. ¶¶ 92, 164-65. Because Mr. Cooper misrepresented and omitted these material facts when it collected improper fees from Ms. Wilson and the putative class members, its conduct was deceptive and misleading and violated the MLBA.

### C. Plaintiffs state a claim for breach of contract.

Mr. Cooper seeks dismissal of Plaintiffs' breach of contract claims on the purported ground that no provision in Plaintiffs' deeds of trust prohibit Pay-to-Pay Fees. This argument fails because (1) as to Ms. Wilson, the subject deeds of trust clearly prohibit the imposition of such fees in that they are not authorized by the Secretary of HUD; and (2) as to both Plaintiffs, Mr. Cooper breached the terms of the mortgage agreements by violating the "Applicable Law" in the form of statutes such as

the FDCPA and FCCPA. Alternatively, Mr. Cooper seeks to sidestep the prohibition against such fees by arguing that each of the Pay-to-Pay Fees at issue resulted from "separate oral contract[s]." Mot. at 12. The Court should reject this argument out of hand because there are no facts alleged in Plaintiffs' complaint or otherwise contained in documents properly considered in the context of the instant Rule 12(b)(6) motion that support such argument.

Plaintiffs' claims for breach of contract are principally predicated upon two provisions contained in their deeds of trust related to the charging of fees and charges. As set forth below, Plaintiffs' allegations as to both of these provisions state valid claims for breach of contract.

### 1. Mr. Cooper breached the provision of Ms. Wilson's FHA uniform deed of trust that prohibits the charging of fees not authorized by the Secretary of HUD.

The Complaint alleges that, as to Ms. Wilson, Mr. Cooper breached two provisions contained in Paragraph 13 of her FHA uniform deed of trust. The first provision states that the lender "may collect fees and charges authorized by the Secretary [of HUD]." Compl., Exs. B & C at p. 9, ¶ 13. This provision limits Mr. Cooper to charging Ms. Wilson only those fees and costs that have been expressly authorized by the HUD Secretary. A handbook published by HUD[10] (the "HUD Handbook"), establishes what fees and charges are authorized, and the only permissible servicing fees are listed in Appendix 3.0 to that handbook. Compl. ¶¶ 56-57. Pay-to-Pay Fees do not appear in Appendix 3.0. *Id,* ¶ 58. More importantly, HUD's approved fee lists are exclusive, leaving no discretion with the lender to charge a fee not listed or authorized. *See* 24 C.F.R. § 203.552(a)(12) (limiting lenders to collecting "[s]uch other reasonable and customary charges as may be authorized by the Secretary," (emphasis added)); HUD Handbook, § III.A.1.f.ii.(A) at p. 617 ("The Mortgagee may collect certain

---

[10] This handbook is titled, "Handbook 4000.1: *FHA Single-Family Housing Policy Handbook*," and is maintained online at https://www.hud.gov/sites/dfiles/OCHCO/documents/4000.1hsgh.pdf (last accessed by counsel on April 10, 2020).

reasonable and customary fees and charges from the Borrower . . . as authorized by HUD below.")

(emphasis added). The only way a lender can collect any fee "not specifically mentioned in" the HUD

regulations or HUD Handbook is to affirmatively seek approval from the Secretary. Compl. ¶ 86

(citing HUD Handbook § III.A.1.f.ii.(B) at p. 618).

Because the HUD Handbook does not authorize Pay-to-Pay Fees, and because Mr. Cooper

neither requested nor received authorization from HUD to impose them, *id.* at ¶ 87, such fees are not

"authorized by the Secretary" as required by Paragraph 13 of Ms. Wilson's deeds of trust. Mr. Cooper

has not pointed to any authority from HUD authorizing the fees imposed upon Ms. Wilson in this

case. Consequently, Mr. Cooper's imposition of Pay-to-Pay Fees violated Ms. Wilson's mortgage

contract.

Mr. Cooper argues that Ms. Wilson has no standing to rely upon FHA/HUD guidelines

because they "do not convey a private right of action." Mot. at 9. While Mr. Cooper is correct that the

violation of such guidelines is not by itself actionable, in this case Plaintiffs are asserting that the

FHA/HUD guidelines are incorporated by reference into the subject contracts. Numerous courts

have concluded that breach of contract claims based on a failure to comply with HUD regulations are

"viable where the mortgage instrument expressly incorporates HUD regulations." *Dorado v. Bank of

Am., N.A.*, 1:16-CV-21147-UU, 2016 WL 3924115, at *5 (S.D. Fla. July 21, 2016); *see also Bates v.

JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1131 (11th Cir. 2014); *Fowler v. Wells Fargo Bank, N.A.*, 17-

CV-02092-HSG, 2017 WL 3977385, at *4 (N.D. Cal. Sept. 11, 2017) (finding incorporation of HUD

regulations because plaintiff alleged contractual term in note that "Lender shall accept prepayment on

other days provided that Borrower pay interest on the amount prepaid for the remainder of the month

*to the extent required by Lender and permitted by regulations of the Secretary.*" (emphasis in original)); *Donlon v.

Evolve Bank & Trust*, No. CIV. JFM-12-2384, 2014 WL 1330522, at *5 (W.D. Tenn. Mar. 31, 2014)

("although the HUD regulations do not themselves create a private right of action, a violation of the

Handbook may sustain a breach of contract claim where a final agreement expressly incorporates the Handbook's various terms."); *Hernandez v. Home Sav. Ass'n of Dallas Cty.*, 606 F.2d 596, 601 (5th Cir. 1979) (finding that HUD regulations incorporated into mortgage documents become part of the contract); *Franklin v. BAC Home Loans Servicing, L.P.*, No. 3:10-CV-1174-M, 2011 WL 248445, at *2 (N.D. Tex. Jan. 26, 2011) (denying motion to dismiss with respect to breach of contract claim where Bank of America subsidiary did "not argue that the HUD regulations are not incorporated by reference in the Note and Deed of Trust nor that the violation of such regulations cannot provide the basis for a breach of contract claim"). Thus, Ms. Wilson's reliance upon FHA/HUD regulations and guidelines as incorporated by reference into her mortgage contract is entirely appropriate.

Mr. Cooper nevertheless argues that FHA/HUD regulations and guidelines do not limit its ability to charge Pay-to-Pay Fees. But as stated above, HUD's rules and regulations not only fail to authorize the collection of Pay-to-Pay Fees—they flatly prohibit them. Mr. Cooper's arguments to the contrary ignore the plain language of the regulation and FHA Handbook. Importantly, silence by HUD on Pay-to-Pay Fees is not the same as authorization. HUD regulations plainly require affirmative authorization of a fee before an FHA mortgagee or servicer such as Mr. Cooper may charge it. The regulation is clear that fees not expressly listed can be collected only "as may be authorized by the Secretary." 24 C.F.R. § 203.552(a)(12). Appendix 3.0 of the FHA Handbook, in turn, contains the exclusive list of additional fees not expressed in the regulation that the Secretary has authorized.[11] If Mr. Cooper were correct regarding the construction of the provision at issue, it would flip the regulation and FHA Handbook sections on their head in that the applicable regulation and FHA Handbook (and corresponding mortgage contracts such as Ms. Wilson's) would all read, "Lender may

---

[11] *See* HUD Handbook, Appendix 3.0 at pp. 977 (D.C.) & 979 (Florida).

*not* collect fees and charges ***prohibited*** by the Secretary." But the rules, regulations and subject deed of trust all state the opposite.

      **2.    Mr. Cooper breached the provision in Plaintiffs' deeds of trust foreclosing the charging of fees prohibited by "Applicable Law."**

Mr. Cooper also breached the provisions of Plaintiffs' mortgages prohibiting the charging of fees prohibited by "Applicable Law." *See* Compl. Exs. A ¶ 14, B ¶ 13 & C ¶ 13. Statutes and regulations may be incorporated by reference into a contract, and violation of those statutes and regulations may serve as a basis for claims for breach of contract. Since "Applicable Law" is defined as "all controlling applicable federal, state, and local statutes . . .," *id.* Exs. A, B & C at p. 2, ¶ (J)—which clearly encompasses both District of Columbia and Florida law— Mr. Cooper contravened "Applicable Law" when it violated the FDCPA, FCCPA, DCCPPA, and MLBA. *See supra* Part IV.B.

