## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JACKERLY MCFADDEN and
CASSANDRA WILSON,
*On Behalf of Themselves and All Others
Similarly Situated*,

Plaintiffs,

v.

NATIONSTAR MORTGAGE LLC
d/b/a MR. COOPER,

Defendant.

Case No. 1:20-cv-00166-EGS

**[ORAL ARGUMENT REQUESTED]**

## REPLY IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................................ 1

**ARGUMENT** ............................................................................................................................ 2

**I.**   **THE PAY-BY-PHONE FEES DO NOT BREACH ANY PROVISION OF PLAINTIFFS' MORTGAGE AGREEMENTS** ............................................................. 2

    A.   The Opposition Ignores the Plain Terms of the Mortgage Agreements that Permit the Pay-by-Phone Fees. ............................................................................................... 2

    B.   The "Loan Charges" Section of Plaintiff McFadden's Mortgage Agreement Authorizes Mr. Cooper's Collection of the Fees. ...................................................... 2

    C.   Nothing in the Mortgage Agreements Prohibits Pay-by-Phone Fees. ...................... 4

        1.   The *Waddell* Court Previously Considered These Issues and Concluded that Pay-by-Phone Fees Are Not Prohibited by the Mortgage Agreements .................. 4

        2.   Plaintiff McFadden's Mortgage Agreement Contains an Additional Provision Expressly Stating that the Fees Are Not Prohibited. ............................................... 6

        3.   The Pay-by-Phone Fees Do Not Violate FHA Regulations, Nor Does Plaintiff Wilson Have Standing to Enforce Them ..................................................................... 7

    D.   Alternatively, the Opposition Does Not Address that Every Element of a Separate Contract Exists Governing Plaintiffs' Agreement to Pay the Fees. .......................... 9

**II.**   **ALTERNATIVE PLEADING DOES NOT SAVE PLAINTIFFS' UNJUST ENRICHMENT CLAIMS** .............................................................................................. 11

**III.**   **PLAINTIFFS' COMMON LAW CLAIMS ARE BARRED BY THE VOLUNTARY PAYMENT DOCTRINE** ................................................................................................ 13

**IV.**   **PLAINTIFF MCFADDEN'S FDCPA CLAIM FAILS AS A MATTER OF LAW** .......................................................................................................... 15

**V.**   **THE STATE LAW CLAIMS ARE DEFECTIVE AND FAIL FOR THE REASONS DESCRIBED IN THE MEMORANDUM** ................................................................... 18

    A.   The Florida Consumer Collection Practices Act Claims Do Not Establish the Essential Element of Actual Knowledge. ................................................................. 18

    B.   The Complaint's FDUTPA Claims Likewise Fail as a Matter of Law .................... 19

        1.   No *Per Se* FDUTPA Violation Exists Because Plaintiffs Cannot Establish Any Underlying Violations of Law ................................................................................. 19

        2.   Plaintiffs' Decision to Voluntarily Pay Fees Involved Neither Deception Nor Unfairness ................................................................................................................ 19

C.    The DCCPPA Claim Likewise Fails as a Matter of Law. ....................................... 21

1.    The Statute Does Not Apply to Mortgage Servicers. ..................................... 21

2.    The Pay-by-Phone Fees Were Not Misleading............................................... 22

D.    The D.C. Mortgage Lender and Broker Act Claim Should be Dismissed............... 24

**CONCLUSION** ....................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Agritrade, LP v. Quercia*,
   253 So.3d 28 (Fla. 3d DCA 2017) ........................................................................................12

*Ashrafi v. Fernandez*,
   193 A.3d 129 (D.C. 2018) ...................................................................................................10

*Beer v. Nationstar Mortg. Holdings, Inc.*,
   No. 14-cv-13365, 2015 WL 13037309 (E.D. Mich. July 15, 2015) .....................................6, 7

*Bentley v. Bank of Am., N.A.*,
   773 F. Supp. 2d 1367 (S.D. Fla. 2011) ...............................................................................18

*Blake v. Seterus, Inc.*,
   No. 16-21225-CIV-JLK, 2017 WL 543223 (S.D. Fla. Feb. 9, 2017)......................................19

*Bourff v. Rubin Lublin, LLC*,
   674 F.3d 1238 (11th Cir. 2012) ...........................................................................................16

*Bryant v. Aargon Collection Agency, Inc.*,
   No. 17-CV-14096, 2017 WL 2955532 (S.D. Fla. June 30, 2017)...........................................17

*Buffington v. U.S. Bank NA*,
   No. CV-14-00615-PHX-DJH, 2014 WL 7648937 (D. Ariz. Oct. 28, 2014)............................16

*Busby v. Capital One, N.A.*,
   772 F. Supp. 2d 268 (D.D.C. 2011)..............................................................................21, 22

*Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
   130 F. Supp. 3d 236 (D.D.C. 2015).....................................................................................24

*Carriuolo v. Gen. Motors Co.*,
   823 F.3d 977 (11th Cir. 2016) .............................................................................................21

*Eagle Maint. Servs., Inc. v. D.C. Contract Appeals Bd.*,
   893 A.2d 569 (D.C. 2006) ...................................................................................................13

*Edmond v. Am. Educ. Servs.*,
   No. 10-0578(JDB), 2010 WL 4269129 (D.D.C. Oct. 28, 2010) ...........................................16

*Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*,
   944 A.2d 1055 (D.C. 2008) .................................................................................................23

*Hassen v. Mediaone of Greater Fla., Inc.*,
   751 So. 2d 1289 (Fla. 1st DCA 2000) .............................................................................13, 14

*Heald v. Ocwen Loan Servicing, LLC*,
  No. 3:13-cv-993-J-34JRK, 2014 WL 4639410 (M.D. Fla. Sept. 16, 2014) ...........................17

*Kirchner v. Ocwen Loan Servicing, LLC*,
  257 F. Supp. 3d 1314, 1324 (S.D. Fla. 2017), *appeal dismissed,* 2017 WL
  5185306 (11th Cir. Sept. 21, 2017)........................................................................................11

*Kuchenmeister v. HealthPort Techs., LLC*,
  753 F. App'x 794 (11th Cir. 2018) .........................................................................................13

*In re Lamb*,
  409 B.R. 534 (Bankr. N.D. Fla. 2009).....................................................................................18

*Lee v. Main Accounts, Inc.*,
  125 F.3d 855 (6th Cir. 1997) ..................................................................................................17

*Logan v. LaSalle Bank Nat. Ass'n*,
  80 A.3d 1014 (D.C. App. 2013)...............................................................................................25

*Maor v. Dollar Thrifty Auto. Grp., Inc.*,
  No. 15-22959-CIV-MARTINEZ-GOODMAN, 2018 WL 4698512 (S.D. Fla.
  Sept. 30, 2018) .......................................................................................................................21

*Moses v. The Law Office of Harrison Ross Byck*,
  No. 3:08cv1939, 2009 WL 2411085 (M.D. Pa. Aug. 4, 2009).................................................17

*Mushala v. US Bank, Nat'l Ass'n*,
  No. CV 18-1690 (JDB) 2019 WL 1429523 (D.D.C. Mar. 29, 2019)................................21, 24

*News World Commc'ns, Inc. v. Thompsen*,
  878 A.2d 1218 (D.C. 2005) .....................................................................................................12

