**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **JACKERLY MCFADDEN, *et al.*,**<br><br>   **Plaintiffs,**<br><br>   v.<br><br>**NATIONSTAR MORTGAGE LLC<br>d/b/a MR. COOPER,**<br><br>   **Defendant.** | **Case No.<br>20-cv-166-EGS-ZMF** |

## REPORT AND RECOMMENDATION

   Plaintiffs McFadden and Wilson, on behalf of themselves and similarly situated class members, raise seven claims related to mortgage lender services provided by Defendant Nationstar Mortgage LLC, d/b/a/ Mr. Cooper ("Cooper"). Plaintiffs claim violations related to: (1) the Federal Fair Debt Collection Practices Act ("FDCPA"); (2) the Florida Consumer Collection Practices Act ("FCCPA"), (3) the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); (4) Breach of Contract claims under Florida and D.C. common law; (5) the District of Columbia Mortgage Broker Lender Act ("MBLA"); (6) the District of Columbia Consumer Protection Procedures Act ("DCCPPA"), and Unjust Enrichment under Florida and D.C. common law. *See* ECF No. 1 (Compl.). Pursuant to Local Civil Rule 72, Judge Sullivan referred this case to a magistrate judge for full case management. *See* Minute Order (Oct. 13, 2020). Cooper filed a Motion to Dismiss for failure to state a claim. *See* ECF No. 13, 14 (Def.'s MTD) at 6. After reviewing the Motion, Plaintiffs' Response, Defendant's Reply, and submissions of supplemental authority, the undersigned recommends that the Court DENY Cooper's Motion.

## I.      **BACKGROUND**

Cooper is a national mortgage-loan servicer.  *See* Compl. ¶ 2.  Cooper purchased the loan rights for Plaintiffs' mortgages.  *See id.* ¶¶ 12, 13.  When borrowers made a payment over the phone, Cooper charged borrowers a fee of $14 for using Cooper's Interactive Voice Response ("IVR") system or $19 for speaking directly with a representative (collectively "Pay-to-Pay" fees). *See id.* ¶ 61.  A third-party service operated by Western Union processed these payments, which costed an estimated $0.50.  *See id.* ¶ 6.  Although there were other cost-free methods of payment available, customers frequently used this service to speed up processing time to avoid late payments.  *See* Def.'s MTD at 5, 8.

Ms. McFadden owned real property in Florida.  *See* Compl. ¶ 66.  Ms. McFadden's mortgage was in default at the time Cooper acquired the servicing rights to it.  *See id.* ¶ 67.  Ms. McFadden "sometimes" made payments over the phone.  *See id.* ¶ 69.  In July 2019 and August 2019, Cooper charged her $19.00 fees to make such payments.  *See id.*  Ms. Wilson owned real property in the District of Columbia secured by a mortgage and a Federal Housing Administration (FHA)-insured Deed of Trust.  *See id.* ¶ 81.  Ms. Wilson made payments over the phone.  *See id.* ¶ 83.  Cooper charged her $14.00 to make such payments, including in 2019.  *See id.*  Plaintiffs allege that these were impermissible Pay-to-Pay fees because Cooper paid an estimated $0.50 per transaction and surreptitiously kept the remainder as profit.  *See id.* ¶¶ 2, 6.

This Court has diversity jurisdiction—Plaintiffs reside in the District of Columbia and Florida and Cooper is headquartered in Texas and incorporated in Delaware.  *See* ECF No. 1-4 (Civil Cover Sheet).  Plaintiffs joined their claims by seeking a class action under Federal Rule of Civil Procedure 23.  *See* Compl. ¶ 95.  Plaintiffs' action covers the following classes of persons allegedly harmed by Cooper: (1) Ms. McFadden and a nationwide class under the FDCPA; (2) Ms.

McFadden and a Floridian class under the FCCPA; (3) Ms. McFadden and a Floridian class under the FDUTPA; (4) Ms. McFadden, a Floridian class, Ms. Wilson, a FHA class, and a D.C. class for breach of contract; (5) Ms. Wilson and a D.C. class under the MLBA; (6) Ms. Wilson and a D.C. class under the DCCPA; and (7) Ms. McFadden, a Floridian class, Ms. Wilson, and a D.C. class for unjust enrichment. *See id*. ¶¶ 107–75.

## II.   <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 12(b)(6), a court must grant a motion to dismiss when the complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A plaintiff fails to state a claim upon which relief can be granted when her complaint does not allege sufficient facts to make the claim to relief "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  While a plaintiff "need not establish a *prima facie* case" to survive a motion to dismiss, courts can "explore a plaintiff's *prima facie* case" to determine whether relief could ever be granted on the stated facts.  *Redmon v. U.S. Capitol Police*, 80 F. Supp. 3d 79, 86 (D.D.C. 2015) (quoting *Hutchinson v. Holder*, 668 F. Supp. 2d 201, 211–12 (D.D.C. 2009)).  Moreover, the stated facts must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

In reviewing a Rule 12(b)(6) motion, the court must assume the complaint's factual allegations are true and must grant the plaintiff the "benefit of all inferences that can be derived from the facts alleged."  *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting

*Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)).  Courts are not, however, required "to accept as true a legal conclusion couched as factual allegation."  *Papasan*, 478 U.S. at 286.

## III.   ANALYSIS

### A.   Count I: FDCPA Violations

The FDCPA precludes a *debt collector* from "collect[ing] any amount (including any interest, fee, charge, or expense *incidental* to the principal obligation) unless such amount is *expressly authorized* by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1) (emphasis added).  Cooper argues that: (1) Cooper was not a "debt collector"; (2) the Pay-to-Pay fees were voluntary; and (3) the FDCPA did not prohibit these expressly authorized fees.  *See* Def.'s MTD at 3–4.

#### 1.   *Cooper Is a "Debt Collector"*

Mortgage-loan servicers are exempted from the FDCPA's definition of a "debt collector" when they acquire a loan that is not already in default.  15 U.S.C. § 1692a(6)(F)(iii).  A plaintiff merely must make "an allegation [at the pleading stage] that plaintiff's loan was in default when [the defendant] acquired it."  *Edmond v. Am. Educ. Servs.*, No. 10-cv-578, 2010 WL 4269129, at *5 (D.D.C. Oct. 28, 2010).  This is because the court must accept "Plaintiff's allegations as true and constru[e] them in the light most favorable to the Plaintiff."  *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1241 (11th Cir. 2012).

The Complaint sufficiently pleads the fact of default: "At the time Cooper acquired the servicing rights, Ms. McFadden's mortgage was in default."  Compl. ¶ 67.  "Plaintiff has provided Defendant with the requisite 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  *Neild v. Wolpoff & Abramson, L.L.P.*, 453 F. Supp. 2d 918, 924 (E.D. Va. 2006) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "If a pleading fails to specify the allegations in a

manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding.  Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56.'"[1]  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002).

