**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JACKERLY MCFADDEN and CASSANDRA WILSON, *On Behalf of Themselves and All Others Similarly Situated*, | |
| Plaintiffs, | Case No. 1:20-cv-00166-EGS-ZMF |
| v. | |
| NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER, | |
| Defendant. | |

**DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S**
**PROPOSED FINDINGS AND RECOMMENDATIONS**

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ........................................................................ 1

**STANDARDS OF REVIEW** ........................................................................... 2

**OBJECTIONS** ................................................................................................ 3

**I.   MR. COOPER OBJECTS TO THE REPORT'S FINDING THAT PLAINTIFFS ADEQUATELY ALLEGED VIOLATIONS OF THE FDCPA** ................................... 3

    A.   Plaintiffs provided only a threadbare recital of their claim that Mr. Cooper is a "debt collector," which is insufficient under the *Iqbal* pleading standard. ......................... 3

    B.   The Pay-to-Pay Fees are not incidental to Plaintiffs' mortgage agreements but are a separate agreement between the parties. .................................................................... 4

    C.   The FDCPA permits the Pay-to-Pay Fees. ................................................................. 6

        *1.   The Fees are expressly authorized by the agreement.* ...................................... 6

        *2.   The Fees are permitted by law.* ....................................................................... 8

**II.   MR. COOPER OBJECTS TO THE REPORT'S FINDING THAT PLAINTIFFS ADEQUATELY PLED VIOLATIONS OF THE FCCPA** ........................................... 9

**III.   MR. COOPER OBJECTS TO THE REPORT'S FINDING THAT PLAINTIFFS ADEQUATLY PLED VIOLATIONS OF THE FDUTPA** ...................................... 10

    A.   Plaintiffs failed to adequately allege their FCCPA claims and therefore such claims are insufficient for purposes of pleading a *per se* FDUTPA violation. ................... 10

    B.   Plaintiffs failed to adequately allege traditional FDUTPA violations. .................... 11

**IV.   MR. COOPER OBJECTS TO THE REPORT'S FINDING THAT PLAINTIFFS ADEQUATELY PLED STATE LAW BREACH OF CONTRACT CLAIMS** ........... 13

    A.   Plaintiffs failed to adequately allege breach of any specific provisions of their mortgage agreements through charging of the Fees. ................................................ 13

    B.   Plaintiffs' claims are barred by the Voluntary Payment Doctrine. .......................... 15

    C.   Plaintiffs entered into a separate agreement with Mr. Cooper for the Pay-to-Pay Fees. .......................................................................................................................... 18

**V.   MR. COOPER OBJECTS TO THE REPORT'S FINDING THAT PLAINTIFF WILSON ADEQUATELY PLED VIOLATIONS OF THE D.C. MLBA** ................... 19

**VI.   MR. COOPER OBJECTS TO THE REPORT'S FINDING THAT PLAINTIFF WILSON ADEQUATELY PLED VIOLATIONS OF THE DCCPPA** ...................... 20

    A.   Mr. Cooper is not a "Merchant" under the DCCPPA. .............................................. 20

    B.   Plaintiffs failed to sufficiently allege that the Fees were misleading under the DCCPPA. ................................................................................................................... 22

**VII. MR. COOPER OBJECTS TO THE REPORT'S FINDING THAT PLAINTIFFS ADEQUATLY PLED UNJUST ENRICHMENT** ......................................................... 23

    A.    Plaintiffs' pleading of unjust enrichment in the alternative is inappropriate. ........... 23

    B.    Plaintiffs failed to adequately allege pre-suit notice. ................................................ 24

**CONCLUSION** ................................................................................................................. 26

## **TABLE OF AUTHORITIES**

**Cases**                                                                                      **Page(s)**

*Alhassid v. Bank of Am., N.A.*,
   60 F. Supp. 3d 1302 (S.D. Fla. 2014) ...........................................................23, 24

*Armao v. McKenney*,
   218 So. 3d 481 (Fla. Dist. Ct. App. 2017) .............................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................2, 3, 4, 8, 20

*Ashrafi v. Fernandez*,
   193 A.3d 129 (D.C. 2018) ....................................................................................18

*\*Bardak v. Ocwen Loan Servicing, LLC*,
   No. 8:19-CV-1111-24TGW, 2020 WL 5104523 (M.D. Fla. Aug. 12, 2020)...........4

*\*Beer v. Nationstar Mortg. Holdings, Inc.*,
   No. 14-cv-13365, 2015 WL 13037309 (E.D. Mich. July 15, 2015)....................7, 8

*Bentley v. Bank of Am., N.A.*,
   773 F. Supp. 2d 1367 (S.D. Fla. 2011) .................................................................10

*Blackstone v. Brink*,
   63 F. Supp. 3d 68 (D.D.C. 2014) .........................................................................18

*Blake v. Seterus, Inc.*,
   No. 16-21225-CIV-JLK, 2017 WL 543223 (S.D. Fla. Feb. 9, 2017).................9, 10

*Brink v. Raymond James & Assocs., Inc.*,
   341 F. Supp. 3d 1314 (S.D. Fla. 2018) .................................................................17

*\*Brown v. Loancare, LLC*,
   No. 3:20-cv-00280-FDW-DSC, 2020 WL 7389407 (W.D.N.C. Dec. 16, 2020) ........12, 13, 15

*Bryant v. Aargon Collection Agency, Inc.*,
   No. 17-CV-14096, 2017 WL 2955532 (S.D. Fla. June 30, 2017) ...........................8

*\*Busby v. Capital One, N.A.*,
   772 F. Supp. 2d 268 (D.D.C. 2011) ......................................................................21

*Caban v. Rushmore Loan Mgmt. Servs.*,
   No. 1:18-CV-00393-MHC-JFK, 2018 WL 5260063 (N.D. Ga. July 23, 2018)....................15

*Estate of Campbell v. Ocwen Loan Servicing, LLC*,
   467 F. Supp. 3d 1262 (S.D. Fla. 2020) ...................................................................5

*City of Miami v. Keton*,
   115 So. 2d 547 (Fla. 1959)......................................................................................16

*Cornette v. I.C. System, Inc.*,
   280 F. Supp. 3d 1362 (S.D. Fla. 2017) ...................................................................9

*Dan-Harry v. PNC Bank*,
   No. CV 17-136 WES, 2018 WL 1083581 (D.R.I. Feb. 27, 2018)..........................15

*Demissie v. Starbucks Corp. Office & Headquarters*,
   118 F. Supp. 3d 29 (D.D.C. 2015), *aff'd*, 688 F. App'x 13 (D.C. Cir. 2017)........18

*Eagle Maint. Servs., Inc. v. D.C. Cont. Appeals Bd.*,
   893 A.2d 569 (D.C. 2006) .....................................................................................16

*Edmond v. Am. Educ. Servs.*,
   No. 10-cv-578, 2010 WL 4269129 (D.D.C. Oct. 28, 2010) .....................................4

*Fed. Nat'l Mortg. Ass'n v. LeCrone*,
   868 F.2d 190 (6th Cir. 1989) .................................................................................14

*Flores v. Collection of Consultants*,
   No. 1:20-cv-02369-RDB, 2015 WL 4254032 (C.D. Cal Mar. 20, 2015)..................5

*Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*,
   944 A.2d 1055 (D.C. 2008) ...................................................................................23

*Hart v. Elec. Arts, Inc.*,
   740 F. Supp. 2d 658 (D.N.J. 2010) ........................................................................25

*Hassan v. City of New York*,
   804 F.3d 277 (3rd Cir. 2015) ..................................................................................4

*Hassen v. Mediaone of Greater Fla., Inc.*,
   751 So. 2d 1289 (Fla. Dist. Ct. App. 2000) .......................................................16, 17

*Heald v. Ocwen Loan Servicing, LLC*,
   No. 3:13-cv-993-J-34JRK, 2014 WL 4639410 (M.D. Fla. Sept. 16, 2014) .............8

*Henok v. Chase Home Fin., LLC*,
   922 F. Supp. 2d 110 (D.D.C. 2013) .......................................................................26

*Hettinga v. United States*,
   677 F.3d 471 (D.C. Cir. 2012).................................................................................2

*Hill v. Nationstar Mortg. LLC*,
   No. 15-60106-CIV, 2015 WL 4478061 (S.D. Fla. July 2, 2015) ............................25

