**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JACKERLY MCFADDEN
and
CASSANDRA WILSON,
*On Behalf of Themselves and
All Others Similarly Situated*,

       Plaintiffs,                                   **Case No. 1:20-cv-00166**

v.

NATIONSTAR MORTGAGE LLC
d/b/a MR. COOPER,

       Defendant.
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT
NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER'S OBJECTIONS TO THE
MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDATIONS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

LEGAL STANDARDS .......................................................................................................2

RESPONSE TO OBJECTIONS ..........................................................................................2

I.    The Magistrate Correctly Found that Plaintiff McFadden states a claim for violation
      of the federal Fair Debt Collection Practices Act. ..................................................2

      A.    Cooper is a debt collector of Ms. McFadden's loan. ......................................3

      B.    Pay-to-Pay fees are incidental to McFadden's mortgage agreement and is
            not the product of a separate agreement between the parties. .......................5

      C.    Pay-to-Pay Fees are not authorized by either the mortgage agreement or
            permitted by law ..............................................................................................9

            1.    Fees permitted by agreement ..................................................................9

            2.    Fees permitted by law ...........................................................................11

II.   The Magistrate Correctly found that McFadden plausibly alleged violations of
      Florida consumer protection law. ..........................................................................12

      A.    Ms. McFadden plausibly alleged violations of the FCCPA. .........................12

      B.    Ms. McFadden has plausibly alleged violations of FDUTPA. ......................13

III.  The Magistrate Correctly Found that Plaintiffs state a claim for breach of contract ..............15

      A.    Plaintiffs' Deeds of Trust prohibit the imposition of Pay-to-Pay Fees. .......16

      B.    The voluntary payment doctrine does not apply. ..........................................20

      C.    The Pay-to-Pay fees did not result from separate oral agreements. .............22

IV.   The Magistrate Correctly Found that Ms. Wilson has plausibly alleged violations
      of the MLBA. .........................................................................................................24

V.    The Magistrate Correctly Found that Ms. Wilson has plausibly alleged violations
      of the DCCPPA .....................................................................................................25

      A.    The DCCPPA applies to Cooper in its role as mortgage servicer and lender .............26

      B.    The DCCPPA applies to Cooper's Pay-to-Pay Fees. ....................................28

VI.   The Magistrate Correctly Found that Plaintiffs properly plead unjust enrichment
      claims ....................................................................................................................30

      A.    Plaintiffs properly plead unjust enrichment in the alternative to their contract claims.
            ........................................................................................................................30

      B.    The Magistrate Correctly Found that Plaintiffs Alleged the Requisite Pre-Suit Notice
            ........................................................................................................................32

CONCLUSION...................................................................................................................34

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Carrington Mortg. Services, LLC,*
　No. 1:20-cv-02369-RDB (D. Md. Dec. 11, 2020) ...................................................9

*Allen v. Mnuchin,*
　No. 18-1214(RC), 2019 WL 2581323 (D.D.C. June 24, 2019) ...........................2

*Alvarez v. Loancare LLC,*
　No. 20-21837, 2020 WL 5514410 (S.D. Fla. Aug. 28, 2020) ..........................13

*Ashcroft v. Iqbal,*
　556 U.S. 662, 678 (2009) ........................................................................................2

*Bailey v. Fed. Nat. Mortg. Ass'n,*
　209 F.3d 740, 746 (D.C. Cir. 2000) ....................................................................23

*Bardak v. Ocwen Loan Servicing, LLC,*
　No. 8:19-CV-1111-24TGW, 2020 WL 5104523 (M.D. Fla. Aug.12, 2020) ...........7

*Barnett v. Caliber Home Loans, Inc.,*
　No. 2:19-cv-309, 2020 WL 5494414 (S.D. Tex. Sept. 10, 2020) .......................6

*Bates v. JPMorgan Chase Bank, NA,*
　768 F.3d 1126, 1131 (11th Cir. 2014) ...............................................................18

*Batista v. Walter & Bernstein, P.A.,*
　378 So.2d 1321, 1322 (Fla. 3d DCA 1980) ........................................................23

*Beck v. Test Maters Educ. Servs., Inc.,*
　994 F. Supp. 90, 94 (D.D.C. 2013) ..............................................................28, 30

*Beer v. Nationstar Mortgage Holdings, Inc.,*
　2015 WL 13037309 (E.D. Mich., 2015) .............................................................10

*Bell Atl. Corp. v. Twombley,*
　550 U.S. 544, 570 (2007) ........................................................................................2

*Bentley v. Bank of Am., N.A.,*
　773 F. Supp. 2d 1367, 1372-3 (S.D. Fla. 2011) ...............................................13

*Blair v. Wachovia Mortg. Corp.,*
　No. 11-cv-566, 2012 WL 868878 (M.D. Fla. Mar. 14, 2012) ...........................13

*Blake v. Seterus, Inc.,*
　No. 16-cv-21225, 2017 WL 543223 (S.D. Fla. Feb. 9, 2017) ..........................12

*Brink v. Raymond James & Assocs., Inc.,*
　341 F. Supp. 3d 1314, 1320 (S.D. Fla. 2018) ...................................................21

*Brown v. Loancare, LLC,*
　No. 20-cv-280, 2020 WL 7389407 (W.D.N.C. Dec. 16, 2020) ....................3, 15

*Busby v. Capital One, N.A.,*
　772 F. Supp. 2d 268 (D.D.C. 2011) ............................................................26, 27

*Busby v. Capital One, N.A.,*
    932 F. Supp. 2d 114, 133 (D.D.C. 2013)..................................................................................2

*Caban v. Rushmore Loan Mgmt. Servs.,*
    No. 1:18-cv-00393-MHC-JFK, 2018 WL 5260063 (N.D. Ga. July 23, 2018)....................18

*Cabrera v. Haims Motors, Inc.,*
    288 F. Supp. 3d 1315, 1325 (S.D. Fla. 2017)........................................................................15

*Caldwell v. Freedom Mortg. Corp.,*
    No. 19-cv-2193, 2020 WL 4747497 (N.D. Tex. Aug. 14, 2020) ........................................5, 7

*Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh,*
    130 F. Supp. 3d 236, 265-66 (D.D.C. 2015)........................................................................30

*Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach County, Inc.,*
    169 So.3d 164, 167 (Fla. 4th DCA 2015)..............................................................................13

*Carrero v. LVNV Funding, LLC,*
    No. 11-62439-civ, 2014 WL 6433214 (S.D. Fla. Oct. 27, 2014) ....................................20, 21

*Cf. Key v. Allstate Ins. Co.,*
    90 F.3d 1546, 1549 (11th Cir. 1996)......................................................................................32

*Cf. Slinski v. Bank of Am., N.A.,*
    981 F. Supp. 2d 19, 30 (D.D.C. 2013)...................................................................................23

*City of Miami v. Keton,*
    115 So.2d 547, 551 (Fla. 1959) ..............................................................................................22

*Coleman v. CubeSmart,*
    328 F.Supp. 3d 1349, 1364 (S.D. Fla. 2018).........................................................................14

*Dan-Harry v. PNC Bank, N.A.,*
    No. 17-136 WES, 2018 WL 1083581 (D.R.I. Feb. 27, 2018) ..............................................18

*DeBerry v. First Gov't Mortg. & Investors Corp.,*
    743 A.2d 699, 702 (D.C. 1999)..............................................................................................27

*Donlon v. Evolve Bank & Trust,*
    No. CIV. JFM-12-2384, 2014 WL 1330522 (W.D. Tenn. Mar. 31, 2014) .........................18

*Dorado v. Bank of Am., N.A.,*
    1:16-CV-21147-UU, 2016 WL 3924115 (S.D. Fla. July 21, 2016)......................................17

*Douglass v. Convergent Outsourcing,*
    765 F.3d 299, 302 (3d Cir. 2014)...........................................................................................10

*Eagle Maint. Servs., Inc. v. Dist. of Columbia Contract Appeals Bd.,*
    893 A.2d 569, 582 (D.C. Ct. App. 2006)...............................................................................22

*Edmond v. Am. Educ. Servs.,*
    No. 10-cv-578, 2010 WL 4269129 (D.D.C. Oct. 28, 2010) ..................................................3

*Ekedahl v. COREStaff, Inc.,*
    183 F.3d 855, 858 (D.C. Cir. 1999)........................................................................................23

*Elbert v. Roundpoint Mortg. Serv. Corp.*,
    No. 20-cv-00250-MMC, 2020 WL 6940941 (N.D. Cal. Nov. 25, 2020)........................5, 8

*Estate of Campbell v. Ocwen Loan Servicing, LLC*,
    467 F. Supp. 3d 1262 (S.D. Fla. 2020);

*Kelly v. Ocwen Loan Servicing, LLC*,
    No. 3:20-cv-50-J-32JRK, 2020 WL 4428470 (M.D. Fla. July 31, 2020)........................8

*Falconi-Sachs v. LPF Sen. Square, LLC*,
    142 A.3d 550, 559–60 (D.C. App. 2016) ........................21, 22

*Federal National Mortgage Association v. LeCrone*,
    868 F.2d 190, 193 (6th Cir. 1989) ........................18

*Flores v. Collection Consultants of California*,
    No. SA CV 14-0771-DOC, 2015 WL 4254032 (C.D. Cal. Mar. 20, 2015)........................8, 9

*Flying Food Grp., Inc. v. N.L.R.B.*,
    471 F.3d 178, 183 (D.C. Cir. 2006)........................20

*Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*,
    944 A.2d 1055 (D.C. 2008) ........................29

*Fowler v. Wells Fargo Bank, N.A.*,
    17-CV-02092-HSG, 2017 WL 3977385 (N.D. Cal. Sept. 11, 2017) ........................19

*Frankeny v. District Hospital Partners, LP*,
    225 A.3d 999, 1005 (D.C. 2020)........................28

*Franklin v. BAC Home Loans Servicing, L.P.*,
    No. 3:10-CV-1174-M, 2011 WL 248445 (N.D. Tex. Jan. 26, 2011)........................18

*Fuentes v. AR Resources, Inc.*,
    No. 15-7988-FLW-LHG, 2017 WL 1197814 (D.N.J. Mar. 31, 2017) ........................8, 9

*Fusco v. Ocwen Loan Servicing LLC*,
    No. 20-cv-80090, 2020 WL 2519978 (S.D. Fla. Mar. 2, 2020) ........................7

*Garcia v. Nationstar Mortgage LLC*,
    No. 2:15-cv-1808 (W.D. Wash.)........................1

*Gerber v. First Horizon Home Loans Corp.*,
    No. C05–1554P, 2006 WL 581082 (W.D. Wash. Mar. 8, 2006) ........................33

*Harris v. Bowser*,
    369 F.Supp.3d 93, 105 (D.D.C. 2019) ........................4

*Hassen v. Mediaone of Greater Fla., Inc.*
    751 So. 2d 1289, 1290 (Fla. 1st Dist. Ct. App. 2000) ........................22

*Henok v. Chase Home Finance, LLC. Et al.*,
    922 F. Supp. 2d 110, 118-19 (D.D.C. 2013)........................33

*Hernandez v. Home Sav. Ass'n of Dallas Cty.*,
    606 F.2d 596, 601 (5th Cir. 1979) ........................18

*Hill v. Nationstar Mortgage, LLC.,*
    NO. 1560106–CIV, 2015 WL 4478061 (S.D. FL. July 2, 2015).........................................33

*Hughes v. Abell,*
    867 F. Supp. 2d 76, 87–88 (D.D.C. 2012) ...........................................................................27

*In re Kachkar,*
    769 Fed. Appx. 673 (11th Cir. 2019) .....................................................................................31

*In re Lamb,*
    409 B.R. 534, 541-42 (Bankr. N.D. Fla. 2009) ....................................................................13

