### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

JACKERLY MCFADDEN, CELINDA LAKE,
MARY MONTGOMERY, and LILLIAN NELSON,
*On Behalf of Themselves and*
*All Others Similarly Situated*,

          Plaintiffs,

v.

NATIONSTAR MORTGAGE LLC
d/b/a MR. COOPER,

          Defendant.

_____/

**Case No. 1:20-cv-00166**

**<u>CLASS ACTION COMPLAINT</u>**

**<u>JURY TRIAL DEMANDED</u>**

**<u>INJUNCTIVE RELIEF</u>**

**<u>SOUGHT</u>**

### <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>

1.    Plaintiffs, on behalf of themselves and all others similarly situated, allege breaches of contract and violations of the Federal Fair Debt Collection Practices Act ("FDCPA"), Florida Consumer Collection Practices Act ("FCCPA"), Florida Deceptive and Unfair Trade Practices Act § 501.203 ("FDUTPA"), District of Columbia Consumer Protection Procedures Act ("DCCPPA"), and District of Columbia Mortgage Broker Lender Act ("MBLA") against Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Cooper").

2.    Defendant Cooper is one of the largest servicers of residential mortgages in the country. Cooper routinely violates the FDCPA and state law, and breaches the uniform terms of borrowers' mortgages ("Uniform Mortgages") by charging and collecting illegal processing fees when borrowers pay their monthly mortgage by phone ("Pay-to-Pay Fees"). Cooper illegally charges homeowners fees between up to $14 and $19   for each telephone payment.

3.     The FDCPA prohibits Cooper from collecting any amount in addition to the principal obligation unless *such amount is explicitly stated in the agreement creating the debt or permitted by law*. 15 U.S.C. § 1692f(1). But Pay-to-Pay Fees are found nowhere in the Uniform Mortgages and are not permitted by state debt collection law.

4.     To service an FHA loan, the FHA requires all loan servicers, including Cooper, to be approved by the FHA before servicing any loans.  Loan servicers, like Cooper, are paid loan servicing fees out of the interest paid by FHA borrowers.  In exchange for the regular loan servicing fees paid by from borrowers' monthly interest payments, Cooper and other FHA approved loan servicers agree to follow the FHA's rules regarding loan servicing, as implemented by the Secretary of Housing and Urban Development ("HUD").

5.     In addition, FHA approved loan servicers, like Cooper, may collect additional revenue for additional work performed for the borrower. But, the uniform FHA mortgage agreement explicitly limits additional fees only to those specific fees authorized by the Secretary of HUD.  Exhibits  C, D - FHA Deed of Trust, ¶ 13.

6.     Cooper pays a third party, believed to be Western Union (or its successor-in-interest), to process its Pay-to-Pay transactions.  A substantial amount of the $14 to $19 Pay to Pay fee is marked-up profit to Cooper because Western Union processes Pay-to-Pay transactions at a cost of $0.50 or less per transaction.  Here, Cooper pockets the difference between the amount paid by borrowers and the actual expense it pays Western Union to process Pay to Pay transactions. This is a $13.50 or more overcharge per transaction paid by class members.

7.     Despite its uniform contractual obligations to charge only fees explicitly allowed under the Uniform Mortgages and applicable law, and for FHA mortgages, only

those fees approved by the HUD Secretary, Cooper leverages its position of power over homeowners and demands exorbitant Pay-to-Pay Fees. Even if some fee were allowed, the mortgage uniform covenants and applicable law only allow Cooper to pass along the actual costs of fees incurred to it by the borrowers—here, only a few cents per transaction.

8.    Plaintiffs Jackerly McFadden, Celinda Lake, Mary Montgomery, and Lillian Nelson paid these Pay-to-Pay Fees and they bring this class action lawsuit individually and on behalf of all similarly situated putative class members.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction under 28 U.S. Code § 1332(d) because complete diversity exists between the Defendant and at least one member of the proposed class and the matter in controversy exceeds $5,000,000.  Mr. Cooper services over 1 million loans nationwide, and collects pay to pay fees from the classes alleged that are believed to be in an amount that exceeds $5 million.

10.    This Court has personal jurisdiction because Cooper transacts business in the District of Columbia and commits torts in the District of Columbia, as described in this Complaint.

11.    Venue is proper because this is where the cause of action accrued.

## PARTIES

12.    Plaintiff Jackerly McFadden is a natural person residing in Florida. During all relevant times herein, Ms. McFadden owned property in Florida secured by a mortgage. Cooper is her mortgage servicer. In July 2019 and again in August 2019, Cooper charged Ms. McFadden $19.00 Pay-to-Pay Fees when she made mortgage payments over the phone.

13.     Plaintiff Celinda Lake is a natural person residing in the District of Columbia. During all relevant times herein, Ms. Lake owned property in the District of Columbia secured by a mortgage. Within the last four years, Cooper charged Ms. Lake one or more Pay-to-Pay Fees when she made a mortgage payment over the phone.

14.     Plaintiff Mary Montgomery is a natural person residing in the District of Columbia. During all relevant times herein, Ms. Montgomery owned property in the District of Columbia secured by a mortgage. Ms. Montgomery has an FHA-insured deed of trust that is serviced by Cooper. Within the last four years, Cooper charged Ms. Montgomery one or more Pay-to-Pay Fees when she made a mortgage payment over the phone.

15.     Plaintiff Lillian Nelson is a natural person residing in the District of Columbia. During all relevant times herein, Ms. Nelson owned property in the District of Columbia secured by a mortgage. Ms. Nelson has an FHA-insured deed of trust that is serviced by Cooper. Within the last four years, Cooper charged Ms. Nelson one or more Pay-to-Pay Fees when she made a mortgage payment over the phone.

16.     Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper is a Delaware corporation with its principal place of business in Texas.

## APPLICABLE LAW AND SERVICING RULES

**FDCPA**

17.     The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

18.     The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which

includes the false representation of "the character, amount, or legal status of any debt." *Id.* § 1692e.

19.     The FDCPA also prohibits debt collectors from "unfair or unconscionable means to collect or attempt to collect any debt," including "the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f.

20.     The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

21.     The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3).

22.     The FDCPA defines "debt collector" as "any person who uses . . . any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debt owed . . . or asserted to be owed or due another." *Id.* § 1692a(6).

23.     The FDCPA defines communication as "conveying of information regarding a debt directly or indirectly to any person through any medium." *Id.* § 1692a(2).

24.     The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that] are primarily for personal, family, or household purposes." *Id.* § 1692a(5).

**FCCPA**

25.     The FCCPA prohibits debt collectors from engaging in certain abusive practices in the collection of consumer debts. *See generally* Fla. Stat. § 559.72.