Notwithstanding Plaintiffs' straightforward allegations concerning the prohibition on Mr. Cooper charging Pay-to-Pay Fees, Mr. Cooper argues that its Pay-to-Pay Fees do not violate the terms of Plaintiffs' mortgage agreements. None of its arguments withstand scrutiny. First, Mr. Cooper argues that a provision in the deeds of trust permitting the charging of fees for "services performed in connection with [b]orrower's default" affirmatively permits it to charge the subject fees. This argument fails for several reasons.

With respect to Ms. Wilson, she does not allege that her mortgage was ever in default. Absent a default of any kind, the provision in Paragraph 13 of Ms. Wilson's deed of trust authorizing the imposition of default-related fees does not apply. It certainly does not authorize the imposition of Pay-to-Pay Fees.

With regard to Ms. McFadden, who is alleged to have been in default at the time her loan was acquired by Mr. Cooper, Compl. ¶¶ 67-68, this argument still fails for two reasons. First, there is no allegation in the Complaint that Ms. McFadden was in default at the time the subject Pay-to-Pay Fees were imposed; hence, Mr. Cooper had no need to impose such fees to protect its security interest and

therefore no right to assess the same. Second, as alleged in the Complaint, even if Ms. McFadden had been in default at the time she was charged Pay-to-Pay Fees, under Paragraph 9 of Ms. McFadden's deed of trust, Mr. Cooper was limited to passing along only those "amounts disbursed" by it in protecting its interest in the property. Compl. ¶ 76 (citing Ex. A ¶ 9). Thus, even if Pay-to-Pay Fees were permissible in the context of default, Mr. Cooper was still prohibited from charging fees in excess of the costs it incurred with regard to such services. In this case, Plaintiffs have alleged that the Pay-to-Pay Fees charged by Mr. Cooper far exceeded the costs associated with such service. *See id.* ¶ 6. The Court should disregard Mr. Cooper's arguments, which contradict the allegations in the Complaint.

Finally, Mr. Cooper cites *Waddell v. U.S. Bank N.A.*, 395 F.Supp.3d 676 (E.D. N.C. 2019), as a basis for dismissing Plaintiffs' breach of contract claims. But there, the court did not address whether HUD regulations and handbooks and consumer-protection statutes were incorporated by reference into the mortgage contract. Consequently, *Waddell* provides no guidance as to the issues presented by this case.

### 3. There were no separate oral contracts and the Court should reject Mr. Cooper's attempt to insert facts outside the pleadings.

Mr. Cooper attempts to bypass the restrictions contained in the subject mortgage agreements by positing that its charging of Pay-to-Pay Fees was done in connection with "separate oral contract[s] not governed by the four corners of the parties' mortgage agreements or notes." Mot. at 12. The Court should reject this argument, which, if adopted, would require the Court to adopt facts outside the four corners of Plaintiffs' well-pled complaint.

Mr. Cooper argues that because the promissory notes signed by Plaintiffs designated that loan payments would be made "in the form of cash, check or money order," the payment methods that are subject to the Pay-to-Pay Fees amount to "option[al]" services that are outside the subject mortgage contracts. The Court should reject this argument out of hand because there are no facts alleged in

Plaintiffs' complaint or otherwise contained in documents properly considered in the context of the instant Rule 12(b)(6) motion that support such argument. *See Howard Univ. v. Watkins*, 857 F. Supp. 2d 67, 71 (D.D.C. 2012) ("In deciding a motion brought under Rule 12(b)(6), a court does not consider matters outside the pleadings, but a court may consider on a motion to dismiss 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint' . . . .") (quoting *Gustave–Schmidt v. Chao*, 226 F.Supp.2d 191, 196 (D.D.C.2002)). No doubt understanding such limitation, Mr. Cooper attempts to provide a factual basis for its argument by asserting that, to state a breach of contract claim, Plaintiffs were required to plead that they were misled. Mot. at 13 (noting that "[a]t no time do Plaintiffs allege that they were unaware that these [Pay-to-Pay Fees] would be assessed as a result of their phone payment, or that Mr. Mr. Cooper took any action to deceive them or mislead them with regard to the amount of fees, or what service they would receive in exchange"). But deception is not an element of a breach of contract claim, all of the elements of which have been pled here. Mr. Cooper also insists that Plaintiffs were "informed of payment options," Mot. at 14, or "accepted" an "offer to handle a mortgage payment by phone," *id.* at 13. But these allegations are unsupported by the Complaint and contradict Plaintiffs' allegations. In short, there is nothing within the four corners of Plaintiffs' complaint that can support Mr. Cooper's assertion that separate oral contracts existed regarding the subject Pay-to-Pay Fees.[12]