*Nichols v. BAC Home Loans Servicing LP*,
  No. 1:13-CV-00224, 2013 WL 5723072 (N.D.N.Y. Oct. 18, 2013) ..........................................5

*Oya v. Wells Fargo Bank, N.A.*,
  No. 3:18-CV-01999-H-BGS, 2019 WL 157802 (S.D. Cal. Jan. 9, 2019) ................................16

*Pollio v. MF Glob., Ltd.*,
  608 F. Supp. 2d 564 (S.D.N.Y. 2009)........................................................................................3

*Saiyed v. Counsel on Am.-Islamic Relations Action Network, Inc.*,
  346 F. Supp. 3d 88 (D.D.C. 2018)...........................................................................................22

*Sanchez v. Time Warner, Inc.*,
  No. 98-211-CIV-T-26A, 1998 WL 834345 (M.D. Fla. Nov. 4, 1998).................................14, 15

*Saucier v. Countrywide Home Loans*,
    64 A.3d 428 (D.C. 2012) .......................................................................................................23

*Smith v. Rubicon Advisors, LLC*,
    254 F. Supp. 3d 245 (D.D.C. 2017) .....................................................................................11

*W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*,
    728 So.2d 297 (Fla. 1st DCA 1999) .....................................................................................10

*Waddell v. U.S. Bank Nat'l Ass'n*,
    395 F. Supp. 3d 676 (E.D.N.C. 2019)..............................................................4, 5, 18, 20, 23

*Ward v. D.C. Dep't of Youth Rehab. Servs.*,
    768 F. Supp. 2d 117 (D.D.C. 2011).....................................................................................10

*Washington v. LaSalle Bank Nat. Ass'n*,
    817 F. Supp. 2d 1345 (S.D. Fla. 2011) ................................................................................20

*Washkoviak v. Student Loan Mkt'g Ass'n*,
    900 A.2d 168 (D.C. 2006) ....................................................................................................10

*Williams v. Educ. Credit Mgmt. Corp.*,
    88 F. Supp. 3d 1338 (M.D. Fla. 2015)..................................................................................19

**Statutes**

District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901,
    *et. seq.* ..................................................................................................................21, 22, 23, 24

Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(1).........................15, 16, 17, 18, 19, 23, 24

Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, *et seq.*. ..................................18, 19

Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.203(3),
    501.204....................................................................................................................19, 20, 21

Mortgage Lender and Broker Act, D.C. Code § 26-1101, *et seq.* ...........................................13, 24

North Carolina Collection Practices Act........................................................................................18

**Other Authorities**

24 C.F.R. § 203.552(a)(12)............................................................................................................8, 9

Cooper Payment Methods, Support,
  https://www.mrcooper.com/support/payments/payment_methods (last visited
  March 27, 2020)............................................................................................................................1

Federal Rules of Civil Procedure 8(a), 12, and 15(a) ...................................................3, 10, 15, 16

Housing and Urban Development. Handbook 4000.1: *FHA Single Family*
  *Housing Policy Handbook*. Available at:
  https://www.hud.gov/sites/dfiles/OCHCO/documents/4000.1hsgh.pdf (last
  accessed April 18, 2020)............................................................................................................8, 9

## PRELIMINARY STATEMENT

In their Opposition Brief (the "Opposition"), Plaintiffs Jackerly McFadden and Cassandra Wilson (together "Plaintiffs") concede a core argument of Defendant's Motion to Dismiss (the "Motion"):  that Plaintiffs voluntarily chose to make certain mortgage payments by phone upon agreeing to pay a nominal fee for that service (the "pay-by-phone" fees).  *See* Opp. at 10 (arguing "optional and fully disclosed" fees are illegal); *id.* at 13 (claiming expressly disclosed practices are nevertheless illegal); *id.* at 31 (arguing breach exists even where no deception has occurred).

This acknowledgement is significant, as it undercuts the Complaint's central theory that Plaintiffs were somehow victimized when their mortgage servicer, Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Mr. Cooper"), offered them additional for-fee mortgage payment options, among other no fee options.  The Complaint spends thirty pages dancing around the fact that Plaintiffs knowingly *chose* to incur a nominal fee to make a handful of mortgage payments by phone—which apparently was the manner most convenient to them, potentially avoiding late fees if not otherwise timely and/or default on the mortgage.[1]  Plaintiffs' victim-by-choice theory is not substantiated by state or federal case law or statute, and accordingly, the Complaint should be dismissed as a matter of law.

---

[1] As noted in Defendant's Memorandum filed in support of the Motion, in many if not most, cases, the pay-by-phone fees are lower than late payment fees, which may be a certain percentage of a late mortgage payment, rather than a set nominal payment processing fee. *Compare* Mr. Cooper Payment Methods, Support, https://www.mrcooper.com/support/payments/payment_methods (last visited March 27, 2020) *with* Plaintiffs' Notes, Memorandum, Exs. 3-4 ¶ 6.A (late charges equal 4-5% of total overdue principal and interest payment).

## ARGUMENT

## I. THE PAY-BY-PHONE FEES DO NOT BREACH ANY PROVISION OF PLAINTIFFS' MORTGAGE AGREEMENTS

### A. The Opposition Ignores the Plain Terms of the Mortgage Agreements that Permit the Pay-by-Phone Fees.

The plain text of Plaintiffs' mortgage agreements authorizes the pay-by-phone fees. The agreements state, in part, that "Lender may not charge fees that are expressly prohibited by this Security Instrument or Applicable Law." Compl., Ex. A at 8 (¶ 14), Ex. C at 8 (¶ 13) ("Loan Charges"). Plaintiffs' breach of contract claims fail for the simple reason that neither the mortgage agreements themselves, nor applicable law, expressly bar the pay-by-phone fees. As set forth below and in the Memorandum of Points and Authorities in Support of the Motion (the "Memorandum"), Plaintiffs identify no provision of the mortgage agreements that expressly prohibits the pay-by-phone fees, nor does any governing law or regulation expressly prohibit them. Hence, these fees are authorized under the agreements.

### B. The "Loan Charges" Section of Plaintiff McFadden's Mortgage Agreement Authorizes Mr. Cooper's Collection of the Fees.

The "Loan Charges" section of the mortgage agreements provide that "Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees." Compl., Ex. A at 8 (¶ 14), Ex. C at 9 (¶13). This provision provides an additional basis for Mr. Cooper to collect the pay-by-phone fees for borrowers in default. *See* Memorandum at 6-7 ("Central among any loan servicer's rights is the right to receive and process payments from borrowers.") (citing *Mohamed v. Select Portfolio Servicing, Inc.*, 215 F. Supp. 3d 85, 89 (D.D.C. 2016) ("Typically, a loan servicer processes your loan payments. . . .")). The Complaint alleges—in

2

conclusory fashion (*see infra* § IV)—that Plaintiff McFadden was in default when Mr. Cooper

obtained servicing rights of her mortgage loan.  Compl. ¶ 67.  The Complaint does not allege,

however, that she cured this purported default at any point, much less prior to the time she

incurred the pay-by-phone fees.  Accordingly, this additional provision also permits Mr. Cooper

to collect pay-by-phone fees from Plaintiff McFadden in order to protect its rights under the

mortgage agreements.