Cooper demands additional facts to include "how [Ms. McFadden] was in default, when she entered in default, when she cured default, [and] when Mr. Cooper obtained servicing rights for her mortgage loans."  ECF No. 18 (Def.'s Reply) at 16.  Yet courts, including in this District, only dismiss similar complaints if a "Plaintiff does not allege that his account was in default." *Edmond*, 2010 WL 4269129, at *5; *see also Brown v. Loancare, LLC*, No. 20-cv-280, 2020 WL 7389407, at *3 (W.D.N.C. Dec. 16, 2020) (defendant was not a debt collector only because "Plaintiff has alleged she has never been in default on her mortgage payments").  Cooper's demand to include the "when, [when, when], and how" assumes "an era of evidentiary pleading" that is not supported by controlling precedent.  *See Hassan v. City of New York*, 804 F.3d 277, 295–96 (3d Cir. 2015).[2]  Moreover, the Complaint answers the only critical "when" question: When Cooper obtained Ms. McFadden's loan, was it in default?  Yes.  *See* Compl. ¶ 67.

---

[1] Courts regularly consider the debt collector question at summary judgment.  *See Ramirez-Alvarez v. Aurora Loan Servs., LLC*, No. 09-cv-1306, 2010 WL 2934473, at *5 (E.D. Va. July 21, 2010) (granting summary judgment for mortgage-loan servicer which was not a debt collector because it "received the debt in question while it was not in default"); *Mondonedo v. Sallie Mae, Inc.*, No. 07-cv-4059, 2009 WL 801784, at *5 (D. Kan. Mar. 25, 2009) (granting summary judgment for loan servicer which "obtained the loans originated by [a bank] for servicing prior to default and is exempt from liability under the FDCPA").

[2] The court in *Oya v. Wells Fargo Bank, N.A.* required additional "factual allegations," but gave no explanation why they were needed, mitigating any precedential value from this out-of-district case.  No. 18-cv-1999, 2019 WL 157802, at *3 (S.D. Cal. Jan. 9, 2019).  Moreover, such requirement would run contrary to the liberal notice pleadings requirements, *see infra* note 8, and that "[d]ismissals pursuant to Rule 12(b)(6) are generally disfavored," *Harris v. Bowser*, 369 F. Supp. 3d 93, 105 (D.D.C. 2019).

2.      *Pay-to-Pay Fees Are Incidental Even If Voluntary*

To establish a § 1692f(1) violation, a plaintiff "must show that the money demanded of her was incidental to a claimed debt." *Longo v. L. Offs. of Gerald E. Moore & Assocs., P.C.*, No. 04-cv-5759, 2005 WL 8153247, at *3 (N.D. Ill. Feb. 3, 2005) (cleaned up). Pay-to-Pay fees are "incidental to the payment of the principal obligation" because the "borrower's purpose in using the [pay-by-phone system] is to make their mortgage payment" and would have "no reason to pay the fee but for the need to pay the principal obligation." *Lembeck v. Arvest Cent. Mortg. Co.*, 498 F. Supp. 3d 1134, 1136 (N.D. Cal. Nov. 3, 2020). Convenience fees are also "incidental" to the underlying debt if the fees "inure benefits to the collector." *McWhorter v. Ocwen Loan Servicing, LLC*, No. 15-cv-1831, 2017 WL 3315375, at *7 (N.D. Ala. Aug. 3, 2017) (quoting *Flores v. Collection Consultants of Cal.*, No. 14-cv-771, 2015 WL 4254032, at *9 (C.D. Cal. Mar. 20, 2015).

The Pay-to-Pay fees here inured benefits to Cooper which retained over 90% of the fees. *See* Compl. ¶ 6. Although courts are split on this issue, *see Lindblom v. Santander Consumer USA, Inc.*, No. 15-cv-990, 2016 WL 2841495, at *4–7 (E.D. Cal. May 9, 2016) (analyzing district court split), "the majority of courts" have found that "convenience fees derived from debt-payment methods are 'incidental' to the debt being paid," *Caldwell v. Freedom Mortg. Corp.*, No. 19-cv-2193, 2020 WL 4747497, at *3 (N.D. Tex. Aug. 14, 2020). Thus, the undersigned "finds that the pay-to-pay fees in this case are 'incidental' to the underlying debt." *Dees v. Nationstar Mortg., LLC*, 496 F. Supp. 3d 1043, 1047 (S.D. Tex. 2020) (collecting cases). Despite Cooper's protestations, "[i]t is immaterial that the fee was optional and fully disclosed if the fee is impermissible altogether." *Acosta v. Credit Bureau of Napa County*, No. 14-cv-8198, 2015 WL 1943244, at *3–4 (N.D. Ill. Apr. 29, 2015).[3]

---

[3] *See infra* Part III(D)(2) for further discussion of the voluntary payment doctrine.

3.    *The FDCPA Does Not Permit Pay-to-Pay Fees*

i.    *Fees expressly authorized by agreement*

It is unlawful for a debt collector to collect a fee incidental to the principal obligation "unless such amount is *expressly authorized* by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1) (emphasis added). "[T]he Court observes that nowhere in the parties' loan documents are the pay-to-pay fees even mentioned, much less expressly authorized." *Dees.*, 496 F. Supp. 3d at 1048; *see* Compl. ¶ 65.

Cooper believes the following catchall provision in the mortgage agreement provides express authority to charge Pay-to-Pay fees:

> Loan Charges.  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

Compl., Ex. A at 8 (¶ 14); Def.'s MTD at 21–22.  This provision covers nearly every fee under the sun, but does it *expressly authorize* the Pay-to-Pay fees in question?  The parties do not analyze what "expressly" means here.  "And, there is no case law discussing how we should interpret this language in this context.  We thus turn for guidance to the common definition of 'express' as explicit, in contrast to implicit or inferred.  *Black's Law Dictionary*, for instance, defines 'express' as clear; definite; explicit; plain . . . Made known distinctly and explicitly, and not left to inference." *Johnson v. Ashcroft*, 286 F.3d 696, 702 (3d Cir. 2002) (cleaned up).  The above provision creates an *inference* as to the specific fees that it authorizes—*i.e.*, ones that are permitted by law and not expressly forbidden by the agreement.  Yet it does not *explicitly* name third-party

payment processor fees or even a larger umbrella under which such fees would fall.  *See McWhorter*, 2017 WL 3315375 at *7 (plaintiffs who were charged convenience fees for payments over the phone did not "expressly agree" to such fees in their mortgage agreements).  This distinction is stark when comparing other fees which the provision authorizes by name: "attorneys' fees, property inspection and valuation fees."  Compl., Ex. A at 8 (¶ 14).  Cooper should have added convenience fees to this list of expressly permitted fees if it wanted to charge them.