*Hinton v. Corr. Corp. of Am.*,
   624 F. Supp. 2d 45 (D.D.C. 2009) ......................................................................25

*Jacobson v. Hofgard*,
   168 F. Supp. 3d 187 (D.D.C. 2016) ..................................................................24

*\*Johnson v. Riddle*,
   305 F.3d 1107 (10th Cir. 2002) ...........................................................................8

*In re Kachkar*,
   769 F. App'x 673 (11th Cir. 2019) ...................................................................24

*Kelly v. Ocwen Loan Servicing, LLC*,
   No. 3:20-cv-50-J-32JRK, 2020 WL 4428470 (M.D. Fla. July 31, 2020)................................5

*\*Kirchner v. Ocwen Loan Servicing, LLC*,
   257 F. Supp. 3d 1314, 1324 (S.D. Fla. 2017) ...............................................23, 24

*Koski v. Carrier Corp.*,
   347 F. Supp. 3d 1185 (S.D. Fla. 2017) .............................................................24

*Kuchenmeister v. HealthPort Techs., LLC*,
   753 F. App'x 794 (11th Cir. 2018) ...................................................................17

*In re Lamb*,
   409 B.R. 534 (Bankr. N.D. Fla. 2009) ..............................................................10

*Lang v. Ocwen Loan Servicing, LLC*,
   No. 3:20-CV-81-J-20MCR, 2020 WL 5104522 (M.D. Fla. July 17, 2020) ............................5

*Latman v. Costa Cruise Lines, N.V.*,
   758 So. 2d 699 (Fla. Dist. Ct. App. 2000) .........................................................13

*Lee v. Main Accounts, Inc.*,
   125 F.3d 855 (6th Cir. 1997) ..............................................................................8

*Lish v. Amerihome Mortg. Co., LLC*,
   No. 2:20-cv-07147-JFW-JPRx, 2020 WL 6688597 (C.D. Cal. Nov. 10, 2020).......................5

*\*Logan v. LaSalle Bank Nat. Ass'n*,
   80 A.3d 1014 (D.C. 2013) .........................................................................20, 21

*Lombardo v. Johnson & Johnson Consumer Cos., Inc.*,
   124 F. Supp. 3d 1283 (S.D. Fla. 2015) .........................................................11, 12

*McDermott v. L.A. Fitness Int'l, LLC*,
   No. 2:11-cv-192-FtM-36DNF, 2012 WL 13098143 (M.D. Fla. Mar. 21, 2012) ...................16

*Means v. D.C.*,
   999 F. Supp. 2d 128 (D.D.C. 2013) ............................................................................2

*Mohamed v. Select Portfolio Servicing, Inc.*,
   215 F. Supp. 3d 85 (D.D.C. 2016) .............................................................................7

*Motley v. Homecomings Fin., LLC*,
   557 F. Supp. 2d 1005 (D. Minn. 2008) ......................................................................4

*Mushala v. US Bank, Nat'l Ass'n*,
   No. CV 18-1680 (JDB), 2019 WL 1429523 (D.D.C. Mar. 29, 2019) ...............20, 21

*Nardolilli v. Bank of Am. Corp.*,
   No. 12-81312, 2013 WL 12154541 (S.D. Fla. Dec. 5, 2013)......................................9

*New Dirt, Inc. v. Harrison*,
   182 So. 3d 773 (Fla. Dist. Ct. App. 2015) ...............................................................18

*Oya v. Wells Fargo Bank*,
   No. 3:18-cv-01999-H-BGS, 2019 WL 157802 (S.D. Cal. Jan. 9, 2019)................3, 4

*Reid v. Ocwen Loan Servicing, LLC*,
   No. 20-cv-80130-SINGHAL, 2020 WL 5104539 (S.D. Fla. May 4, 2020) ...............5

*Saiyed v. Counsel on Am.-Islamic Relations Action Network, Inc.*,
   346 F. Supp. 3d 88 (D.D.C. 2018)............................................................................21

*Sanchez v. Time Warner, Inc.*,
   No. 98–211–CIV–T–26A, 1998 WL 834345 ...............................................16, 17, 18

*Saucier v. Countrywide Home Loans*,
   64 A.3d 428 (D.C. 2012) ..........................................................................................23

*Smith v. Rubicon Advisors, LLC*,
   254 F. Supp. 3d 245 (D.D.C. 2017) ..........................................................................23

*St. Joe Corp. v. McIver*,
   875 So. 2d 375 (Fla. 2004)........................................................................................18

*Techreations, Inc. v. Nat'l Safety Council*,
   No. 86 C 1399, 1986 WL 15077 (N.D. Ill. Dec. 24, 1986) ......................................19

*Trevathan v. Select Portfolio Servicing, Inc.*,
   142 F. Supp. 3d 1283 (S.D. Fla. 2015) .....................................................................25

*Tuttle v. Equifax Check*,
   190 F.3d 9 (2d Cir. 1999)............................................................................................9

*W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*,
  728 So. 2d 297 (Fla. Dist. Ct. App. 1999) ............................................................18

*\*Waddell v. U.S. Bank Nat'l Ass'n*,
  395 F. Supp. 3d 676 (E.D.N.C. 2019) ..................................................12, 13, 15, 22

*Ward v. D.C. Dep't of Youth Rehab. Servs.*,
  768 F. Supp. 2d 117 (D.D.C. 2011) .......................................................................25

*Washington v. LaSalle Bank Nat. Ass'n*,
  817 F. Supp. 2d 1345 (S.D. Fla. 2011) ..................................................................11

*Washkoviak v. Student Loan Mkt'g Ass'n*,
  900 A.2d 168 (D.C. 2006) ......................................................................................25

**Statutes**

15 U.S.C. § 1692(f)(1) ....................................................................................................7

28 U.S.C. § 636(b)(1)(C) ..............................................................................................2

D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901, *et. seq.* .................1, 21, 22, 25

D.C. Mortgage Lender and Broker Act, D.C. Code § 26-1101, *et seq.* .............................1, 20, 21

Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(1)...1, 3, 4, 5, 6, 7, 8, 10, 13, 14, 20, 21, 22

Fla. Stat. Ann. § 725.04 ...............................................................................................16

Florida Consumer Collection Practices Act, Fla. Stat. § 559.72(9)..................1, 4, 5, 9, 10, 13, 25

Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.203(3),
  501.204.........................................................................................................1, 10, 11, 12, 25

**Other Authorities**

24 C.F.R. § 203.552(a)(12) ..........................................................................................14

Fed. R. Civ. P. 8(a)(2).............................................................................................3, 8

Fed. R. Civ. P. 12(b)(6)...............................................................................................3

Fed. R. Civ. P. 72(b)(3)................................................................................................2

## PRELIMINARY STATEMENT

Pursuant to LCvR 72.3(b), Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Mr. Cooper") respectfully submits the following objections to the Report and Recommendation of the Honorable Zia M. Faruqui, United States Magistrate Judge, issued July 30, 2021, regarding Mr. Cooper's Motion to Dismiss.  ECF No. 42 (the "Report").

Plaintiffs Jackerly McFadden and Cassandra Wilson (collectively "Plaintiffs") filed the instant putative class action on January 22, 2020 alleging that Mr. Cooper improperly charged them fees related to certain monthly mortgage payments plaintiffs chose to make by phone (the "Pay-to-Pay Fees" or the "Fees").  Plaintiffs' Complaint alleges that, by offering them the option to make payments by phone in exchange for a nominal fee—while also offering them other available no-fee payment methods—Mr. Cooper violated various federal and state statutes and common law.

The Complaint purports to bring the following claims on behalf of Plaintiffs individually and the putative classes, all related to Mr. Cooper's offering of a fee-based phone payment option: (1) Breach of Contract under Florida and District common law; (2) Unjust Enrichment under Florida and District common law; (3) violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(1) ("FDCPA"); (4) violations of the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72(9) ("FCCPA"); (5) violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.203(3), 501.204 ("FDUTPA"); (6) violations of the D.C. Mortgage Lender and Broker Act, D.C. Code § 26-1101, *et seq.* ("MLBA"); and (7) violations of the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901, *et. seq.* ("DCCPPA").