*Jacobson v. Healthcare Fin. Servs., Inc.,*
    516 F.3d 85, 89 (2d Cir. 2008) ..............................................................................................10

*Jacobson v. Hofgard,*
    168 F.Supp. 3d 187 (D.D.C. 2016) ................................................................................. 31, 32

*JI-EE Indus. Co. v. Paragon Metals, Inc.,*
    No. 09-81590-CIV, 2010 WL 1141103 (S.D. Fla. Mar. 23, 2010)........................................31

*Johnson v. Long Beach Mortg. Loan Trust 2001-4,*
    451 F. Supp. 2d 16, 38 (D.D.C. 2006)...................................................................................27

*Johnson-Morris v. Santander Consumer USA, Inc.,*
    194 F. Supp. 3d 757, 765 (N.D. Ill. 2016)...............................................................................6

*Kirchner v. Ocwen Loan Servicing, LLC,*
    257 F.Supp. 3d 1314 (S.D. Fla. 2017)....................................................................................31

*Koski v. Carrier Corporation,*
    347 F.Supp. 3d 1185 (S.D. Fla. 2017).....................................................................................32

*Kuchenmeister v. HealthPort Techs., LLC,*
    753 F. App'x 794, 798 (11th Cir. 2018)..................................................................................21

*Lang v. Ocwen Loan Servicing, LLC,*
    No. 3:20-cv-81-J-20MCR, 2020 WL 5104522 (M.D. Fla. July 17, 2020) ..............................8

*Langston v. Gateway Mortg. Group,*
    No. 5:20-cv-01902-VAP-KKx, 2021 WL 234358 (C.D. Cal. Jan. 15, 2021) ..........................5

*Latman v. Costa Cruise Lines, N.V.,*
    758 So.2d 699, 703 (Fla. 3d Dist. Ct. App. 2000) ............................................................ 13, 14

*Lembeck v. Arvest Cent. Mortg. Co.,*
    498 F.Supp. 3d 1134, 1136 (N.D. Cal. Nov. 3, 2020) .............................................................5

*Levick v. Kiser,*
    206 F. Supp. 3d 337, 346 (D.D.C. 2016)...............................................................................26

*Liable v. Rockport Financial, LLC,*
    No. 4:15-CV-00306-ERW, 2015 WL 4771664 (E.D. Mo. Aug. 12, 2015) .............................6

*Lindblom v. Santander Consumer USA, Inc.,*
    No. 1:15-cv-990-LJO-BAM, 2016 WL 2841495 (E.D. Cal. May 9, 2016)............................. 6, 9, 11

*Lish v. Amerihome Mortg. Co., LLC,*
  No. 2:20-cv-07147-JFW-JPRx, 2020 WL 6688597 (C.D. Cal. Nov. 10, 2020) ................................. 9

*Logan v. Lasalle Bank Nat'l Ass'n,*
  80 A.3d, 1014 at 1026 (D.C. 2013) ................................................................................ 24, 26

*Manicini Enterprises, Inc. v. Am. Exp. Co.,*
  236 F.R.D. 695, 699 (S.D. Fla. 2006) .................................................................................. 31

*Maor v. Dollar Thrifty Auto. Grp., Inc.,*
  303 F. Supp. 3d 1320, 1326–27 (S.D. Fla. 2017) ................................................................. 21

*Markel Ins. Co. v. Am. Safety Risk Retention Grp., Inc.,*
  No. 3:15-CV-240/RV-CJK, 2016 WL 10611374 (N.D. Fla. Aug. 3, 2016) ............................... 21

*McCollough v. Johnson, Rodenburg & Lauinger, LLC,*
  637 F.3d 939, 950 (9th Cir. 2011) ...................................................................................... 11

*McWhorter v. Ocwen Loan Serv., LLC,*
  No. 2:15-cv-01831, 2017 WL 33135375 (N.D. Ala. Aug. 3, 2017) ................................... 6, 11

*Muhammad v. PNC Bank, N.A.,*
  No. 2:15-cv-16190, 2016 WL 815289 (S.D. W.Va. Feb. 26, 2016) ....................................... 14

*Mushala v. US Bank, Nat'l Ass'n,*
  No. CV 18-1680 (JDB), 2019 WL 1429523 (D.D.C. Mar. 29, 2019) ................................. 25, 26

*Newman v. Checkrite California, Inc.,*
  912 F. Supp. 1354, 1368 (E.D. Cal. 1995) ......................................................................... 11

*Oya v. Wells Fargo Bank, N.A.,*
  No. 3:18-CV-01999-H-BGS, 2019 WL 157802 (S.D. Cal. Jan. 9, 2019) ................................. 4

*Parr v. Ebrahimian,*
  70 F. Supp. 3d 123, 135 (D.D.C. 2014) .............................................................................. 27

*Phillips v. Caliber Home Loans, Inc.,*
  No. 19-cv-2711, 2020 WL 5531588 (D. Minn. Sept. 15, 2020) ..................................... 19, 21

*Prescott v. Seterus, Inc.,*
  635 F. App'z 640, 646 (11th Cir. 2015) ............................................................................. 12

*Quinteros v. MBI Associates, Inc.,*
  999 F. Supp. 2d 434, 439 (E.D.N.Y. 2014) ...................................................................... 6, 14

*Reid v. Ocwen Loan Servicing, LLC,*
  No. 20-cv-80130-SINGHAL, 2020 WL 5104539 (S.D. Fla. May 4, 2020) ............................... 8

*Ruiz v. Brink's Home Sec., Inc.,*
  777 So.2d 1062, 1064 (Fla. 2nd Dist. Ct. App. 2001) ......................................................... 21

*Saiyed v. Counsel on Am.-Islamic Relations Action Network, Inc.,*
  346 F.Supp. 3d 88, 94 (D.D.C. 2018) ................................................................................ 26

*Sanchez v. Time Warner, Inc.,*
  No. 98-211-CIV-T-26A, 1998 WL 834345 (M.D. Fla. Nov. 4, 1998) ................................... 21

*Saucier v. Countrywide Home Loans,*
    64 A.3d 428, 444 (D.C. 2013) ........................................................................................30

*Schwarm v. Craighead,*
    552 F. Supp. 2d 1056, 1080 (E.D. Cal. 2008) ...............................................................11

*Shami v. Nat'l Enter. Sys.,*
    No. 09-CV-722 (RRM)(VVP), 2010 WL 3824151 (E.D.N.Y. Sept. 23, 2010)...........6, 14

*Simmet v. Collection Consultants of California,*
    No. CV 16-02273-BRO, 2016 WL 11002359 (C.D. Cal. July 7, 2016) ...........................6

*Smith v. Rubicon Advisors, LLC,*
    254 F. Supp 3d. 245, 250 (D.D.C. 2017) ......................................................................31

*St. Joe Corp. v. McIver,*
    875 So. 2d 375, 381 (Fla. 2004) ...................................................................................23

*Techreations, Inc. v. Nat'l Safety Council,*
    No. 86-cv-1399, 1986 WL 15077 (N.D. Ill. Dec. 24, 1986) ..........................................23

*Torliatt v. Ocwen Loan Servicing, LLC,*
    No. 19-cv-04303-WHO, 2020 WL 1904596 (N.D. Cal. Apr. 17, 2020) .......................6, 8

*Trevathan v. Select Portfolio Servicing, Inc.,*
    142 F. Supp. 3d 1283 (S.D. FL. 2015) ...........................................................................33

*Troy v. Colvin,*
    266 F. Supp. 3d 288, 293 (D.D.C. 2017) ........................................................................2

*Turner v. PHH Mortgage Corp.,*
    No. 8:20-CV-137, 2020 WL 2517927 (M.D. Fla. Mar. 19, 2020)....................................8

*Tuttle v. Equifax Check,*
    190 F.3d 9, 13 (2d Cir. 1999) .......................................................................................12

*Waddell v. U.S. Bank N.A.,*
    395 F.Supp. 3d 676 (E.D. N.C. 2019) .................................................................15, 19, 20

*Washington v. LaSalle Bank Nat. Ass'n,*
    817 F.Supp. 2d 1345 (S.D. Fla. 2011) ..........................................................................15

*Wigod v. Wells Fargo Bank, N.A.,*
    673 F.3d 547, 581 (7th Cir. 2012) ................................................................................19

*Williams v. First Gov't Mortg. & Inv. Corp.,*
    225 F.3d 738, 744 (D.C. Cir. 2000)..............................................................................27

*Wittman v. CB1, Inc.,*
    No. CV 15-105-BLG-SPW-CSO, 2016 WL 1411348 (D. Mont. Apr. 8, 2016) ............7, 8

*Wright v. Emory,*
    41 So.3d 290, 292–93 (Fla. Dist. Ct. App. 2010) .........................................................14

**Statutes**

15 U.S.C. § 1692(a)(6)......................................................................................................3

15 U.S.C. § 1692a(6)(F)(iii) .............................................................................................3

15 U.S.C. § 1692f(1) ........................................................................................... 5, 9, 11

28 U.S.C. § 636(b)(1) ...................................................................................................... 2

D.C. Code § 26-1101(11) ............................................................................................... 24

D.C. Code § 26-1114(d) ................................................................................................ 24

D.C. Code § 28-3901(a)(3) ............................................................................................ 26

D.C. Code § 28-3901(a)(7) ............................................................................................ 26

D.C. Code § 28-3901(d) ................................................................................................ 25

D.C. Code §§ 28-3901 *et seq.* ....................................................................................... 25

D.C. Code § 28-3904 ..................................................................................................... 30

D.C. Code §§ 28-3904(e), (e-1), (f) ............................................................................... 28

**Other Authorities**

5 Charles Alan Wright et al, *Federal Practice and Procedure* § 1276 (3d ed. 2004) ........................................ 20

Handbook 4000.1: *FHA Single-Family Housing Policy Handbook* ............................... 16, 24

Report of the Council of the District of Columbia Committee on Public Services & Consumer

    Affairs, on Bill 1-253,

        "The District of Columbia Consumer Protection Procedures Act," (Mar. 24, 1976) .................... 27

*Restatement (Third) Of Restitution & Unjust Enrichment* § 6 cmt. e (Am. Law Inst. 2011) ........................ 22

*Staff Commentary on the Fair Debt Collection Practices Act*, 53 FR 50097-02 ................................. 7

**Rules**

FED. R. CIV. P. 72(B)(3) ................................................................................................... 2

FED. R. CIV. P. 8(A)(2) .................................................................................................... 2

LOCAL CIV. R. 72.3(C) .................................................................................................... 2

## INTRODUCTION

United States Magistrate Judge Zia M. Faruqui issued an exhaustive, twenty-seven-page Report and Recommendation which carefully addressed each of the arguments for dismissal presented by Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Cooper"). The claims here arise from Cooper's creation of an illegal profit center by collecting fees of between $14 and $19 ("Pay-to-Pay Fees") each time a borrower makes a mortgage payment over the phone, and are based on the same theories as those alleged in dozens of lawsuits against mortgage loan servicers around the country. Plaintiffs Jackerly McFadden, a Florida resident, and Cassandra Wilson, a resident of the District of Columbia, filed this case in January 2020, alleging that this practice violated federal and state statutes and state common law.

Upon consideration of the parties' arguments and authority, including authority presented by the parties in several supplemental filings, the Magistrate declined to dismiss any of Plaintiffs' claims at the pleading stage. Consistent with the majority of district courts to have addressed these same arguments, the Magistrate correctly recognized that Plaintiffs sufficiently pleaded their claims. Indeed, around the country, dozens of these lawsuits have been filed against mortgage loan servicers engaged in identical practices, and the overwhelming majority of courts have taken the same position as the Magistrate here. The consensus over the illegality of the conduct here is so strong that many loan servicers have stopped the practice and agreed to classwide settlements; indeed, Cooper settled one such case in 2018,[1] and is only here because it continued to charge these fees.