26.     The FCCPA's goal is to provide the consumer with the most protection possible.

27.     Specifically, the FCCPA states that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9).

28.     The FCCPA creates a private right of action under Fla. Stat. § 559.77.

29.     The FCCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 559.55(8).

30.     The FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debt. *Id.* § 559.72. This language includes all allegedly unlawful attempts at collecting consumer claims.

31.     The FCCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 559.55(6).

**FDUTPA**

32.     The FDUTPA is "construed liberally to promote" the protection of consumers and businesses from "unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

33.     The FDUTPA creates a private right of action for FDUTPA violations. *Id.* § 501.211.

34.    The FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, or unfair or deceptive acts or practices in the conduct of any trade or commerce" against consumers. *Id.* § 501.204(1).

35.    The FDUTPA defines "consumer" broadly as an individual, entity, or any group or combination. *Id.* § 501.203(7).

36.    The FDUTPA defines "trade or commerce" as "advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." *Id.* § 501.203(8).

37.    Where there is a violation of a statute prohibiting unfair or deceptive acts, a *per se* violation of Florida's FDUTPA has also occurred. *See* Fla. Stat. § 501.203(3) (stating a violation of any law proscribing unfair methods of competition, or unfair, deceptive, or unconscionable acts is also a violation the FDUTPA).

**MLBA**

38.    The MLBA governs the conduct of mortgage servicers operating in the District of Columbia. D.C. Code § 26-1101 *et seq.*

39.    The MLBA applies to both lenders and servicers, and prohibits them from, among other things, defrauding or misleading borrowers and engaging in deceptive business practices. *Id.* §§ 26-1101(11)(A)(iii), 26-1114.

40.    Specifically, the MLBA makes it illegal for a mortgage servicer to "directly or indirectly employ any scheme, device, or artifice to defraud or mislead borrowers or lenders"; to "engage in any unfair or deceptive practice toward any person"; and to "fail to comply with any other federal or District law … applicable to any business authorized or conducted under this chapter." *Id.* § 26-1114(d)(1), (2), (8).

**DCCPPA**

41.     The DCCPPA is a broad remedial statute, which courts construe liberally to promote consumer protection.

42.     The DCCPPA defines "consumer" broadly to mean "a person who, other than for purposes of resale, does or would purchase, lease (as lessee), or receive consumer goods or services, including as a co-obligor or surety, or does or would otherwise provide the economic demand for a trade practice." D.C. Code § 28-3901(2)(A).

43.     The DCCPA defines "goods and services" to mean "any and all parts of the economic output of society, at any stage or related or necessary point in the economic process, and includes consumer credit, franchises, business opportunities, real estate transactions, and consumer services of all types." *Id.* § 28-3901(7).

44.     The DCCPPA makes it illegal for any person to "engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby." *Id.* § 28-3904.

45.     The DCCPPA creates a private right of action for DCCPPA violations, as well as for any consumer who seeks to "bring an action seeking relief from the use of a trade practice in violation of a law of the district." *Id.* § 28-3905(k)(1)(A). This provision contemplates that procedures and sanctions provided by the DCCPPA will be used to enforce trade practices made unlawful by other statutes.

**FHA SERVICING RULES**

46.     The Federal Housing Administration, an agency within the United States Department of Housing and Urban Development, "provides mortgage insurance on loans

made by FHA-approved lenders throughout the United States and its territories."[1] The FHA "is the largest insurer of mortgages in the world, insuring over 47.5 million properties since its inception in 1934."[2]

47.     The FHA provides incentives to private lenders to make loans to would-be homebuyers whose creditworthiness and inability to contribute a significant down payment make it difficult for them to obtain a home loan on reasonable terms.

48.     To achieve that goal, "FHA mortgage insurance provides lenders with protection against losses as the result of homeowners defaulting on their mortgage loans. The lenders bear less risk because FHA will pay a claim to the lender in the event of a homeowner's default."[3]

49.     The FHA restricts who can make and service FHA loans. "Only FHA-approved Mortgagees may service FHA-insured Mortgages," and those "Mortgagees may service Mortgages they hold or that are held by other FHA-approved Mortgagees." (*Id.*)

50.     Defendant Cooper is an FHA-approved Mortgagee.

51.     As an FHA-approved Mortgagee, Cooper must annually "acknowledge that the Mortgagee is now, and was at all times throughout the Certification Period, subject to all applicable HUD regulations, ***Handbooks***, Guidebooks, Mortgagee Letters, Title I Letters, policies and requirements, as well as Fair Housing regulations and laws including

---

[1] HUD.gov – The Federal Housing Administration, https://www.hud.gov/program_offices/housing/fhahistory (last visited on September 12, 2019).
[2] *Id.*
[3] *Id.*

but not limited to 24 CFR § 5.105, Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act) and Title VI of the Civil Rights Act of 1964."[4]

52.     HUD's servicing requirements restrict the fees and charges an FHA-approved Mortgagee may collect from the typically lower-income FHA borrower. HUD Handbook 4000.1: *Single-Family Housing Policy*, https://www.hud.gov/sites/documents/40001HSGH.PDF (last accessed by counsel on September 12, 2019) (the "HUD Handbook").

53.     HUD makes clear "[t]he Mortgagee must fully comply with all of the following standards and procedures when servicing a Mortgage insured by the Federal Housing Administration." (*Id.*)

54.     These mandatory restrictions include limits on the types and amounts of fees and charges an FHA-approved Mortgagee may collect from a borrower.

55.     FHA-insured mortgages contain uniform covenants.

56.     In one such uniform covenant, the parties to the mortgage agree that "Lender may collect fees and charges ***authorized*** by the Secretary [of Housing and Urban Development]." (Ex. B, C at ¶ 13 (emphasis added).)

57.     This provision incorporates by reference HUD's limits on allowable fees.

58.     The HUD Handbook establishes what fees and charges authorized by the HUD. ("Servicing Fees and Charges," Ex. 3 at 3.)

---

[4] *See*, FHA Lender Annual Certifications: Supervised and Nonsupervised Mortgagees, Changes Implemented 8/1/2016, https://www.hud.gov/sites/documents/SFH_COMP_SUPERNONSUPER.PDF (last visited on September 12, 2019) (emphasis added).

59.     Appendix 3.0 of the HUD Handbook contains an exhaustive list of the servicing fees and charges authorized by HUD and the maximum amounts that may be charged for such fees.[5]

60.     Pay-to-Pay fees are not on that list.

61.     Based upon information and belief, the Pay-to-Pay fees that Cooper collects from borrowers exceed its out-of-pocket costs by several hundred percent, and thus violate mandatory HUD servicing rules that are incorporated into all FHA-insured mortgages.