More importantly, adopting Mr. Cooper's facts (instead of Plaintiffs', as required) would render meaningless the provisions of their mortgage agreements limiting the fees that Mr. Cooper can charge. Mr. Cooper's argument is predicated upon the fact that payment by phone is an "option[al]" service outside of the payment requirements set forth in Plaintiffs' promissory notes. But many of the

---

[12] Cooper's attempt to contrast its schedule of Pay-to-Pay Fees, as purportedly set forth on its website, with potential late fees under Plaintiffs' promissory notes, *see* Mot. at 15 n.5, similarly contravenes the limitations of Rule 12(b)(6).

fees authorized by HUD as servicing fees are for entirely optional services. For example, HUD has authorized lenders to charge a $5.00 fee to fax payoff statements when the borrower requests that optional service, as well as a fee when a borrower requests the optional services of receiving a "Copy of Mortgage Note," a "Copy of Amortization Schedule," or "Replacement Coupon Books." *See* HUD Handbook, Appendix 3.0 at pp. 977 (D.C.) & 979 (Florida). These optional fees are all servicing fees: the title of the Appendix where they are listed clearly says that it "Applies to Servicing Only." *Id.* To permit a lender or servicer such as Mr. Cooper to claim the existence of a separate contract any time it charged an *unauthorized* fee would effectively gut the prohibitions provided by the subject mortgage contract provisions, the related FHA/HUD regulatory scheme discussed above, and consumer protection laws like the FDCPA and FCCPA that are incorporated into the mortgage agreements.

### D. Plaintiffs properly plead unjust enrichment claims in the alternative to their contract claims.

Plaintiffs plead their unjust enrichment claims "in the alternative to breach of contract claims." Compl. at 28. Mr. Cooper argues that Plaintiffs' unjust enrichment claims are duplicative of their contract claims and cannot be maintained alongside the contract claims. Mot. at 22-23. But Mr. Cooper's argument "ignores the basic tenet of alternative pleading." *Manicini Enterprises, Inc. v. Am. Exp. Co.*, 236 F.R.D. 695, 699 (S.D. Fla. 2006).

Under both Florida and District of Columbia law, while ultimately only one of the claims may prevail, a "[p]laintiff is not prevented from pursuing the alternative claims of breach of contract [and] unjust enrichment . . . in separate counts." *JI-EE Indus. Co. v. Paragon Metals, Inc.*, No. 09-81590-CIV, 2010 WL 1141103, at *1 (S.D. Fla. Mar. 23, 2010) (citing *Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla. 5th Dist. Ct. App. 1998) ("Until an express contract is *proven*, a motion to dismiss a claim for . . . unjust enrichment on these grounds is premature.") (emphasis added)); *see also Fed. Deposit Ins. Corp. v. Bank of Am., N.A.*, 308 F. Supp. 3d 197, 203 (D.D.C. 2018) (dismissal of unjust enrichment claims is only warranted based on a "necessarily factual" determination that the plaintiff has an adequate legal

remedy); Fed. R. Civ. P. 8(d)(2)-(3). Thus, at this early stage of litigation, Plaintiffs' alternative pleading is appropriate, and dismissal of the unjust enrichment claims is not warranted.