The Opposition seeks to sidestep this fact by inserting a new argument that Plaintiff

McFadden may no longer have been in default at the time she paid these fees.  Opp. at 29-30.  Of

course, Plaintiffs may not amend their pleadings by inserting new factual allegations in an

Opposition brief.  *See* R. Civ. P. 15(a); *Pollio v. MF Glob., Ltd.*, 608 F. Supp. 2d 564, 568

(S.D.N.Y. 2009) ("Parties cannot amend their pleadings through issues raised solely in their

briefs, and such facts are thus irrelevant for purposes of determining whether plaintiff's

Complaint should be dismissed for failure to state a claim. . . .") (internal citation omitted).

Plaintiffs may not now claim that Plaintiff McFadden had cured her alleged default on the basis

that it happens to benefit their immediate argument.  Accordingly, the Loan Charges provision of

her mortgage agreement permitting default-related fees "for the purpose of protecting Lender's

interest in the Property and rights under this Security Instrument" thus authorizes Mr. Cooper's

collection of the pay-by-phone fees.

Moreover, the Opposition argues that only "disbursed fees" are authorized pursuant to

Section 9 of Plaintiff McFadden's mortgage agreement—*i.e.*, that Mr. Cooper only could collect

the precise amount of fees that it actually deployed toward the processing the phone payments.

Opp. at 30.  Again, this reading is at odds with the actual terms of the mortgage agreements.

Section 9 does not apply to the pay-by-phone fees, as that section addresses fees and costs that a

3

lender incurs for actions it must take to preserve its security interest and the value of the property, including, among other things, "paying liens," "appearing in court," "making repairs," and "changing locks." Compl. Ex. A ¶ 9. Unlike the pay-by-phone fees, which Plaintiffs paid at the same time they incurred them, Section 9 costs "bear interest at the Note rate from the date of disbursement and shall be payable, with such interest upon notice from Lender to Borrower requesting payment." *Id.* Moreover, Plaintiffs point to no overriding requirement that mortgage servicers must disclose the actual operating costs of any service, even if such a disclosure were practicable (which it is not). Accordingly, Plaintiffs' interpretation that only "disbursed" pay-by-phone fees are authorized is not supported by the text of Plaintiffs' mortgage agreements.

### C. Nothing in the Mortgage Agreements Prohibits Pay-by-Phone Fees.

In addition to the pay-by-phone fees permitted by the express language above (*see* discussion of "Loan Charges" provision *supra* Sections I.A-B), nothing in Plaintiffs' mortgage agreements or notes prohibits Mr. Cooper from charging or collecting them. The only restriction on fees in the mortgage agreements is contained in the "Loan Charges" section referenced above: "Lender may not charge fees that are expressly prohibited by this Security Instrument or Applicable Law." Compl., Ex. A at 8 (¶ 14), Ex. C at 8 (¶ 13). Nothing in the mortgage agreements or applicable law expressly prohibits these fees.

#### 1. The *Waddell* Court Previously Considered These Issues and Concluded that Pay-by-Phone Fees Are Not Prohibited by the Mortgage Agreements.

The Eastern District of North Carolina recently addressed similar issues in *Waddell v. U.S. Bank Nat'l Ass'n*, 395 F. Supp. 3d 676 (E.D.N.C. 2019), which Mr. Cooper raised in the Memorandum (pp. 11-12). Rather than responding to the merits of that decision, the Opposition glosses over *Waddell's* analysis, arguing that it "provides no guidance as to the issues presented

by this case," because the court did not specifically address "whether HUD regulations and handbooks and consumer-protection statutes were incorporated by reference into the mortgage contract[.]" Opp. at 30. This is a gross oversimplification and misreading of that decision. The *Waddell* court's core conclusion is that the mortgage instrument there, as here, "does not expressly address whether [defendant] can charge a service fee for an optional payment method (such as pay-by-phone), while providing other payment options that involve no fee. If the parties to the contract had intended to limit a party's right to charge a service fee for an optional payment method (such as pay-by-phone), 'it would have been easy to' include such language in the contract." *Waddell,* 395 F. Supp. 3d at 685. This analysis is equally applicable in this matter, and does not require the Court to reach issues such as the interpretation of FHA/HUD guidelines, or whether Plaintiffs have standing to invoke them. As in *Waddell*, the mortgage agreements are silent regarding the pay-by-phone fees, and that is sufficient to conclude that Mr. Cooper did not breach the agreements by charging the fees.

In addition, the Opposition does not address Plaintiffs' failure to allege in the Complaint that they were in full compliance with the terms of the mortgage agreements, including that they were current on their payment obligations. *See Nichols v. BAC Home Loans Servicing LP,* No. 1:13-CV-00224, 2013 WL 5723072, at *10 (N.D.N.Y. Oct. 18, 2013) (finding failure to state a claim where the plaintiff failed to allege his own performance under the contract). In fact, Plaintiff McFadden even claims that she was at some point "in default" but pleads no facts showing that her purported default was cured. *See* Compl. ¶ 67. Accordingly, the breach claims should be dismissed for this additional reason.

### 2. Plaintiff McFadden's Mortgage Agreement Contains an Additional Provision Expressly Stating that the Fees Are Not Prohibited.

The Opposition continues to disregard the plain language in Plaintiff McFadden's mortgage agreement stating that "the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee." Compl., Ex. A at 8 (¶ 14). Unable to reconcile this language with her breach claim, the Opposition simply asks the Court to ignore it. Plaintiffs now argue, without any basis in the agreement itself, that this language should not apply because it purportedly is limited to "fees 'for services performed in connection with borrower's default' and 'for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument.'" Opp. at 8 (quoting Compl., Ex. A at 8 (¶ 14)). But this interpretation does not hold water—in fact, the opposite is true:

> **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. *In regard to any other fees*, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

Compl., Ex. A at 8 (¶ 14)) (emphasis added). Hence, read together, this provision means the opposite of what Plaintiffs claim—***other than*** fees charged in connection to default and for the purpose of protecting the lender's interests, un-enumerated fees, like the pay-by-phone fees, are expressly ***not*** prohibited.

The Opposition also argues that *Beer v. Nationstar Mortg. Holdings, Inc.,* No. 14-cv-13365, 2015 WL 13037309, at *3 (E.D. Mich. July 15, 2015) is not instructive here, as the *Beer* court supposedly "rejected the plaintiff's claim that the loan servicer imposed unauthorized fees because 'the plaintiff fail[ed] to identify . . . the 'unnecessary fees and costs' allegedly charged to

plaintiff.'"  Opp. at 9.  This is an overly-narrow interpretation of that decision.  In fact, *Beer* dismissed the plaintiff's breach of contract claim related to alleged "unnecessary fees and costs" because of the existence of the same language quoted above in Paragraph 14 of McFadden's mortgage (in addition to finding that the plaintiff had not adequately described the fees and costs at issue).  The decision states:  "Plaintiff also fails to identify a contractual provision prohibiting the alleged 'unnecessary fees and costs'; *in fact, the Mortgage provides that 'the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.*'"  *Beer*, 2015 WL 13037309, at *3 (emphasis added).  This reasoning holds equally true here:  the Complaint does not identify any provision of the mortgage agreements that actually prohibits the pay-by-phone fees, and Plaintiff McFadden's agreement contains the additional provision affirmatively stating that these fees are not prohibited.

### 3.     The Pay-by-Phone Fees Do Not Violate FHA Regulations, Nor Does Plaintiff Wilson Have Standing to Enforce Them.