Cooper's interpretation reads the term "expressly" out from § 1692f(1).  And it creates a race to the bottom as future agreements would all contain a similar two-sentence catchall provision without expressly naming any particular fees.  This would effectively end § 1692f(1) suits as *all* fees would become expressly authorized, running afoul of Congress' intent to "eliminat[e] abusive practices in the debt collection industry, and also [] to ensure that 'those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'"  *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008) (quoting § 1692(e)).  Moreover, "[a]s remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes."  *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 302 (3d Cir. 2014) (quotation omitted).  Ultimately, a catchall provision like this cannot be stretched to categorically cover every fee and at the same time explicitly authorize every fee.

"The complaint alleges, and the court accepts as true, that the contract creating the debt did not expressly provide for the [$14.00 or $19.00] fee."  *Longo*, 2005 WL 8153247, at *5; *see* Compl. ¶ 61, 65.  Although there is a dearth of case law, at least one court has found that a complaint plausibly alleged a FDCPA violation when "the underlying contract [did] not authorize the [phone payment convenience] fee and the debt collector receive[d] all or some of the fee."  *McWhorter*, 2017 WL 3315375, at *7.

The parties dispute a single sentence in *Beer v. Nationstar Mortg. Holdings, Inc.*, related to this point.  *See* No. 14-cv-13365, 2015 WL 13037309, at *3 (E.D. Mich. July 15, 2015).  The court dismissed the complaint for "fail[ing] to identify a contractual provision prohibiting the alleged 'unnecessary fees and costs;' in fact, the Mortgage provide[d] that 'the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.'"  *Id.*  The FDCPA, however, does not require Plaintiffs to identify any provision at all (let alone specific prohibitions); rather, all that is needed is the *absence* of a provision expressly authorizing a fee.  *See* § 1692f(1).  The *Beer* court provides no explanation for why the identical catchall qualifies as an express authorization.  That one clause represents its *entire* analysis, which is insufficient to make the sweeping conclusion that Cooper seeks.  And unlike in *Beer*, Plaintiffs identified Pay-to-Pay fees as unauthorized by their mortgage agreements and go even further, pointing to the same provision as prohibiting these fees as ones "expressly prohibited by . . . Applicable Law" as discussed below.  *See* Compl. ¶ 65; Ex. A at 8 (¶ 14).  Plaintiffs win this tug-of-war.

### ii.  *Fees permitted by law*

"*If state law expressly permits service charges*, a service charge may be imposed even if the contract is silent on the matter; *[i]f state law expressly prohibits service charges*, a service charge cannot be imposed even if the contract allows it; *[but if] state law neither affirmatively permits nor expressly prohibits service charges*, a service charge can be imposed only if the customer expressly agrees to it in the contract."  *Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2d Cir. 1999).  "[T]he word 'permitted' requires that [Cooper] identify some state statute which 'permits,' i.e. authorizes or allows, in however general a fashion, the fees or charges in question."  *McWhorter*, 2017 WL 3315375, at *7 (quoting *Newman v. Checkrite California, Inc.*, 912 F. Supp.

9

1354, 1368 (E.D. Cal. 1995)).  Cooper fails to do so, likely because Pay-to-Pay fees are not *expressly* permitted by relevant state law, let alone the FDCPA.  *See generally* Def.'s MTD.

    B.    <u>Count II: FCCPA Violation</u>

The FCCPA forbids a party from claiming or threatening "to enforce a debt when such person knows that the debt is not legitimate, or assert[ing] the existence of some other legal right when such person knows that the right does not exist."  Fla. Stat. § 559.72(9).  To recover on a FCCPA claim, a defendant must have "possessed *actual knowledge*" that it did not have a legal right to charge Pay-to-Pay fees.  *Prescott v. Seterus, Inc.*, 635 F. App'x 640, 646 (11th Cir. 2015).  This is a factual question that typically should not be addressed in a 12(b)(6) motion to dismiss.  *See id.* (reversing grant of summary judgment for consideration of this factual question).  Indeed, "at the dismissal stage . . . Plaintiff [need] only allege circumstantial facts to demonstrate Defendant's actual knowledge of an FCCPA violation."  *Blake v. Seterus, Inc.*, No. 16-cv-21225, 2017 WL 543223 (S.D. Fla. Feb. 9, 2017).

There are sufficient circumstantial facts that Cooper had actual knowledge that it did not have a right to charge Pay-to-Pay fees.  As one of the nation's largest mortgage-loan servicers, which includes thousands of Florida mortgages, Cooper should be aware of the requirements of Florida debt collection laws.  *See* Compl. ¶ 2; *Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 969 (11th Cir. 2019) ("the FCCPA applies to any 'person' collecting a consumer debt" such as Nationstar).  Ms. McFadden also plausibly alleged that Cooper serviced loans subject to the uniform terms of borrowers' mortgages which did not include Pay-to-Pay fees.  *See* Compl. ¶ 2. In fact, the mortgage agreement did not permit such fees as detailed above.  Finally, Ms. McFadden plausibly alleged that Cooper repeatedly collected Pay-to-Pay fees from thousands of borrowers both in Florida and nationwide.  *See id.* at ¶ 100; *Dees*, 496 F. Supp. 3d at 1051 (class action

lawsuit against Cooper for collecting Pay-to-Pay fees surviving a motion to dismiss).  Such allegations sufficiently establish Cooper's actual knowledge.

C.     Count III: FDUTPA Violation

A FDUTPA claim has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."  *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 167 (Fla. 4th Dist. Ct. App. 2015).  FDUTPA claims may be premised on *per se* violations or traditional violations.  *See Blair v. Wachovia Mortg. Corp.*, No.11-cv-566, 2012 WL 868878, at *2 (M.D. Fla. Mar. 14, 2012).  Plaintiffs allege both.  "To survive a motion to dismiss, a plaintiff bringing a FDUTPA claim is required to allege only a short and plain statement sufficient to put the defendant on fair notice of its cause of action."  *Alvarez v. LoanCare LLC*, No. 20-cv-21837, 2020 WL 5514410, at *5 (S.D. Fla. Aug. 28, 2020) (cleaned up).

*Per se* violations of the FDUTPA include violations of another law governing unfair competition or deceptive practices, including the FCCPA.  *Alvarez*, 2020 WL 5514410, at *6.  Plaintiffs allege Cooper's mark-up of fees without disclosing its substantial profit constitutes a *per se* violation of FDUPTA § 501.203(3) based on a predicate FCCPA violation.  *See* Compl. ¶ 128.  This FDUTPA *per se* violation survives because "[a]s already stated, [Plaintiff] does state an FCCPA violation in Count [II]."  *Alvarez*, 2020 WL 5514410, at *5.

A traditional FDUTPA violation involves "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).  "A deceptive practice is one that is 'likely to mislead' consumers."  *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d Dist. Ct. App. 2006) (quoting *Davis v. Powertel, Inc.,* 776 So. 2d 971, 974 (Fla. 1st Dist. Ct. App. 2000)).  Likelihood to mislead is based on how a "consumer acting reasonably in the circumstances" would respond.  *Maor v. Dollar Thrifty Auto. Grp., Inc.*, No. 15-cv-22959, 2018 WL 4698512, at *6 (S.D.