On March 30, 2020, Mr. Cooper filed a Motion to Dismiss Plaintiffs' complaint in its entirety.  ECF Nos. 13, 14 ("Motion").  Plaintiffs filed their response to Mr. Cooper's Motion on April 13, 2020 (ECF No. 15) ("Response") and Mr. Cooper filed a Reply in Support of its Motion

on April 20, 2020 (ECF No. 18) ("Reply").  The parties later filed Notices of Supplemental

Authority.  *See* ECF Nos. 19, 20, 27, 28, 29, 31, 32.

On July 30, 2021, Judge Faruqui issued a Report and Recommendation denying Mr.

Cooper's Motion in its entirety and Mr. Cooper files the following objections to the Report's

findings on all claims due to Plaintiffs' failure to adequately plead each count.

## STANDARDS OF REVIEW

"A district judge shall make a *de novo* determination of those portions of a magistrate

judge's findings and recommendations to which objection is made . . . ."  LCvR 72.3(c).  *See also*

Fed. R. Civ. P. 72(b)(3) (same standard); 28 U.S.C.§ 636(b)(1)(C) ("A judge of the court shall

make a *de novo* determination of those portions of the report or specified proposed findings or

recommendations to which objection is made."); *Means v. D.C.*, 999 F. Supp. 2d 128, 132 (D.D.C.

2013) (same).  The "district judge may accept, reject, or modify, in whole or in part, the findings

and recommendations of the magistrate judge, or may recommit the matter to the magistrate judge

with instructions."  LCvR 72.3(c).  *See also* Fed. R. Civ. P. 72(b)(3) (same standard); *Means*, 999

F. Supp. 2d at 132.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although a court

must accept the factual allegations contained in a complaint as true for purposes of considering a

motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 677-78.  The Court "need not accept

inferences drawn by plaintiff if those inferences are not supported by the facts set out in the

complaint, nor must the court accept legal conclusions cast as factual allegations." *Hettinga v.*

*United States*, 677 F.3d 471, 476 (D.C. Cir. 2012).  A complaint must also conform to the pleading

2

requirements set forth in Rule 8(a)(2) of the Federal Rules of Civil Procedure to survive a Rule 12(b)(6) motion, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 663.

## OBJECTIONS

### I.   MR. COOPER OBJECTS TO THE REPORT'S FINDING THAT PLAINTIFFS ADEQUATELY ALLEGED VIOLATIONS OF THE FDCPA

#### A.   Plaintiffs provided only a threadbare recital of their claim that Mr. Cooper is a "debt collector," which is insufficient under the *Iqbal* pleading standard.

Mr. Cooper objects to the Report's finding that Mr. Cooper is a "debt collector" under the FDCPA because Plaintiff McFadden failed to adequately allege that her loan was in default at the time Mr. Cooper acquired it.  Report at 4.  To support her FDCPA claim, Plaintiff McFadden only cursorily alleges that "[a]t the time Cooper acquired the servicing rights, Ms. McFadden's mortgage was in default."  Compl. ¶ 67.  Such a conclusory statement is no more than a threadbare recital of an FDCPA element and cannot satisfy Plaintiffs' pleading requirements under *Iqbal* without supporting factual allegations.  *Oya v. Wells Fargo Bank,* No. 3:18-cv-01999-H-BGS, 2019 WL 157802, at *3 (S.D. Cal. Jan. 9, 2019) (finding conclusory allegation that "loan [at issue] was in default at time" servicing rights were acquired insufficient to overcome *Iqbal*'s requirements without further factual allegations).  The Report summarily dismisses the *Oya* case in a footnote for providing "no explanation" as to why it called for additional factual allegations; however, it also ignores that court's citation to *Iqbal* explaining that "while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Report at 5, n.2; *Oya* at *3.  The *Oya* court explicitly understood that a bare allegation that the mortgage was in default when acquired is merely an insufficient legal conclusion, stating:

> Plaintiffs provide no factual allegations supporting the legal conclusion that the loan was in default when it was assigned. For example, they do not provide the date the loan went into default, whether a notice of default was sent to them, or the date

that the loan was assigned to Defendants. They simply allege, 'on information and belief' that the loan was in default when it was assigned.

*Id. See also Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1009 n.2 (D. Minn. 2008) (dismissing conclusory allegations that defendant was a debt collector because "Plaintiffs must do more than plead legal conclusions; they must plead [sufficient] *facts*.") (emphasis original). *Cf. Hassan v. City of New York*, 804 F.3d 277, 295 (3rd Cir. 2015) (finding plaintiff's allegations of specific facts sufficient because they addressed "*when . . . where . . . and why . . . ,*" which was "far from" the inappropriate legal conclusions in *Iqbal*).[1]

### B. The Pay-to-Pay Fees are not incidental to Plaintiffs' mortgage agreements but are a separate agreement between the parties.

Mr. Cooper objects to the Report's finding that the Fees are incidental to Plaintiffs' mortgage agreements because the Fees arise out of a separate agreement between the parties. Report at 6. *See infra* Section IV.C. Opinions out of at least four federal districts agree with Mr. Cooper, notably *Bardak v. Ocwen Loan Servicing, LLC*, a putative class action filed by one of the same plaintiffs' counsel as the instant matter and addressing similar FDCPA and FCCPA claims. No. 8:19-CV-1111-24TGW, 2020 WL 5104523 (M.D. Fla. Aug. 12, 2020). In *Bardak,* the court dismissed the plaintiff's FDCPA and FCCPA claims with prejudice because, among other reasons, the Fees are incurred "in a separate agreement between the parties to ensure same-day posting and processing of [plaintiff's] mortgage payments—an optional service that [plaintiff] voluntarily incurred," and therefore not "incidental" to the plaintiff's mortgage. *Id*. at *4 (citing *Turner v.

---

[1] The Report relies on *Edmond v. Am. Educ. Servs.*, No. 10-cv-578, 2010 WL 4269129 (D.D.C. Oct. 28, 2010) for the proposition that a conclusory pleading of default passes muster, but such reliance is misplaced. Report at 4. The *Edmond* court dismissed the plaintiff's FDCPA claim because the complaint failed to include any allegation of default; the case does not support the proposition that a mere allegation of default is sufficient to survive a motion to dismiss. *Edmond*, 2010 WL 4269129, at *5.

4

*PHH Mortg. Corp.*, No. 8:20-CV-137-T-30SPF, 2020 WL 2517927 (M.D. Fla. Feb. 24, 2020), *reconsideration denied*, 2020 WL 2518068 (M.D. Fla. Mar. 19, 2020)) (quotations omitted).

A number of cases have adopted *Bardak* and *Turner's* analysis. *See Estate of Campbell v. Ocwen Loan Servicing, LLC*, 467 F. Supp. 3d 1262, 1265 (S.D. Fla. 2020) (dismissing FDCPA and FCCPA claims with prejudice because "[t]he convenience fees are a separate transaction neither part of, nor incidental to, the transferred debt."); *Reid v. Ocwen Loan Servicing, LLC*, No. 20-cv-80130-SINGHAL, 2020 WL 5104539 (S.D. Fla. May 4, 2020) (same); *Kelly v. Ocwen Loan Servicing, LLC*, No. 3:20-cv-50-J-32JRK, 2020 WL 4428470, at *2 (M.D. Fla. July 31, 2020) (adopting *Turner*'s analysis and holding the Fees as not incidental to plaintiff's mortgage because "[the service] amounted to an optional mortgage payment service with a separate fee originating with [defendant], the fee was not from [plaintiffs] mortgagee . . . ."); *Lang v. Ocwen Loan Servicing, LLC*, No. 3:20-CV-81-J-20MCR, 2020 WL 5104522 (M.D. Fla. July 17, 2020).

Other courts have independently come to the same conclusion. *See Flores v. Collection of Consultants*, No. 1:20-cv-02369-RDB, 2015 WL 4254032, at *10 (C.D. Cal Mar. 20, 2015) ("The Court concludes that the [optional convenience charge] was not 'incidental' to the principle obligation" for purposes of the FDCPA because, *inter alia*, optional payment methods were offered, the Fees were disclosed, and customers were not steered to utilize the service, instead needing to "affirmatively and separately opt-in . . . ."); *Lish v. Amerihome Mortg. Co., LLC*, No. 2:20-cv-07147-JFW-JPRx, 2020 WL 6688597, at *3–4 (C.D. Cal. Nov. 10, 2020) ("when Plaintiff voluntarily chose to make a payment by telephone rather than by other, cost-free methods, she entered into a separate agreement with Defendant" and any associated fees were not "incidental to the principal obligation" under the FDCPA); *Alexander v. Carrington Mortg. Services, LLC*, No. 1:20-cv-02369-RDB, at *6 (D. Md. Dec. 11, 2020) (convenience fees not incidental to plaintiffs'

mortgages because "[i]t is undisputed that the [Fees] would only be imposed if Plaintiffs elected to make their payments online.  Plaintiffs affirmatively chose to use this alternative method of payment, which is not prohibited by state or federal law.").