No doubt motivated by a desire to avoid answering the complaint, which would put an end to the 20-month and counting discovery stay it has already obtained during the pendency of the motion, Cooper objects to each and every finding in the Report and Recommendation. But it raises the same arguments the Magistrate considered and rejected based on a sound review of the

---

[1] *See Garcia v. Nationstar Mortgage LLC*, Case No. 2:15-cv-1808 (W.D. Wash.).

applicable law. Plaintiffs ask the Court to overrule each of Cooper's objections and deny its motion to dismiss in its entirety. These objections lack merit and should be rejected in full, so that this case can finally move into discovery and towards a classwide resolution.

## LEGAL STANDARDS

"A district judge shall make a de novo determination of those portions of a magistrate judge's findings and recommendations to which objection is made. . ." Local Civ. R. 72.3(c); *see also* Fed. R. Civ. P. 72(b)(3) (same standard). A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Troy v. Colvin*, 266 F. Supp. 3d 288, 293 (D.D.C. 2017), citing Local Civ. R. 72.3(c); 28 U.S.C. § 636(b)(1) (same).

The Federal Rules of Civil Procedure require that a complaint contain a "short and plain statement of the claim" to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2). "Rather than requiring a determination of a plaintiff's ultimate likelihood of success on the merits, a motion to dismiss under Rule 12(b)(6) tests whether a plaintiff has properly stated a claim." *Allen v. Mnuchin*, No. 18-1214(RC), 2019 WL 2581323, at *6 (D.D.C. June 24, 2019). Taking the factual statements in the complaint as true, and construing them in the plaintiff's favor, the court must decide whether the complaint states a claim for relief that is plausible on its face. *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 133 (D.D.C. 2013) (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## RESPONSE TO OBJECTIONS

### I.    The Magistrate Correctly Found that Plaintiff McFadden states a claim for violation of the federal Fair Debt Collection Practices Act.

Cooper argues that the Magistrate was wrong to find that (1) Ms. McFadden adequately alleged that Cooper is a debt collector under the FDCPA; (2) the Pay-to-Pay fees were incidental

even if voluntarily paid; and (3) the FDCPA prohibits Pay-to-Pay fees. Each of these objections should be overruled, as the Magistrate's conclusions were well-reasoned and consistent with the majority of courts that have addressed these issues.

### A. Cooper is a debt collector of Ms. McFadden's loan.

Under the FDCPA, a "debt collector" is "any person… who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6). The definition, however, exempts a mortgage loan servicer who did not acquire the mortgage loan while it was in default. *See* 15 U.S.C. § 1692a(6)(F)(iii). While the Complaint alleges that Ms. McFadden's loan was in default at the time Cooper acquired it, Cooper argues that this allegation does not contain enough particularity to establish that it was in fact in default at the time of acquisition.

The Magistrate correctly rejected this argument on the basis that the "Complaint sufficiently pleads the fact of default: 'At the time Cooper acquired the servicing rights, Ms. McFadden's mortgage was in default.'" Report at 4, quoting Compl. ¶ 67. The Magistrate correctly concluded that McFadden provided Defendant with the requisite fair notice of her claims. And the Magistrate supported this conclusion with on-point decisions finding that similar complaints should only be dismissed "if a Plaintiff does not allege that his account was in default.'" Report at 5, quoting *Edmond v. Am. Educ. Servs.,* No. 10-cv-578, 2010 WL 4269129, at *5 (D.D.C. Oct. 28, 2010), and citing *Brown v. Loancare, LLC,* No. 20-cv-280, 2020 WL 7389407, at *3 (W.D.N.C. Dec. 16, 2020). And in response to Cooper's contention that the details of McFadden's debt status were not sufficiently alleged, the Magistrate found that the "Complaint answers the only critical 'when' question: When Cooper obtained Ms. McFadden's loan, was it in default? Yes." Report at 5, citing Compl. ¶ 67. Finally, the Magistrate found that the debt collector question was more appropriately considered at summary judgment. Report at 5.

Cooper protests that the Magistrate gave short shrift to its reliance on a lone California district court's statement in *Oya v. Wells Fargo Bank, N.A.*, No. 3:18-CV-01999-H-BGS, 2019 WL 157802, at *3 (S.D. Cal. Jan. 9, 2019) that a plaintiff may not simply allege that a loan was in default when it was acquired by a loan servicer to state a plausible FDCPA claim. But the Magistrate did give the appropriate amount of attention to this out-of-district outlier case, noting that the *Oya* court had not explained why additional factual allegations were needed. Report at 5, fn. 5. Further, the Magistrate recognized that any such requirement would run contrary to the liberal notice pleading requirements, and cited authority from this Court for that proposition. *Id.*, citing *Harris v. Bowser,* 369 F.Supp.3d 93, 105 (D.D.C. 2019).

Moreover, the objection should be overruled because as the Magistrate correctly noted, this matter is more appropriate for summary judgment. Report at 5. The details of how Cooper came to acquire Ms. McFadden's debt are in Cooper's control, and allowing discovery on this issue first would comport with fundamental fairness. As the loan servicer, Cooper knows best the date it acquired Ms. McFadden's loan and maintains the loan servicing history for Ms. McFadden's loans, including what amounts and past due fees were transferred to Cooper when it took over servicing from the prior servicer. In any event, Cooper effectively concedes that Ms. McFadden was in default when it argues, in defense of the breach of contract claim, that it was authorized to charge the Pay-to-Pay fees under the mortgage agreement for fees charged in connection with Ms. McFadden's *default*. Objections at 14.

For these reasons, the objection should be overruled as Ms. McFadden has alleged facts that demonstrate Cooper is a debt collector under the FDCPA, sufficient at the pleading stage to overcome Cooper's motion to dismiss.

**B. Pay-to-Pay fees are incidental to McFadden's mortgage agreement and is not the product of a separate agreement between the parties.**

The FDCPA prohibits debt collectors from collecting "any amount (including any interest, fee, charge or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Cooper next objects to the Magistrate's conclusion that the Pay-to-Pay fees are fees "incidental" to McFadden's underlying debt, and as such are prohibited by this section of the FDCPA.

While acknowledging a split among the courts on this issue, the Magistrate correctly recognized that the "'majority of courts' have found that 'convenience fees derived from debt-payment methods are 'incidental' to the debt being paid.'" Report at 6, quoting *Caldwell v. Freedom Mortg. Corp.,* No. 19-cv-2193, 2020 WL 4747497, at *3 (N.D. Tex. Aug. 14, 2020). The Magistrate further noted these courts' recognition that "Pay-to-Pay fees are 'incidental to the payment of the principal obligation' because the 'borrower's purpose in using the [pay-by-phone system] is to make their mortgage payment' and would have 'no reason to pay the fee but for the need to pay the principal obligation.'" *Id.*, quoting *Lembeck v. Arvest Cent. Mortg. Co.*, 498 F.Supp. 3d 1134, 1136 (N.D. Cal. Nov. 3, 2020) (denying motion to dismiss and rejecting argument that Pay-to-Pay fee was not incidental to principal obligation).

Indeed, as the *Caldwell* and *Lembeck* courts and Magistrate observed, the overwhelming number of courts analyzing Pay-to-Pay fees under section 1692f(1) and analogous state debt-collection statutes have found that they are "incidental" to the debt, regardless of the availability of other payment options. *See Langston v. Gateway Mortg. Group,* No. 5:20-cv-01902-VAP-KKx, 2021 WL 234358, at *2 (C.D. Cal. Jan. 15, 2021) (rejecting contention that Pay-to-Pay fee is "entirely divorced from the status of the underlying debt" and noting courts in Ninth Circuit "reject arguments that Pay-to-Pay fees constitute a separate agreement between the lender and borrower and are independent of the underlying debt")*, Elbert v. Roundpoint Mortg. Serv. Corp.*, No. 20-cv-00250-MMC,

2020 WL 6940941, at *3 (N.D. Cal. Nov. 25, 2020) (finding decisions deeming such fees incidental more persuasive than district courts reaching opposite conclusion)*; McWhorter v. Ocwen Loan Serv., LLC*, No. 2:15-cv-01831, 2017 WL 33135375, at *7 (N.D. Ala. Aug. 3, 2017) ("*McWhorter I*") (rejecting the argument that Pay-to-Pay fees cannot violate 1692f(1) because they are "optional" or "avoidable"); *Torliatt v. Ocwen Loan Servicing, LLC*, No. 19-cv-04303-WHO, 2020 WL 1904596, at *2 (N.D. Cal. Apr. 17, 2020) (noting the argument has "been rejected by the majority of courts in [the Ninth] circuit that have addressed this question"); *Barnett v. Caliber Home Loans, Inc.*, No. 2:19-cv-309, 2020 WL 5494414, at *3-4 (S.D. Tex. Sept. 10, 2020) (recognizing that "alternative options do not change the pay-to-pay fees' incidental relationship to the underlying debt"); *Johnson-Morris v. Santander Consumer USA, Inc.*, 194 F. Supp. 3d 757, 765 (N.D. Ill. 2016) ("convenience fees" to make payments online and over the phone are "incidental" to the underlying debt within the meaning of § 1692f, regardless of availability of other payment methods, because they are incurred in connection with efforts to collect the debt); *Shami v. Nat'l Enter. Sys.*, No. 09-CV-722 (RRM)(VVP), 2010 WL 3824151, at *3-4 (E.D.N.Y. Sept. 23, 2010) (transaction fees for payments by phone or internet were "incidental to Plaintiff's purported actual debt" prohibited by § 1692f(1)); *Quinteros v. MBI Associates, Inc.*, 999 F. Supp. 2d 434, 439 (E.D.N.Y. 2014) (transaction fees were incidental to the principal obligation even though not part of the underlying debt or principal amount owed); *Liable v. Rockport Financial, LLC*, No. 4:15-CV-00306-ERW, 2015 WL 4771664, at *3 (E.D. Mo. Aug. 12, 2015) (denying motion to dismiss, rejecting argument that convenience fee for paying by credit card was not "incidental" to debt because other payment options existed); *Simmet v. Collection Consultants of California*, No. CV 16-02273-BRO, 2016 WL 11002359, at *5 (C.D. Cal. July 7, 2016) (rejecting argument that online payment fee did not violate 1692f(1) because it was connected to optional payment method and thus was not "incidental" to debt); *Lindblom v. Santander Consumer USA, Inc.*, No. 1:15-cv-990-LJO-BAM, 2016 WL 2841495, at *7 (E.D. Cal. May 9, 2016)  (finding that a Pay-

to-Pay fee collected for optional online and telephone debt payments violated § 1692f and the corresponding state debt collection statute); *Wittman v. CB1, Inc.*, No. CV 15-105-BLG-SPW-CSO, 2016 WL 1411348, at *5 (D. Mont. Apr. 8, 2016), *report and recommendation adopted*, No. CV 15-105-BLG-BMM, 2016 WL 3093427 (D. Mont. June 1, 2016) (following "the majority of courts" in finding a "transaction fee imposed for using a certain payment method" incidental to the underlying debt and therefore impermissible).

The rationale of these cases is straightforward and faithful to the statutory text. As explained by the Southern District of Florida in *Fusco v. Ocwen Loan Servicing LLC*, Case No. 20-cv-80090, 2020 WL 2519978 (S.D. Fla. Mar. 2, 2020), the plain, ordinary meaning of "incident" is "a dependent, subordinate, or consequential part." Because the Pay-to-Pay fees are "dependent on the payment of Plaintiff's debt," they are incidental to that debt within the meaning of §1692f. Put another way, "there could be no [Pay-to-Pay] fee without a payment to make more 'speedy.'" *Fusco*, 2020 WL 2519978, at *2[2]; *see also Caldwell*, 2020 WL 4747497 at *4 (noting that the debt collector in that case "charges and collects the associated fee only when its borrowers make a payment on their debt").