## FACTUAL ALLEGATIONS

62.     Cooper is a loan servicer that operates around the country. Its principal purpose is to collect debt and it uses interstate commerce to collect debt.

63.     Each time a mortgage borrower whose loan is serviced by Cooper makes a loan payment over the phone ("Pay to-Pay Transactions"), Cooper charges the borrower a Pay-to-Pay Fee of up to $14 for using Cooper's Interactive Voice Response ("IVR") system or $19 for speaking directly with a representative.

64.     The cost for Cooper to process the Pay-to-Pay Transactions is well below the amounts charged to borrowers, and Cooper illegally profits the difference as profit.

65.     The uniform contractual obligations in the mortgages Cooper services do not authorize Cooper to assess Pay-to-Pay Fees.

66.     At most, the mortgage uniform covenants allow Cooper to pass along only the actual cost of fees incurred by it to the borrower.

---

[5] In the PDF version of the HUD Handbook, the term "maximum amount allowed by HUD" contains a hyperlink that, when clicked, brings the reader to Appendix 3.0.

67.     Cooper violates its borrowers' Uniform Mortgages when it assesses such fees. Cooper frequently, intentionally, and persistently collects Pay-to-Pay Fees even though such fees are not authorized by the mortgages and it therefore had no right to collect them.

**Plaintiff McFadden**

68.     Ms. McFadden owns property in Broward County, Florida, that is secured by a mortgage (the "Florida Mortgage Agreement"). Ms. McFadden's lender was America's Wholesale Lender on behalf of Countrywide Home Loans, Inc. and her Mortgage Agreement dated February 22, 2006 is attached as **Exhibit A.** Ms. McFadden took out the mortgage loan secured by her property for personal, family, or household uses.

69.     Ms. McFadden's loan was assigned to Seterus, Inc. in February 2015 when Ms. McFadden's loan was in default.  Seterus, Inc. immediately charged her late fees and property preservation fees within days of acquiring the loan, and attorney's fees associated with foreclosure in March 2015.  These fees could not be collected under the Florida Mortgage Agreement unless Ms. McFadden was in default.

70.     Cooper became the servicer of Ms. McFadden's mortgage through its acquisition of Seterus, Inc., completed on or about March 1, 2019.

71.     Cooper's principal purpose is to collect debt, and it used interstate commerce to collect debt. Furthermore, Cooper acquired the loan in default. Thus, Cooper is a "debt collector" under the FDCPA.

72.     Ms. McFadden sometimes makes payments over the phone. When she does, Cooper charges her a Pay-to-Pay Fee. For example, Cooper charged Ms. McFadden a $19.00 Pay-to-Pay Fee to make a payment over the phone in July 2019. Cooper charged

Ms. McFadden another $19.00 Pay-to-Pay Fee to make a payment over the phone in August 2019.

73.    These fees were not authorized by the Florida Mortgage Agreement.

74.    Ms. McFadden's mortgage agreement, like the mortgage agreements of many other borrowers, incorporates model language from Fannie Mae. Like other Fannie Mae mortgages, Ms. McFadden's mortgage agreement states that "[t]his Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located," i.e., Florida. Ex. A ¶ 16. It further states that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." *Id.* ¶ 14.

75.    "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Ex. A at 2 ¶ I.

76.    Cooper's collection of the Pay-to-Pay Fees violated the FDCPA because the Florida Mortgage Agreement does not expressly allow Cooper to charge Pay-to-Pay Fees. *See* 16 U.S.C. § 1692f (making it illegal to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law").

77.    Cooper's collection of the Pay-to-Pay Fees also violated the FCCPA, because the Florida Mortgage Agreement does not expressly permit Cooper to charge them. *See* Fla. Stat. § 559.72(9) (prohibiting collection, or attempts at collection, of debts known not to exist and prohibiting the assertion of a legal right known not to exist); *id.* § 559.77(5) ("In applying and construing [the FCCPA], due consideration and *great weight* shall be

given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act.") (emphasis added).

78.     By violating the FDCPA and the FCCPA ("Applicable Law"), Cooper breached paragraphs 14 and 16 of the Florida Mortgage Agreement.

79.     Even if the Pay-to-Pay Fees could somehow be construed as a default-related fee under ¶ 9, "Protection of Lender's Interest in the Property and Rights Under This Security Instrument" section, that section permits only "amounts *disbursed* by lender" to become the debt of the borrower. *See* Ex. A ¶ 9 (emphasis added). By assessing more than the amounts it actually disbursed to the balance of Ms. McFadden's mortgage, Cooper violated ¶ 9 of the Florida Mortgage Agreement.

80.     Because the above provisions are contained in the "Uniform Covenants" section of the Florida Mortgage Agreement, Cooper has breached its contracts on a class-wide basis.

81.     Cooper acted deceitfully by assessing Ms. McFadden more in Pay-to-Pay Fees than it actually disbursed to process the Pay-to-Pay Transactions.

82.     Prior to filing this Complaint, Ms. McFadden made a written pre-suit demand upon Cooper.

83.     Cooper was given a reasonable opportunity to cure the breaches complained of herein, but has failed to do so.

**Plaintiff Lake**

84.     Ms.  Lake owns property in the District of Columbia that is secured by a mortgage and Deed of Trust (the "D.C. Mortgage Agreement"). Ms. Lake executed a Fannie Mae Deed of Trust on November 22, 2017 for $234,100.00 (**Exhibit B**). Ms. Lake's mortgage loan is secured by her property for personal, family, or household uses.

85.     Cooper is the lender and servicer for Ms. Lake's mortgage.

86.     Ms. Lake makes payments over the phone. Each time she does so, Cooper charges her a Pay-to-Pay Fee.

87.     These fees were not authorized by the D.C. Mortgage Agreement.

88.     Ms. Lake's mortgage agreement, like the mortgage agreements of many other borrowers, incorporates model language from Fannie Mae. Like other Fannie Mae mortgages, Ms. Lake's mortgage agreement states that "[t]his Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located," i.e., the District of Columbia. Ex. B ¶ 16. It further states that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." *Id.* ¶ 14.

89.     "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Ex. B at 2 ¶ I.

90.     Cooper's collection of the Pay-to-Pay Fees violated the MLBA and DCCPPA because the D.C. Mortgage Agreement does not expressly allow Cooper to charge Pay-to-Pay Fees.  Nevertheless, Cooper collected these fees as though they were allowed, failing to disclose that the fees were not authorized.  Cooper also failed to disclose that these fees were not the actual cost of the transaction incurred by Cooper.  The collection of these fees was an unfair and deceptive trade practice that violated the MLBA and DCCPA.