Indeed, the rules permitting alternative pleading of unjust enrichment claims are "especially necessary" where, as here, the defendant casts doubt on the terms of the contract giving rise to a breach of contract claim or the asserted contract's applicability to the suit. *Smith v. Rubicon Advisors, LLC*, 254 F. Supp 3d. 245, 251 (D.D.C. 2017). Here, Mr. Cooper asserts, for example, *see* Mot. at 19-22, that the Uniform Mortgage agreements raised in and attached to the Complaint do not govern the Pay-to-Pay Fees at the center of Plaintiffs' claims. *See, e.g., id.* at 21 (arguing phone payments and associated fees would not be available if "operating strictly within the parameters of the mortgage agreements or notes"). "But if that is so," the collection of Pay-to-Pay-Fees "at no point formed any part of the explicit contractual arrangement," and the Pay-to-Pay Fees were, instead, "extra-contractual payment falling outside the 'scope' of the governing contracts" that Plaintiffs assert as the basis of their contract claims. *In re APA Assessment Fee Litig.*, 766 F.3d 39, 46 (D.C. Cir. 2014). It is precisely this kind of alternative factual scenario that would give rise to the unjust enrichment claim, a restitutory claim based "on a theory of 'mistaken payment of money *not* due'" under a contract. *Id.* at 47 (quoting *Restatement (Third) of Restitution & Unjust Enrichment* § 6 cmt. a. (2011)) (emphasis added); *see also* Complaint ¶¶ 173-74 (Uniform Mortgages did not provide a right to collect the Pay-to-Pay Fees that Plaintiffs paid to Mr. Cooper). Mr. Cooper's argument that the Uniform Mortgages do not address Pay-to-Pay Fees thus underscores the impropriety of dismissing Plaintiffs' alternatively pleaded unjust enrichment claims at this early stage.[13]

---

[13] Cooper's argument is not salvaged by its assertion that "separate oral contract[s] not governed by the four corners of the parties' mortgage agreements or notes" govern the Pay-to-Pay Fees. ECF No. 13-1 at 19. Cooper's supposed oral contracts are not apparent on the face of the Complaint—let alone "proven." *Manicini Enterprises*, 236 F.R.D. at 699.

Mr. Cooper's alternate styling of its argument—that the unjust enrichment claims should be dismissed "because this dispute arises out of the parties' contractual relationship"—fails for similar reasons. *See* ECF No. 13-1 at 22. It is not enough that a contractual relationship exists. Rather, "'[r]estitution claims of great practical significance' do arise 'in a contractual context' when the contract does not '*regulate the parties' obligations' in relevant part*." *In re APA Assessment Fee Litig.*, 766 F.3d at 46 (quoting *Restatement (Third) of Restitution & Unjust Enrichment* § 2 cmt. c (2011)) (emphasis added). The D.C. Circuit has therefore rejected Mr. Cooper's "basic position, that an unjust enrichment claim is precluded whenever it relates to the subject matter of an express contract." *In re APA Assessment Fee Litig.*, 766 F.3d at 47. Because Mr. Cooper argues that the Uniform Mortgages do *not* concern the Pay-to-Pay Fees, its motion to dismiss Plaintiffs' unjust enrichment claims to recover the Fees is unfounded and premature.

In short, Plaintiffs have properly stated unjust enrichment claims in the alternative to their contract claims, and dismissal is not appropriate.

### E.    The voluntary payment doctrine does not apply.

Mr. Cooper erroneously contends that the Plaintiffs' breach of contract and unjust enrichment claims are barred by the so-called "voluntary payment doctrine" because the Plaintiffs voluntarily paid the unlawful fees charged by Mr. Cooper. This argument fails for several reasons.

#### 1.    It would be premature for the Court to dismiss Plaintiffs' claims based on the affirmative defense of the voluntary payment doctrine.

Under both Florida and District of Columbia law, the voluntary payment doctrine is an affirmative defense that a Defendant must plead or adequately support with facts, and as such, it cannot be resolved on Mr. Cooper's motion to dismiss. *Carrero v. LVNV Funding, LLC,* No. 11-62439-civ, 2014 WL 6433214, at *6 (S.D. Fla. Oct. 27, 2014) ("Because the voluntary payment doctrine requires the party asserting it to show that the person who made the payment had full knowledge of the relevant facts, including allegedly wrongful conduct, the doctrine is ordinarily treated as an

affirmative defense that may not be raised on a motion to dismiss"); *see also Falconi-Sachs v. LPF Sen. Square, LLC*, 142 A.3d 550, 559 (D.C. 2016) ("Voluntary payment is an affirmative defense, . . . and a plaintiff's failure to anticipate and rebut affirmative defenses in her complaint is not a sufficient basis for a Rule 12(b)(6) dismissal."); 5 Charles Alan Wright et al, *Federal Practice and Procedure* § 1276 (3d ed. 2004) ("[A]llegations that seek to avoid or defeat a potential affirmative defense . . . are not an integral part of the plaintiff's claim for relief and lie outside his or her burden of pleading.")