Plaintiff Wilson's mortgage agreement likewise does not prohibit the pay-by-phone fees by virtue of a purported regulatory violation.  The Complaint claims that the pay-by-phone fees violated certain guidelines issued by the Fair Housing Administration ("FHA") and the Department of Housing and Urban Development ("HUD"), which thus comprises a breach because Plaintiff Wilson's mortgage was insured by FHA.  Compl. ¶¶ 85, 152, 154.  Yet, the Opposition still does not identify a single FHA/HUD guideline that was supposedly violated by Mr. Cooper offering her an additional fee-based payment option.  Instead, the Opposition asks

the Court to imply a negative—that because the pay-by-phone fees are not listed in Appendix 3.0 to Guideline 4000.1,[2] they must therefore be prohibited. *See* Opp. at 26-27.

This argument is incorrect for a number of reasons. First, the "Loan Charges" provision authorizes fees unless they are *expressly* prohibited by applicable law—an implicit prohibition, as advocated by Plaintiffs, is insufficient. *See* Compl., Ex. C at 8 (¶ 13) ("Lender may not charge fees that are expressly prohibited by this Security Instrument or Applicable Law.").

Moreover, Appendix 3.0 to FHA/HUD Guideline 4000.1 does not prohibit these fees, expressly or implicitly. Nowhere, as Plaintiffs claim, does this Guideline state that it provides the exclusive list of fees that loan servicers may assess—indeed, it only purports to address certain "Post-Endorsement Fees and Charges," such as those associated with loan origination or transfer—not general servicing activity. For instance, late charges associated with mortgage payments are *not* included in Appendix 3.0, yet plainly such fees are commonplace and authorized under Plaintiff Wilson's agreements. *See* Memorandum, Ex. 2 ¶ 6.A (Pl. Wilson's Note stating that late charges may be assessed equal to 5% of total overdue principal and interest payment).

Similarly, the Opposition misstates the governing regulations and inserts non-existing requirements into their language. In particular, the Opposition claims that by its own language, 24 C.F.R. § 203.552(a)(12) provides an "exclusive" list of approved fees, "leaving no discretion with the lender to charge a fee not listed or authorized." Opp. at 26. That regulation states nothing of the sort—indeed, it provides permissive types of fees that a mortgagee "may" collect

---

[2] U.S. Department of Housing and Urban Development. Handbook 4000.1: *FHA Single Family Housing Policy Handbook*. Available at:
https://www.hud.gov/sites/dfiles/OCHCO/documents/4000.1hsgh.pdf (last accessed April 18, 2020).

from borrowers.  24 C.F.R. § 203.552(a)(12) (mortgagees "may collect reasonable and customary fees and charges").

Further, a separate section of FHA/HUD Handbook 4000.1, Section III(A)(1)(f), actually contains a list of fees that are expressly prohibited.  *See* FHA/HUD Handbook 4000.1 III(A)(1)(f)(ii)(C) (at pgs. 617-618).[3]  Not surprisingly, pay-by-phone fees are not among the proscribed fees.  *Id.*  If the Opposition's interpretation of the regulation and the Handbook were correct (which it is not), there would be no need for the guidelines to provide a separate list of prohibited fees in addition to the list of permissive fees that Plaintiffs cite.  "Prohibited fees" would simply be proscribed by virtue of them not appearing on the permissive list.  But that is not how the Handbook and the regulation read, and pay-by-phone fees are not prohibited here or elsewhere in the FHA/HUD guidelines.

In addition, Plaintiffs concede that they have no standing to independently enforce violations of the FHA/HUD guidelines.  *See* Opp. at 27 ("Mr. Cooper is correct that the violation of such guidelines is not by itself actionable. . . .").  The Opposition, however, argues Plaintiff Wilson is able to incorporate these agency guidelines by reference into her mortgage agreement, yet she fails to provide any controlling authority stating she may step into the agency's shoes to cure her standing defect.  For these reasons, Plaintiffs' breach claims should be dismissed.

### D.    Alternatively, the Opposition Does Not Address that Every Element of a Separate Contract Exists Governing Plaintiffs' Agreement to Pay the Fees.

In the event the Court decides that the mortgage agreements do not address the parties' duties and obligations with respect to the pay-by-phone fees, the parties have satisfied every

---

[3] U.S. Department of Housing and Urban Development. Handbook 4000.1: *FHA Single Family Housing Policy Handbook.* Available at: https://www.hud.gov/sites/dfiles/OCHCO/documents/4000.1hsgh.pdf (last accessed April 18, 2020).

element with respect to the creation of separate contract regarding Plaintiffs' payment of these fees. As set forth in the Memorandum, applying only the facts alleged in the Complaint, Plaintiffs' agreement to pay the pay-by-phone fees at the stated amount, in exchange for Mr. Cooper accepting that phone payment, constitutes a separate oral agreement under the common laws of Florida and the District. *See W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So.2d 297, 302 (Fla. 1st DCA 1999) (describing basic contract principles as applied to an oral contract claim); *Ashrafi v. Fernandez*, 193 A.3d 129, 131 (D.C. 2018) (same).

The Opposition provides no credible explanation as to why these new contracts should not govern the pay-by-phone fees, and it claims—erroneously—that the Court would need to consider facts outside of the Complaint and operative agreements to reach this conclusion. In reality, the mortgage agreements and notes are integral to the parties' borrower-servicer relationship,[4] yet neither of these operative documents governs the formation or execution of the pay-by-phone agreements described in the Complaint—nor does either document authorize Plaintiffs to pay, or Mr. Cooper to accept payment via phone or online. *See* Memorandum, Exs. 3-4 ¶ 1 (Borrower's Promise to Pay via "cash, check or money order"). The Opposition does not explain how the Complaint already addresses these separate agreements, much less how Mr. Cooper allegedly breached them. Accordingly, Plaintiffs' breach claims should be dismissed for this additional reason.

---

[4] Plaintiffs' suggestion that Mr. Cooper's reference to the notes is inappropriate in a Rule 12 context also is incorrect, as documents integral to and referenced in the Complaint may properly be considered on a motion to dismiss. *See Washkoviak v. Student Loan Mkt'g Ass'n*, 900 A.2d 168, 178 (D.C. 2006); *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119–20 (D.D.C. 2011).

## II.    ALTERNATIVE PLEADING DOES NOT SAVE PLAINTIFFS' UNJUST ENRICHMENT CLAIMS

The Opposition Brief argues that the Complaint's common law unjust enrichment claims should survive because they are pleaded in the alternative to Plaintiffs' breach of contract claims. Opp. at 32-33. This argument misses the point. Mr. Cooper does not claim that alternative pleading is categorically inappropriate. What *is* inappropriate, and what requires dismissal of Plaintiffs' unjust enrichment claims, is that the alleged conduct comprising these claims arises whole-cloth out of the parties' contractual borrower-servicer relationship, which does not give rise to equitable liability under a theory of unjust enrichment. *Smith v. Rubicon Advisors, LLC*, 254 F. Supp. 3d 245, 249 (D.D.C. 2017) ("In general, a plaintiff cannot maintain an unjust enrichment claim concerning an aspect of the parties' relationship that was governed by a contract.").