Fla. Sept. 30, 2018) (quoting *Carriuolo v. General Motors Co.*, 823 F.3d 977, 983–84 (11th Cir. 2016)).  "An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Rollins, Inc.*, 951 So. 2d at 869 (quoting *Samuels v. King Motor Co. of Fort Lauderdale,* 782 So. 2d 489, 499 (Fla. 4th Dist. Ct. App. 2001)) (cleaned up).

Plaintiffs allege that the Pay-to-Pay fees violated FDUTPA § 501.204(1) as a general "unfair and deceptive" practice "in trade or commerce by taking advantage of consumers in claiming and collecting debts for amounts not owed."  Compl. ¶ 129.  A mortgage-loan servicer "[s]ecretly retaining money from every 'processing fee' [the defendant] charges consumers instead of passing the entire fee to a third-party payment processor" constitutes an unfair and deceptive practice.  *Alvarez*, 2020 WL 5514410, at *4, *6.  An allegation of such behavior is sufficient to meet the pleading burden on a motion to dismiss.  *See id*.  Plaintiffs allege such a scheme here, involving convenience fees of which only a fraction Cooper passed on to third-party processors.

Moreover, it is "a question of fact for a jury" whether the "pass-through charge," leaving $0.50 with the third-party processor and $13.50 surreptitiously with Cooper, is a deceptive practice.  *Coleman v. CubeSmart*, 328 F. Supp. 3d 1349, 1364 (S.D. Fla. 2018).  "[T]he inquiry is how a reasonable consumer would interpret" the terms related to making mortgage payments by phone as a convenience fee.  *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 703 (Fla. 3d Dist. Ct. App. 2000).  Plaintiffs plausibly allege that the Pay-to-Pay offer language "necessarily constitutes a representation to a reasonable consumer that these are 'pass-through' charges which [Cooper] will pay to the relevant [third-party processors]." *Id.*; *see* Compl. ¶ 6, 78, 92.  Because

12

Cooper billed customers for such charges "but keeps part of the money for itself, that is a deceptive practice under FDUTPA." *Latman*, 758 So. 2d at 703.[4]

Cooper argues that "[a] reasonable consumer, like these Plaintiffs, would fully understand that she has several payment options when making monthly mortgage payments, some of which involve a fee—and that if she selects a payment option involving a fee, she will be assessed that fee." Def.'s Reply at 21. However, Plaintiffs are not arguing that they were unaware that they were paying a fee. Rather, they plausibly argued deception by Cooper in concealing who was getting the vast majority of the Pay-to-Pay fee. *See Latman*, 758 So. 2d at 703.

   D.   Count IV: Breach of Contract under Florida and D.C. Law

Cooper argues Plaintiffs' breach-of-contract claims: (1) fail to identify any specific provision of the mortgage agreement that was allegedly breached by pay-to-pay fees; (2) are barred by the voluntary-payment doctrine; and (3) ignore that fee payment was part of a separate contract. *See* Def.'s MTD at 1–3.

   1.   *Specific Provisions Breached*

Ms. McFadden's Florida mortgage agreement reads: "Lender may not charge fees that are expressly prohibited by this Security Instrument or Applicable Law." Compl., Ex. A at 8 (¶ 14). The applicable laws that Plaintiffs allege prohibit pay-to-pay fees are the FDCPA and FCCPA.

---

[4] One court concluded that a similar claim for convenience fees should be dismissed because "charging customers a fee for paying by phone is not unfair or deceptive . . . . [The defendant's] fee for an optional service that [the plaintiff] chose for her convenience is not plausibly deceptive (i.e., capable of or tending to deceive) or unfair (i.e., immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers)." *Waddell v. U.S. Bank Nat'l Ass'n*, 395 F. Supp. 3d 676, 685 (E.D.N.C. 2019). The *Waddell* court provides no analysis of why it reached this conclusion, thus undercutting its precedential value. This Court is instead persuaded by the alternative argument in *Coleman* and *Latman*, particularly given the pleading rules and inferences currently favor Plaintiffs.

Because violations under the FDCPA (Count I) and FCCPA (Count II) are viable, Plaintiffs necessarily have demonstrated a plausible breach of contract claim. *See supra* III.A and III.B.

Ms. Wilson's D.C. mortgage agreement was subject to FHA guidelines. *See* Compl. ¶ 4, 13. Moreover, the FHA/Department of Housing and Urban Development ("HUD") regulations were incorporated by reference into her mortgage contract. *See id.* ¶¶ 44–59. "[T]he majority rule [is] that breach of contract claims based on a failure to comply with HUD regulations are viable where the mortgage instrument expressly incorporates HUD regulations." *Dorado v. Bank of Am., N.A.*, No. 16-cv-21147, 2016 WL 3924115, at *5 (S.D. Fla. July 21, 2016) (quotation omitted) (collecting cases). Specifically, courts have allowed a breach of contract claim in Pay-to-Pay fee cases based on alleged violations of FHA/HUD regulations. *See, e.g.*, *Phillips v. Caliber Home Loans, Inc.*, No. 19-cv-2711, 2020 WL 5531588, at *4 (D. Minn. Sept. 15, 2020).

Paragraph 13 of Ms. Wilson's uniform deed of trust states that the lender "may collect fees and charges authorized by the Secretary [of HUD]." Compl., Ex. B at 8, ¶ 13; Ex. C at 8, ¶ 13. The "HUD Handbook"[5] establishes what fees are authorized. *See* Compl. ¶¶ 56–57. HUD's fee lists are exclusive and preclude a lender from charging unauthorized fees. *See* 24 C.F.R. § 203.552(a)(12); HUD Handbook, § III.A.1.f.ii(A) at 617. The one exception is that a lender can collect a fee "not specifically mentioned in" the HUD regulations or HUD Handbook if it has approval from the HUD Secretary. *See* Compl. ¶ 86 (citing HUD Handbook § III.A.1.f.ii(B) at 618). It is undisputed that Pay-to-Pay fees were neither in the HUD Handbook, nor approved by the HUD Secretary. *See* Compl. ¶ 58; Def.'s Reply at 8.

---

[5] The FHA adds additional protections on FHA-approved mortgages to protect against losses. This handbook is titled, "Handbook 4000.1: *FHA Single-Family Housing Policy Handbook*," and is maintained online at https://www.hud.gov/sites/dfiles/OCHCO/documents/4000.1hsgh.pdf (last accessed July 29, 2021).