### C. The FDCPA permits the Pay-to-Pay Fees.

#### 1. *The Fees are expressly authorized by the agreement.*

Mr. Cooper objects to the Report's finding that the Fees were not "expressly authorized by the agreement creating the debt."  Report at 7-8.  There are two clauses in Paragraph 14 of Plaintiff McFadden's mortgage agreement that "expressly authorize" the Fees.  That Paragraph, titled "Loan Charges," states:

> [Mr. Cooper] *may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument*, including, but not limited to, attorneys' fees, property inspection and valuation fees.  *In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.*

Compl., Ex. A at 8 (¶14) (emphasis added).[2]

The first sentence permits Mr. Cooper to charge Plaintiffs fees for services "performed in connection with . . . default" to protect its interest in the property and its rights under the agreement. Compl., Ex. A at 8 (¶14).  Mr. Cooper's offering of an additional payment mechanism for a nominal fee—which Plaintiffs knowingly utilized—is a function of protecting those interests and rights.  The optional telephone payment service is often utilized right before the payment due date

---

[2] Plaintiff Wilson's mortgage agreement contains a similar provision but with a different second sentence:

> [Mr. Cooper] may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.  <u>Lender may collect fees and charges authorized by the Secretary.</u>

Compl. Ex. C at 8 (¶13).

in order to avoid default and, as a mortgage servicer, it is one of Mr. Cooper's most basic rights to receive and process such borrower payments, and to charge a customer a convenience fee for using that service.[3]   Further, taking Plaintiff McFadden's bare assertion that she was in default at the time Mr. Cooper obtained servicing rights of her mortgage loan, Mr. Cooper's interest in protecting its right to receive payment would be especially strong, and permitting phone payments is a way to ensure that the borrower does not go further into default through a late payment.

The second sentence unambiguously states that Mr. Cooper may charge "*any other fees*" so long as such fee is not prohibited elsewhere within the security agreement, and neither the Report nor Plaintiffs identify any such prohibition.  Compl., Ex. A at 8 (¶14) (emphasis added). *See, e.g., Beer v. Nationstar Mortg. Holdings, Inc*., No. 14-cv-13365, 2015 WL 13037309, at *3 (E.D. Mich. July 15, 2015) (challenged fees did not violate agreement containing similar "Loan Charges" provision to Plaintiff McFadden's).

The Report's suggestion that each fee must be specifically listed to be permissible is counter to the plain language of the FDCPA.  That statute prohibits only those fees that are not "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692(f)(1).  The mortgage agreements expressly authorize the collection of fees in connection with default as well as "any other fees."  Such language encompasses the Fees at issue.

The court's decision in *Beer* is instructive.  That decision states: "Plaintiff also fails to identify a contractual provision prohibiting the alleged 'unnecessary fees and costs'; in fact, the Mortgage provides that 'the absence of express authority in this Security Instrument to charge a

---

[3] Central among any loan servicer's rights is the right to receive and process payments from borrowers.  *See Mohamed v. Select Portfolio Servicing, Inc.*, 215 F. Supp. 3d 85, 89 (D.D.C. 2016) ("Typically, a loan servicer processes your loan payments…") (internal quotations omitted) (citing CFPB, What's the Difference Between a Mortgage Lender and a Servicer? (Sept. 13, 2017)).

specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.'" *Beer*, 2015 WL 13037309, at *3. This reasoning holds equally true here; the Complaint does not identify any provision of Plaintiffs' mortgage agreements that prohibits the Fees. Compl., Ex. A at 8 (¶14), Ex. C at 8 (¶13). *See also* Reply at 14; Report at 8-9. Despite *Beer*'s clear language, the Report attempts to flip Plaintiffs' burden to adequately plead that the Fees are not expressly authorized onto Mr. Cooper by holding that Mr. Cooper did not specifically identify such an authorizing provision. Report at 9 ("The FDCPA, however, does not require Plaintiffs to identify any provision at all (let alone specific prohibitions); rather, all that is needed is the *absence* of a provision expressly authorizing a fee."). Regardless of which party has the burden, however, the mortgage agreements plainly authorize the Fees at issue.

### 2. *The Fees are permitted by law.*

Mr. Cooper objects to the Report's finding that the Fees are not permitted by law. It is Plaintiffs' burden to adequately plead their claims, yet they have not identified any law that prohibits Mr. Cooper from collecting a voluntary fee in exchange for an additional payment method, and none exists. Fed. R. Civ. P. 8(a); *Iqbal*, 556 U.S. at 666 (2009). An FDCPA violation cannot lie unless a specific legal prohibition exists for a particular practice. *See Johnson v. Riddle*, 305 F.3d 1107, 1117–18 (10th Cir. 2002) (noting that, "in interpreting the phrase permitted by law, 'a general statutory authorization' satisfies the FDCPA"). As several courts have concluded, a plaintiff may not "opt in" to an FDCPA claim by paying fees that were voluntarily paid and reasonably avoidable. *See Bryant v. Aargon Collection Agency, Inc.*, No. 17-CV-14096, 2017 WL 2955532 (S.D. Fla. June 30, 2017); *Lee v. Main Accounts, Inc.*, 125 F.3d 855, 855 (6th Cir. 1997) (finding 5% charge on "optional payment choice" to pay by credit card was "not an unconscionable or deceptive debt collection practice"); *Heald v. Ocwen Loan Servicing, LLC*, No. 3:13-cv-993-J-34JRK, 2014 WL 4639410, at *5 (M.D. Fla. Sept. 16, 2014) (dismissing FDCPA claim with

similar "Loan Charges" provision in mortgage agreement). Indeed, the practice of offering additional fee-based payment services is commonplace in many facets of consumer banking and payments.[4]

## II.   MR. COOPER OBJECTS TO THE REPORT'S FINDING THAT PLAINTIFFS ADEQUATELY PLED VIOLATIONS OF THE FCCPA

Mr. Cooper objects to the Report's finding that Plaintiffs adequately alleged that Mr. Cooper had "actual knowledge" that it did not have a right to collect the Fees.  Report at 10.

Plaintiffs' sole allegation in support of this claim is that Mr. Cooper "attempted to enforce, claimed, and asserted a known non-extent legal right to a debt" in violation of the FCCPA.  Compl. ¶ 121.  Such allegations, however, are insufficient.  Rather, Plaintiffs must allege "actual knowledge of any [illegitimate] impropriety or overreaching" instead of simply "track[ing] the language of the FCCPA." *Nardolilli v. Bank of Am. Corp.*, No. 12-81312, 2013 WL 12154541, at *4 (S.D. Fla. Dec. 5, 2013); Fla. Stat. § 559.72(9).  Merely alleging that a creditor *should have known* a debt was illegitimate is insufficient.  *Cornette v. I.C. System, Inc.*, 280 F. Supp. 3d 1362, 1371 (S.D. Fla. 2017) (recovery requires "actual knowledge that the right did not exist" to collect the debt).

The Report cites *Blake v. Seterus* for the proposition that "Plaintiff [need] only allege circumstantial facts to demonstrate" actual knowledge.  Report at 10 (*quoting Blake v. Seterus, Inc.*, No. 16-21225-CIV-JLK, 2017 WL 543223 at *3 (S.D. Fla. Feb. 9, 2017)).  *Blake* held that evidence of knowledge may be derived from an allegation that "it was Defendant's regular practice to include *unincurred, estimated costs* in the reinstatement amount," despite the agreement and

---

[4] The Report's reliance on *Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2d Cir. 1999), for the proposition that the Fees must be affirmatively authorized is misplaced.  *Tuttle* expressly declined to reach this issue because the charges in that case were expressly authorized under state law.  *Id.* at 13 ("But we need not decide the question because we ultimately conclude that Connecticut law does affirmatively authorize Equifax's service charge.").

servicing guidelines' prohibition of such conduct. *Id.* at *3.   (emphasis added).   However, Plaintiffs' allegations are a far cry from the unincurred, estimated costs alleged in *Blake*.  Plaintiffs do not, and cannot, allege any circumstantial facts in support of the suggestion that Mr. Cooper had *actual knowledge* that it had no right to collect the Fees.  To the contrary, Mr. Cooper continues to believe otherwise.  Contrary to the Report's finding, the fact that Mr. Cooper is a large mortgage servicer provides no support for the claim that Mr. Cooper had *actual knowledge* that it had no right to collect the Fees.  Actual knowledge means actual knowledge.  Plaintiffs cannot meet this fundamental element of an FCCPA claim by alleging merely that Mr. Cooper *should have known* it had no right to collect the Fees.