The Magistrate was therefore correct to reject Cooper's reliance on the handful of courts adopting a flawed, minority view, including a sextet of Florida cases against Ocwen Loan Servicing,

---

[2] The *Fusco* court further recognized that the FTC Staff Commentary on the FDCPA is instructive in this regard, and noted that the Commentary provides illustrations of service charges and fees as being activity covered by the Act. *See Fusco,* at *2. That FTC Staff Commentary explained that a "debt collector may establish an 'agreement' without a written contract. For example, he may collect a service charge on a dishonored check based on a posted sign on the merchant's premises allowing such a charge, if he can demonstrate that the consumer knew of the charge . . . *at the time that she entered into the agreement creating the debt." Id.* at *2, *4 (emphasis original) (citing *Staff Commentary on the Fair Debt Collection Practices Act*, 53 FR 50097-02). The *Fusco* court was persuaded that this "example illustrates that charging a fee for a dishonored check *is* the type of activity which would be covered by the Act. Otherwise, the Commentary would not have addressed the situations in which a service charge could be imposed, as the Act would have no authority to regulate that activity." *Id.* at *2.

LLC (now PHH Mortgage Corporation),[3] including *Turner v. PHH Mortgage Corp.*, Case No. 8:20-CV-137, 2020 WL 2517927 (M.D. Fla. Mar. 19, 2020). *Turner* fails to analyze the plain meaning of "incidental," choosing instead to focus on what it characterizes as the voluntary nature of the expedited payment service. Indeed, the *Turner* court was not presented with the issue properly framed, as the plaintiff in *Turner* conceded the Pay-to-Pay fee at issue must itself constitute a debt under the FDCPA. *See Elbert,* 2020 WL 6940941, at *2 (distinguishing and dismissing *Turner* on this basis and finding instead that Pay-to-Pay fees are incidental). Thus, the *Turner* court's (and the five decisions that followed) tortured interpretation of the statutory language results, at least in part, because the plaintiff conceded the dispositive issue.

Another case on which Cooper relies, *Flores v. Collection Consultants of California*, No. SA CV 14-0771-DOC, 2015 WL 4254032 (C.D. Cal. Mar. 20, 2015), has been roundly rejected by several courts and recognized as "tak[ing] a minority position in regard to transaction fees." *Wittman*, 2016 WL 1411348, at *5; *see also Torliatt*, 2020 WL 1904596, at *2 (declining to follow *Flores* and stating that the court would "follow the majority of cases in this circuit that have held that convenience fees may violate the FDCPA"). As one court explained, courts that "have considered *Flores* have found fault with at least three aspects of its reasoning." *Fuentes v. AR Resources, Inc.*, No. 15-7988-FLW-LHG, 2017 WL 1197814, at *7 (D.N.J. Mar. 31, 2017). Among those faults are (1) failing to recognize that the "mere fact that an unauthorized fee is offered as an alternative to authorized fees does not mitigate the fact that the fee itself is still prohibited," *id.*; (2) "failing to inquire into the facts that would establish that the benefit had 'passed through' to a third party other than the debt

---

[3] In addition to *Turner*, those cases include *Bardak v. Ocwen Loan Servicing, LLC*, No. 8:19-CV-1111-24TGW, 2020 WL 5104523 (M.D. Fla. Aug. 12, 2020); *Estate of Campbell v. Ocwen Loan Servicing, LLC*, 467 F. Supp. 3d 1262 (S.D. Fla. 2020); *Kelly v. Ocwen Loan Servicing, LLC*, No. 3:20-cv-50-J-32JRK, 2020 WL 4428470 (M.D. Fla. July 31, 2020); *Lang v. Ocwen Loan Servicing, LLC*, No. 3:20-cv-81-J-20MCR, 2020 WL 5104522 (M.D. Fla. July 17, 2020); and *Reid v. Ocwen Loan Servicing, LLC*, No. 20-cv-80130-SINGHAL, 2020 WL 5104539 (S.D. Fla. May 4, 2020).

collector," *id.*; and (3) failing to recognize that "it is not for the courts to independently assess whether a particular convenience fee is 'unfair' or 'unconscionable' 'because Congress has already made that determination,'" *id.* at *8 (quoting *Lindblom*, *supra*). Cooper's two remaining authorities, *Lish v. Amerihome Mortg. Co., LLC*, No. 2:20-cv-07147-JFW-JPRx, 2020 WL 6688597 (C.D. Cal. Nov. 10, 2020) and *Alexander v. Carrington Mortg. Services, LLC,* No. 1:20-cv-02369-RDB (D. Md. Dec. 11, 2020) which is currently on appeal before the Fourth Circuit, adopted the flawed *Flores* reasoning and should therefore be disregarded.

Instead, Plaintiffs urge the Court to overrule Cooper's objections and adopt the well-reasoned majority view to find that the Pay-to-Pay fees are incidental to Plaintiffs' mortgage debts.

## C. Pay-to-Pay Fees are not authorized by either the mortgage agreement or permitted by law

The FDCPA does not allow Mr. Cooper to charge any amount of fees unless such amount is expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C. § 1692f(1). The Magistrate correctly found that Pay-to-Pay fees fall under neither exception and thus violate the FDCPA.

### 1. *Fees permitted by agreement*

Under the first exception to section 1692f(1), Cooper may only collect Pay-to-Pay fees from Ms. McFadden if the "amount is expressly authorized by the agreement creating the debt." 15 U.S.C. § 1692f(1). The "agreement creating the debt" here is the mortgage agreement and it does not "expressly authorize" the Pay-to-Pay fees. Ms. McFadden alleges that Cooper disbursed much less (typically $0.50) to a third-party vendor to process her payment, but up-charged her another $13.50 in an amount not authorized by her mortgage agreement.

Cooper contends that Magistrate erred in finding no express authorization. It contends that Paragraph 14 of the mortgage agreement authorizes fees, but that Paragraph only authorizes fees "for services performed in connection with borrower's default" and "for the purpose of protecting

Lender's interest in the Property and rights under this Security Instrument." *Id.* Further, Ms. McFadden's mortgage agreement caps the amount of default related fees in paragraph 9, entitled *Protection of Lender's Interest in the Property and Rights Under This Security Instrument*, by stating "amounts disbursed by Lender under this Section 9 shall become additional debt of the Borrower." *Id.* ¶9.

The Magistrate examined the language in the mortgage agreement and correctly found that it did not "*explicitly* name third-party payment processor fees or even a larger umbrella under which such fees would fall." Report at 7-8, discussing Compl., Ex. A at 8 (¶ 14). Noting that other types of fees are expressly listed in the Agreement, such as "attorneys' fees, property inspection and valuation fees," the Magistrate found that "Cooper should have added convenience fees to this list of expressly permitted fees if it wanted to charge them." Report at 8. The Magistrate also rejected Cooper's suggestion that Pay-to-Pay fees fall under the "borrower's default" umbrella by rightly reasoning that this interpretation "creates a race to the bottom as future agreements would all contain a similar two-sentence catchall provision without expressly naming any particular fees," in contradiction of the FDCPA's broad construction. *Id.*, citing *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008); *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 302 (3d Cir. 2014).

Magistrate further explained why Cooper's reliance on *Beer v. Nationstar Mortgage Holdings, Inc.*, 2015 WL 13037309, at *3 (E.D. Mich., 2015), which Cooper again cites in its Objections, is not helpful. Report at 9. In *Beers*, the court rejected the plaintiff's claim that the loan servicer imposed unauthorized fees because "the plaintiff failed to identify… the 'unnecessary fees and costs' allegedly charged to plaintiff." *Id.* Of course, as the Magistrate recognized, "the FDCPA, however, does not require Plaintiffs to identify any provision at all (let alone specific provisions); rather, all that is needed is the absence of a provision expressly authorizing a fee." Report at 9.

Because the Pay-to-Pay fees were not expressly authorized by the agreement creating Ms. McFadden's obligation, this objection should be overruled.

2.  *Fees permitted by law*

Under the second exception to 1692f(1), Cooper may only collect fees if they are "permitted by law." 15 U.S.C. § 1692f(1).

Here, the Magistrate correctly found the fees were not "permitted by law" because Cooper failed to identify any state statute which "permits, i.e. authorizes or allows, in however general a fashion, the fees or charges in question." Report at 9, quoting *McWhorter,* 2017 WL 3315375, at *7. Cooper does not identify any such law in its Objections, instead citing inapposite cases for its persistent contention that fees which were voluntarily paid are not subject to the FDCPA (a topic covered *infra* at §III(B)), and protesting that fee-based payment services are "commonplace". Objections at 8-9.

The Magistrate's decision to interpret "permitted by law" to require the existence of a statute that expressly allows the fees is consistent with well-settled law. *See, e.g.*, *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 950 (9th Cir. 2011) (upholding district court's grant of summary judgment on a section 1691f claim in favor of the plaintiff where defendant failed to introduce evidence the contract explicitly authorized the fee); *Lindblom*, 2016 WL 2841495, at *6 (holding that the "only inquiry" is "whether the amount collected was expressly authorized"); *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1080 (E.D. Cal. 2008) (holding that "to establish that a particular fee does not violate [the FDCPA] § 1692f(1), the debt collector must identify a state law that authorizes the fee"). Instructively, in *McWhorter I*, the court explained that "the word 'permitted' requires that the defendants identify some state statute which 'permits,' i.e. authorizes or allows, in however general a fashion, the fees or charges in question." *McWhorter I,* 2017 WL 3315375 at *7 (citing *Newman v. Checkrite California, Inc.*, 912 F. Supp. 1354, 1368 (E.D. Cal. 1995)). Likewise, as the Second Circuit explained, "[i]f state law neither affirmatively permits nor expressly prohibits service

11

charges, a service charge can be imposed only if the customer expressly agrees to it in the contract."
*Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2d Cir. 1999).[4]

Because the Magistrate's decision was correct, the objection should be overruled and the FDCPA claim allowed to proceed.

**II.    The Magistrate Correctly found that McFadden plausibly alleged violations of Florida consumer protection law.**

### A.  Ms. McFadden plausibly alleged violations of the FCCPA.

Cooper next objects to the Magistrate's conclusion that McFadden sufficiently alleged Cooper's knowledge in satisfaction of the requirement that, to recover on an FCCPA claim, a defendant must have "possessed *actual knowledge*" that it did not have a legal right to charge Pay-to-Pay fees." Report at 10, quoting *Prescott v. Seterus, Inc.*, 635 F. App'z 640, 646 (11th Cir. 2015). Cooper quibbles with the Magistrate's reliance on *Blake v. Seterus, Inc.,* No. 16-cv-21225, 2017 WL 543223 (S.D. Fla. Feb. 9, 2017), wherein the district court held that, "at the dismissal stage… Plaintiff [need] only allege circumstantial facts to demonstrate Defendant's actual knowledge of an FCCPA violation." Report at 10, quoting *Blake.* But *Blake* is directly on point, as Plaintiff pleaded several circumstantial facts here sufficient to allege actual knowledge at the pleading stage.