91.     By violating the MLBA and the DCCPPA ("Applicable Law"), Cooper breached paragraphs 14 and 16 of the D.C. Mortgage Agreement.

92.    Because the above provisions are contained in the "Uniform Covenants" section of the D.C. Mortgage Agreement, Cooper has breached its contracts on a class-wide basis.

93.    Cooper acted deceitfully by assessing Ms. Lake more in Pay-to-Pay Fees than it actually disbursed to process the Pay-to-Pay Transactions.

94.    Cooper was given written notice of the breaches described in this Complaint.

95.    Cooper was given a reasonable opportunity to cure the breaches complained of herein, but has failed to do so.

**Plaintiff Montgomery**

96.    Ms.  Montgomery owns property in the District of Columbia that is secured by a mortgage and Deed of Trust (the "D.C. FHA Mortgage Agreement"). Ms. Montgomery executed an FHA-insured Deed of Trust on April 5, 2019 for $489,926.00 (**Exhibit C**). Ms. Montgomery's mortgage loan is secured by her property for personal, family, or household uses.

97.    Cooper is the lender and servicer for Ms. Montgomery's mortgage.

98.    Ms. Montgomery makes payments over the phone. Each time she does so, Cooper charges her a Pay-to-Pay Fee.

99.    The D.C. FHA Mortgage Agreement is a standardized form authorized by the FHA and does not authorize Pay-to-Pay Fees.

100.    Ms. Montgomery, like many borrowers, has an FHA mortgage, meaning that the mortgage is issued by an FHA-approved lender and insured by the FHA. The uniform covenants of the FHA mortgages state that the lender may only assess fees

authorized by the Secretary of the U.S. Department of Housing and Urban Development ("HUD").

101.    HUD permits servicers of FHA mortgages to collect "allowable fees and charges," i.e., fees and charges specifically delineated in Appendix 3 to the HUD Single Family Housing Policy Handbook ("Servicing Handbook"). *See* Handbook 4000.1, FHA Single Family Housing Policy Handbook § III(A)(1)(f). Servicers seeking to assess fees "not specifically mentioned" in the Servicing Handbook must request approval from the National Servicing Center to charge such fees. *Id.* § III(A)(1)(f)(B). HUD prohibits servicers from charging the borrower for "activities that are normally considered a part of a prudent Mortgagee's servicing activity. *Id.* § III(A)(1)(f)(C)."

102.    The Handbook does not authorize Pay-to-Pay Fees. Cooper has not sought authorization from the National Servicing Center to charge Pay-to-Pay Fees.

103.    Like other FHA mortgages, the D.C. FHA Mortgage Agreement states that "Lender may collect fees and charges authorized by the Secretary." Ex.  C, D ¶ 13. By assessing Pay-to-Pay Fees not "authorized by the Secretary," Cooper violated the uniform covenants of the D.C. FHA Mortgage Agreement.

104.    Paragraph 13 also states that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." *See* Ex.  C, D ¶ 13. The D.C. Mortgage Agreement defines Applicable Law as "all controlling applicable federal, state, and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." *See* Ex. C, D ¶ J.

105.    Cooper's collection of the Pay-to-Pay Fees violated the FDCPA because the D.C. Mortgage Agreement does not expressly allow Cooper to charge Pay-to-Pay Fees. *See*

17

16 U.S.C. § 1692f (making it illegal to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law").

106.    Because the above provisions are contained in the "Uniform Covenants" section of the D.C. Mortgage Agreement, Cooper has breached its contracts on a class-wide basis.

107.    Cooper acted deceitfully by assessing Ms. Montgomery more in Pay-to-Pay Fees than it actually disbursed to process the Pay-to-Pay Transactions.

108.    Cooper was given written notice of the breaches described in this Complaint.

109.    Cooper was given a reasonable opportunity to cure the breaches complained of herein, but has failed to do so.

**Plaintiff Nelson**

110.    Ms. Nelson owns property in the District of Columbia that is secured by a mortgage and a D.C. FHA Mortgage Agreement. Ms. Nelson executed an FHA-insured Deed of Trust on March 28, 2018 for $117,012.00 (**Exhibit D**). Ms. Nelson's mortgage loan is secured by her property for personal, family, or household uses.

111.    Cooper is the lender and servicer for Ms. Nelson's mortgage.

112.    Ms. Nelson makes payments over the phone. Each time she does so, Cooper charges her a Pay-to-Pay Fee.

113.    The D.C. FHA Mortgage Agreement is a standardized form authorized by the FHA and does not authorize Pay-to-Pay Fees.

114.    Ms. Nelson, like many borrowers, has an FHA mortgage, meaning that the mortgage is issued by an FHA-approved lender and insured by the FHA. The uniform

covenants of the FHA mortgages state that the lender may only assess fees authorized by the Secretary of the U.S. Department of Housing and Urban Development ("HUD").

115.    HUD permits servicers of FHA mortgages to collect "allowable fees and charges," i.e., fees and charges specifically delineated in Appendix 3 to the HUD Single Family Housing Policy Handbook ("Servicing Handbook"). *See* Handbook 4000.1, FHA Single Family Housing Policy Handbook § III(A)(1)(f). Servicers seeking to assess fees "not specifically mentioned" in the Servicing Handbook must request approval from the National Servicing Center to charge such fees. *Id.* § III(A)(1)(f)(B). HUD prohibits servicers from charging the borrower for "activities that are normally considered a part of a prudent Mortgagee's servicing activity. *Id.* § III(A)(1)(f)(C)."

116.    The Handbook does not authorize Pay-to-Pay Fees. Cooper has not sought authorization from the National Servicing Center to charge Pay-to-Pay Fees.

117.    Like other FHA mortgages, the D.C. FHA Mortgage Agreement states that "Lender may collect fees and charges authorized by the Secretary." Ex. C, D ¶ 13. By assessing Pay-to-Pay Fees not "authorized by the Secretary," Cooper violated the uniform covenants of the D.C. FHA Mortgage Agreement.

118.    Paragraph 13 also states that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." *See* Ex. C, D ¶ 13. The D.C. Mortgage Agreement defines Applicable Law as "all controlling applicable federal, state, and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." *See* Ex. C , D ¶ J.

119.    Cooper's collection of the Pay-to-Pay Fees violated the FDCPA because the D.C. FHA Mortgage Agreement does not expressly allow Cooper to charge Pay-to-Pay

Fees. *See* 16 U.S.C. § 1692f (making it illegal to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law").