The application of the voluntary payment doctrine necessarily involves a fact-intensive examination that cannot be resolved on a motion to dismiss because it turns on the party's subjective knowledge of the facts underlying the payments at issue. *See, e.g., Cableview Comm'ns of Jacksonville, Inc. v. Time Warner Cable SE LLC*, No. 3:13–cv–306–J–34JRK, 2014 WL 1268584, at *20 (M.D. Fla. March 27, 2014) (recognizing that the voluntary payment doctrine is an affirmative defense that "often entails a fact-based inquiry and is not suited for resolution at the dismissal stage"). The application of this affirmative defense is "a question of fact, to be judged in light of all the circumstances surrounding a given transaction." *Shaw v. Marriott Intern., Inc.*, 474 F.Supp.2d 141, 150–51 (D.D.C. 2007) (quoting *Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663, 669 n. 1 (7th Cir. 2001)) (concluding that "[w]hatever the merits of" the voluntary payment defense, appellant was "certainly correct that it raises factual issues that cannot be resolved in the context of a motion to dismiss").

Here the affirmative defense is clearly not established on the face of the pleadings. Rather, the Complaint establishes that the defense does not apply. Mr. Cooper does not argue that Plaintiffs had full knowledge of all the material facts, specifically that Mr. Cooper kept most of the Pay-to-Pay Fees it collected as profit and that the Pay-to-Pay Fees are prohibited by law and regulation. Nor did Plaintiffs plead, let alone concede, that they knowingly made payment of illegal fees or voluntary payment of fees grossly inflated compared to the cost of processing their mortgage payments made over the phone. Mot. at 19. Rather, Ms. Wilson and Ms. McFadden allege that they paid the Pay-to-

Pay Fees of $14.00 and $19.00, respectively, but that they did so without knowledge of Mr. Cooper's deceit and without knowledge that the overcharges were illegal as a matter of law. *See, e.g.*, Compl. ¶¶ 70–78, 86–92. As in *Falconi-Sachs v. LPF Sen. Square*, the Plaintiffs did not "concede voluntariness even in the colloquial sense; rather, [they] alleged facts suggesting that, in addition to being ignorant of the late fee's illegality, [they were] coerced into paying this fee." *Falconi-Sachs*, 142 A.3d at 559-60 (holding that whether the overcharge was improper was a question of fact and vacating the trial court's ruling on the affirmative defense of voluntary payment).

### 2. The voluntary payment doctrine does not apply because Plaintiffs lacked full knowledge regarding the Pay-To-Pay Fees.

The voluntary payment "doctrine has narrow application," *Markel Ins. Co. v. Am. Safety Risk Retention Grp., Inc.*, No. 3:15-CV-240/RV-CJK, 2016 WL 10611374, at *4 (N.D. Fla. Aug. 3, 2016), and "only applies when the payor has 'full knowledge of all the facts . . . .'" *Brink v. Raymond James & Assocs., Inc.*, 341 F. Supp. 3d 1314, 1320 (S.D. Fla. 2018); *see also Maor v. Dollar Thrifty Auto. Grp., Inc.*, 303 F.Supp.3d 1320, 1326–27 (S.D. Fla. 2017) (voluntary payment doctrine did not apply where plaintiff alleged that "at the time of his voluntary payment of the administrative fee—he did not know that the fee was mostly retained by [defendant] as profit, instead of being used to cover the costs of toll processing, because those facts were 'secret' and 'undisclosed.'"); *Carrero*, 2014 WL 6433214, at *6 ("[T]he voluntary payment doctrine requires the party asserting it to show that the person who made the payment had *full knowledge of the relevant facts, including allegedly wrongful conduct*") (emphasis added); *Ruiz v. Brink's Home Sec., Inc.*, 777 So.2d 1062, 1064 (Fla. 2nd Dist. Ct. App. 2001) (holding that the voluntary payment doctrine was not an applicable defense even where the plaintiffs had contractually agreed to pay defendant the costs incurred for the payment of property tax on a homeowner's security system but where the amount charged was in excess of the actual tax imposed); *Falconi-Sachs*, 142 A.3d at 559 ("A better articulation of the rule is: '[M]oney voluntarily paid *in the face of a recognized uncertainty as to the existence or extent of the payor's obligation to the recipient* may not be recovered, on the ground of

36

'mistake,' merely because the payment is subsequently revealed to have exceeded the true amount of the underlying obligation.'") (quoting *Restatement (Third) Of Restitution & Unjust Enrichment* § 6 cmt. e (Am. Law Inst. 2011)) (emphasis in original).