The court in *Kirchner v. Ocwen Loan Servicing, LLC,* addressed a similar situation where the plaintiffs argued that certain property inspection fees issued by their loan servicer constituted unjust enrichment. 257 F. Supp. 3d 1314, 1324 (S.D. Fla. 2017), *appeal dismissed,* 2017 WL 5185306 (11th Cir. Sept. 21, 2017). Notably, the operative *Kirchner* complaint did <u>not</u> include a breach of contract claim. *Id.* at 1320. In dismissing the plaintiffs' unjust enrichment claim— with prejudice and noting that leave to amend would be futile—the court explained:

> In their Amended Complaint, Plaintiffs have failed to allege there is no contract governing the subject matter at issue. Only in their Opposition do Plaintiffs now assume the position that there is no "valid and enforceable contract governing the subject of Plaintiffs' unjust enrichment claim.". . . Throughout their Amended Complaint, Plaintiffs cite to and incorporate language from their mortgage agreements. There is no question that an express contract exists governing the same subject matter in this case, and any unjust enrichment claim would ultimately fail as a matter of law.

*Id.* at 1325. Here too, the gravamen of the unjust enrichment claims is the parties' borrower-servicer relationship, which arises under and is governed by contract (whether the mortgage

agreements, notes, or separate oral agreement). Moreover here, unlike in *Kirchner*, Plaintiffs

apparently do believe they have a contractual remedy, and their breach of contract claims are

premised on the same factual allegations as their unjust enrichment claims. *See* Compl. ¶¶ 172-

75 (raising no separate factual allegations in support of unjust enrichment claims). Plaintiffs

may not convert a contractual dispute into an equitable one, in the alternative or otherwise.

Further, the Opposition does not address the Memorandum's argument that no unjustness

or inequity arose from Mr. Cooper's performance of a service that in each instance Plaintiffs'

specifically requested and paid for. *See News World Commc'ns, Inc. v. Thompsen*, 878 A.2d

1218, 1222 (D.C. 2005) (describing essential element that defendant's retention of the benefit

would be unfair or unjust); *Agritrade, LP v. Quercia*, 253 So.3d 28, 33 (Fla. 3d DCA 2017)

(same). By Plaintiffs' own pleading, these borrowers were aware that other, no-fee payment

options were available to them, and they only "sometimes" or "occasionally" made phone

payments when convenient or advantageous to them. Compl. ¶¶ 136, 147. There is nothing

unjust or inequitable about Plaintiffs' knowing, voluntary decision to select for-fee payment

options when they ultimately received the benefit of the bargain they struck.

Moreover, the unjust enrichment claims should be dismissed because Plaintiffs did not

provide notice of unjust enrichment claims. The Opposition argues that Plaintiffs' pre-suit

notices were sufficient because the mortgage agreements only require notification of alleged

breaches of contract, "not that they need to list out every potential cause of action that might be

raised in a future lawsuit[.]". Opp. at 36. *See* Memorandum, Exs. 1-2. But the relevant section

of the mortgage agreements requiring pre-suit notice does not merely require notices only in the

event of an alleged breach of the mortgage agreement (as the Opposition argues), it requires

notice of any purported claim "that arises from the other party's actions pursuant to this Security

Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument. . . ." Compl., Ex. A at 10 (¶ 20), Ex. C at 10 (¶ 19). Further, the unjust enrichment claims are premised upon allegations that Mr. Cooper breached duties owed by reason of the mortgage agreements, or as the Complaint states: "Defendant's retention of these benefits is unjust because Defendant had no right to collect the Pay-to-Pay Fees under the Uniform Mortgages or applicable law." Compl. ¶ 174 (emphasis added). Accordingly, Plaintiffs' failure to provide pre-suit notice requires dismissal their unjust enrichment claims (along with their MLBA claims, discussed *infra* § V.D).

## III. PLAINTIFFS' COMMON LAW CLAIMS ARE BARRED BY THE VOLUNTARY PAYMENT DOCTRINE

Plaintiffs' common law contract and unjust enrichment claims should be dismissed for the additional reason that they are barred by the "voluntary payment" doctrine in the District and Florida. Under this doctrine, individuals who voluntarily submit payment cannot later seek to recover that same payment, regardless of whether payment "may have been made upon a mistaken belief as to the enforceability of the demand, or liability under the law, as long as payment is made with knowledge of the factual circumstances." *Hassen v. Mediaone of Greater Fla., Inc.*, 751 So. 2d 1289, 1290 (Fla. 1st DCA 2000); *see also Eagle Maint. Servs., Inc. v. D.C. Contract Appeals Bd.*, 893 A.2d 569, 582 (D.C. 2006) (District common law recognizes the "voluntary payment doctrine").

The Opposition claims that it would be premature to dismiss these claims because the application of the voluntary payment doctrine "necessarily involves a fact-intensive examination that cannot be resolved on a motion to dismiss[.]" Opp. at 35. This is not true—courts routinely dismiss claims at the pleading stage on the basis of voluntary payments where, as here, there is sufficient factual basis to conclude that the payments at issue were made voluntarily. *See, e.g.,*,

*Kuchenmeister v. HealthPort Techs., LLC*, 753 F. App'x 794, 798 (11th Cir. 2018) (affirming dismissal based of unjust enrichment claims on basis of voluntary payment and noting that "[t]he party seeking to recover payment bears the burden of showing that the voluntary payment doctrine does not apply"); *Sanchez v. Time Warner, Inc.*, No. 98-211-CIV-T-26A, 1998 WL 834345, at \*2 (M.D. Fla. Nov. 4, 1998) (dismissing claim on the basis of voluntary payment).

The Opposition also argues that dismissal under the voluntary payment doctrine is not warranted because Plaintiffs claim to have lacked "knowledge of the factual circumstances" that "the fees were illegal and inflated." Opp. at 37. However, based upon the allegations pleaded in the Complaint, Plaintiffs were well aware of cost of the pay-by-phone fees, and they voluntarily agreed to pay them at the stated price in each instance. Their *post hoc* claims that these fees were "inflated" rings hollow, as the Complaint never alleges that the paid fees were higher than what Plaintiffs agreed. Moreover, the fact that Plaintiffs now believe these fees were "illegal" likewise does not prevent application of the doctrine, as they were otherwise aware of the facts regarding the transaction, as they pertained to them—Plaintiffs agreed to pay the fee at the stated price in exchange for making mortgage payments by phone or online. *See Hassen*, 751 So. 2d at 1290. The fact that they now wish to undo these voluntary payments on the basis of supposed illegality is immaterial to the application of the voluntary payment doctrine.

The Middle District of Florida addressed a similar situation in *Sanchez v. Time Warner, Inc.*, where the plaintiff sued her cable service provider for breach of contract alleging that its late payment fees were excessive. 1998 WL 834345, at \*1. The court noted that, based on the allegations in the complaint, the plaintiff concedes that she paid the late fee after being advised that it had been assessed. *Id.* She was also aware of the amount of the assessed fee and paid it

14

anyway. *Id.* In granting the defendant's motion to dismiss pursuant to the voluntary payment

doctrine, the court explained:

> It is apparent from Plaintiff's Amended Complaint that she entered into a
> contract with Defendant. Additionally, it is clear from her Amended
> Complaint that Plaintiff knew failure to pay her bill within the time frame
> specified in Defendant's "Payment Policy" would trigger the assessment
> of a $6.00 late charge. Further, Plaintiff admits Defendant assessed her
> with at least one late charge, which she paid. These facts implicate the
> voluntary payment rule and act to bar the claims alleged.