The HUD Handbook permits collection of fees if they are "*reasonable* and customary for the local jurisdiction" and "based on *actual cost* of the work performed or actual out-of-pocket expenses." § III.A.f.ii(A) at 617 (emphasis added).  Cooper, "however, does not identify any HUD authorization to collect 'pay-to-pay' fees, other than those fees that represent actual costs." *Phillips*, 2020 WL 5531588, at *4.  There is no dispute that the "Pay-to-Pay fees . . . exceed [Cooper's] out-of-pocket costs by several hundred percent."  *Id.* at *2.  Because Ms. Wilson has plausibly alleged that Pay-to-Pay fees do not "represent actual costs," her "breach-of-contract claim is viable."  *Id.* at *4.

Cooper argues that Ms. Wilson's interpretation of the regulation must be incorrect because it excludes imposition of "fees [that] are commonplace."  Def.'s Reply at 8.  Yet, the HUD Handbook explicitly allows for "reasonable and customary" fees—*i.e.*, commonplace fees.  § III.A.f.ii(A) at 617.  But courts have held that the HUD Handbook does not include "Pay-to-Pay fees," *Langston v. Gateway Mortg. Grp., LLC,* No. 20-cv-1902, 2021 WL 234358, at *4 (C.D. Cal. Jan. 15, 2021), or "convenience fees" as "reasonable and customary" fees, *Caldwell*, 2020 WL 4747497, at *4.

Cooper next relies on *Waddell* to argue that Pay-to-Pay fees are permissible, but that non-binding authority is unpersuasive.  *See* Def.'s MTD at 11–12 (citing *Waddell*, 395 F. Supp. 3d at 685–86).  The court there noted that it would have been "easy" for the parties to include language in the agreement "limit[ing] a party's right to charge a service fee for an optional payment method (such as pay-by-phone)" if they wanted to.  *Id.* at 685.[6]  But the next sentence, which is the basis

---

[6] *Easy?*  Easier said than done.  The consumer protection laws referenced herein largely exist because of the power imbalance between lenders/debt collectors and consumers.  *Cf. Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) ("consumer-protection cases" led court to conclude that related laws were "not made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking and the credulous") (cleaned up).  It is

for the court's holding, is damning.  "The parties did not, and [the plaintiff] has not plausibly alleged that her deed of trust contain[ed] any express or implied terms that prohibit[ed] [the defendant] from charging a service fee authorized by federal law for an optional payment method." *Id.* at 685–86.  The difference here is monumental.  Plaintiff has plausibly alleged that her mortgage agreement and relevant laws actually prohibited Cooper's Pay-to-Pay fees.  At the motion to dismiss stage, that is all that is required.  *See Phillips*, 2020 WL 5531588, at *4.

### 2.  *Voluntary Payment Doctrine*

An "old common law doctrine rarely cited by courts in modern, complex transactions," states that "voluntary payment may potentially bar a claim to recoup payments that are made with full knowledge."  *Falconi-Sachs v. LPF Sen. Square, LLC*, 142 A.3d 550, 558 (D.C. 2016) (cleaned up).  "Voluntary payment is an affirmative defense and a plaintiff's failure to anticipate and rebut affirmative defenses in her complaint is not a sufficient basis for a Rule 12(b)(6) dismissal."  *Id.* at 559 (citation omitted).  It "may not be raised on a motion to dismiss" because it "requires the party asserting it to show that the person who made the payment had full knowledge of the relevant facts, including allegedly wrongful conduct."  *Carrero v. LVNV Funding, LLC*, No. 11-cv-62439, 2014 WL 6433214, at *6 (S.D. Fla. Oct. 27, 2014).  The exception to this rule is if it is plainly "evident from the complaint that the payment was made by the plaintiff voluntarily and with knowledge of the facts."  *McDermott v. L.A. Fitness Int'l, LLC*, No. 11-cv-192, 2012 WL 13098143, at *5 (M.D. Fla. Mar. 21, 2012).[7]  "That is not the circumstance here."  *Phillips*, 2020

---

impossible to assume Plaintiffs having the training, let alone permission, to redline a mortgage agreement.  The logic of *Waddell* cuts both ways.  Cooper more easily could have included language in the contract "[permitting] a party's right to charge a service fee for an optional payment method (such as pay-by-phone)" if it wanted to.  *Waddell*, 395 F. Supp. 3d at 685.  Doing so would have prevented much of this litigation.

[7] The rare instances courts granted a 12(b)(6) motion based on this doctrine were where plaintiffs "alleged no facts" to support deception or involuntariness.  *Kuchenmeister v. HealthPort Techs.,*

WL 5531588, at *3.  Even if it was a close call, the liberal pleading standard[8] mandates denying dismissal on this affirmative defense.

The complaint rebuts Cooper's attempt to assert this defense.  At bottom, voluntariness requires that "the payor has 'full knowledge of all the facts.'"  *Brink v. Raymond James & Assocs., Inc.*, 341 F. Supp. 3d 1314, 1320 (S.D. Fla. 2018).  Plaintiffs did not "concede voluntariness even in the colloquial sense; rather, [they] alleged facts suggesting that, in addition to being ignorant of the [pay-to-pay] fee's illegality," they were unaware Cooper largely was pocketing these fees as profit.  *Falconi-Sachs*, 142 A.3d at 560; *see* Compl. ¶¶ 70–78, 86–92.  In fact, courts have regularly rejected application of this doctrine in "Pay-to-Pay fees" cases because a plaintiff's payments could not be voluntary where they did not know "the fees grossly exceeded [the mortgage loan servicer's] actual costs."  *Phillips*, 2020 WL 5531588, at *2.[9]  "In light of this dispute, the voluntary-payment doctrine is not a proper basis for dismissal."  *Id.* at *3.

---

*LLC*, 753 F. App'x 794, 799 (11th Cir. 2018); *see also Sanchez v. Time Warner, Inc.*, No. 98-cv-211, 1998 WL 834345, at *3 (M.D. Fla. Nov. 4, 1998) (no "facts alleged" in complaint gave rise to "any plausible claim of coercion, duress, adhesion, or mistake of law that acts as an exception to the voluntary payment doctrine").

[8] "[T]he Court is mindful that a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' and that the notice pleading rules are 'not meant to impose a great burden on a plaintiff.'"  *Lawrence v. D.C.*, No. 18-cv-595, 2019 WL 1101329, at *6 (D.D.C. Mar. 8, 2019) (internal citation and quotation omitted).

[9] *See also Corona v. PNC Fin. Servs. Grp., Inc.*, No. 20-cv-6521, 2021 WL 1218258, at *3 (C.D. Cal. Mar. 16, 2021); *Langston*, 2021 WL 234358, at *4 n.4; *Dees*, 496 F. Supp. 3d at 1049. Cooper's non-Pay-to-Pay fee cases are inapposite.  *See* Def.'s Reply at 14–15.  For example, in *Sanchez v. Time Warner, Inc.*, 1998 WL 834345, at *2, the question was merely if the plaintiff knew there was a late fee—to which the answer was yes.  The question and answer here are different.  Plaintiffs "did not have any knowledge, let alone full knowledge, that the [Pay-to-Pay] Fee was greatly in excess of the actual costs associated with [third-party processors] executing and clearing [these] transactions," and these fees "were actually *precluded* by the terms of the [Mortgage] Agreement."  *Brink*, 341 F. Supp. 3d at 1321.