Mr. Cooper also objects to the Report's finding that actual knowledge "is a factual question that typically should not be addressed" at this stage.  Report at 10.  Florida courts have routinely granted motions to dismiss based on a failure to plead actual knowledge.  *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1373 (S.D. Fla. 2011) (granting motion to dismiss on FCCPA claim for failure to allege actual knowledge); *In re Lamb,* 409 B.R. 534, 541-42 (Bankr. N.D. Fla. 2009) (same).

### III.   MR. COOPER OBJECTS TO THE REPORT'S FINDING THAT PLAINTIFFS ADEQUATLY PLED VIOLATIONS OF THE FDUTPA

#### A. Plaintiffs failed to adequately allege their FCCPA claims and therefore such claims are insufficient for purposes of pleading a *per se* FDUTPA violation.

As discussed in Mr. Cooper's Motion, Reply, and the above, Plaintiffs failed to adequately allege violations of the FCCPA, and therefore Mr. Cooper objects to the Report's findings that such allegations can serve as a predicate for *per se* violations of the FDUTPA.[5]  Report at 11; Motion at 24-25; Reply at 19; *supra* Section II.

---

[5] Plaintiffs also failed to adequately allege violations of the FDCPA as a predicate for *per se* violations of the FDUTPA, an argument the Report does not address.

**B.  Plaintiffs failed to adequately allege traditional FDUTPA violations.**

Mr. Cooper objects to the Report's finding that charging Plaintiffs Fees to make payments by phone was an "unfair" or "deceptive" practice.  Report at 12; Motion at 25-27; Reply at 19-21. An "unfair practice" is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  *Lombardo v. Johnson & Johnson Consumer Cos., Inc.*, 124 F. Supp. 3d 1283, 1287 (S.D. Fla. 2015).  "Deception" is an objective standard that occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.  *Id.*

Mr. Cooper engaged in no unfair or deceptive practice regarding the Fees, and Plaintiffs failed to adequately allege any plausibly pled facts supporting such a claim.  Plaintiffs voluntarily chose a payment method involving a fee among various payment options.  Plaintiffs do not allege that Mr. Cooper failed to advise Plaintiffs that a fee would be assessed to make a telephone payment, the amount of the Fees, or what Plaintiffs would receive in exchange for the Fees.  *See Washington v. LaSalle Bank Nat. Ass'n*, 817 F. Supp. 2d 1345, 1350 (S.D. Fla. 2011) ($899 lender administration fee did not violate FDUTPA where fee was disclosed on the settlement statement that borrower saw at closing, the fee was not misleading, and charging the fee, after its disclosure, was not immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers). Further, Plaintiffs point to no authority—and Mr. Cooper is aware of none—to support the proposition that a mortgage servicer is required to disclose its actual costs of processing certain transactions, however that could be defined.  *See* Compl. ¶ 130.  The Report incorrectly suggests that Plaintiffs can adequately plead an FDUTPA claim simply by alleging that Mr. Cooper did not disclose to Plaintiffs the percentage of the Fee retained by Mr. Cooper and not passed on to a third-party processor.  Loan servicers have never been required to disclose to borrowers their internal costs, which will often change from time to time depending on region, third-party vendors,

prevailing interest rates, and other variables.  The failure to disclose how Mr. Cooper shares the Fees with vendors cannot form the basis of an FDUTPA claim where the amount of the Fee paid by the consumer is properly and fully disclosed.

The Fees were also not "unfair" for purposes of the FDUTPA.  Plaintiffs identify no public policy nor way in which offering Plaintiffs an alternative method of payment for a nominal fee, which Plaintiffs repeatedly and voluntarily utilized, would be "immoral, unethical, oppressive, unscrupulous or substantially injurious." *Lombardo*, 124 F. Supp. 3d at 1287.

*Waddell* is instructive here, holding that the "practice of charging customers a fee for paying by phone is not unfair or deceptive under the UDTPA [a substantially similar state statute to the FDUTPA].  [Defendant's] fee for an optional service that [plaintiff] chose for her convenience is not plausibly deceptive (i.e., capable of or tending to deceive) or unfair (i.e., immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers)." *Waddell v. U.S. Bank Nat'l Ass'n*, 395 F. Supp. 676, 685 (E.D.N.C. 2019).  The Report dismisses *Waddell* as "unpersuasive" (Report at 15), but *Waddell* is not alone.  *Waddell*, for example, was followed by *Brown v. Loancare, LLC*, which held:

> [T]he practice of "charging customers a fee for paying by phone is not unfair or deceptive under the UDTPA" because the pay-by-phone fees were fees for "an optional service that [the plaintiff] chose for her convenience." *Waddell*, 395 F. Supp. 3d at 685.  Here, Plaintiff's UDTPA claim [which is substantially similar to the FDUTPA claims at issue here] also fails. . . . Additionally, and like the plaintiff in *Waddell*, Plaintiff exercised her option to pay her mortgage either by phone or online.  *It is not plausible that charging a fee for an optional service, particularly when Plaintiff had alternative means of payment, is unfair or deceptive.  See Waddell*, 395 F.Supp. 3d at 685; *Lish v. Amerihome Mort. Co*., *LLC*, No 2:20-cv-07147, 2020 WL 6688597, at *6-7 (C.D. Cal. Nov. 10, 2020) (holding that a service fee imposed for using an optional payment method was not unfair or deceptive); *Messina v. Green Tree Servicing*, *LLC*, 210 F.Supp. 3d 992, 1006 (N.D. Ill. 2016) (finding a service fee imposed for making a mortgage payment by phone was not immoral, unethical, oppressive, or unscrupulous because the plaintiff had alternative means to pay).

12

*Brown v. Loancare, LLC*, No. 3:20-cv-00280-FDW-DSC, 2020 WL 7389407, at *5 (W.D.N.C. Dec. 16, 2020) (emphasis added) (internal citations omitted).

Unlike *Waddell* and *Brown*, which address fees nearly identical to the Fees at issue here, *Latman*, upon which the Report relies, is distinguishable.  Report at 12-13; *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699 (Fla. Dist. Ct. App. 2000).  Defendants in *Latman* charged cruise ship passengers *compulsory* "port charges," the definition of which was ambiguous.  *Latman* at 702-03 n.3.  In contrast, Plaintiffs here were provided all necessary and relevant information regarding the Fees, including their cost, what causes them to be assessed, and how they may be avoided.

Mr. Cooper also objects to the Report's finding that determining whether a pass-through charge is unfair or deceptive is a "question of fact for the jury."  Report at 12.  As noted by the court in *Waddell*, "[w]hether an act or practice is unfair or deceptive is a question of law for the court."  *Waddell*, 395 F. Supp. 3d at 685 (granting motion to dismiss claim brought under substantially similar North Carolina state law).

## IV.  MR. COOPER OBJECTS TO THE REPORT'S FINDING THAT PLAINTIFFS ADEQUATLY PLED STATE LAW BREACH OF CONTRACT CLAIMS

### A.  Plaintiffs failed to adequately allege breach of any specific provisions of their mortgage agreements through charging of the Fees.

Mr. Cooper objects to the Report's finding that Plaintiff McFadden adequately pled her breach of contract claims by virtue of adequately pleading her FDCPA and FCCPA claims.  Report at 13-14.  As discussed above and in Mr. Cooper's Motion and Reply, Plaintiffs have failed to adequately plead their FDCPA and FCCPA claims and, therefore, failed to adequately plead their derivative breach of contract claims.[6]  *See supra* Sections I, II; Motion at 7-9; Reply at 2-9.

---

[6] Plaintiff Wilson's claim that Mr. Cooper breached her mortgage agreement by virtue of violating the FDCPA is fatally defective as Plaintiff Wilson does not claim that the FDCPA applies to her servicing relationship with Mr. Cooper and, tellingly, Plaintiff Wilson is not a party to Count I of the Complaint alleging FDCPA violations.