Indeed, the Magistrate lists several allegations from the Complaint supporting a conclusion that Cooper had actual knowledge that it did not have a right to charge Pay-to-Pay fees, including (i) Cooper's status as one of the largest mortgage-loan servicers in the nation; (ii) the uniform terms of the borrowers' mortgages; and (iii) Cooper's repeated collection of the fees. Report at 10, citing Compl. ¶¶ 2, 100. Cooper unsurprisingly contends that these facts do not give rise to any actual knowledge of illegality on its part, but this protest regarding the weight of the allegations (and

---

[4] While Cooper cites a few cases to claim that argues that the Magistrate erred because other cases have found purportedly voluntary fees to be "permitted by law", Objections at 8, as set forth above, the Magistrate's decision follows the majority of courts.  Moreover, its determination that optional fees may still violate the statute reflected a thorough analysis of the case law. *See* section I.B*, supra.*

Cooper's self-serving opinion that it did no wrong) is neither here nor there. The Magistrate's reliance on Florida authority for the requisite pleading standards was sound, and this objection should be overruled.[5]

### B.  Ms. McFadden has plausibly alleged violations of FDUTPA.

Cooper next objects to the Magistrate's refusal to dismiss McFadden's FDUTPA claim. A claim for damages under FDUTPA has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach County, Inc.*, 169 So.3d 164, 167 (Fla. 4th DCA 2015). The Magistrate found that McFadden had alleged both a *per se* and a traditional FDUTPA violation. Report at 11, citing *Blair v. Wachovia Mortg. Corp.*, No. 11-cv-566, 2012 WL 868878, at *2 (M.D. Fla. Mar. 14, 2012).

With respect to the *per se* violation, the Magistrate correctly recognized that the FCCPA violation constituted the requisite predicate violation for the FDUTPA violation. *Id.*, citing *Alvarez v. Loancare LLC,* No. 20-21837, 2020 WL 5514410, at *5 (S.D. Fla. Aug. 28, 2020). Cooper's only objection is that, in its view, McFadden failed to adequately allege the predicate FCCPA violation. Cooper is wrong for all the reasons discussed above, and this claim should stand.

With respect to the traditional violation based on a deceptive act or unfair practice, the Magistrate found that McFadden had alleged that the Pay-to-Pay fees constituted such a practice because Cooper had engaged in a scheme to secretly retain money from every such fee, and only passed "a fraction" on to third-party processors. Report at 12-13, discussing *Latman v. Costa Cruise Lines, N.V.*, 758 So.2d 699, 703 (Fla. 3d Dist. Ct. App. 2000) (finding that billing customers for such

---

[5] Cooper's authority is readily distinguishable as both cases involved truly bare-bones factual allegations. *See Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1372-3 (S.D. Fla. 2011) (complaint lacked "any specific factual allegations as to each Defendants' (sic) knowledge, much less what legal right was asserted and how that legal right somehow did not exist."); *In re Lamb,* 409 B.R. 534, 541-42 (Bankr. N.D. Fla. 2009) (plaintiff only alleged that defendants knew they had no right to garnish wages). Here, as the Magistrate recognized, the Complaint contains several allegations regarding Cooper's actual knowledge.

charges but keeping part of the money for itself constitutes a deceptive practice under FDUTPA). The Magistrate further recognized that whether this scheme was in fact a deceptive practice would be a "question of fact for the jury". *Id.*, quoting *Coleman v. CubeSmart,* 328 F.Supp. 3d 1349, 1364 (S.D. Fla. 2018); *see also Wright v. Emory*, 41 So.3d 290, 292–93 (Fla. Dist. Ct. App. 2010) ("Whether [defendants'] representations constitute 'deceptive and unfair' conduct is an issue of fact to be resolved by the judge at the conclusion of the trial.")

Cooper nevertheless objects to the finding, claiming that its practice of up-charging class members $13.50 per transaction is not deceptive or unfair because it discloses the fees themselves to consumers. But the Magistrate recognized and correctly rebutted this contention: "Plaintiffs are not arguing that they were unaware that they were paying a fee. Rather, they plausibly argued deception by Cooper in **concealing who was getting the vast majority of the Pay-to-Pay fee**." Report at 13, citing *Latman*, 758 So.2d at 703 (emphasis added). Cooper insists that its failure to disclose this fact cannot constitute deception because it has no affirmative obligation to disclose this information; the Magistrate and courts to consider the issue disagree. *See Quinteros,* 999 F.Supp. 2d at 439 (rejecting argument that processing fee statement is not a false or misleading statement, finding the "'least sophisticated consumer' would likely be deceived by the Processing Fee Statement into believing that Defendant was legally entitled to collect the five-dollar fee. Indeed, even a shrewd consumer would be unlikely to question the legality of a seemingly reasonable five-dollar processing fee, much less turn to the statute books"); *Shami,* 2010 WL 3824151, at *4 (finding that because plaintiff stated a claim for unconscionable means, she also stated a claim for false representation because the letter represented the transaction fees were permissible); *see also Muhammad v. PNC Bank, N.A.,* No. 2:15-cv-16190, 2016 WL 815289, at *2 n.2 (S.D. W.Va. Feb. 26, 2016) (recognizing that claim for false representation is "wholly dependent" upon dismissal of plaintiff's claim that speed pay fees were impermissible because in every transaction with a consumer, there is an unstated

representation that the business is acting legally and not in knowing violation of the law); *Cabrera v. Haims Motors, Inc.*, 288 F. Supp. 3d 1315, 1325 (S.D. Fla. 2017) (consumer would assume that the tax was mandated by the state).

Cooper's reliance in its Objections on *Washington v. LaSalle Bank Nat. Ass'n,* 817 F.Supp. 2d 1345 (S.D. Fla. 2011); *Waddell v. U.S. Bank N.A.*, 395 F.Supp. 3d 676 (E.D. N.C. 2019); and *Brown v. Loancare, LLC*, No. 3:20-cv-00280-FDW-DSC, 2020 WL 7389407 (W.D.N.C. Dec. 16, 2020), is misplaced. None of these courts appear to have even considered the argument accepted by the Magistrate here, that Defendant's concealment that it keeps the vast majority of each fee constitutes an unfair and deceptive practice. Rather, in *Washington,* the plaintiff argued the fee was deceptive because of its timing and pressure applied to close her loan. 817 F.Supp. 2d at 1350. And in both *Waddell* and *Brown,* the courts were wrongly persuaded by the optional nature of the fees in finding the fees could not be deceptive. *Waddell*, 395 F.Supp. 3d at 685; *Brown,* 2020 WL 7389407, at *5. First, the Magistrate correctly noted that the *Waddell* court did not provide any "analysis of why it reached this conclusion, this undercutting its precedential value." Report at 13, fn. 4. Further, as discussed in section I.B., *supra*, this use of the fees' optional nature as a defense has been widely rejected by courts considering it and has no bearing on the analysis of whether the fees were unfair or deceptive. The Magistrate's finding that Plaintiff stated a FDUTPA claim was correct, and Cooper's objection should be overruled.

### III.   The Magistrate Correctly Found that Plaintiffs state a claim for breach of contract.

The Magistrate considered and rejected each of Cooper's arguments for dismissal of Plaintiffs' breach of contract claims and found that (1) Plaintiffs had identified specific provisions of their mortgage agreements which Cooper allegedly breached; (2) the claims are not barred by the voluntary payment doctrine; and (3) the fees were not part of a separate oral contract. None of Cooper's arguments in its Objections compels a different finding.

### A. Plaintiffs' Deeds of Trust prohibit the imposition of Pay-to-Pay Fees.

With respect to Ms. McFadden's Florida mortgage, the Magistrate correctly found that Plaintiff's allegation that Pay-to-Pay fees are prohibited by the FDCPA and FCCPA supports a breach of contract claim because of the mortgage's provision stating: "Lender may not charge fees that are expressly prohibited by this Security Instrument or Applicable Law." Report at 13, citing Compl. at ¶ 14. Cooper's only response is that, in its view, Plaintiffs failed to plead the predicate claims. This objection should be overruled in light of the Magistrate's correct conclusions on the predicate claims.

As to Ms. Wilson's D.C. mortgage, which is subject to FHA guidelines, the Magistrate recognized that the "FHA/Department of Housing and Urban Development ('HUD') regulations were incorporated by reference into her mortgage contract." Report at 14, citing Compl. ¶¶ 44-59. In turn, the mortgage states that the lender "may collect fees and charges authorized by the Secretary [of HUD]." ECF 1-2 at p. 9, ¶ 13; ECF 1-3 at p. 9, ¶ 13. A handbook published by HUD[6] (the "HUD Handbook"), establishes what fees and charges are authorized, and the only permissible servicing fees are listed in Appendix 3.0 to that handbook. Compl., ECF 1, ¶¶ 56-57. Pay-to-Pay Fees do not appear in Appendix 3.0. *Id.,* ¶ 58.  The Magistrate noted that the HUD Handbook permits collection of fees if they are "*reasonable* and customary for the local jurisdiction" and "based on *actual cost* of the work performed or actual out-of-pocket expenses." Report at 15, quoting § III.A.f.ii(A) at 617 (emphasis added by Magistrate). The only way a lender can collect any fee "not specifically mentioned in" the HUD regulations or HUD Handbook is to affirmatively seek approval from the Secretary. ECF 1, ¶ 86 (citing HUD Handbook at § III.A.1.f.ii.(B) at p. 618).

---

[6] This handbook is titled, "Handbook 4000.1: *FHA Single-Family Housing Policy Handbook*," and is maintained online at https://www.hud.gov/sites/dfiles/OCHCO/documents/4000.1hsgh.pdf (last accessed by counsel on August 24, 2021).

Because the HUD Handbook does not authorize Pay-to-Pay Fees, nor are they approved by the HUD Secretary, and because the Pay-to-Pay fees do not "represent actual costs," the Magistrate found Plaintiffs plausibly alleged the Pay-to-Pay Fees violated Ms. Wilson's mortgage contract. Report at 14-15.

Cooper first argues that Ms. Wilson's mortgage expressly permits Cooper to charge fees in connection with Plaintiff's default "'for the purpose of protecting [its] interest in the Property and rights under this Security Instrument,' including the Pay-to-Pay fees. Objections at 14. This contention was already rebutted by the Magistrate's finding that the language in the mortgage did not "*explicitly* name third-party payment processor fees or even a larger umbrella under which such fees would fall." Report at 7-8, discussing Compl., Ex. A at 8 (¶ 14).

Cooper next argues that the Magistrate was wrong to find that HUD's fee lists are exclusive and preclude a lender from charging unauthorized fees. The Magistrate explicitly addressed this contention when explaining that the only fees beyond the express list of permitted fees were those that were reasonable and customary, and "based on *actual cost* of the work performed or actual out-of-pocket expenses." Report at 15, quoting § III.A.f.ii(A) at 617 (emphasis added by Magistrate). Because Cooper's fees far exceeded the actual cost of the work performed, they were not permitted through this limited exclusion.

Third, Cooper objects that Ms. Wilson has no standing to rely upon FHA/HUD guidelines because they do not convey a private right of action. While Cooper is correct that the violation of such guidelines is not by itself actionable, in this case Plaintiffs are asserting that the FHA/HUD guidelines are incorporated by reference into the subject contracts. Numerous courts have concluded that breach of contract claims based on a failure to comply with HUD regulations are "viable where the mortgage instrument expressly incorporates HUD regulations." *Dorado v. Bank of Am., N.A.*, 1:16-CV-21147-UU, 2016 WL 3924115, at *5 (S.D. Fla. July 21, 2016); *see also Bates v.*

*JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1131 (11th Cir. 2014); *Donlon v. Evolve Bank & Trust*, No. CIV. JFM-12-2384, 2014 WL 1330522, at *5 (W.D. Tenn. Mar. 31, 2014) (" although the HUD regulations do not themselves create a private right of action, a violation of the Handbook may sustain a breach of contract claim where a final agreement expressly incorporates the Handbook's various terms."); *Hernandez v. Home Sav. Ass'n of Dallas Cty.*, 606 F.2d 596, 601 (5th Cir. 1979) (finding that HUD regulations incorporated into mortgage documents become part of the contract); *Franklin v. BAC Home Loans Servicing, L.P.*, No. 3:10-CV-1174-M, 2011 WL 248445, at *2 (N.D. Tex. Jan. 26, 2011) (denying motion to dismiss with respect to breach of contract claim where Bank of America subsidiary did "not argue that the HUD regulations are not incorporated by reference in the Note and Deed of Trust nor that the violation of such regulations cannot provide the basis for a breach of contract claim").