120.    Because the above provisions are contained in the "Uniform Covenants" section of the D.C. FHA Mortgage Agreement, Cooper has breached its contracts on a class-wide basis.

121.    Cooper acted deceitfully by assessing Ms. Nelson more in Pay-to-Pay Fees than it actually disbursed to process the Pay-to-Pay Transactions.

122.    Cooper was given written notice of the breaches described in this Complaint.

123.    Cooper was given a reasonable opportunity to cure the breaches complained of herein, but has failed to do so.

### Cooper Has Been Repeatedly Informed of the Wrongful and Illegal Nature of its Pay-to-Pay Fees

124.    Cooper has been duly and adequately notified and informed that it is in violation of state and federal law, as well as in breach of contract and violates other state common laws, with borrowers in D.C., Florida, and nationwide.

125.    Prior to filing this Complaint, in or around January 6, 2020, Ms. McFadden made a written pre-suit demand upon Cooper on behalf of similarly situated borrowers. And around that same time, Ms. Cassandra Wilson, made a written pre-suit demand upon Cooper on behalf of similarly situated borrowers. Specifically, Ms. Wilson informed Mr. Cooper that it was in breach of contract and in violation of the D.C. Consumer Protection Procedures Act ("DCCPPA"), and requested that Mr. Cooper correct its violations on a

classwide basis. Ms. Wilson had an FHA mortgage and was a party to this litigation until she passed away and her estate dismissed her individual claims on July 26, 2022.

126.    In 2015, Mr. Cooper was informed that by borrowers that its Pay-to-Pay fees were illegal when it was sued by a borrower in Washington state for violations of state and federal law. Mr. Cooper agreed to a classwide settlement in 2018 but declined to stop the practice as to its borrowers.

127.    On multiple occasions since 2015, Mr. Cooper has additionally been informed as to the illegal nature of its Pay-to-Pay fees via lawsuits filed in other states, including California, Texas, Maryland. None of these lawsuits has resulted in Mr. Cooper issuing refunds to the classes that Plaintiffs herein seek to certify or otherwise agreeing to a permanent cessation of the charging of the fees.

128.    Additionally, on numerous occasions over the last decade, Mr. Cooper has been informed via guidance and statements by federal agencies, state attorneys general, and other regulators that Pay-to-Pay Fees are illegal and violate state and federal law. For example, the Consumer Financial Protection Bureau has long taken the position that Pay-to-Pay fees charged by debt collectors violate the FDCPA if not expressly authorized in the contract creating the debt or expressly authorized by law, and recently reiterated that position in an amicus brief filed before the Ninth Circuit in October 2021 and in an advisory letter issued on June 29, 2022. And in January 2021, a coalition of 33 attorneys general, including those in Florida and the District of Columbia, intervened to stop a class action settlement with another mortgage loan servicer, where that settlement would continue to permit the servicer to charge the fees. Those attorneys general decried the fees as illegal and unfair.

129.    Despite receiving these notices, Mr. Cooper has refused to remedy its violations as to Class Members. Further notice would be futile.

130.    **DISCLAIMER:** In the event Mr. Cooper maintains that additional pre-suit notice is required, and this Court agrees, then the original January 22, 2020 complaint should be deemed as such pre-suit notice, and the claims therein treated as if filed 14 days thereafter, or February 4, 2020. Indeed, Mr. Cooper failed to cure on a classwide basis as to all the claims alleged therein. In the event Mr. Cooper maintains that further pre-suit notice is required as to Ms. Nelson and Ms. Montgomery, specifically, and this Court agrees, Plaintiffs intend for this Complaint to be construed as that notice, and their claims herein shall be treated as if filed 14 days thereafter.

## CLASS ACTION ALLEGATIONS

131.    Plaintiffs bring this action under Fed. R. Civ. P. 23 on behalf of the following classes of persons, subject to modification after discovery and case development:

> **Nationwide FDPCA Class:** All persons who were borrowers on residential mortgage loans that were not owned by Cooper and to which Cooper acquired servicing rights when such loans were 30 days or more delinquent on loan payment obligations, and paid a fee to Cooper for making a loan payment by telephone, an Interactive Voice Response system ("IVR"), or the internet, during the applicable statutes of limitations through the date a class is certified.

> **FHA Pay-to-Pay Class:** All persons in the United States (1) with an FHA-insured mortgage (2) originated or serviced by Cooper (3) who were charged one or more Pay-to-Pay fee and (4) whose mortgages provide the "Lender may collect fees or charges authorized by the Secretary," or language substantially similar.

> **Florida Class:** All persons with a Florida address who were borrowers on residential mortgage loans to which Cooper acquired servicing rights, and paid a fee to Cooper for making a loan payment by telephone, IVR, or the internet, during the applicable statutes of limitations through the date a class is certified.  Excluded from this class are those transactions for class members included in the *Contreras v. Nationstar Mortgage LLC*, Case No. 2:16-cv-00302-MCE-EFB settlement.

**District of Columbia Class**: All persons with a District of Columbia address who were borrowers on residential mortgage loans to which Cooper acquired servicing rights, and paid a fee to Cooper for making a loan payment by telephone, IVR, or the internet, during the applicable statutes of limitations through the date a class is certified.

132.    Class members are identifiable through Defendant's records and payment databases.

133.    Excluded from the classes are the Defendant; any entities in which it has a controlling interest; its agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

134.    Plaintiffs propose that they be appointed as class representatives.

135.    Plaintiffs and the Classes have all been harmed by the actions of Defendant.

136.    Numerosity is satisfied. Upon information and belief, there are thousands of class members.  Individual joinder of these persons is impracticable.

137.    There are questions of law and fact common to Plaintiffs and the Classes, including, but not limited to:

a. Whether Cooper violated the FDCPA by charging Pay-to-Pay Fees not due;

b. Whether Cooper violated the FCCPA by charging Pay-to-Pay Fees not due;

c. Whether Cooper violated general provisions of the FDUTPA by charging Pay-to-Pay Fees not due;

d. Whether the violations of the FCCPA were *per se* violations of the FDUTPA;

e. Whether Cooper breached its mortgage agreements by charging Pay-to-Pay Fees not due;

f. Whether Cooper's costs of the Pay-to-Pay Transactions are less than the amount it charged for Pay-to-Pay fees;

23

g.   Whether Plaintiffs and the Class members are entitled to injunctive relief;

h.   Whether Plaintiffs and the Class Members are entitled to actual and/or statutory damages as a result of Defendant's actions; and

i.   Whether Plaintiffs and the Class are entitled to attorney's fees and costs.