Here, Plaintiffs allege that the excessive payments are illegal and deceitfully inflated. *See* Compl. ¶¶ 70–78, 86–92. Construing the allegations in the Complaint as true, Mr. Cooper created an information disparity through its misrepresentations and omissions, such that Plaintiffs could not know that it was assessing fees far in excess of the actual costs for processing the mortgage payments. Compl. ¶¶ 78, 92.

Mr. Cooper misconstrues the cases upon which it relies by repeatedly noting that the voluntary payment doctrine does not permit recovery of a payment solely because it was illegal or unenforceable. That misses the point. As explained in *Hassen v. Mediaone of Greater Fla., Inc.*, "[i]t does not matter that the payment may have been made upon a mistaken belief as to the enforceability of the demand, or liability under the law, *as long as payment is made with knowledge of the factual circumstances.*" *Hassen v. Mediaone of Greater Fla., Inc.*, 751 So. 2d 1289, 1290 (Fla. 1st Dist. Ct. App. 2000) (emphasis added). In fact, these cases underscore that the payor must have "knowledge of the factual circumstances" underlying the payment. Mr. Cooper argues that because Plaintiffs knew the exact amount that they were paying to pay their mortgage over the phone, and they paid those amounts voluntarily, the voluntary payment doctrine precludes their claim. But that is not enough, because they did *not* know the fees were illegal and inflated. Under Mr. Cooper's formulation of the law, a Defendant would always be absolved of liability if any illegal fee were disclosed upfront. But that is not the law, and its voluntary payment arguments should be rejected.

### F.    Plaintiffs provided the required notice.

Mr. Cooper admits that, consistent with their mortgage agreements, Ms. Wilson and Ms. McFadden have each alleged that they gave Mr. Cooper presuit notice of their intent to bring a lawsuit

regarding its Pay-to-Pay Fees, and a reasonable opportunity to cure its practices. But despite this notice, Mr. Cooper argues that Ms. Wilson and Ms. McFadden's unjust enrichment claims, and Ms. Wilson's MLBA claims, should be dismissed because the notice letters did not list those specific causes of action. Dkt. 13 at 9, 24-25, and 36. This argument is meritless and should be disregarded.

First, Mr. Cooper's argument fails because Ms. Wilson and Ms. McFadden provided all the notice that is required by their mortgage agreements. The notice provision of their mortgage agreements state that they need only provide notice of the "alleged breach," not that they need to list out every potential cause of action that might be raised in a future lawsuit:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, *until such Borrower or Lender has notified the other party* (with such notice given in compliance with the requirements of Section 14) *of such alleged breach* and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

Compl. Ex. A ¶ 19; Ex. B ¶ 19 (emphasis added). Nowhere does either agreement require the borrower to also provide notice of each cause of action stemming from that breach. Since Plaintiffs each complied with their mortgage agreements, Mr. Cooper's argument fails.

In arguing more notice is required, Mr. Cooper offers no basis for disregarding the plain meaning of the mortgage agreements. Nor is there any. *Cf. Key v. Allstate Ins. Co.,* 90 F.3d 1546, 1549 (11th Cir. 1996) (holding that when a contract is clear and unambiguous, the court must interpret it in accordance with its plain meaning). Under the plain terms of the mortgages, Ms. Wilson and Ms. McFadden were not required to enumerate each cause of action they could possibly allege, but instead, were merely required to give defendant notice of its breach. Accordingly, Plaintiffs' notices were proper. *See* Dkt. 13 at 24 (discussing notice received by Mr. Cooper).

Second, Mr. Cooper's argument is meritless because the case law it cites does not support its assertion that Plaintiffs were required to provide notice of each potential cause of action prior to suit..