*Id.* at *2 (internal citation omitted). The Complaint at bar describes at least the same level of

voluntariness as in *Sanchez*, if not higher. Here, Plaintiffs' relationship is governed by their

contractual borrower-servicer relationship (Compl. ¶¶ 12-13); they agreed to utilize the pay-by-

phone service at the stated price—in fact, unlike *Sanchez*, these Plaintiffs affirmatively selected

this service (*id.* ¶¶ 136, 147); and Plaintiffs voluntarily paid this fee on multiple occasions—even

before receiving the selected service, unlike *Sanchez* ( 1998 WL 834345, at *2). Accordingly,

the facts pleaded in the Complaint are more than sufficient for the Court to conclude that

Plaintiffs' voluntarily selected, accepted, and paid the fees at issue, and therefore, their claims

should be barred by the voluntary payment doctrine.

## IV.    PLAINTIFF MCFADDEN'S FDCPA CLAIM FAILS AS A MATTER OF LAW

As set forth in the Memorandum, Plaintiff McFadden's claim under the Fair Debt

Collection Practices Act, 15 U.S.C. § 1692f(1) ("FDCPA") is defective for the straightforward

reason that the Complaint does not plausibly plead any factual allegations that she was actually

in default at the time Mr. Cooper took on the servicing of her mortgage loan. *See* Memorandum

at 20. *See* 15 U.S.C. § 1692a(6)(F)(iii) ("The term 'debt collector' . . . does not include . . . any

person collecting or attempting to collect any debt owed . . . to the extent such activity . . .

concerns a debt which was not in default at the time it was obtained by such person."). Although

the Complaint does make a cursory reference to her supposed "default," (Compl. ¶¶ 67-68), it

15

provides no alleged facts showing how she was in default, when she entered in default, when she cured default, when Mr. Cooper obtained servicing rights for her mortgage loans, or even what her definition of "default" supposedly means. Such threadbare and conclusory language does not satisfy even the basic pleading strictures of Federal Rules 8(a) and 12. *See Oya v. Wells Fargo Bank, N.A.*, No. 3:18-CV-01999-H-BGS, 2019 WL 157802, at \*3 (S.D. Cal. Jan. 9, 2019) (dismissing FDCPA claim for failure to plausibly plead facts in support of conclusory allegation of default).

Plaintiffs cite to *Edmond v. Am. Educ. Servs.*, No. 10-0578(JDB), 2010 WL 4269129, at \*5 (D.D.C. Oct. 28, 2010), for the proposition that bald pleading of default passes muster. Opp. at 6 ("This allegation is sufficient, as all that is required at the pleading stage is 'an allegation that plaintiff's loan was in default when [the defendant] acquired it.'" (quoting *Edmond*)). This is—at best—a misreading of that decision. *Edmond* dismissed the plaintiff's FDCPA claim because the complaint failed to include any allegation of default whatsoever. Nothing in that decision, or elsewhere, supports Plaintiff's argument that the FDCPA's "default" element is somehow carved out of Rule 8(a)'s plausible pleading requirement. This fact is recognized by the *Oya* decision which dismissed the plaintiff's FDCPA claim for similarly only offering a threadbare and conclusory allegation of default. *Oya*, 2019 WL 157802. Plaintiffs' Opposition does not—and cannot—distinguish *Oya*, except to argue that it is inconsistent with its misstated *Edmond* interpretation. Opp. at 7.[5]

---

[5] Nor do the cases cited in the Opposition's footnote 1 support this argument: *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1241 (11th Cir. 2012) ("Plaintiff's complaint alleges that Bourff defaulted on the loan in April 2009 *by failing to tender the required monthly payment.*") (emphasis added); *Buffington v. U.S. Bank NA*, No. CV-14-00615-PHX-DJH, 2014 WL 7648937, at \*1, \*12 (D. Ariz. Oct. 28, 2014) (detailing alleged timeline and circumstances of alleged default described in complaint and noting further allegations that defendant "began servicing the Note in September 2013, 'well after the Note was alleged to be in default, and/or

Moreover, the pay-by-phone fees do not violate the FDCPA because they are authorized by the mortgage agreement and permitted by law for the reasons outlined above and the Memorandum, Section I.A. *See* 15 U.S.C. § 1692f(1) (prohibiting collection fees unless they are "expressly authorized by the agreement creating the debt or permitted by law"). In short, Plaintiff McFadden's mortgage agreement contemplates Mr. Cooper's ability to collect additional fees, such as the pay-by-phone fees here, as well as an additional provision regarding Mr. Cooper's ability to apply additional fees. Compl., Ex. A at 8 (¶ 14) ("In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.").

Further, Plaintiffs still have not identified any law that prohibits Mr. Cooper from collecting a voluntary fee in exchange for an additional payment method, because none exists. Instead, as several courts have concluded, a plaintiff may not "opt in" to an FDCPA claim by paying fees that were voluntarily paid and reasonably avoidable. *See Bryant v. Aargon Collection Agency, Inc.*, No. 17-CV-14096, 2017 WL 2955532 (S.D. Fla. June 30, 2017); *Lee v. Main Accounts, Inc.*, 125 F.3d 855 (6th Cir. 1997) (finding 5% charge on "optional payment choice" to pay by credit card was "not an unconscionable or deceptive debt collection practice")); *Heald v. Ocwen Loan Servicing, LLC,* No. 3:13-cv-993-J-34JRK, 2014 WL 4639410, at *5 (M.D. Fla. Sept. 16, 2014) (dismissing FDCPA claim with similar "Loan Charges" provision in mortgage agreement). As outlined in the Complaint, Plaintiffs only

---

treated as though it were in default'"); *Moses v. The Law Office of Harrison Ross Byck,* No. 3:08cv1939, 2009 WL 2411085, at *3 (M.D. Pa. Aug. 4, 2009) (denying motion to dismiss FDCPA claim where complaint described circumstances of alleged default: "Plaintiff believes, and therefore avers, that CACH was the holder of this alleged debt at all times relevant hereto, acquired this alleged debt after it was in default, and enlisted DGB and/or Law Office to collect the debt.").

"sometimes" or "occasionally" chose to make mortgage payments by phone, incurring pay-by-phone fees. Compl. ¶¶ 136, 147. They were aware that they had the option to make a payment by phone for a fee or utilize another (no fee) payment method, (in all likelihood to avoid higher late payment fees or default). Neither common sense, nor the law permits Plaintiffs to impose FDCPA liability for these voluntary and reasonably-avoidable fees.[6]

## V.   THE STATE LAW CLAIMS ARE DEFECTIVE AND FAIL FOR THE REASONS DESCRIBED IN THE MEMORANDUM

### A.   The Florida Consumer Collection Practices Act Claims Do Not Establish the Essential Element of Actual Knowledge.

The Complaint fails to adequately plead a violation of the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, *et seq*. ("FCCPA") because it contains no plausible allegation that Mr. Cooper possessed "actual knowledge" that it did not have a legal right to charge the pay-by-phone fees (because, in fact, it did have a right to do so). *See* Memorandum at 24. The Opposition raises two unavailing arguments in response. First, Plaintiffs argue that actual knowledge is a fact-intensive determination not suited for resolution on a motion to dismiss, but Florida courts routinely grant motions to dismiss on these grounds. *See* Opp. at 11; *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1373 (S.D. Fla. 2011) (granting motion to dismiss on FCCPA claim for want of actual knowledge); *In re Lamb*, 409 B.R. 534, 541-42 (Bankr. N.D. Fla. 2009) (same). Here, the Complaint's failure to plausibly allege actual knowledge is more than sufficient to make this determination at this juncture.