3.  *Payment Forming a Separate Contract from Original Mortgage Agreement*

Cooper argues that "Plaintiffs and Mr. Cooper created and executed" a separate "oral agreement regarding the pay-by-phone fees" not incident to the underlying mortgage agreement. Def.'s MTD at 13.  If Pay-to-Pay fees constitute a separate contract, their illegality would fail as grounds for breach of the separate mortgage agreement.  Yet this is not the case.

Plaintiffs paid the fees in question solely in relation to their mortgage.  *See* Compl. ¶ 2.  As noted above, these fees were "incidental" to payment in the underlying mortgage agreement.  *See supra* Part III(A)(2).  Moreover, Cooper's payment processing business is part and parcel of its servicing of the underlying loan.  As such, Plaintiffs plausibly asserted that "the oral agreement here does not rise to the level of a separate contract."  *Techreations, Inc. v. Nat'l Safety Council*, No. 86-cv-1399, 1986 WL 15077, at *5 (N.D. Ill. Dec. 24, 1986).[10]  To find otherwise requires drawing on facts outside of the complaint and which are not before this Court.[11]

---

[10] Permitting an entity to claim the existence of a separate contract any time it charged a new, related fee would effectively gut the fee protections provided by the mortgage agreement and consumer protection laws, like the FDCPA/FCCPA, and related FHA/HUD protections (discussed above) that are incorporated into mortgage agreements.

[11] Cooper's reliance on *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 302 (Fla. 1st Dist. Ct. App. 1999) and *Ashrafi v. Fernandez*, 193 A.3d 129, 131 (D.C. 2018) is misplaced.  *See* Def.'s Reply at 10.  Neither involves dismissing a claim where the plaintiff alleged that no separate oral agreement existed *and* that the plaintiff's facts were taken to be true.  *Ashrafi* involves an appeal after a verdict, rendering it irrelevant.  Although *Townsend* was at the motion to dismiss stage, the plaintiff there took the opposite position and argued that an oral agreement existed, which the court assumed to be true.  This supports Plaintiffs' position that the law compels acceptance of plausible facts at this stage.

E.     Count V: D.C. MLBA Violation

The D.C. MLBA "provide[s] for the licensing and regulation of mortgage lenders."  D.C.

Laws 11-155 (codified at D.C. Code §§ 26-1101 *et seq.*).  The MLBA makes it illegal for a lender

or servicer to "engage in any unfair or deceptive practice toward any person."  D.C. Code § 26-

1114(d)(2).  Ms. Wilson alleges Cooper violated the MLBA by: (1) assessing fees not authorized

under the terms of the mortgage agreement, *see* Compl. ¶ 163; and (2) using a scheme to mislead

borrowers and engage in a deceptive practice by failing to disclose the costs to process third-party

transactions, *see* Compl. ¶ 164.  Plaintiffs plausibly alleged that Cooper charged fees under the

guise that such payments were third-party processing costs, but in fact over 90% was kept by

Cooper as profit.  *See* Compl. ¶¶ 6, 92, 164–65.  "These allegations regarding repeated assessment

of improper fees" and the failure to disclose costs to process third-party transactions "make out a

claim under the MLBA."  *Logan v. LaSalle Bank Nat'l Ass'n*, 80 A.3d 1014, 1026 (D.C. 2013).

The MLBA "applies to both lenders and servicers," however, "the Act provides an

exemption for a financial institution that accepts deposits and is regulated under Title 26 of the

D.C. Code."  *See id.* (quoting D.C. Code § 26–1101(11)) (cleaned up).  In *Logan*, the D.C. Court

of Appeals was unable to "tell from the record whether this exemption would apply to [mortgage-

loan servicers]" and held that the plaintiff thereby made a valid claim under the MLBA sufficient

to survive a motion to dismiss.  *Id.*  Because Cooper is also a mortgage-loan servicer, Plaintiffs

make a valid MLBA claim.

Cooper's reliance on *Mushala* is misplaced.  There, the court found the plaintiff's FDCPA

and MLBA claims barred by *res judicata* because they "ar[o]se from facts at the core of" an earlier

foreclosure action between the same parties.  *Mushala v. US Bank, Nat'l Ass'n*, No. 18-cv-1680,

2019 WL 1429523, at *7–9 (D.D.C. 2019).  No such prior action bars the instant action.  Nor does

*Mushala* stand for Defendant's proposition that a failed FDCPA claim *automatically* damns an MLBA claim.  *See* Def.'s Reply at 24 n.10.  These statutes are distinct.  Even if the statutes were coupled, Plaintiff's FDCPA claim's survival here breathes life into the MLBA claim.

F.   Count VI: DCCPPA Violation

The DCCPPA bans "engag[ing] in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby, including to . . . [r]epresent that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law . . . [or] fail to state a material fact if such failure tends to mislead."  D.C. Code § 28-3904(e-1), (f).  The DCCPPA must "be construed and applied liberally to promote its purpose."  *Id.* § 28-3901(c).

1.   *Mortgage Servicers Are Merchants*

The DCCPPA applies to "merchants," that is, persons who "sell, lease . . . or transfer, either directly or indirectly, consumer goods or services."  D.C. Code § 28-3901(a)(3).  "Goods and services," are "any and all parts of the economic output of society, at any stage or related or necessary point in the economic process, and includes consumer credit . . . real estate transactions, and consumer services of all types."  D.C. Code § 28-3901(a)(7).

The DCCPPA applies to mortgage lenders.  *DeBerry v. First Gov't Mortg. & Invs. Corp.*, 743 A.2d 699, 702 (D.C. 1999).  The parties agree that Cooper was Ms. Wilson's mortgage lender as well as her loan servicer.  *See* Compl. ¶ 82, Exs. B, C.  Cooper's attempt to divorce its role as mortgage lender and servicer fails.  *See* Def.'s Reply at 22 n.7.  Ms. Wilson plausibly alleged that Cooper was "the lender and [] its role in the lender-borrower relationship was [*not*] limited [only] to serving as the loan servicer."  *Busby v. Cap. One, N.A.*, 772 F. Supp. 2d 268, 280 (D.D.C. 2011) (dismissing complaint because plaintiff failed to make such allegation); *see* Compl. ¶ 82.  Such

"mortgagees' practices [are] subject to the DCCPPA." *Ihebereme v. Cap. One, N.A.*, 730 F. Supp. 2d 40, 51 (D.D.C. 2010).