Plaintiff McFadden's mortgage also expressly permits Mr. Cooper to charge fees in connection with Plaintiff's default and any other fees not specifically prohibited, including the Fees. *See supra* Section I.C.1.

Mr. Cooper also objects to the Report's finding that Plaintiff Wilson adequately pled breach of Paragraph 13 of her mortgage agreement due to alleged violations of the FDCPA and guidelines issued by the Fair Housing Administration ("FHA") and the Department of Housing and Urban Development ("HUD"). Report at 14. Motion at 7-12. Reply at 2-9. First, as with Plaintiff McFadden, Plaintiff Wilson's mortgage expressly permits Mr. Cooper to charge fees in connection with Plaintiff's default "for the purpose of protecting [its] interest in the Property and rights under this Security Instrument," including the Pay-to-Pay Fees. *See supra* Section I.C.1.

Second, the Report incorrectly posits that "HUD's fee lists are exclusive and preclude a lender from charging unauthorized fees." Report at 14. HUD guidelines and regulations, however, list permissive fees that a mortgagee "may collect" and also provide a list of fees expressly prohibited. *See* 24 C.F.R. § 203.552(a)(12) (mortgagees "may collect reasonable and customary fees and charges"); FHA/HUD Handbook 4000.1 III(A)(1)(f) (at pg. 632) (containing list of expressly prohibited fees, which does not include Pay-to-Pay Fees). If the list of permissive fees were the exclusive fees that a mortgagee could charge, there would be no need for the guidelines to provide a separate list of prohibited fees. "Prohibited fees" would simply be proscribed by virtue of being absent on the permissive list. But that is not how the FHA/HUD Handbook 4000.1 or the regulations work. HUD does not prohibit the Fees at issue.

Thirdly, Plaintiff Wilson has no independent standing to enforce the FHA/HUD guidelines. *See Fed. Nat'l Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 193 (6th Cir. 1989) (holding "no express or implied right of action in favor of the mortgagor exists for violation of HUD mortgage servicing

14

policies"); *Caban v. Rushmore Loan Mgmt. Servs.*, No. 1:18-CV-00393-MHC-JFK, 2018 WL 5260063 at *5 (N.D. Ga. July 23, 2018) (dismissing claim because "Defendant's alleged failure to comply with HUD/FHA servicing guidelines does not impose a duty on Defendant owed to Plaintiff"); *Dan-Harry v. PNC Bank*, No. CV 17-136 WES, 2018 WL 1083581, at *3 (D.R.I. Feb. 27, 2018) ("it is well settled that the HUD regulations do not support a private right of action"). Plaintiffs concede this point, acknowledging "Mr. Cooper is correct that the violation of such [FHA/HUD] guidelines is not by itself actionable . . . ." Response at 27.  Although Plaintiff Wilson argues she is able to incorporate the FHA/HUD guidelines by reference into her mortgage agreement, she fails to identify controlling authority permitting her to step into the agency's shoes to cure her standing defect.

Again, *Waddell* is instructive.  The case's core holding is that the mortgage instrument at issue, similar to Plaintiffs', "does not expressly address whether [defendant] can charge a service fee for an optional payment method (such as pay-by-phone), while providing other payment options that involve no fee.  If the parties to the contract had intended to limit a party's right to charge a service fee for an optional payment method (such as pay-by-phone), 'it would have been easy to' include such language in the contract." *Waddell*, 395 F. Supp. 3d at 685.  Plaintiffs' mortgage agreements are similarly silent regarding the pay-by-phone fees, and that is sufficient to conclude that Mr. Cooper did not breach the agreements by charging the fees.  Other Courts have adopted *Waddell*'s position.  *See Brown v. Loancare, LLC*, NO. 3:20-cv-00280-FDW-DSC, 2020 WL 7389407, at *5 (W.D.N.C. Dec. 16, 2020) (adopting Waddell's reasoning and collecting cases).

### B.  Plaintiffs' claims are barred by the Voluntary Payment Doctrine.

Mr. Cooper objects to the Report's findings that the voluntary payment doctrine is not a proper basis for dismissal, and that plaintiffs did not have full knowledge of the facts when using

Mr. Cooper's pay-by-phone service to make their mortgage payments.  Report at 16-17.  Both the District and Florida recognize the "voluntary payment" doctrine, which bars individuals who voluntarily submit payment from later seeking to recover that same payment.  *See Eagle Maint. Servs., Inc. v. D.C. Cont. Appeals Bd.*, 893 A.2d 569, 582 (D.C. 2006) (District common law recognizes the "voluntary payment doctrine," which provides that money knowingly and voluntarily paid under a claim of right to the payment cannot be recovered solely because the payor later believes the claim was illegal) (citing *Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325, 1329 (Ill. App. Ct. 1995)); *City of Miami v. Keton*, 115 So. 2d 547, 551 (Fla. 1959) (explaining that voluntary payment doctrine provides that "where one makes a payment of any sum under a claim of right with knowledge of the facts, such a payment is voluntary and cannot be recovered").[7] The doctrine is applicable so "long as payment is made with knowledge of the factual circumstances," whether or not the payor was mistaken as to the enforceability of the demand or liability under the law.  *Hassen v. Mediaone of Greater Fla., Inc*., 751 So. 2d 1289, 1290 (Fla. Dist. Ct. App. 2000).

Plaintiffs concede that they voluntarily paid the Fees in exchange for Mr. Cooper processing their mortgage payments by phone through a third party for their convenience, and they do not allege that they were unaware of the exact Fee amount or why the Fee was charged.  Compl. ¶¶ 136, 147.  *See also McDermott v. L.A. Fitness Int'l, LLC*, No. 2:11-cv-192-FtM-36DNF, 2012 WL 13098143, at *5 (M.D. Fla. Mar. 21, 2012) (voluntary payment doctrine applicable where

---

[7] Although Florida has partially abrogated the voluntary payment doctrine through Fla. Stat. Ann. § 725.04, courts have still applied the doctrine, explaining that "money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered back, and this is true even though the claim thus paid was illegal."  *Sanchez v. Time Warner, Inc*., No. 98–211–CIV–T–26A, 1998 WL 834345, at *2 (M.D. Fla. Nov. 4, 1998).

"evident from the complaint that the payment was made by the plaintiff voluntarily and with knowledge of the facts."); *Brink v. Raymond James & Assocs., Inc.*, 341 F. Supp. 3d 1314, 1320 (S.D. Fla. 2018).

The Report rejects application of the voluntary payment doctrine on the basis of Plaintiffs' claim that they were unaware that the Fee amount was substantially greater than Mr. Cooper's actual costs.  Report at 17.  Defendants respectfully disagree with the Report's conclusion.  As noted above, Mr. Cooper fully disclosed the Fees, the circumstances in which it would be imposed, and alternative payment options to avoid the Fees.  Mr. Cooper's alleged profits from the Fees— and the alleged proportion of the Fees it shared with a third-party processor—are immaterial. Plaintiffs had "full knowledge of all the [necessary] facts" regarding the transaction as it pertained to them—Plaintiffs agreed to pay the Fees at the stated price in exchange for making mortgage payments by phone or online while aware of no-fee payment alternatives.  *Hassen*, 751 So. 2d at 1290.  *See also Sanchez*, 1998 WL 834345 at *2 (dismissing complaint alleging excessive late payment fee pursuant to voluntary payment doctrine because "Plaintiff knew failure to pay her bill within the time frame . . . would trigger the . . . late charge" and that she was previously assessed and paid such a charge).

Finally, courts have routinely dismissed claims at the pleading stage pursuant to the voluntary payment doctrine where, as here, there are sufficient facts to conclude that the payments at issue were made voluntarily.  *See e.g. Kuchenmeister v. HealthPort Techs., LLC*, 753 F. App'x 794, 798 (11th Cir. 2018) (affirming dismissal of unjust enrichment claims on basis of voluntary payment and noting that "[t]he party seeking to recover payment bears the burden of showing that the voluntary payment doctrine does not apply") (quoting *Telescripps Cable Co. v. Welsh*, 247 Ga.

App. 282, 284 (2000)); *Sanchez*, 1998 WL 834345 at *2 (dismissing claim on the basis of voluntary payment).