Two of the cases to which Cooper cites are easily distinguishable from the instant case as they did not involve contracts expressly incorporating HUD rules. *See Federal National Mortgage Association v. LeCrone*, 868 F.2d 190, 193 (6th Cir. 1989) (holding that alleged violations of HUD regulations could not serve as the basis of a mortgagor's lawsuit under the Administrative Procedure Act against HUD); *Caban v. Rushmore Loan Mgmt. Servs.*, No. 1:18-cv-00393-MHC-JFK, 2018 WL 5260063, at *5 (N.D. Ga. July 23, 2018) (HUD regulations could not serve as the basis of plaintiff's negligence claim). Thus, the Magistrate correctly disregarded these two cases. Cooper's third case, *Dan-Harry v. PNC Bank, N.A.*, No. 17-136 WES, 2018 WL 1083581 (D.R.I. Feb. 27, 2018), is actually consistent with the Magistrate's ruling. There, the court dismissed claim for breach of duty of good faith and reasonable diligence in part because the HUD regulation at issue did not support a private cause of action, but declined to dismiss claim for breach of express contractual language in the mortgage requiring compliance with HUD regulations. *Id.* at * 3.

Indeed, the law is well established that contract language such as that contained in Ms. Wilson's FHA uniform deed of trust incorporates related administrative regulations by reference. *See, e.g.*, *Fowler v. Wells Fargo Bank, N.A.*, 17-CV-02092-HSG, 2017 WL 3977385, at *4 (N.D. Cal. Sept. 11, 2017) (finding incorporation of HUD regulations because plaintiff alleged contractual term in note that "Lender shall accept prepayment on other days provided that Borrower pay interest on the amount prepaid for the remainder of the month *to the extent required by Lender and permitted by regulations of the Secretary*." (emphasis in original)); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 581 (7th Cir. 2012) (plaintiff could pursue breach of contract claim for violation of TPP regulations that were incorporated by reference into contractual agreements). Thus, Ms. Wilson's reliance upon FHA/HUD regulations and guidelines as incorporated by reference into her mortgage contract is entirely appropriate in this case.

Finally, Cooper again points to the *Waddell* decision as "instructive" in that the court there relied on the optional nature of the fees to dismiss that plaintiff's claims. Objections at 15, citing *Waddell*, 395 F.Supp. 3d at 685. But the Magistrate made clear why *Waddell* is not in fact instructive, explaining that the *Waddell* court based its dismissal on that plaintiff's failure to "plausibly alleg[e] that her deed of trust contain[ed] any express or implied terms that prohibit[ed] [the defendant] from charging a service fee authorized by federal law for an optional payment method." Report at 16, quoting *Waddell,* at 685-86. The Magistrate recognized that, "the difference here is **monumenta**l. Plaintiff has plausibly alleged that her mortgage agreement and relevant laws actually prohibited Cooper's Pay-to-Pay fees," which all that is required at the motion to dismiss stage. Report at 16 (emphasis added), citing *Phillips v. Caliber Home Loans, Inc.*, No. 19-cv-2711, 2020 WL 5531588, at *4 (D. Minn. Sept. 15, 2020). Plaintiffs further note that, while the claims in *Waddell* were similarly predicated upon the lender charging service fees for optional payment method, the court gave no indication that it had thoughtfully considered whether, as alleged in this case, the provisions of

HUD regulations and handbooks and consumer-protections statutes were incorporated by reference into the mortgage contract. Consequently, *Waddell* provides no guidance as to the issues presented by this case.

### B.  The voluntary payment doctrine does not apply.

Cooper next objects to the Magistrate's finding that the voluntary payment doctrine does not compel dismissal of Plaintiffs' claims. Under the law in both Florida and the District of Columbia, the voluntary payment doctrine is an affirmative defense that a defendant must plead or adequately support with facts, and as such, it cannot be resolved on Cooper's motion to dismiss. *Carrero v. LVNV Funding, LLC,* No. 11-62439-civ, 2014 WL 6433214, at *6 (S.D. Fla. Oct. 27, 2014) ("Because the voluntary payment doctrine requires the party asserting it to show that the person who made the payment had full knowledge of the relevant facts, including allegedly wrongful conduct, the doctrine is ordinarily treated as an affirmative defense that may not be raised on a motion to dismiss"); *see also Flying Food Grp., Inc. v. N.L.R.B.*, 471 F.3d 178, 183 (D.C. Cir. 2006) ("Voluntary payment is an affirmative defense, . . . and a plaintiff's failure to anticipate and rebut affirmative defenses in her complaint is not a sufficient basis for a Rule 12(b)(6) dismissal."); 5 Charles Alan Wright et al, *Federal Practice and Procedure* § 1276 (3d ed. 2004) ("[A]llegations that seek to avoid or defeat a potential affirmative defense . . . are not an integral part of the plaintiff's claim for relief and lie outside his or her burden of pleading.").

The Magistrate found both that (1) the liberal pleading standard mandates denying dismissal on this affirmative defense; and (2) the allegations in the Complaint rebut Cooper's arguments because Plaintiffs did not have full knowledge of all the facts surrounding the fees, specifically that Plaintiffs did not know that the fees grossly exceed actual costs. Report at 16-17.

Cooper objects to the first finding on the grounds that some courts have dismissed claims at the pleading stage pursuant to the voluntary payment doctrine. The Magistrate recognized the cases

cited by Defendant – *Kuchenmeister v. HealthPort Techs., LLC*, 753 F. App'x 794, 798 (11th Cir. 2018) and *Sanchez v. Time Warner, Inc.*, No. 98-211-CIV-T-26A, 1998 WL 834345, at *2 (M.D. Fla. Nov. 4, 1998)– were "rare instances" involving plaintiffs who "alleged no facts" to support deception or involuntariness. Report at 16, fn. 7. The Magistrate instead found the *Phillips* court's view that that "is not the circumstance here" more persuasive. *Id.*, quoting *Phillips*, 2020 WL 5531588, at *3.

Cooper further asserts that it "fully disclosed the fees, the circumstances in which it (sic) a would be imposed, and alternative payment options to avoid the Fees," such that Plaintiffs' payments were fully voluntary. Objections at 17. But none of these supposed facts address what the Magistrate recognized: that Plaintiffs alleged they were "unaware Cooper largely was pocketing these fees as profit." Report at 17, citing Compl. ¶¶ 70-78, 86-92; *Falconi-Sachs v. LPF Sen. Square, LLC*, 142 A.3d 550, 559–60 (D.C. App. 2016). Indeed, the voluntary payment "doctrine has narrow application," *Markel Ins. Co. v. Am. Safety Risk Retention Grp., Inc.*, No. 3:15-CV-240/RV-CJK, 2016 WL 10611374, at *4 (N.D. Fla. Aug. 3, 2016), and "only applies when the payor has 'full knowledge of all the facts . . . .'" *Brink v. Raymond James & Assocs., Inc.*, 341 F. Supp. 3d 1314, 1320 (S.D. Fla. 2018); *see also Maor v. Dollar Thrifty Auto. Grp., Inc.*, 303 F. Supp. 3d 1320, 1326–27 (S.D. Fla. 2017) (voluntary payment doctrine did not apply where plaintiff alleged that "at the time of his voluntary payment of the administrative fee—he did not know that the fee was mostly retained by [defendant] as profit, instead of being used to cover the costs of toll processing, because those facts were 'secret' and 'undisclosed.'"); *Carrero v. LVNV Funding, LLC*, No. 11-62439-CIV, 2014 WL 6433214, at *6 (S.D. Fla. Oct. 27, 2014) ("[T]he voluntary payment doctrine requires the party asserting it to show that the person who made the payment had *full knowledge of the relevant facts, including allegedly wrongful conduct*") (emphasis added); *Ruiz v. Brink's Home Sec., Inc.*, 777 So.2d 1062, 1064 (Fla. 2nd Dist. Ct. App. 2001) (holding that the voluntary payment doctrine was not an applicable defense even where the plaintiffs had contractually agreed to pay defendant the costs incurred for the payment of

property tax on a homeowner's security system but where the amount charged was in excess of the actual tax imposed); *Falconi-Sachs*, 142 A.3d at 559 ("A better articulation of the rule is: '[M]oney voluntarily paid *in the face of a recognized uncertainty as to the existence or extent of the payor's obligation* to the recipient may not be recovered, on the ground of 'mistake,' merely because the payment is subsequently revealed to have exceeded the true amount of the underlying obligation.'") (quoting *Restatement (Third) Of Restitution & Unjust Enrichment* § 6 cmt. e (Am. Law Inst. 2011)) (emphasis added).

The Magistrate was thus correct to recognize that, by acting deceitfully, Cooper created an information disparity and left Plaintiffs without full knowledge of the fact that Cooper was assessing fees far in excess of the actual costs for processing the mortgage payments. Compl. ¶¶ 78, 92. As explained in *Hassen v. Mediaone of Greater Fla., Inc.*, cited by Defendant, "[i]t does not matter that the payment may have been made upon a mistaken belief as to the enforceability of the demand, or liability under the law, *as long as the payment is made with knowledge of the factual circumstances.*" 751 So. 2d 1289, 1290 (Fla. 1st Dist. Ct. App. 2000) (emphasis added); *see also City of Miami v. Keton*, 115 So.2d 547, 551 (Fla. 1959) (same); *Eagle Maint. Servs., Inc. v. Dist. of Columbia Contract Appeals Bd.*, 893 A.2d 569, 582 (D.C. Ct. App. 2006) (recognizing that the payments must be made "'with knowledge of the facts by the person making the payment'") (citation omitted).

Because the Plaintiffs' subjective knowledge is a classic question of fact to be determined by the jury, Cooper's objection on these grounds should be overruled.

## C. The Pay-to-Pay fees did not result from separate oral agreements.

Cooper next objections to the Magistrate's recognition that Plaintiffs did not create and execute a "separate oral agreement" regarding the Pay-to-Pay fees not incident to the underlying mortgage agreement. This is simply a repackaging of the "not incidental" argument the Magistrate addressed in Part III(A)(2) of the Report. Moreover, "Cooper's payment processing business is part

and parcel of its servicing of the underlying loan." Report at 18, citing *Techreations, Inc. v. Nat'l Safety Council*, No. 86-cv-1399, 1986 WL 15077, at *5 (N.D. Ill. Dec. 24, 1986).

Cooper nevertheless contends that Plaintiffs' fees constitute separate oral agreements under the common laws of Florida and the District. Even putting aside the fact that fees did not result from any such separate agreement, under both District of Columbia and Florida law, law, "the party asserting the existence of a contract has the burden of proving its existence." *Bailey v. Fed. Nat. Mortg. Ass'n*, 209 F.3d 740, 746 (D.C. Cir. 2000) (citing *Ekedahl v. CORES Staff, Inc.*, 183 F.3d 855, 858 (D.C. Cir. 1999) (per curiam)); *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004) ("a party who asserts an oral contract must prove its existence by a preponderance of the evidence") (citing *Batista v. Walter & Bernstein, P.A.*, 378 So.2d 1321, 1322 (Fla. 3d DCA 1980)). Cooper has not cited any evidence that can be considered in the context of the present Rule 12(b)(6) motion that can support such a burden. Thus, at best, Cooper's argument concerning "separate oral agreements" constitutes an affirmative defense as to which it bears the burden of proof, and which, as the Magistrate recognized, presents issues of fact precluding the granting of the instant Rule 12(b)(6) motion. *Cf. Slinski v. Bank of Am., N.A.*, 981 F. Supp. 2d 19, 30 (D.D.C. 2013) (affirmative defense of prior breach could not be "basis of a motion to dismiss unless its validity is obvious from the face of the complaint") (citations omitted).