138.   Plaintiffs' claims are typical of the claims of class members.  Cooper charged Plaintiffs Pay-to-Pay Fees in the same manner as the Class Members.  Plaintiffs and the Class Members entered into uniform covenants in their Mortgage Agreements that prohibit Pay-to-Pay charges.  Alternatively, if Cooper is allowed under the Mortgage Agreements to charge Pay-to-Pay Fees, such amount is capped at the actual amounts disbursed by Cooper to process the Pay-to-Pay Transactions.

139.   Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class Members and they will fairly and adequately protect the interests of the Class.  Plaintiffs have taken actions before filing this Complaint, by hiring skilled and experienced counsel, and by making a pre-suit demand on behalf of class members to protect the interests of the class.

140.   Plaintiffs have hired counsel that is skilled and experienced in class actions and are adequate class counsel capable of protecting the interests of the class members.

141.   Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

142.   The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

**COUNT I**
**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. § 1692 *et seq*.**

**On behalf of Plaintiff McFadden and the Nationwide FDCPA Class**

143.    Paragraphs 1 to 142 are hereby incorporated by reference.

144.    This action is maintainable as a nationwide class action pursuant to 15 U.S.C. § 1692k(a)(2)(b).

145.    The FDCPA makes it an illegal, unfair practice for a debt collector to undertake the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

146.    Because Cooper regularly collects debts owed others and because it acquired the loans of Plaintiff and the Nationwide FDCPA Class members while those loans were in default, it qualifies as a debt collector under the FDCPA.

147.    The Mortgage Agreements of Ms. McFadden and the Nationwide FDCPA Class members do not expressly authorize Cooper to collect Pay-to-Pay fees. At most, the Mortgage Agreements permit Cooper to collect the actual amount disbursed to process the Pay-to-Pay transactions.

148.    Although the Mortgage Agreements do not expressly authorize collection of Pay-to-Pay Fees, Cooper collected such fees anyway.

149.    In so doing, Cooper violated 15 U.S.C. § 1692f(1).

150.    Cooper intentionally, frequently, and persistently collected Pay-to-Pay Fees from Ms. McFadden and the Nationwide FDCPA Class Members.

151.    Ms. McFadden and the Nationwide FDCPA Class Members were harmed as a result of Cooper's conduct.

152.    As a result of each and every violation of the FDCPA, Ms. McFadden and the Nationwide FDCPA Class members are entitled to actual damages under 15 U.S.C. §

1692k(a)(1); statutory damages under 15 U.S.C. § 1692k(a)(2)(A) to the full extent provided by law; and reasonable attorneys' fees and costs under 15 U.S.C. § 1692k(a)(3) from Cooper.

## COUNT II
## VIOLATION OF THE FLORIDA CONSUMER PROTECTION PRACTICES ACT
### Fla. Stat. § 555.72(9)
### On behalf of Plaintiff McFadden and the Florida Class

153.     Paragraphs 1 to 142 are hereby incorporated by reference.

154.     Plaintiff and the Florida Class Members are "consumers" as defined by Fla. Stat. § 559.55(8).

155.     Defendant is a "person" as stated in the FCCPA.

156.     Plaintiff and the Florida Class Members purchased their homes by residential mortgage for personal, family or household use.

157.     Defendant attempted to enforce, claimed, and asserted a known non-existent legal right to a debt as defined by Fla. Stat. § 559.55(6) when it charged, attempted to collect, and collected Pay-to-Pay Fees. *Id.* § 559.72(9).

158.     Defendant's acts of illegally attempting to collect a debt from Plaintiff and the Florida Class Members and deliberately charging monthly Pay-to-Pay Fees constitutes a knowing violation of § 559.72(9) of the FCCPA.

159.     As a result of Defendant's FCCPA violations, Plaintiff and the Florida Class Members suffered substantial damages, including but not limited to financial damage incurred from Defendant's illegal Pay-to-Pay Fees.

## COUNT III
## VIOLATION OF THE FLORIDA DECEPTIVE AND
## UNFAIR TRADE PRACTICES ACT
### Fla. Stat. §§ 501.203(3), 501.204
### On Behalf of Plaintiff McFadden and the Florida Class

160.     Paragraphs 1 to 142 are hereby incorporated by reference.

161.     Plaintiff and the Florida Class Members are "consumers" as defined by Fla. Stat. § 501.203(7).

162.     Defendant engaged in "trade or commerce" as defined by § 501.203(8) when it attempted to collect, and collected, a debt associated with mortgage payments.

163.     Defendant violated § 559.72(9) of the FCCPA when it attempted to collect, and collected, a debt associated with mortgage payments.

164.     A violation of Fla. Stat. § 559.72(9) of the FCCPA is a *per se* violation of FDUTPA under Fla. Stat. § 501.203(3).

165.     In addition to the above-referenced per se FDUTPA violations, Defendant also generally violated FDUTPA under Fla. Stat. § 501.204(1) when it engaged in unfair and deceptive practices in trade or commerce by taking advantage of consumers in claiming and collecting debts for amounts not owed.

166.     Defendant never informed Plaintiffs and the Florida Class Members when they made their Pay-to-Pay Fee payments that the actual cost to Defendant for the Pay-to-Pay Transactions was far less than the amount charged in Pay-to-Pay Fees.

167.     As a result of Defendant's FDUTPA violations, Plaintiffs and the Florida Class Members suffered substantial damage, including but not limited to financial damage incurred from Defendant's unlawful Pay-to-Pay Fees.

**COUNT IV**
**BREACH OF CONTRACT**
**On Behalf of Plaintiff McFadden and the Florida Class**
**On Behalf of Plaintiffs Lake, Montgomery and Nelson and the FHA Pay-to-Pay Class and the District of Columbia Class**

168.     Paragraphs 1 to 142 are hereby incorporated by reference.

169.    Plaintiffs and the Class Members are parties to contracts with Cooper. Cooper breached its contracts with Plaintiffs and the Class Members when it charged Pay-to-Pay Fees in violation of the Uniform Mortgages and in excess of the amounts actually disbursed by Cooper to pay for the cost of the Pay-to-Pay Transactions.

170.    Plaintiffs and the Class Members suffered damages when Cooper violated its contracts with them by assessing Pay-to-Pay Fees.

**McFadden Breach**

171.    Ms. McFadden purchased a home subject to the Florida Mortgage Agreement. *See* Ex. A. When Cooper became the servicer of her mortgage, it became a party to the Florida Mortgage Agreement. Thus, Cooper became bound as an assignee by the Florida Mortgage Agreement with Ms.  McFadden whereby money was lent to Ms. McFadden to purchase property in exchange for certain payment over time.