For example, in *Trevathan v. Select Portfolio Servicing, Inc.,* 142 F. Supp. 3d 1283 (S.D. FL. 2015), the plaintiffs failed to allege they provided any notice at all. *Id.* at 1290-91. Here, Plaintiffs alleged they provided (and did provide) notice before filing suit, a fact that Mr. Cooper concedes. And *Hill v. Nationstar Mortgage, LLC.,* NO. 1560106–CIV, 2015 WL 4478061 (S.D. FL. July 2, 2015) supports Plaintiffs' position, not Mr. Cooper's. There, the court explained that the plaintiffs were required to provide "notice of the allegedly improper []fees before filing suit," but said nothing about causes of action. *Id.* at *2-3. The *Hill* court's holding demonstrates that notice of the improper fees—like Plaintiffs provided here—is enough under the mortgage's notice and cure provision. No additional specifics are required.[14] *See id; see also Henok v. Chase Home Finance, LLC. Et al.,* 922 F. Supp. 2d 110, 118-19 (D.D.C. 2013) (holding notice was sufficient where it provided presuit notice of foreclosure without listing specific amount needed to cure default).

Finally, the pre-suit notice requirement requires notice only for claims "aris[ing] from the other party's actions *pursuant to* the Security Instrument or . . . alleg[ing] that the other party has *breached any provision of*, or any *duty owed by reason of*, this Security Instrument." Compl. Ex A at 11, Ex. B at 11, Ex. C at 11. Plaintiffs' unjust enrichment claims, pleaded in the alternative to their contract claims, only arise if the Uniform Mortgages do *not* govern the Pay-to-Pay Fees here at issue. Because Plaintiff's alternative unjust enrichment claims are brought only in the event that the contracts do not govern, the pre-suit notice provision is inapplicable to this claim. *See, e.g., Gerber v. First Horizon Home Loans Corp.,* No. C05–1554P, 2006 WL 581082, at *2–3 (W.D. Wash. Mar. 8, 2006) (barring only plaintiff's breach of contract claims based on failure to provide notice, but permitting claims based on unjust enrichment and state consumer protection law). In contrast, in *Hill* and *Trevathan*, the parties agreed

---

[14] There is at least some reason to believe Cooper had notice that an unjust enrichment claim or similar equitable relief would follow in a complaint. Plaintiff's notice letter, dated January 6, 2020, requests "restitution of such fees paid to Mr. Cooper."

that the mortgage contracts expressly governed the right to perform property inspections and to apply force-placed insurance. *See Hill*, 2015 WL 4478061, at \*3; *Trevathan*, 142 F. Supp. 3d at 1290. Here, Mr. Cooper's argument that the security instrument is "silent regarding the" Pay-to-Pay Fees, Mot. at 21-22, "supports Plaintiff's argument that the . . . unjust enrichment claims do not arise from the mortgage contract." *Beyer v. Countrywide Home Loans Servicing LP*, No. C07–1512MJP, 2008 WL 1791506, at \*\*3–4 (W.D. Wash. Apr. 18, 2008) (holding that plaintiff's unjust enrichment claim that defendant had charged an unauthorized fee was independent of the security instrument). Similarly, Plaintiffs' statutory claims do not "arise from" the mortgage documents. *See, e.g.*, *Mills v. Select Portfolio Servicing, Inc.*, No. 18-cv-61012-BLOOM/Valle, 2018 WL 5113001, at \*4-5 (S.D. Fla. Oct. 19, 2018) (mortgage notice and cure provisions do not "apply to statutory claims"). Thus, Mr. Cooper's notice arguments are misplaced.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs request that the Motion be denied. If the Court is inclined to grant the motion either in whole or in part, Plaintiffs request that any such dismissal be with leave to amend.

Dated: April 13, 2020

Respectfully submitted,

　/s/ Hassan A. Zavareei　
Hassan A. Zavareei (No. 456161)
Katherine M. Aizpuru (No. 1022412)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
kaizpuru@tzlegal.com

James L. Kauffman (No. 1020720)
BAILEY & GLASSER LLP
1054 31st Street, Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
jkauffman@baileyglasser.com

Victor S. Woods (admitted *pro hac vice*)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
vwoods@baileyglasser.com

*Attorneys for Plaintiffs*