Second, Plaintiffs argue that they may sidestep the plausible pleading requirements by vaguely referencing circumstantial facts that together could suggest actual knowledge. *See* Opp.

---

[6] *See also Waddell,* 395 F. Supp. 3d 676. (dismissing claim against mortgage servicer alleging that charging pay-by-phone fee was a deceptive debt collection practice under North Carolina Collection Practices Act).

at 12. However, the only probative issue at this point is whether the actual knowledge component of the FCCPA was itself duly alleged in the Complaint, which it was not. The authority that the Opposition cites in favor of its "circumstantial evidence" argument is likewise inapplicable and unpersuasive. *See Blake v. Seterus, Inc.*, No. 16-21225-CIV-JLK, 2017 WL 543223 at \*3 (S.D. Fla. Feb. 9, 2017) (explaining that evidence of knowledge may be derived from allegation that "it was Defendant's regular practice to include *unincurred, estimated costs* in the reinstatement amount," despite the agreement and servicing guidelines' prohibition of such conduct) (emphasis added); *Williams v. Educ. Credit Mgmt. Corp.*, 88 F. Supp. 3d 1338, 1347 (M.D. Fla. 2015) (circumstantial evidence included plaintiff informing defendant that debt was not his, and defendant being contacted about potential mistaken identity by identity theft protection company). No such "circumstantial evidence" is referenced in the instant Complaint.

## B. The Complaint's FDUTPA Claims Likewise Fail as a Matter of Law.

### 1. No *Per Se* FDUTPA Violation Exists Because Plaintiffs Cannot Establish Any Underlying Violations of Law.

The Complaint fails to plead a *per se* violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*. ("FDUTPA"), which may arise when a claimant can establish some other underlying violation of law. Fla. Stat. § 501.203(3). Here, Plaintiffs point to alleged violations of the FDCPA and FCCPA as grounds for a *per se* FDUTPA violation (Opp. at 13-14), but for the reasons discussed herein and in the Memorandum, no such violations exist, defeating the FDUTPA claim under Fla. Stat. § 501.203(3).

### 2. Plaintiffs' Decision to Voluntarily Pay Fees Involved Neither Deception Nor Unfairness.

The Complaint also fails to establish that any deception or unfairness accompanied the payment of the fees here, as required to state a FDUTPA claim under Fla. Stat. § 501.204(1). Plaintiffs allege that they elected to pay their mortgages by phone, incurring the pay-by-phone

19

fees, despite other no-fee options being available to them. *See* Compl. ¶¶ 136, 147 (Plaintiffs only "sometimes" or "occasionally" made phone payments). Plaintiffs have alleged, and can allege, no material deceit or misrepresentation about this exchange sufficient to give rise to FDUTPA liability. *See Washington v. LaSalle Bank Nat. Ass'n*, 817 F. Supp. 2d 1345 (S.D. Fla. 2011) (finding no FDUTPA violation for disclosed fee that was not misleading).

Nor are the pay-by-phone in any way "unfair" under the FDUTPA. Fla. Stat. § 501.204(1). Plaintiffs identify no public policy that Mr. Cooper breached by offering Plaintiffs an additional payment method, which they repeatedly and voluntarily utilized, nor can they. The Opposition suggests—without authority—that the unfairness arises because "Plaintiffs and class members generally did not *choose* Mr. Cooper as their loan servicers." Opp. at 14 (emphasis in original). What this argument leaves unsaid, however, is that Plaintiffs did choose to pay the nominal fees associated with making phone payments, and they were well aware that this service was optional and incurred an associated fee. No unfairness arises as a result, nor any public policy violation. This conclusion is supported by *Waddell* 395 F. Supp. 3d 676, where the court concluded that the plaintiff's unfair and deceptive trade practices claim—which is substantively identical to the FDUTPA claim alleged here—should be dismissed because:

> [C]harging customers a fee for paying by phone is not unfair or deceptive. . . . [Defendant's] fee for an optional service that [plaintiff] chose for her convenience is not plausibly deceptive (i.e., capable of or tending to deceive) or unfair (i.e., immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers).

*Id.* at 685.

In recognition of these deficits, the Opposition argues that, even if the pay-by-phone fees were not inherently deceptive or unfair (they were not), Mr. Cooper's disclosures of the fees violated the FDUTPA under the inapplicable "least sophisticated consumer" standard. Opp. at

15.  At the outset, the FDUTPA does not utilize the "least sophisticated consumer" standard in analyzing alleged deception—instead, it applies a "reasonable consumer" standard. *Compare* Opp. at 15, *with Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983-984 (11th Cir. 2016) ("To satisfy the first element [of an FDUTPA claim], the plaintiff must show that 'the alleged practice was likely to deceive *a consumer acting reasonably in the same circumstances*'") (citation and quotation omitted) (emphasis added); *Maor v. Dollar Thrifty Auto. Grp., Inc.*, No. 15-22959-CIV-MARTINEZ-GOODMAN, 2018 WL 4698512, at \*6 (S.D. Fla. Sept. 30, 2018) (same).  No reasonable consumer acting reasonably under the circumstances could have been misled by the pay-by-phone fees.  A reasonable consumer, like these Plaintiffs, would fully understand that she has several payment options when making monthly mortgage payments, some of which involve a fee—and that if she selects a payment option involving a fee, she will be assessed that fee.  There is nothing unfair or deceptive about that transaction.

**C.    The DCCPPA Claim Likewise Fails as a Matter of Law.**

**1.    The Statute Does Not Apply to Mortgage Servicers.**

The Complaint's claim under the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.* ("DCCPPA") fails for the threshold reason that the statute applies only to "consumer-merchant relationships," which does not include loan servicers such as Mr. Cooper.  *Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 280 (D.D.C. 2011); *Mushala v. US Bank, Nat'l Ass'n*, No. CV 18-1690 (JDB) 2019 WL 1429523, at \*9 (D.D.C. Mar. 29, 2019).  Plaintiffs attempt to avoid the clear holdings of *Busby* and *Mushala* by arguing that mortgages servicers *should* be covered within the broad scope of the DCCPPA's language, and noting that the D.C. Court of Appeals has not addressed the issue.  *See* Opp. at 16-20.  This argument is a red herring.  Although the Court of Appeals has not yet ruled directly on this issue, the U.S. District Court for the District of Columbia has resolved the issue in *Busby*, where the court held

21

that mortgage servicers are excluded from the statute's consumer-merchant definition. *Busby*,

772 F. Supp. 2d at 280 (D.D.C. 2011) (dismissing DCCPPA claim against mortgage servicer).

Federal courts are empowered to address issues of first impression of state law, by which they

"attempt to achieve the same outcome [they] believe[] would result if the State's highest court

considered this case." *Saiyed v. Counsel on Am.-Islamic Relations Action Network, Inc.*, 346 F.

Supp. 3d 88, 94 (D.D.C. 2018).[7]

The Opposition claims that the DCCPPA should be construed consistent with guidance

from the Federal Trade Commission ("FTC"), which has brought enforcement actions against

loan servicers for unfair and deceptive practices. *See* Opp. at 19-20. This argument also misses

the mark, because the DCCPPA does not rely upon FTC guidance in interpreting every aspect of

the statute, but provides: "In construing the term 'unfair or deceptive trade practice' due

consideration and weight shall be given to the interpretation by the Federal Trade Commission

and the federal courts *of the term 'unfair or deceptive act or practice.'*" D.C. Code § 28-3901

(emphasis added). FTC guidance does not override the statutory scope of the consumer-

merchant relationship, which as *Busby* already decided, does not include mortgage servicers.