The D.C. Court of Appeals expressly refused to answer whether the DCCPPA also applied to mortgage-loan servicers, even after recognizing this District Court's holding in *Busby*, 772 F. Supp. 2d at 280, that it did not. *See Logan*, 80 A.3d at 1027. Yet, the *Logan* court held that the DCCPPA applied to "real estate mortgage transactions," "mortgage refinancing," and "deceptive billing practices related to a contract for consumer goods and services." *Id.*[12] Similarly, judges in this Court have found that the DCCPPA applies to many aspects of the mortgage industry. *See, e.g.*, *Levick v. Kiser*, 206 F. Supp. 3d 337, 346 (D.D.C. 2016) (sellers of property are subject to the DCCPPA); *Hughes v. Abell*, 867 F. Supp. 2d 76, 87–88 (D.D.C. 2012) (concluding fact issues precluded summary judgment on DCCPPA claim against mortgage lender).[13]

*Busby* states the obvious: a complaint that "contains *no factual allegations whatsoever* indicating the existence of a consumer-merchant relationship between the plaintiff" and a mortgage-loan servicer will not survive a motion to dismiss. *See* 772 F. Supp. 2d at 279–80 (emphasis added). Plaintiff Busby "identified no goods or services she purchased or received from" the mortgage-loan servicer. *Id.* at 280. This ruling is a testament to the poor pleading of a

---

[12] On remand, the D.C. Superior Court permitted the DCCPPA claims against the loan servicer to proceed. *See* ECF No. 15 (Pls.' Opp'n), Ex. B (Order Denying Motion to Dismiss). However, the court did not opine on this issue.

[13] *See, e.g.*, *Parr v. Ebrahimian*, 70 F. Supp. 3d 123, 135 (D.D.C. 2014) (applied to credit transactions secured by property); *Williams v. First Gov't Mortg. & Inv. Corp.*, 225 F.3d 738, 744 (D.C. Cir. 2000) (mortgage lender violated DCCPPA by issuing mortgage it knew the plaintiff could never repay); *Johnson v. Long Beach Mortg. Loan Trust 2001-4*, 451 F. Supp. 2d 16, 38 (D.D.C. 2006) (permitting DCCPPA claim to proceed where plaintiff had to pay over half her monthly income to mortgage costs).

*pro se* plaintiff, not a categorical ruling that a mortgage-loan servicer can *never* be a merchant. *See id.*[14]

Unlike *Busby*, Ms. Wilson supplied multiple examples of how Cooper "would supply, any goods or services to [Ms. Wilson] in connection with [the] ownership or sale of [her] house." *Ali v. Tolbert*, 636 F.3d 622, 628 (D.C. Cir. 2011); *see* Compl. ¶ 4 (noting that loan servicer performs work for the borrower).  These services may include paying taxes and insurance from escrow accounts, modifying mortgages, and property preservation. See *id.* Ex. B ¶¶ 3, 5, 7, 19.

Moreover, Ms. Wilson alleged Cooper's role as mortgage servicer to be a stand-alone consumer *service* that Cooper operated to generate substantial revenue based on "deceptive [] practices." *Logan,* 80 A.3d at 1027; *see* Compl. ¶ 6.  Cooper's substantial profits is another marker that this was indeed a consumer service that was "part[] of the economic output of society." D.C. Code § 28-3901(a)(7).  Given the "broad remedial purpose" of the statute, *DeBerry*, 743 A.2d at 703, and that Ms. Wilson has provided numerous plausible facts about the direct/indirect sale of consumer services, Cooper was a "merchant" pursuant to the DCCPPA as a lender and as a servicer.

---

[14] *Mushala* is equally unavailing for Cooper.  *See* 2019 WL 1429523, at *9.  As noted above, *Mushala* holds little precedential here, given the court ruled based on *res judicata*.  Moreover, the court's dicta regarding loan servicers is again distinguishable because the plaintiff there failed to plead that the servicer provided "any goods or services."  *Id.*  That is simply not the case here.

Non-binding authorities other than *Mushala* provide applicable support for treating mortgage-loan servicers as merchants.   Both the Federal Trade Commission ("FTC") and Maryland have brought consumer protection actions against mortgage-loan servicers for unfair and deceptive practices. *See, e.g.*, *United States v. Fairbanks Capital Corp.*, No. 03-cv-12219, 2004 WL 3322609, at *1 (D. Mass. May 12, 2004); *Allen v. CitiMortgage, Inc.*, No. 10-cv-2740, 2011 WL 3425665, at *9 (D. Md. Aug. 4, 2011).  Both the FTC and neighboring states provide meaningful guidance in this arena.  *See* D.C. Code § 28-3901(d) ("due consideration and weight shall be given to" the FTC's interpretation of the term "unfair or deceptive act or practice"); *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 442 (D.C. 2013) ("We also look to Maryland law as instructive in our jurisdiction.").

2.      Pay-to-Pay Fees Were Sufficiently Alleged As Misleading

"[I]t is a violation of the CPPA if the merchant 'misrepresented' or 'failed to state' a material fact." *Frankeny v. District Hospital Partners, LP*, 225 A.3d 999, 1005 (D.C. 2020).  "[A] plaintiff does not have to allege or prove *intentional* misrepresentation of failure to disclose [a material fact] in order to prevail on the claim."  *Beck v. Test Masters Educ. Servs. Inc.*, 994 F. Supp. 2d 90, 93–94 (D.D.C. 2013).

The Complaint plausibly alleged that Pay-to-Pay fees are misleading in two ways.  First, Plaintiffs alleged that Cooper represented to borrowers that Cooper had the right to collect such fees, even though it did not.  *See* Compl. ¶ 170.  The standard mortgage agreements allegedly forbade such fees.  *See supra* Part III(D).  Moreover, Cooper as an FHA-approved mortgagee was subject to HUD rules forbidding such fees.  *See* Compl. ¶¶ 48–49; *supra* Part III(D)(1).  Finally, Plaintiffs also plausibly alleged that pay-to-pay fees were prohibited by the FDCPA.  *See supra* Part III(A).  And "the claim that the information that [Cooper] failed to disclose was material is unmistakably the theme of the [complaint]."  *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1072 (D.C. 2008).  Whether Cooper's statements "were actually material and tended to mislead" is a question for the jury.  *Id.* at 1075.

Second, Plaintiffs alleged that Cooper never disclosed to borrowers that Cooper was collecting more than it cost to process Pay-to-Pay fees and that Cooper had created an unfair profit center for itself.  *See* Compl. ¶¶ 6, 62.  Under the DCCPPA, there is no requirement that a plaintiff "plead and [] prove a duty to disclose information."  *Saucier*, 64 A.3d at 444.  Rather, the plaintiff need only show that the omitted facts were "material."  *Id.*  That is satisfied here as Ms. Wilson plausibly alleged that she did not have "full knowledge of the material facts" related to the "Pay-

23

to-Pay fees."[15]  *Phillips*, 2020 WL 5531588, at *2–3.  Material facts include that these fees far outpaced the cost to process such transactions.  To wit, more than "several hundred percent" (in fact, 2,700%), which highlights how deceptive and unfair this practice arguably was.[16]  *Phillips*, 2020 WL 5531588, at *2.