### C. Plaintiffs entered into a separate agreement with Mr. Cooper for the Pay-to-Pay Fees.

Mr. Cooper objects to the Report's finding that Plaintiffs' oral agreements with Mr. Cooper to pay the Fees did not form a separate contract.  Report at 18.

Should the Court determine that the mortgage agreements do not address the parties' duties and obligations with respect to the Fees, the parties have nonetheless satisfied the criteria for the creation of a separate oral contract for the Fees.  *See W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 302 (Fla. Dist. Ct. App. 1999) (describing basic contract principles as applied to an oral contract claim); *Ashrafi v. Fernandez*, 193 A.3d 129, 131 (D.C. 2018) (same).

Specifically, Plaintiffs' agreement to pay the Fees at the stated amount, in exchange for Mr. Cooper accepting that phone payment, constitutes a separate oral agreement under the common laws of Florida and the District.  *See St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004) (finding valid oral contract between real estate broker and landowner for commission of sale of property); *Armao v. McKenney*, 218 So. 3d 481, 485 (Fla. Dist. Ct. App. 2017) (finding valid oral agreement existed); *New Dirt, Inc. v. Harrison*, 182 So. 3d 773, 775 (Fla. Dist. Ct. App. 2015) (finding valid employment agreement between company and co-founder); *Blackstone v. Brink*, 63 F. Supp. 3d 68, 83 (D.D.C. 2014) (finding enforceable oral agreement between Plaintiff's attorney and State Farm representative regarding settlement of fatal car accident claim); *Demissie v. Starbucks Corp. Office & Headquarters*, 118 F. Supp. 3d 29, 34 (D.D.C. 2015), *aff'd*, 688 F. App'x 13 (D.C. Cir. 2017) (finding enforceable oral agreement between Starbucks and former employee regarding settlement of alleged violations of Title VII).

The Report cites *Techreations* for the proposition that, because the Fees are incidental to Plaintiffs' mortgages—a conclusion that Mr. Cooper disputes—"the oral agreement here does not rise to the level of a separate contract."  Report at 18 (quoting *Techreations, Inc. v. Nat'l Safety Council*, No. 86 C 1399, 1986 WL 15077, at *5 (N.D. Ill. Dec. 24, 1986)).  *See also supra* Section I.B.  *Techreations* does not lead to this conclusion.  *Techreations* held that a contract was not formed because it lacked "the necessary detail, completeness, and coverage to stand on its own as an enforceable contract."  *Techreations* at *5.  Here, Plaintiffs orally agreed to Mr. Cooper's offer to process their mortgage payments over the phone in exchange for adequate consideration, the Fees.  *See* Motion at 20-21.  Under both Florida and D.C. law, the parties created separate oral agreements.  *See* Motion at 20-21.

Further, the "Borrower's Promise to Pay" in Plaintiffs' mortgage agreements are explicit that payments shall be "in the form of cash, check or money order."  Motion Exs. 3-4 ¶ 1.  If the parties were operating within the parameters of Plaintiffs' mortgage notes only, it would be impermissible for Plaintiffs to pay-by-phone, which could potentially lead to late fees and/or default.  *See* Motion Exs. 3-4 ¶ 1; Motion at 21.  Instead, Mr. Cooper provided the additional option of pay-by-phone for the convenience and benefit of its customers, which resulted in separate oral agreements.

## V.    MR. COOPER OBJECTS TO THE REPORT'S FINDING THAT PLAINTIFF WILSON ADEQUATLY PLED VIOLATIONS OF THE D.C. MLBA

Mr. Cooper objects to the Report's findings that Plaintiff Wilson adequately provided pre-suit notice of her MLBA claim and that Plaintiff Wilson plausibly alleged that Mr. Cooper made misleading representations or omissions regarding the assessment, amount, or services provided in exchange for the Fees.  Report at 19-20.

As a threshold matter and discussed below, Plaintiff Wilson was required to provide Mr. Cooper with pre-suit notice of her MLBA claim and failed to do so but was aware of the requirement as shown by the pre-suit notice for her other claims.  *See infra* Section VII.B.

Additionally, Plaintiff Wilson only provides a threadbare recital of the MLBA's requirements and does not allege how she was misled by Mr. Cooper.  Compl. ¶¶ 6, 92, 164-65. *See also Iqbal*.  The simple fact that Mr. Cooper profited from the Fees does not make them misleading or indicate how Plaintiff Wilson would have acted differently had she been aware of Mr. Cooper's profits on the Fees.  A reasonable consumer would surely opt to pay a nominal telephone payment fee rather than incur higher late fees or enter default, regardless of how that nominal fee was internalized by her loan servicer.  The Report's reliance on *Logan* is unpersuasive, as that decision recognized that "a mere recitation of the very barest elements of the claim," as Plaintiff Wilson has done here, is not satisfactory.  *Logan v. LaSalle Bank Nat. Ass'n*, 80 A.3d 1014, 1025-26 (D.C. 2013).

Finally, Plaintiff Wilson's MLBA claims are predicated on the same facts as Plaintiffs' defective FDCPA claims, as discussed above, and therefore similarly fail.  *Mushala v. US Bank, Nat'l Ass'n*, No. CV 18-1680 (JDB), 2019 WL 1429523, at *9 (D.D.C. Mar. 29, 2019) ("Even assuming Mushala has a cognizable MLBA claim, *res judicata* bars it.  Mushala identifies the same factual predicates for the MLBA claim as she alleged under the heading of the FDCPA . . . .").  *See supra* Section I.C.

## VI.   MR. COOPER OBJECTS TO THE REPORT'S FINDING THAT PLAINTIFF WILSON ADEQUATELY PLED VIOLATIONS OF THE DCCPPA

### A.  Mr. Cooper is not a "Merchant" under the DCCPPA.

Mr. Cooper objects to the Report's finding that it is a "Merchant" as defined by the DCCPPA.  Report at 22.  Mr. Cooper was Plaintiffs' mortgage loan servicer and, as the Report

correctly notes, the D.C. Court of Appeals "expressly refused" to hold that the DCCPPA applies to mortgage loan servicers.  Report at 21; *Logan*, 80 A.3d at 1027.  *See also Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 280 (D.D.C. 2011) (dismissing DCCPPA claim where plaintiff failed to establish servicer was merchant, noting "[a]lthough the plaintiff notes that the [DC]CPPA applies to lenders in residential mortgage transactions . . . the plaintiff has alleged here that Capital One was not the lender and that its role in the lender-borrower relationship was limited to serving as the loan servicer, at best . . . ."); *Saiyed v. Counsel on Am.-Islamic Relations Action Network, Inc.*, 346 F. Supp. 3d 88, 94 (D.D.C. 2018).  *See also Mushala*, 2019 WL 1429523 at *9.  The *Logan* court's dicta regarding the other mortgage-related transactions that the DCCPPA applies to is immaterial and does not change the court's decision *not* to apply the Act to mortgage loan servicers.  Report at 21; *Logan*, 80 A.3d at 1027.

The allegations in the Complaint cited in the report—for example, that Mr. Cooper pays taxes and insurance from mortgage escrow accounts and offers—does not convert Mr. Cooper into a covered "Merchant" under the statute.  Paying taxes and insurance is a service performed by mortgage servicers in connection with the servicing of loans.  It is one of the responsibilities of a mortgage servicer.  If mortgage servicers are exempt under the statute, the fact that Mr. Cooper performs activities such as paying taxes and insurance does not bring Mr. Cooper within the scope of the statute.  And Mr. Cooper objects to the Report's suggestion that Mr. Cooper's "substantial profits" bring the company within the scope of the DCCPPA.  The profitability of a company has no bearing on the relevant legal analysis, which is simply whether or not mortgage servicing is an activity covered under the statute.  For the reasons noted above and in the Motion, we respectfully submit that the DCCPPA does not apply to mortgage servicing.  *See* Motion at 27-28; Reply at 21-23.

**B.    Plaintiffs failed to sufficiently allege that the Fees were misleading under the DCCPPA.**

Mr. Cooper objects to the Report's finding that Plaintiffs plausibly alleged that the Fees were misleading for purposes of the DCCPPA.  Report at 23.  As a threshold matter, the Fees are not misleading and were not plausibly alleged to be.  *See supra* Sections III.B, V.  Plaintiff Wilson voluntarily utilized Mr. Cooper's pay-by-phone service and nowhere does the Complaint allege, nor could it, that Mr. Cooper misled her regarding the Fees.  Plaintiffs allege only that Mr. Cooper failed to disclose the internal costs of the Fees as compared to the cost of the service to Mr. Cooper, but as discussed above, Mr. Cooper's failure to disclose its profits on the Fees has no bearing on whether it deceived the Plaintiffs into paying the Fees.  *See* Section III.B.

First, Plaintiffs incorrectly argue that Mr. Cooper did not have the right to collect the Fees despite the fact that, as described above and in Mr. Cooper's Motion, the Fees violate neither Plaintiffs' mortgage agreements nor the FDCPA.  *See supra* Section III.B.  *See* Motion at 27-28.  Charging a fee Mr. Cooper is legally permitted to charge cannot be an unlawful trade practice, regardless of the underlying costs.  *See Waddell*, 395 F. Supp. 3d at 685 ("charging customers a fee for paying by phone is not unfair or deceptive . . . . [Defendant's] fee for an optional service that [plaintiff] chose for her convenience is not plausibly deceptive (i.e., capable of or tending to deceive) or unfair (i.e., immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.").

Second, Mr. Cooper objects to the Report's finding that Plaintiffs adequately alleged that Mr. Cooper's failure to disclose its profit on the Fees was "material."  Report at 23-24.  The "material" standard under the DCCPA requires "proof" of a tendency to mislead and Plaintiffs fail to allege how they were misled or, in other words, how they would have acted differently if they knew Mr. Cooper received a profit. *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 444 (D.C.

22

2012); Reply at 29-30; Report at 23-24.  A reasonable consumer would opt to pay a nominal fee rather than incur higher late fees or enter default, regardless of how that nominal fee was internalized by his or her loan servicer.  *Fort Lincoln*, relied upon by the Report, is distinguishable. *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.,* 944 A.2d 1055 (D.C. 2008). There, defendants misrepresented an agreement with plaintiff condominium owners that "substantially affect[ed] the use or maintenance" of their units.  This is plainly not the case with the Fees at issue here.

## VII.  MR. COOPER OBJECTS TO THE REPORT'S FINDING THAT PLAINTIFFS ADEQUATLY PLED UNJUST ENRICHMENT

### A.  Plaintiffs' pleading of unjust enrichment in the alternative is inappropriate.

Mr. Cooper objects to the Report's finding that Plaintiffs may maintain their unjust enrichment claims as an alternative theory of liability.  Report at 24-25.  The conduct comprising Plaintiffs' alleged unjust enrichment claims arises entirely out of the parties' contractual borrower-servicer relationship.  Reply at 18; *Smith v. Rubicon Advisors, LLC*, 254 F. Supp. 3d 245, 249 (D.D.C. 2017) ("In general, a plaintiff cannot maintain an unjust enrichment claim concerning an aspect of the parties' relationship that was governed by a contract.").  *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1322 (S.D. Fla. 2014) (same).

*Kirchner v. Ocwen Loan Servicing, LLC* is instructive.  There, the Court addressed a similar situation where the plaintiffs argued that certain property inspection fees charged by their loan servicer constituted unjust enrichment.  257 F. Supp. 3d 1314, 1324 (S.D. Fla. 2017), a*ppeal dismissed*, 2017 WL 5185306 (11th Cir. Sept. 21, 2017).  *Kirchner* notably did not include a breach of contract claim, yet the court still dismissed the plaintiffs' unjust enrichment claim with prejudice because there was "no question" that an express contract governed the subject matter of the case and "[a]ny unjust enrichment claim would fail as a matter of law."  *Id*. at 1325; Reply at 18.

Here too, the gravamen of the unjust enrichment claims is the parties' borrower-servicer relationship, which arises under and is governed by contract—whether the mortgage agreements, notes, or separate oral agreements.  Plaintiffs may not convert a contractual dispute into an equitable one, in the alternative or otherwise.  Reply at 19.  *See also In re Kachkar*, 769 F. App'x 673, 681 (11th Cir. 2019) ("[Plaintiff's] claim for unjust enrichment fails because [under Florida law] an unjust-enrichment claim cannot lie where an express contract exists."); *Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 209 (D.D.C. 2016); *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1196 (S.D. Fla. 2017) ("[W]here the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those causes of action and warrants dismissal.") (internal citation omitted).

## B.  Plaintiffs failed to adequately allege pre-suit notice.

Mr. Cooper objects to the Report's finding that Plaintiffs adequately alleged that they provided Mr. Cooper with pre-suit notice of their unjust enrichment claims.  Report at 26.  Both Plaintiffs' mortgage agreements contain express provisions requiring written notice of any alleged violations of the security instruments and a reasonable opportunity to cure, noting:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section [15/14]) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

Compl., Ex. A at 10 (¶ 20), Ex. C at 10 (¶ 19).  As discussed above, Plaintiffs' unjust enrichment claims are based entirely on conduct related to the parties' contractual borrower-servicer relationship and therefore bound by the pre-suit notice requirements.  *See supra* Section VII.A; *Hill v. Nationstar Mortg. LLC*, No. 15-60106-CIV, 2015 WL 4478061, at *3 (S.D. Fla. July 2,

24

2015) ("Thus, regardless of the cause of actions alleged, the Homeowners' claims are entirely based on their mortgage contracts . . . includ[ing] the unjust enrichment claim in this case, as the alleged enrichment was the alleged overcharging of property inspection fees pursuant to the terms of the mortgage contracts."); *Trevathan v. Select Portfolio Servicing, Inc.*, 142 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) (dismissing claims including unjust enrichment, and tortious interference with business relations where plaintiff failed to allege compliance with notice and cure provision in mortgage).

Plaintiffs' alleged pre-suit notice on Mr. Cooper is defective as it fails to include *any* reference to Plaintiffs' unjust enrichment claims, only seeking "restitution" of the Fees in relation to their other claims.  Report at 26; Compl. ¶¶ 79, 93; Motion Exs. 1-2.[8]  In contrast, Plaintiffs deliberately referenced their FCCPA, FDUTPA, and DCCPPA claims in their pre-suit demands, indicating an understanding of their pre-suit obligations.  Report at 26; Compl. ¶¶ 79, 93; Motion Exs. 1-2.  Such a general reference to restitution does not provide the "sufficient detail" necessary to put Mr. Cooper on notice of an unjust enrichment claim and the Report's reliance on *Henok* is misplaced as the Plaintiffs there were provided notice of the core issue of the complaint, foreclosure.  *Henok v. Chase Home Fin., LLC*, 922 F. Supp. 2d 110, 118-19 (D.D.C. 2013)

---

[8] Documents that are integral to and referenced in the Complaint may properly be considered on a motion to dismiss.  *See* Compl. ¶¶ 79, 93 (citing pre-suit demands).  *See Washkoviak v. Student Loan Mkt'g Ass'n*, 900 A.2d 168, 178 (D.C. 2006); *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119–20 (D.D.C. 2011) ("[A] court does not consider matters outside the pleadings, but a court may consider on a motion to dismiss to include 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint . . . .'"); *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46–47 (D.D.C. 2009) (same); *see also Hart v. Elec. Arts, Inc.*, 740 F. Supp. 2d 658, 662–63 (D.N.J. 2010) ("[I]t has been long established that 'a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" (internal citations omitted)).

("[Plaintiff] admits that he received the notice of foreclosure on February 18, 2010 . . . [and] It alerted him that he had until March 24, 2010 before any foreclosure sale would occur . . . .").

## **CONCLUSION**

Accordingly, for the reasons stated herein, Mr. Cooper respectfully objects to the identified portions of the Magistrate Judge's Report and Recommendation.


Date:  August 13, 2021                              Respectfully Submitted,

                                                    BUCKLEY LLP

                                                     */s/ Matthew P. Previn*
                                                    Matthew P. Previn (Bar No. 460228)
                                                    1133 Avenue of the Americas, Suite 3100
                                                    New York, NY 10036
                                                    mprevin@buckleyfirm.com
                                                    (212) 600-2310

                                                    *Counsel for Defendant Nationstar*
                                                    *Mortgage LLC d/b/a Mr. Cooper*

## **CERTIFICATE OF SERVICE**

I certify that on this 13th day of August, 2021, I electronically filed the foregoing

document with the Clerk of Court via ECF, which will send electronic notification of such filing

to all counsel of record.

   */s/ Matthew P. Previn*

Matthew P. Previn
*Counsel for Defendant Nationstar*
*Mortgage LLC d/b/a Mr. Cooper*