Nor can Cooper rely on the "Borrower's Promise to Pay" provision in Plaintiffs' mortgage agreements as evidence that the parties formed a separate oral contract because the Pay-to-Pay fees constituted a separate payment option. As discussed above, many of the fees authorized by HUD as servicing fees are for entirely optional services. For example, HUD has authorized lenders to charge a $5.00 fee to fax payoff statements when the borrower requests that optional service, as well as a fee when a borrower requests the optional services of receiving a "Copy of Mortgage Note," a "Copy of Amortization Schedule," or "Replacement Coupon Books." *See* HUD Handbook,

Appendix 3.0 at pp. 977 (D.C.) & 979 (Florida). These optional fees are all servicing fees—the title of the Appendix where they are listed clearly says so: "Applies to Servicing Only." *Id.* To permit a lender or servicer such as Cooper to claim the existence of a separate contract any time it charged an unauthorized fee would effectively gut the prohibitions provided by the subject mortgage contract provisions and related FHA/HUD regulatory scheme discussed above. In short, just because Cooper provided an optional method of payment did not give it the right to turn it into a profit center or otherwise violate the terms of the deeds of trust.

### IV. The Magistrate Correctly Found that Ms. Wilson has plausibly alleged violations of the MLBA.

The MLBA makes it illegal for a lender or servicer (Cooper is both) to "engage in any unfair or deceptive practice towards any person." D.C. Code § 26-1114(d). *See also* D.C. Code § 26-1101(11) (defining "mortgage lender" to include anyone who "engages in the business of servicing mortgage loans for others"). The D.C. Court of Appeals has stated that "repeated assessment of improper fees" is a basis for a claim under the MLBA. *See Logan v. Lasalle Bank Nat'l Ass'n*, 80 A.3d, 1014 at 1026 (D.C. 2013) ("These allegations regarding repeated assessment of improper fees . . . make out a claim under the MLBA."). The Magistrate properly relied on *Logan* to find that Ms. Wilson has alleged that Cooper repeatedly assessed her and similar borrowers improper fees, and that this is enough to state a claim under the MLBA. Report at 19.

Cooper objects to this finding[7], arguing first that the Complaint does not allege its fees were misleading. Because the Complaint *does* allege that its conduct in assessing fees it had no right to assess and omitting that it was collecting far more than the amount it disbursed to process Pay-to-Pay Transactions, this argument fails. *See supra* Part I.(C). *See also* Compl. ¶¶ 92, 164-65. Because Cooper misrepresented and omitted these material facts when it collected improper fees from Ms.

---

[7] Cooper's argument that Plaintiff Wilson neglected to provide pre-suit notice of her MLBA claim is addressed *infra* at Section VI.B..

Wilson and the putative class members, its conduct was deceptive and misleading and violated the MLBA.

Cooper next argues that Ms. Wilson's MLBA claims should be dismissed because they "are predicated on the same facts as" Ms. McFadden's FDCPA claims. In support of this argument, Cooper cites *Mushala v. US Bank, Nat'l Ass'n*, No. CV 18-1680 (JDB), 2019 WL 1429523 (D.D.C. Mar. 29, 2019), which Cooper claims states that a plaintiff cannot bring MLBA claims and FDCPA claims based on the same conduct. The Magistrate correctly recognized that "Cooper's reliance on *Mushala* is misplaced." Report at 19. In *Mushala*, the plaintiff's FDCPA claims were barred by *res judicata* because they "ar[o]se from facts at the core of" an earlier foreclosure action between the same parties. *See Mushala*, 2019 WL 1429523, at *7-8 ("It therefore is clear that Mushala's FDCPA claims predicated on the illegitimacy of the Note or US Bank's lack of standing arise from facts at the core of the first action, and that she had 'ample opportunity' to press such claims there."). Because the *Mushala* plaintiff's MLBA claims were based on the same facts as the FDCPA claims, they were also barred by *res judicata*. But here, at the Magistrate explained, "[n]o such prior action bars the instant action. Nor does *Mushala* stand for Defendant's proposition that a failed FDCPA claim *automatically* damns an MLBA claim." Report at 19-20. The Court should overrule Cooper's objections and allow the MLBA claim to proceed.

### V.    The Magistrate Correctly Found that Ms. Wilson has plausibly alleged violations of the DCCPPA.

The D.C. Consumer Protection Procedures Act protects District of Columbia residents from unfair or deceptive trade practices of any kind. *See* D.C. Code §§ 28-3901 *et seq.* The DCCPA must be "construed and applied liberally to promote its purpose." D.C. Code § 28-3901(d). The Magistrate declined to dismiss Plaintiff's DCCPA claim, properly rejecting Cooper's arguments that the Pay-to-Pay Fees do not violate the DCCPPA because, according to Cooper, (1) it is exempt from the consumer protections afforded under the DCCPPA because it is supposedly not a

"merchant," and (2) its fees were not misleading. Cooper raises objections to both findings, which should be overruled.

### A. The DCCPPA applies to Cooper in its role as mortgage servicer and lender.

The DCCPPA applies to "merchants," defined as persons who "sell, lease . . . or transfer, either directly or indirectly, consumer goods or services," or who "supply the goods or services which are or would be the subject matter of a trade practice." D.C. Code § 28-3901(a)(3). "Goods and services," in turn, are defined to mean "any and all parts of the economic output of society, at any stage or related or necessary point in the economic process, and includes *consumer credit*, . . . *real estate transactions*, and consumer services of all types." *See* D.C. Code § 28-3901(a)(7) (emphasis added). This broad definition encompasses Cooper's business and conduct alleged in this case. Cooper nevertheless argues that mortgage servicers are not merchants and thus it is exempt from the DCCPA. But the Magistrate correctly recognized that this is not the law, and that "Cooper's attempt to divorce its role as mortgage lender and servicer fails." Report at 20.

Cooper relies on two federal court cases, *Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268 (D.D.C. 2011) and *Mushala, ,* 2019 WL 1429523, in support of its argument that it is exempt from the DCCPPA.[8] But the Magistrate explained how these cases do not compel dismissal of Plaintiff's claim, and do not hold that mortgage services like Cooper are not covered by the DCCPPA:

> The D.C. Court of Appeals expressly refused to answer whether the DCCPPA also applied to mortgage-loan servicers, even after recognizing this District Court's holding in *Busby*, 772 F. Supp. 2d at 280, that it did not. *See Logan*, 80 A.3d at 1027. Yet, the *Logan* court held that **the DCCPPA applied to "real estate mortgage transactions," "mortgage refinancing," and "deceptive billing practices related to a contract for consumer goods and services.**" *Id.*12 Similarly, judges in this Court have found that the **DCCPPA applies to many aspects of the mortgage industry**. *See, e.g., Levick v. Kiser*, 206 F. Supp. 3d 337, 346 (D.D.C. 2016)

---

[8] Without explanation (and for no reason Plaintiffs can discern), Defendant also cites *Saiyed v. Counsel on Am.-Islamic Relations Action Network, Inc.*, 346 F.Supp. 3d 88, 94 (D.D.C. 2018), which discussed a separate statute (the Virginia Consumer Protection Act) and whether legal services constitute a consumer transaction under the VCPA. Objections at 21.

> (sellers of property are subject to the DCCPPA); *Hughes v. Abell*, 867 F. Supp. 2d 76, 87–88 (D.D.C. 2012) (concluding fact issues precluded summary judgment on DCCPPA claim against mortgage lender).

Report at 21 (emphasis added).[9] The Magistrate further distinguished the *Busby* decision as involving "no factual allegations whatsoever indicating the existence of a consumer-merchant relationship" between the *pro se* plaintiff and a mortgage-loan servicer. *Id.* By contrast, here, Cooper offers various other services to borrowers in connection with their property, making this type of business's contribution to economic output indisputable. *See* Compl. ¶ 4 (noting that the servicer performs work for the borrower); Ex. B ¶ 19 (noting that the loan servicer "performs . . . mortgage loan servicing obligations under the Note). These services may include paying taxes and insurance from escrow accounts, modifying mortgages, and property preservation. *See id.* ¶ 3 (discussing payment from escrow), ¶ 5 (discussing the purchase of property insurance by the lender), ¶ 7 (noting that the lender may "disburse proceeds for the repairs and restoration" of the property). Thus, contrary to Cooper's protestations, Objections at 21 – and because the DCCPPA applies to *any* trade practice, including "any action normally considered only incidental to the supply of goods and services to consumers" – the trade practices of servicers fall within its scope. *See DeBerry v. First Gov't Mortg. & Investors Corp.*, 743 A.2d 699, 702 (D.C. 1999) (quoting Report of the Council of the District of Columbia Committee on Public Services & Consumer Affairs, on Bill 1-253, "The District of Columbia Consumer Protection Procedures Act," at 14 (Mar. 24, 1976)).

---

[9] In addition to those decisions cited by the Magistrate, numerous courts in the District of Columbia have found that the DCCPPA applies to every aspect of the mortgage industry. Sellers of property are subject to the DCCPPA. *See, e.g.*, *Parr v. Ebrahimian*, 70 F. Supp. 3d 123, 135 (D.D.C. 2014). It applies to credit transactions secured by property. *See DeBerry*, 743 A.2d at 701-702; *see also Williams v. First Gov't Mortg. & Inv. Corp.*, 225 F.3d 738, 744 (D.C. Cir. 2000) (upholding jury verdict that mortgage lender violated DCCPPA by issuing mortgage it knew the plaintiff could never repay). And it applies to excessive mortgage payments. *See, e.g.*, *Johnson v. Long Beach Mortg. Loan Trust 2001-4*, 451 F. Supp. 2d 16, 38 (D.D.C. 2006) (permitting DCCPPA claim to proceed where plaintiff had to pay over half her monthly income to mortgage costs). Where the DCCPPA touches every aspect of the sale of property through a mortgage, exempting mortgage servicers from its reach would leave a significant gap that it is unlikely the D.C. Council intended.

### B.  The DCCPPA applies to Cooper's Pay-to-Pay Fees.

The Magistrate also correctly found that Plaintiffs sufficiently alleged that the Pay-to-Pay fees were misleading. For claims of misrepresentation under the DCCPPA, "the statute merely provides that it is a violation of the CPPA that if the merchant 'misrepresented' or 'failed to state' a material fact." *Frankeny v. District Hospital Partners, LP*, 225 A.3d 999, 1005 (D.C. 2020); *see also* D.C. Code §§ 28-3904(e), (e-1), (f). "[I]ntent or knowledge is not required." *Frankeny*, 2020 WL 950107, at *3. A fact is "material" a reasonable person would attach importance to its existence or non-existence in determining their choice of action in the transaction; or if the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his or her choice of action, even if a reasonable person would not so regard it. *See Beck v. Test Maters Educ. Servs., Inc.*, 994 F. Supp. 2d 90, 94 (D.D.C. 2013). A representation may be affirmative "*or implied.*" *Id.* at 96 (emphasis in original). Materiality is an issue for the jury. *See id.* at 94.

The Magistrate found that the Complaint does allege that the Pay-to-Pay Fees are misleading in two ways. First, Plaintiffs allege that Cooper's Pay-to-Pay Fees are misleading because in assessing Pay-to-Pay Fees, Cooper represented to borrowers that it had the right to collect them, when in fact it had no such right. Report at 23, citing Compl. ¶ 170 (alleging that Cooper's unlawful trade practices include misrepresenting its right to collect Pay-to-pay Fees and failing to advise borrowers that it did not have the right to collect them). In its Objections, Cooper rehashes the same arguments the Magistrate addressed earlier, i.e. that its failure to disclose the internal costs of the fees simply was not misleading and that it is "legally permitted" to charge the fees. Objections at 22.

Again, Cooper is wrong. Ms. Wilson's mortgage agreement (and the other standard mortgage agreements signed by Cooper's borrowers) do not authorize the assessment of Pay-to-Pay Fees. Moreover, Ms. Wilson's mortgage (and those of similar borrowers) prohibits it, because Cooper is

28

an FHA-approved mortgagee subject to applicable rules and regulations of the U.S. Department of Housing and Urban Development ("HUD"). Compl. ¶¶ 48-49. For all the reasons discussed *infra* at III.A., HUD mortgages do not allow for the imposition of Pay-to-Pay fees. The Pay-to-Pay Fees are also prohibited because they violate the FDCPA, yet Cooper collected them even though the mortgage states that fees prohibited under federal law may not be assessed. Compl. ¶ 90. And even if the fees could be construed as authorized under Paragraph 9 of the mortgage agreement, the mortgage states that only "amounts *disbursed*" by the lender may become the additional debt of the borrower. *See* Compl. Ex. B ¶ 9. But the Complaint alleges that Cooper collected more than it "disbursed" to process the Pay-to-Pay Transactions. Compl. ¶ 6.  In short, even though Ms. Wilson's mortgage did not give Cooper the right to charge Pay-to-Pay Fees, and in fact expressly prohibited it from doing so, Cooper charged her and other borrowers the fees. Cooper misrepresented its right to collect Pay-to-Pay Fees and omitted the fact that it had no right to do so.

The above facts are sufficient to state a claim under the DCCPPA, as misrepresenting and omitting one's actual rights and responsibilities constitutes a violation. For example, in *Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055 (D.C. 2008), the plaintiffs alleged that the defendant condominium sellers had failed to disclose that they were obligated to establish a non-profit organization that would benefit condominium residents, and instead implied that the residents were required to form and fund a community organization. *See id.* at 1071. At summary judgment, the D.C. Court of Appeals concluded that a triable issue of fact existed as to whether the defendants' failure to disclose its actual obligations and duties violated the DCCPPA. *See id.* at 1075. Likewise here, Ms. Wilson alleges that Cooper failed to disclose that it was obligated not to charge fees other than those "authorized by the Secretary," and instead simply collected such unauthorized fees—implying that it had the right to charge them when it did not have such a right. The Magistrate was correct to find that whether these representations and omissions are material is a question of

fact for the jury. *See Beck*, 994 F. Supp. 2d at 94; *see also Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 130 F. Supp. 3d 236, 265-66 (D.D.C. 2015) (permitting DCCPPA claim to proceed where plaintiff alleged defendant charged premiums in excess of her contractual obligation).

Plaintiffs' second theory of misrepresentation is that Cooper's Pay-to-Pay Fees are misleading because Cooper never disclosed to borrowers that it was collecting more than it cost to process the Pay-to-Pay Transactions and that it had created a profit center for itself. *See* Compl. ¶¶ 6, 62. The Magistrate correctly recognized that Plaintiff need only plead that omitted facts were material. Report at 23, citing *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 444 (D.C. 2013). Cooper counters that Plaintiffs failed to allege how they were misled or how they would have acted differently if they knew Cooper received a profit. Objections at 22. This contention misstates the requirements of the DCCPPA. The DCCPA *does not require* that any consumer was actually misled. Instead, the DCCPPA makes it illegal to "engage in an unfair or deceptive trade practice, *whether or not any consumer is in fact misled, deceived, or damaged thereby.*" D.C. Code § 28-3904 (emphasis added). It is therefore sufficient that Ms. Wilson alleged that Cooper engaged in an unfair or deceptive trade practice by collecting Pay-to-Pay Fees it had no right to collect, misrepresenting its right to collect them, and omitting the true nature of the fees as a profit center. There is no requirement that Ms. Wilson allege she was personally misled by these practices. Instead, she need only plead—as she has here—that the defendant engaged in a misleading practice. Since this requirement is satisfied, the objection should be overruled.

## VI. The Magistrate Correctly Found that Plaintiffs properly plead unjust enrichment claims

### A. Plaintiffs properly plead unjust enrichment in the alternative to their contract claims.

The Magistrate recognized that Plaintiffs plead their unjust enrichment claims "in the alternative to breach of contract claims." Report at 24; Compl. at 28. Cooper objects that Plaintiffs'

unjust enrichment claims are duplicative of their contract claims and cannot be maintained alongside the contract claims. Objections at 23-24. But Cooper's argument "ignores the basic tenet of alternative pleading." *Manicini Enterprises, Inc. v. Am. Exp. Co.*, 236 F.R.D. 695, 699 (S.D. Fla. 2006).

The Magistrate correctly found that, under both Florida and District of Columbia law, a plaintiff may pursue an unjust enrichment claim as an alternative theory of liability even though the plaintiff ultimately cannot recover under both a breach of contract claim and an unjust enrichment claim pertaining to the subject matter of the same contract. Report at 24-25, quoting *Smith v. Rubicon Advisors, LLC*, 254 F. Supp 3d 245, 250 (D.D.C. 2017); citing *JI-EE Indus. Co. v. Paragon Metals, Inc.*, No. 09-81590-CIV, 2010 WL 1141103, at *1 (S.D. Fla. Mar. 23, 2010). Thus, at this early stage of litigation, Plaintiffs' alternative pleading is appropriate, and dismissal of the unjust enrichment claims is not warranted. Moreover, as the Magistrate noted, "alternative pleading is 'especially necessary where, as here, Cooper casts doubt on' the terms of the contract in question." Report at 25, quoting *Smith* at 250.

None of the cases cited by Cooper compel a different result than that reached by the Magistrate. Cooper's reliance on *Kirchner v. Ocwen Loan Servicing, LLC*, 257 F.Supp. 3d 1314 (S.D. Fla. 2017) is unpersuasive. As Defendant itself concedes, *Kirchner* did not even involve a breach of contract claim, though the plaintiffs alleged the existence of an express contract, specifically their residential mortgages. The *Kirchner* court did not address the alternative pleading argument whatsoever, but presumably there was no "alternative" aspect to the unjust enrichment claim given that there was no "alternative" breach claim at all. Likewise, the court in *In re Kachkar*, 769 Fed. Appx. 673 (11th Cir. 2019), also cited by Cooper, fails to mention the "alternative pleading" argument.

In *Jacobson v. Hofgard*, 168 F.Supp. 3d 187 (D.D.C. 2016), the court declined to allow plaintiffs to plead unjust enrichment in the alternative "[b]ecause Defendants here have conceded

31

that a contrast exists." 168 F.Supp. 3d at 209. Similarly, in *Koski v. Carrier Corporation,* 347 F.Supp. 3d 1185 (S.D. Fla. 2017), there appeared to be no dispute that the parties agreed to the applicable terms. By contrast here, as the Magistrate recognized, Cooper has cast doubt on the terms of the contract in question; "[f]or example, Cooper asserts that the uniform mortgage agreements do not govern Pay-to-Pay fees." Report at 25.

In short, Plaintiffs have properly stated unjust enrichment claims in the alternative to their contract claims, and the objection should be overruled.

### B. The Magistrate Correctly Found that Plaintiffs Alleged the Requisite Pre-Suit Notice

Finally, the Magistrate found that Ms. Wilson and Ms. McFadden provided all the notice that is required by their mortgage agreements. Indeed, the notice provision of their mortgage agreements state that they need only provide notice of the "alleged breach," not that they need to list out every potential cause of action that might be raised in a future lawsuit:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, *until such Borrower or Lender has notified the other party* (with such notice given in compliance with the requirements of Section 14) *of such alleged breach* and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

Compl. Ex. A¶ 19; Ex. B ¶ 19 (emphasis added). Nowhere does either agreement require the borrower to also provide notice of each cause of action stemming from that breach.

Cooper objects that Plaintiffs' pre-suit notice is defective as to their unjust enrichment claims because the notice "deliberately referenced their FCCPA, FDUTPA, and DCCPA claims," but not the unjust enrichment claim. Objections at 25. But Cooper offers no basis for disregarding the plain meaning of the mortgage agreement. Nor is there any. *Cf. Key v. Allstate Ins. Co.,* 90 F.3d 1546, 1549 (11th Cir. 1996) (holding that when a contract is clear and unambiguous, the court must

interpret it in accordance with its plain meaning). Under the plain terms of the mortgages, Ms. Wilson and Ms. McFadden were not required to enumerate each cause of action they could possibly allege, but instead, were merely required to give Defendant notice of its breach. *See Henok v. Chase Home Finance, LLC. Et al.,* 922 F. Supp. 2d 110, 118-19 (D.D.C. 2013) (holding notice was sufficient where it provided pre-suit notice of foreclosure without listing specific amount needed to cure default).

Defendant's authority is not persuasive. For example, in *Trevathan v. Select Portfolio Servicing, Inc.,* 142 F. Supp. 3d 1283 (S.D. FL. 2015), the plaintiffs failed to allege they provided any notice at all. *Id.* at 1290-91. Here, Plaintiffs alleged they provided (and did provide) notice before filing suit, a fact that Mr. Cooper concedes. And *Hill v. Nationstar Mortgage, LLC.,* NO. 1560106–CIV, 2015 WL 4478061 (S.D. FL. July 2, 2015) supports Plaintiffs' position, not Mr. Cooper's. There, the court explained that the plaintiffs were required to provide "notice of the allegedly improper []fees before filing suit," but said nothing about causes of action. *Id.* at *2-3. The *Hill* court's holding demonstrates that notice of the improper fees—like Plaintiffs provided here—is enough under the mortgage's notice and cure provision. No additional specifics are required.

Moreover, the pre-suit notice requirement requires notice only for claims "aris[ing] from the other party's actions *pursuant to* the Security Instrument or . . . alleg[ing] that the other party has *breached any provision of,* or any *duty owed by reason of,* this Security Instrument." Compl. Ex A at 11, Ex. B at 11, Ex. C at 11. Plaintiffs' unjust enrichment claims, pleaded in the alternative to their contract claims, only arise if the Uniform Mortgages do *not* govern the Pay-to-Pay Fees here at issue. Because Plaintiff's alternative unjust enrichment claims are brought only in the event that the contracts do not govern, the pre-suit notice provision is inapplicable to this claim. *See, e.g., Gerber v. First Horizon Home Loans Corp.*, No. C05–1554P, 2006 WL 581082, at *2–3 (W.D. Wash. Mar. 8, 2006) (barring only plaintiff's breach of contract claims based on failure to provide notice, but permitting claims

based on unjust enrichment and state consumer protection law). Accordingly, the Magistrate was correct to find that Plaintiffs had provided adequate pre-suit notice of their unjust enrichment claim.

## CONCLUSION

The Magistrate's decision was thoughtful, comprehensive, and consistent with the weight of authority on each issue presented. Accordingly, Plaintiffs request that the Court adopt the Report in its entirety and overrule each of Cooper's objections. If the Court is inclined to instead grant Cooper's motion either in whole or in part, Plaintiffs request that any such dismissal be with leave to amend.

Dated: August 27, 2021

Respectfully submitted,

*/s/ Kristen G. Simplicio*
Hassan A. Zavareei (No. 456161)
Kristen G. Simplicio (No. 977556)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Phone: (202) 973-0900
Fax: (202) 973-0950
hzavareei@tzlegal.com
ksimplicio@tzlegal.com

James L. Kauffman (No. 1020720)
BAILEY & GLASSER LLP
1054 31st Street, Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
jkauffman@baileyglasser.com

*Attorneys for Plaintiffs*

34