172.    Ms. McFadden sometimes makes payments over the phone. When she does, Cooper charges her a Pay-to-Pay Fee. For example, Cooper charged Ms. McFadden a $19.00 Pay-to-Pay Fee to make a payment over the phone in July 2019. Cooper charged Ms. McFadden another $19.00 Pay-to-Pay Fee to make a payment over the phone in August 2019.

173.    These fees were not authorized by the Florida Mortgage Agreement.

174.    The Florida Mortgage Agreement states that "[t]his Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located," i.e., Florida. Ex. A ¶ 16. It further states that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." *Id.* ¶ 14.

175.    "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the

effect of law) as well as all applicable final, non-appealable judicial opinions." Ex. A at 2 ¶ I.

176.   Cooper's collection of the Pay-to-Pay Fees violated the FDCPA because the Florida Mortgage does not expressly allow Cooper to charge Pay-to-Pay Fees. *See* 16 U.S.C. § 1692f (making it illegal to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law").

177.   Cooper's collection of the Pay-to-Pay Fees also violated the FCCPA, because the Florida Mortgage does not expressly permit Cooper to charge them. *See* Fla. Stat. § 559.72(9) (prohibiting collection, or attempts at collection, of debts known not to exist and prohibiting the assertion of a legal right known not to exist); *id*. § 559.77(5) ("In applying and construing [the FCCPA], due consideration and *great weight* shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act.") (emphasis added).

178.   By violating the FDCPA and the FCCPA ("Applicable Law"), Cooper breached paragraphs 14 and 16 of the Florida Mortgage.

179.   Even if the Pay-to-Pay Fees could somehow be construed as a default-related fee under ¶ 9, "Protection of Lender's Interest in the Property and Rights Under This Security Instrument" section, that section permits only "amounts *disbursed* by lender" to become the debt of the borrower. *See* Ex. A ¶ 9 (emphasis added). By assessing more than the amounts it actually disbursed to the balance of Ms. McFadden's mortgage, Cooper violated ¶ 9 of the Florida Mortgage Agreement.

180.    Because the above provisions are contained in the "Uniform Covenants" section of the Florida Mortgage Agreement, Cooper has breached its contracts on a class-wide basis.

181.    Plaintiff McFadden was damaged by Cooper's breach.

**Lake Breach**

182.    Ms. Lake purchased a home subject to the D.C. Mortgage Agreement. *See* Ex. B. Cooper was the lender and servicer under the D.C. Mortgage Agreement.

183.    Ms. Lake sometimes makes payments over the phone. When she does, Cooper charges her a Pay-to-Pay Fee. For example, Cooper has charged Ms. Lake at least four Pay-toPay fees of $14 each in 2022 alone.

184.    These fees were not authorized by the D.C. Mortgage Agreement.

185.    The D.C. Mortgage Agreement states that "[t]his Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located," i.e., the District of Colombia. Ex. B ¶ 16. It further states that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." *Id.* ¶ 14.

186.    "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Ex. B  at 2 ¶ I.

187.    Cooper's collection of the Pay-to-Pay Fees violated the MLBA and DCCPA because the D.C. Mortgage does not expressly allow Cooper to charge Pay-to-Pay Fees.

188.    Cooper acted deceitfully and unfairly by failing to disclose to Ms. Lake that Pay-to-Pay fees were not fees expressly authorized by her D.C. Mortgage.

30

189.    Cooper acted deceitfully and unfairly by assessing Ms. Nelson more in Pay-to-Pay Fees than it actually disbursed to process the Pay-to-Pay Transactions.

190.    By violating the MLBA and the DCCPPA ("Applicable Law"), Cooper breached paragraphs 14 and 16 of the D.C. Mortgage.

191.    Because the above provisions are contained in the "Uniform Covenants" section of the D.C.  Mortgage Agreement, Cooper has breached its contracts on a class-wide basis.

192.    Plaintiff Lake was damaged by Cooper's breach.

**Montgomery and Nelson Breaches**

193.    Ms. Montgomery and Ms. Nelson each own property in the District of Columbia that is subject to the ("D.C. FHA Mortgage Agreement"). *See* **Ex. C, D.**  Cooper is a party to the D.C. Mortgage Agreement.

194.    Ms. Montgomery and Ms. Nelson each occasionally make payments over the phone. Each time they do so, Cooper charges each of them a Pay-to-Pay Fee.

195.    The D.C. FHA Mortgage Agreement does not authorize Pay-to-Pay Fees.

196.    Ms. Montgomery and Ms. Nelson, like many borrowers, have FHA mortgages, meaning that the mortgage is issued by an FHA-approved lender and insured by the FHA. The uniform covenants of the FHA mortgages state that the lender may only assess fees authorized by the Secretary of the U.S. Department of Housing and Urban Development ("HUD").

197.    HUD permits servicers of FHA mortgages to collect "allowable fees and charges," i.e., fees and charges specifically delineated in Appendix 3 to the HUD Single Family Housing Policy Handbook ("Servicing Handbook"). *See* Handbook 4000.1, FHA Single Family Housing Policy Handbook § III(A)(1)(f). Servicers seeking to assess fees

"not specifically mentioned" in the Servicing Handbook must request approval from the National Servicing Center to charge such fees. *Id.* § III(A)(1)(f)(B). HUD prohibits servicers from charging the borrower for "activities that are normally considered a part of a prudent Mortgagee's servicing activity. *Id.* § III(A)(1)(f)(C)."

198.   The Handbook does not authorize Pay-to-Pay Fees. Cooper has not sought authorization from the National Servicing Center to charge Pay-to-Pay Fees.

199.   Like other FHA mortgages, the D.C. FHA Mortgage Agreement states that "Lender may collect fees and charges authorized by the Secretary." Ex. C, D ¶ 13. By assessing Pay-to-Pay Fees not "authorized by the Secretary," Cooper violated the uniform covenants of the D.C. Mortgage Agreement.

200.   Paragraph 13 also states that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." *See* Ex. C, D ¶ 13. The D.C. Mortgage Agreement defines Applicable Law as "all controlling applicable federal, state, and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." *See* Ex. C, D ¶ J.

201.   Cooper's collection of the Pay-to-Pay Fees violated the FDCPA because the D.C. FHA Mortgage Agreement does not expressly allow Cooper to charge Pay-to-Pay Fees. *See* 16 U.S.C. § 1692f (making it illegal to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law").

202.   Because the above provisions are contained in the "Uniform Covenants" section of the D.C. Mortgage Agreement, Cooper has breached its contracts on a class-wide basis.

203.   Ms. Montgomery and Ms. Nelson were each damaged by Cooper's breach.

**COUNT V**
**VIOLATION OF THE D.C. MORTGAGE**
**LENDER AND BROKER ACT**
**On Behalf of Plaintiffs Lake, Montgomery and Nelson**
**and the District of Columbia Class**

204.   Paragraphs 1 to 142 are hereby incorporated by reference.

205.   Plaintiffs Lake, Montgomery and Nelson and the Class Members are "borrowers" as defined in the MLBA. D.C. Code § 26-1101(1).

206.   Plaintiffs Lake, Montgomery and Nelson and the Class Members' loans were "mortgage loans" as defined in the MLBA. *Id.* § 26-1101(12).

207.   Defendant is a "mortgage lender" as defined in the MLBA. *Id.* § 26-1101(11)(A)(ii)-(iii).

208.   Defendant is not a financial institution that accepts deposits or is regulated under Title 26 of the D.C. Code. *Id.* § 26-1102.

209.   The MLBA prohibits mortgage lenders from: (i) "directly or indirectly employ[ing] any scheme, device, or artifice to defraud or mislead borrowers" and (ii) "engage[ing] in any unfair or deceptive practice toward any person." *Id.* § 26-1114(1), (2).

210.   Defendant violated the MLBA when it employed a scheme to mislead borrowers and engaged in a deceptive practice by assessing Pay-to-Pay Fees not authorized under the terms of the D.C. Mortgage Agreement or D.C. FHA Mortgage Agreement.

211.   Defendant further violated the MLBA when it employed a scheme to mislead borrowers and engaged in a deceptive practice by failing to disclose that the cost for Defendant to process the Pay-to-Pay Transactions is well below the amount of the Pay-to-Pay Fees it charges its borrowers.

212.    Plaintiffs Lake, Montgomery and Nelson, and the Class Members suffered losses as a result of Defendant's MLBA violations and are therefore entitled to recover damages and restitution, as well as reasonable attorneys' fees. D.C. Code § 26-1118(e).

213.    Further, D.C. Code § 28-3905(k)(1)(A) authorizes any person to "bring an action seeking relief from the use of a trade practice in violation of a law of the district." This provision contemplates that procedures and sanctions provided by the DCCPPA will be used to enforce trade practices made unlawful by other statutes.

214.    Pursuant to D.C. Code § 28-3905(k)(2), Plaintiffs Lake, Montgomery and Nelson, and the Class Members are entitled to statutory penalties or treble damages, whichever is greater; punitive damages; an order enjoining Defendant from continuing to assess Pay-to-Pay Fees; and reasonable attorneys' fees.

**COUNT VI**
**VIOLATION OF THE D.C. CONSUMER**
**PROTECTION PROCEDURES ACT**
**On Behalf of Plaintiffs Lake, Montgomery and Nelson**
**and the District of Columbia Class**

215.    Paragraphs 1 to 142 are hereby incorporated by reference.

216.    Plaintiffs Lake, Montgomery, and Nelson, and the Class Members are "consumers" within the meaning of the DCCPPA. D.C. Code § 28-3901(a)(2).

217.    Defendant engaged in unlawful trade practices in violation of the DCCPPA by assessing Pay-to-Pay Fees not authorized by the D.C. Mortgage Agreement. Defendant's unlawful trade practices include, but are not limited to: (i) misrepresenting a material fact that has a tendency to mislead, including its right to assess the Pay-to-Pay Fees; (ii) representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law, including its right to assess the Pay-to-Pay Fees; and (iii) failing to state a material fact that has a

34

tendency to mislead, including that it did not have the right to collect Pay-to-Pay Fees under the D.C. Mortgage Agreement and that the cost to process Pay-to-Pay Transactions is far below the amount of the Pay-to-Pay Fees. *See* D.C. Code § 28-3904(e), (e-1), (f).

218.    Plaintiffs Lake, Montgomery and Nelson, and the Class Members suffered damages as a result of Defendant's DCCPPA violations. Plaintiff and the Class Members are entitled to recover treble damages or $1,500 per violation, whichever is greater; punitive damages; and attorneys' fees. Plaintiff and the Class Members are also entitled to an injunction against Defendant's use of the unlawful trade practices described herein.

**COUNT VII**
**UNJUST ENRICHMENT**
**On Behalf of Plaintiff McFadden and the Florida Class and**
**Plaintiffs Lake, Montgomery and Nelsonand the District of Columbia Class**
**(pled in the alternative to breach of contract claims)**

219.    Paragraphs 1 to 142 are hereby incorporated by reference.

220.    Plaintiffs and the Class Members conferred benefits on Defendant. Namely, Plaintiffs paid Pay-to-Pay Fees to Defendant.

221.    Defendant's retention of these benefits is unjust because Defendant had no right to collect the Pay-to-Pay Fees under the Uniform Mortgages or applicable law.

222.    Plaintiffs and the Class Members are entitled to restitution and Defendant is required to disgorge the benefits it unjustly obtained.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1.    An order certifying the proposed classes and appointing Plaintiffs and their counsel to represent them;

2.    Monetary and/or equitable relief in an amount to be determined at trial;

3.    Statutory damages, including treble damages;

35

4.      Punitive or exemplary damages;

5.      Interest;

6.      Attorneys' fees and costs of suit, including costs of notice, administration, and expert fees; and

7.      Such other legal or equitable relief, including injunctive or declaratory relief, as the Court may deem appropriate.

**<u>PLAINTIFFS DEMAND A TRIAL BY JURY OF ALL ISSUES SO TRIABLE.</u>**

Dated: December 16, 2022                                    Respectfully submitted,

                                                                        *   /s/ James L. Kauffman   *
                                                                        James L. Kauffman (No. 1020720)
                                                                        BAILEY & GLASSER LLP
                                                                        1055 Thomas Jefferson Street, NW, Suite 540Washington, DC 20007
                                                                        Telephone: (202) 463-2101
                                                                        Facsimile: (202) 463-2103
                                                                        jkauffman@baileyglasser.com


                                                                        Hassan A. Zavareei (No. 456161)
                                                                        Kristen G. Simplicio (No. 977556)
                                                                        TYCKO & ZAVAREEI LLP
                                                                        1828 L Street NW, Suite 1000
                                                                        Washington, D.C. 20036
                                                                        Phone: (202) 973-0900
                                                                        Fax: (202) 973-0950
                                                                        hzavareei@tzlegal.com
                                                                        ksimplicio@tzlegal.com

                                                                        ***Attorneys for Plaintiffs***

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on December 16, 2022, a copy of the foregoing was filed with the Clerk of the Court via the Court's CM/ECF system, which will automatically send email notification of such filing to the registered attorneys of record.

<u>*/s/ James L. Kauffman*</u>

*James L. Kauffman*