### 2. The Pay-by-Phone Fees Were Not Misleading.

The DCCPPA claim fails for the additional reason that the pay-by-phone fees were not

misleading. *See* Memorandum at 27-28. The Opposition argues that the pay-by-phone fees

---

[7] Plaintiffs also argue that, because Mr. Cooper also originated Ms. Wilson's loan, its conduct as a mortgage servicer somehow falls within the DCCPPA's consumer-merchant definition. This argument is not supported by *Busby* or any other authority. Plaintiffs' DCCPPA claim is based solely on Mr. Cooper's role as Ms. Wilson's mortgage servicer. The fact that Mr. Cooper was previously Ms. Wilson's lender is entirely irrelevant to the claim. One must look to the relationship of the parties as pertinent to the claim alleged and nothing more. To do otherwise would lead to the incongruent result that Mr. Cooper's servicing activity with respect to Plaintiff Wilson might fall within the purview of the DCCPPA, but the identical servicing activity with respect to most of the other members of the purported class, for whom Mr. Cooper would not have been the original lender, would fall out of the statute's scope.

violate the DCCPPA's prohibition on "misleading" practices, because Mr. Cooper did not have a

legal basis to collect them under FHA/HUD Guidelines and the FDCPA, and because Mr.

Cooper purportedly failed to disclose material information regarding the "pass through" nature of

the fees. *See* Opp. at 21-24. As described above and in the Memorandum, the pay-by-phone

fees violate neither the FHA/HUD Guidelines, nor the FDCPA, nor any other law or regulation.[8]

Further, as the *Waddell* court held in dismissing a similar claim, "charging customers a fee for

paying by phone is not unfair or deceptive. . . . [Defendant's] fee for an optional service that

[plaintiff] chose for her convenience is not plausibly deceptive (i.e., capable of or tending to

deceive) or unfair (i.e., immoral, unethical, oppressive, unscrupulous, or substantially injurious

to consumers." 395 F. Supp. 3d at 685.

      Plaintiffs' second argument in support of its "misleading" DCCPPA claim, that Mr.

Cooper omitted "material" facts regarding the pay-by-phone fees, likewise fails. The

"materiality" standard under the DCCPPA is not "a loose one," but is "a significant term that has

specific meaning requiring proof," of a tendency to mislead. *Saucier v. Countrywide Home*

*Loans*, 64 A.3d 428, 444 (D.C. 2012). Here, the alleged omission—that Mr. Cooper would

retain a portion of the pay-by-phone fee—is not material to the decision Plaintiffs faced or the

payment options presented to them. Plaintiffs chose in each instance to select the phone-

payment option when convenient for them (likely avoiding late fees or default), paying the stated

---

[8] Plaintiffs also cite *Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055
(D.C. 2008) for the proposition that "misrepresenting and omitting one's actual rights and
responsibilities constitutes a violation." Opp. at 22. In *Fort Lincoln*, however, the agreement at
hand, which Defendant misrepresented and obligated Defendant to create non-profit organization
for condominium owners, "substantially affect[ed] the use or maintenance" of the units, which is
plainly not the case with the pay-by-phone fees and Plaintiffs' properties.

fee amount, and receiving the benefit of that service.[9]  Plaintiffs do not explain how they

reasonably would have acted differently if they had known the exact internal cost breakdown of

the pay-by-phone fees, and it defies common sense to conclude that they would have chosen to

pay higher late payment charges or enter default instead.  Nor is Plaintiffs' broad claim that "a

reasonable consumer would not pay such fees if he or she knew the truth" supported.  Opp. at 23.

In reality, a reasonable consumer would opt to pay a nominal fee rather than incur higher late

fees or enter default, regardless of how that nominal fee was internalized by his or her loan

servicer.

### D.    The D.C. Mortgage Lender and Broker Act Claim Should be Dismissed.

Plaintiff Wilson's claim under the Mortgage Lender and Broker Act, D.C. Code § 26-

1101, *et seq.* ("MLBA") fails for the threshold reason that she failed to provide pre-suit notice of

this claim as required by Section 19 of her mortgage agreement.  *See* Compl., Ex. C at 10 (¶ 19);

Memorandum at 28-29; *supra* at 11-12.  The Complaint also fails to plausibly allege that Mr.

Cooper made any misleading representations or omissions to Plaintiff Wilson regarding the

assessment, amount, or services provided in exchange for the fees, and thus, as described in

§ V.C *supra*, the MLBA claim is defective for this additional reason.[10]

---

[9] The Opposition also claims that *Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 130 F. Supp. 3d 236 (D.D.C. 2015) supports DCCPPA liability, but that case involved allegations that defendants were "charging [plaintiff] premiums in excess of her contractual obligation for illusory insurance," (*Id*. at 265-66), which is not at issue here.  Plaintiffs selected this particular payment method and received exactly what was expected in exchange.  In addition, the *Campbell* plaintiff alleged that defendants operated a certain program that was expressly prohibited by District law, making it impossible for plaintiffs there to receive the benefit of the deal.  *Id.*  No similar general prohibition against pay-by-phone fees exists in the District.

[10] The Opposition argues that *Mushala*, 2019 WL 1429523 does not compel the dismissal of the duplicative MLBA claim here, because that "plaintiff's claims were precluded by *res judicata*" and its "brief discussion of the applicability of the DCCPPA is merely *dicta*[.]"  Opp. at 20.  But the reason *Mushala* dismissed the MBLA claim on the basis of *res judicata* was that it was duplicative of the defective FDCPA claim, and this dismissal is far from *dicta*.  Here too, Plaintiffs' faulty MLBA claim is premised on the same factual allegations as its other defective

## CONCLUSION

For the foregoing reasons and those contained in its supporting Memorandum of Points and Authorities, Mr. Cooper respectfully requests that the Court grant its Motion to Dismiss the Complaint in its entirety for failure to state a claim upon which relief may be granted.

**Date**:  April 20, 2020                                  Respectfully Submitted,

                                                                    **BUCKLEY LLP**

                                                                     */s/ Matthew P. Previn*
                                                                    Matthew P. Previn (Bar No. 460228)
                                                                    1133 Avenue of the Americas, Suite 3100
                                                                    New York, NY 10036
                                                                    mprevin@buckleyfirm.com
                                                                    (212) 600-2310

                                                                    Timothy J. Coley (Bar No. 997762)
                                                                    2001 M Street NW, Suite 500
                                                                    Washington, DC 20036
                                                                    tcoley@buckleyfirm.com
                                                                    (202) 349-8036

                                                                    *Counsel for Defendant Nationstar*
                                                                    *Mortgage LLC d/b/a Mr. Cooper*

---

claims, and therefore should be dismissed.  Plaintiffs' citation to *Logan v. LaSalle Bank Nat. Ass'n*, 80 A.3d 1014, 1026 (D.C. App. 2013) is equally unavailing, as that decision recognized that "a mere recitation of the very barest elements of the claim" is not satisfactory, as Plaintiffs have done here.  *See* Opp. at 24-25; *Logan* at 1026 (quoting the trial court and noting analysis correct but for incorporation of earlier paragraphs in Complaint that address other sufficient grounds).