G.    Count VII: Unjust Enrichment under Florida and D.C. Common Law

Plaintiffs must satisfy three elements for an unjust enrichment claim: (1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant has voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. *See, e.g.*, *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 693 (Fla. 3d Dist. Ct. App. 2018); *Falconi-Sachs*, 142 A.3d at 556.

1.    *Alternative Pleading*

As Cooper notes, "In general, a plaintiff cannot maintain an unjust enrichment claim concerning an aspect of the parties' relationship that was governed by a contract."  Def.'s Reply at 11 (quoting *Smith v. Rubicon Advisors, LLC*, 254 F. Supp. 3d 245, 249 (D.D.C. 2017)).  But Cooper missed the next sentence in its authority for that point: "However, a plaintiff may pursue an unjust enrichment claim as an 'alternative theory of liability' even though the plaintiff

---

[15] Cooper and Plaintiffs have a back-and-forth volley as to whether "a reasonable consumer would not pay such fees if he or she knew the truth," Pls.' Opp'n at 23, or "would opt to pay a nominal fee rather than incur higher late fees or enter default, regardless of how that nominal fee was internalized by his or her loan servicer," Def.'s Reply at 24.  Setting aside the difficulty in believing a reasonable person could stomach an 2,700% markup, this argument is a "question of fact for the jury and not a question of law for the court."  *Saucier*, 64 A.3d at 445.  Indeed, the DCCPPA makes it illegal to "engage in an unfair or deceptive trade practice, whether or not any consumer [was] in fact misled, deceived, or damaged thereby."  D.C. Code § 28-3904.

[16] Cooper relies on the previously cited *Waddell* quote to argue that these fees were not deceptive, however, as noted above at note 4, that quote is unpersuasive.

'ultimately cannot recover under both a breach of contract claim and an unjust enrichment claim pertaining to the subject matter of that contract.'" *Smith*, 254 F. Supp. 3d at 250 (citing *McWilliams Ballard, Inc. v. Broadway Mgmt. Co.*, 636 F. Supp. 2d 1, 9 n.10 (D.D.C. 2009) (collecting cases)).  The same is true in Florida.  *See JI-EE Indus. Co. v. Paragon Metals, Inc.*, No. 09-cv-81590, 2010 WL 1141103, at *1 (S.D. Fla. Mar. 23, 2010) ("Plaintiff is not prevented from pursuing the alternative claims of breach of contract [and] unjust enrichment . . . in separate counts.").  And courts have applied this alternative pleading rule in Pay-to-Pay fee cases.  *See*, *e.g.*, *Phillips*, 2020 WL 5531588, at *4.  "Without this rule, a plaintiff could be left 'without any remedy should the fact-finder determine at a later stage that there was no express agreement between the parties.'" *Smith*, 254 F. Supp. 3d at 250 (quoting *Scowcroft Grp., Inc. v. Toreador Res. Corp.*, 666 F. Supp. 2d 39, 44 (D.D.C. 2009)).  This concern is most acute at "the motion to dismiss stage." *Id.* at 251.

Alternative pleading is "especially necessary where, as here, [Cooper] casts doubt on" the terms of the contract in question.  *Id.* at 250.  For example, Cooper asserts that the uniform mortgage agreements do not govern Pay-to-Pay fees.  *See* Def.'s MTD at 12–15.  "But if that is so," the collection of such fees "at no point formed any part of the explicit contractual arrangement," and were instead, "extra-contractual payment[s] falling outside the 'scope' of the governing contracts" that Plaintiffs assert as the basis of their contract claims. *In re APA Assessment Fee Litig.*, 766 F.3d 39, 46 (D.C. Cir. 2014).  "Here, therefore, the Court need not dismiss [Plaintiffs'] alternative theory of unjust enrichment as inconsistent with [their] breach of contract claims." *Smith*, 254 F. Supp. 3d at 250.

2.      *Pre-suit Notice*

The mortgage agreements here required that either party provide the other side with pre-suit notice of any "alleged breach," and a reasonable amount of time to fix it.  *See* Compl. Ex. A at 10 (¶ 20); Ex. C at 10 (¶ 19).  A party that fails "to allege requisite [pre-suit] notice" cannot sustain an unjust enrichment claim.  *Trevathan v. Select Portfolio Servicing, Inc.*, 142 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015).

Plaintiffs plausibly alleged they gave Cooper pre-suit notice of their intent to bring a lawsuit.  *See* Compl. ¶¶ 79, 93.  Yet Cooper contends that Plaintiffs' notice failed to provide the level of granularity Cooper desired.  *See* Def.'s MTD at 2.  However, the mortgage agreement only required Plaintiffs to give notice of the "alleged breach."  Compl. Ex. A at 10 (¶ 20); Ex. C at 10 (¶ 19).  This "clear and unambiguous" language did not require Plaintiffs to give a recitation of each right Cooper allegedly violated.  *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996).

Again, at this stage, the question is one of pleading.  Had the Plaintiffs failed to *allege* that they "provided notice of the allegedly improper inspection fees before filing this suit, the Complaint [would] be dismissed."  *Hill v. Nationstar Mortg. LLC*, No. 15-cv-60106, 2015 WL 4478061, at *3 (S.D. Fla. July 2, 2015).  However, Plaintiffs alleged that they provided such notice and reference a January 6, 2020 letter to prove it: a letter requesting "restitution of such fees paid to Mr. Cooper."  Pls.' Opp'n at 39 n.14.  This notice provided sufficient detail.  *Cf. Henok v. Chase Home Fin., LLC*, 922 F. Supp. 2d 110, 118–19 (D.D.C. 2013) (notice of foreclosure without listing specific amount needed to cure default was still sufficiently precise).[17]

---

[17] Cooper's identical argument as to MLBA pre-suit notice fails for the same reason.

**IV.     RECOMMENDATION**

For the foregoing reasons, the undersigned recommends that the Court DENY Cooper's

motion to dismiss on all seven counts.

**V.     REVIEW BY THE DISTRICT COURT**

The parties are hereby advised that, under the provisions of Local Rule 72.3(b) of the

United States District Court for the District of Columbia, any party who objects to the Report

and Recommendation must file a written objection thereto with the Clerk of this Court within 14

days of the party's receipt of this Report and Recommendation.  The written objections must

specifically identify the portion of the report and/or recommendation to which objection is made

and the basis for such objections.  The parties are further advised that failure to file timely

objections to the findings and recommendations set forth in this report may waive their right of

appeal from an order of the District Court that adopts such findings and recommendation.  *See*

*Thomas v. Arn*, 474 U.S. 140, 144–45 (1985).


Dated: July 30, 2021


_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE