## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JACKERLY MCFADDEN, CELINDA LAKE, MARY MONTGOMERY, and LILLIAN NELSON, *On Behalf of Themselves and All Others Similarly Situated*,

        Plaintiffs,

v.

NATIONSTAR MORTGAGE LLC, d/b/a MR. COOPER,

        Defendant.

Case No. 1:20-cv-00166

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

Hassan A. Zavareei (DC Bar No. 456161)
Kristen Simplicio (DC Bar No. 977556)
TYCKO & ZAVAREEI LLP
2000 Pennsylvania Avenue NW, Suite 1000
Washington, DC 20007
Telephone: (304) 574-2727
E-mail: hzavareei@tzlegal.com
Email: ksimplicio@tzlegal.com

James L. Kauffman (DC Bar No. 1020720)
BAILEY & GLASSER LLP
1054 31st Street, Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Email: jkaffuman@baileyglasser.com

*Counsel for Plaintiffs*

Jason E. Manning (DC Bar No. 999870)
TROUTMAN PEPPER HAMILTON SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7564
Facsimile: (757) 687-1524
E-mail: jason.manning@troutman.com

*Counsel for Defendant*

## TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.    BACKGROUND ..................................................................................................3

III.   THE SETTLEMENT AGREEMENT ..................................................................4

     A.    The Proposed Class..................................................................................4

            1.    Monetary Benefits................................................................5

            2.    Injunctive Relief..................................................................6

     B.    Settlement Administrator and Administration Costs ...............................6

     C.    Class Member Release.............................................................................7

     D.    Proposed Plan of Notice..........................................................................8

     E.    Opt-Outs and Objections........................................................................10

     F.    Attorneys' Fees and Costs and Service Award......................................12

IV.    LEGAL STANDARD FOR PRELIMINARY APPROVAL ...........................13

     A.    The Settlement Provides an Exceptional Recovery for the Class.
          Thus, the Court Should Find That Approval of the Settlement is Very Likely
          And Direct That Notice Be Provided To Class Members Under Rule 23(E)(1). ..14

     B.    The Class Representatives and Class Counsel Have Vigorously
          Represented Both Classes Throughout This Litigation Resulting in a Fair and
          Adequate Settlement. .............................................................................14

     C.    The Settlement is the Result of Arm's-Length Negotiations.................15

     D.    The Settlement Relief Provided to Class Members is Exceptional Under the
          Circumstances ........................................................................................16

     E.    The Settlement Agreement Treats Class Members Equitably ...............19

     F.    The Plaintiffs and the Class Counsel Support the Settlement................19

     G.    The Court Should Approve the Proposed Notice Plan as the Notice and Notice
          Programs Will Provide Class Members the Best Notice Practicable Under the
          Circumstances ........................................................................................20

V.     CONCLUSION..................................................................................................21

# TABLE OF AUTHORITIES

## Cases

*Abraha v. Colonial Parking, Inc.*,
    2020 WL 4432250 (D.D.C. July 31, 2020) ................................................................ 19

*Blackman v. District of Columbia*,
    454 F. Supp. 2d 1 (D.D.C. 2006) ................................................................... 15, 16

*Cobell v. Salazar*,
    679 F.3d 909 (D.C. Cir. 2012) ...................................................................... 19

*Cohen v. Chilcott*,
    522 F.Supp.2d 105 (D.D.C. 2007) ................................................................. 20

*Eisen v. Carlisle and Jacquelin*,
    417 U.S. 156 (1974) ................................................................................ 20

*In re Domestic Airline Travel Antitrust Litig.*,
    378 F. Supp. 3d 10 (D.D.C. 2019) ............................................................ 14, 16

*Keepseagle v. Vilsack*,
    102 F. Supp. 3d 205 (D.D.C. 2015) .............................................................. 15

*Kinard v. E. Capitol Fam. Rental, L.P.*,
    331. F.R.D. 206 (D.D.C. 2019) ................................................................... 16

*Nat'l Veterans Legal Servs. Program v. United States*,
    235 F. Supp. 3d 32 (D.D.C. 2017) ............................................................... 15

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................................ 20

*Phillips v. Caliber Home Loans, Inc.*,
    Case No. 0:19-cv-2711, 2022 WL 832085 (D. Minn. Mar. 21, 2022) .................... 21

*Prince v. Aramark Corp.*,
    257 F. Supp. 3d 20 (D.D.C. 2017) ............................................................... 19

*Radosti v. Envision EMI, LLC*,
    717 F.Supp.2d 37 (D.D.C. 2010) ................................................................. 16

*Radosti v. Envision EMI, LLC*,
    760 F. Supp. 2d 73 (D.D.C. 2011) ............................................................... 19

*Ross v. Lockheed Martin Corp.*,
    267 F. Supp. 3d 174 (D.D.C. 2017) .............................................................. 13

*Stephens v. Farmers Rest. Grp.*,
    329 F.R.D. 476 (D.D.C. 2019) .................................................................... 14

*Trombley v. Nat'l City Bank*,
    759 F. Supp. 2d 20 (D.D.C. 2011) ............................................................... 16

*United States v. MTU Am. Inc.*,
  105 F. Supp. 3d 60 (D.D.C. 2015) ........................................................................... 14

**Statutes**

D.C. Code § 28-3905 ................................................................................................... 17

**Other Authorities**

*Manual for Complex Litig.* § 21.632 (4th ed. updated 2022) ........................................ 13

William B. Rubenstein, *Newberg on Class Actions* § 13:1 (5th ed. updated 2022) ....................... 13

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. 13, 14, 16, 20

Fed. R. Civ. P. 23, Advisory Committee Note, 2018 Amendments .............................................. 14

## I.   INTRODUCTION

Plaintiffs Jackerly McFadden, Celinda Lake, Mary Montgomery, and Lillian Nelson, individually and on behalf of the proposed Settlement Class,[1] seek preliminary approval of a proposed Settlement of claims against Defendant Nationstar Mortgage LLC, d/b/a Nationstar ("Nationstar"), together (the "Parties"). While there has been a large number of settlements against mortgage servicers over their practice of charging "convenience fees" or "Pay-to-Pay fees" to borrowers who pay their mortgage online or over the phone, the settlement reached here is one of the most generous to date.

The Settlement Agreement (the "SA"), if approved, will establish (a) a DC Class limited to borrowers on residential mortgage loans secured by properties located in the District of Columbia, estimated to be 5,767 separate Convenience Fees (the "DC Class"); and (b) Nationwide Class of borrowers on residential mortgage loans secured by properties in the United States (other than the District of Columbia) (the "Nationwide Class"), and will provide (c) injunctive relief from charges going forward.

First, the Parties' settlement agreement contains a total Class Cash Settlement Amount of $3,587,254 (the "Common Fund"), inclusive of all costs including class administration costs (which include the costs associated with CAFA notices), attorney fees and costs, and class representative service awards. The Settlement consists of three parts: (1) a "D.C. Component" of $1,441,750, which represents $250 for each of the 5,767 instances in which a D.C. Class Member paid a Fee that are known to Defendant at the time of settlement; (2) a "Nationwide Component" of $1,966,213, which represents 35% of the $5,617,750 in Fees known to Defendant to have been

---

[1] Unless otherwise specifically defined herein, all capitalized terms have the same meanings as those set forth in the parties' Settlement Agreement, attached as Exhibit 1 to the Declaration of Kristen Simplicio ("Simplicio Decl.").

paid by members of the Nationwide Class at the time of settlement; and (3) a "Residual Component" of $179,291 to be used to cover Administrative Costs and other court-approved attorneys' expenses. SA at § 5.1. While the amounts to be paid to the two groups of Class Members differ, the value that each group is receiving is at the higher range of comparable settlements (summarized in Appendix A), and exceeds the amounts that Nationstar paid in comparable settlements in the last several years.

Second, the Settlement includes valuable non-monetary injunctive relief. Nationstar ceased charging or collecting Convenience Fees to certain FDCPA borrowers in or around May 2018— and as of July 1, 2022, it ceased the collection of Convenience Fees from any borrower in the country, in part because of this lawsuit. In addition to that one-year period, and as a result of this Settlement, Nationstar agrees to refrain from the charging or collection of Convenience Fees from borrowers for a period of at least six additional months after entry of the Final Approval Order, which constitutes approximately two years of injunctive relief in total.

The proposed Settlement should be preliminarily approved. The settlement provides substantial monetary relief to the DC Class and Nationwide Classes, as well as significant injunctive relief stopping a major mortgage loan servicer from charging of Convenience Fees for approximately two years while continuing to offer free electronic payment services to borrowers. Indeed, the injunctive relief will save Settlement Class Members significant monetary expense as they pay their mortgages in the future. This relief was secured by experienced and informed counsel after nine months of settlement negotiations, including two mediations before an independent mediator. As such, the proposed Settlement warrants preliminary approval, as the terms are fair, reasonable, and adequate. Accordingly, Plaintiffs request that the Court (1) preliminarily approve the proposed Settlement, (2) certify the Settlement Class for settlement

purposes only, (3) appoint Jackerly McFadden, Celinda Lake, Mary Montgomery, and Lillian Nelson as Class Representatives, (4) appoint Hassan A. Zavareei and Kristen G. Simplicio of Tycko & Zavareei LLP, James L. Kauffman of Bailey Glasser LLP, as Class Counsel, and (5) appoint EAG Gulf Coast, LLC as the Settlement Administrator and order that Class Notice be distributed to the Settlement Class, and (6) schedule a Final Approval Hearing. Nationstar does not oppose the relief sought in this Motion.

## II.    BACKGROUND

To challenge Nationstar' practice of charging and collecting convenience fees from borrowers paying their monthly mortgage by phone or online, Plaintiffs commenced an action in the District of Columbia.  On January 22, 2020, Plaintiffs McFadden and Wilson initiated a class action lawsuit in the District Court of the District of Columbia. *See* ECF No. 1. Nationstar moved to dismiss the complaint on March 30, 2020. ECF No. 13. Plaintiffs opposed Nationstar's motion to dismiss on April 13, 2020 (ECF No. 15), and Nationstar filed its reply in support of its motion to dismiss on April 20, 2020. ECF No. 18. On July 30, 2021, Magistrate Judge Faruqui issued a report and recommendation denying Nationstar's motion to dismiss (ECF No. 42), which the Court adopted on March 31, 2022. ECF No. 51. Plaintiff Wilson passed away, ECF No. 59, and on December 16, 2022, Plaintiffs Lake, Montgomery, and Nelson joined the lawsuit, and along with McFadden, they filed the First Amended Complaint. *See* ECF No. 64.

On March 23, 2023, the parties mediated before Stephen J. Dalesio. SA at § 2.3. The mediation began at 9 AM (Eastern time) and continued for approximately 6 hours. In the months preceding this mediation, the parties had had numerous discussions and Nationstar undertook efforts to compile data on the class size and fees paid. Although this mediation did not resolve the claims in this case, the parties continued to negotiate over the next several months, exchanging

information, additional discovery, and legal argument. The parties again formally mediated Plaintiffs' claims before Stephen J. Dalesio on July 12, 2023 for another four hours, and in the days that followed, reached an agreement on all material terms. *Id.* Class Counsel entered the mediation fully informed of the merits of Settlement Class members' claims and were prepared to continue to litigate rather than accept a settlement that was not in the Plaintiffs' and Settlement Class's best interests. After these hard-fought negotiations, where both sides made presentations to the mediator and all attendees, the parties reached an agreement on all material terms, including the amount of the Common Fund. Class Counsel prepared the first draft of the Settlement Agreement, and the parties then negotiated the precise terms and language of the Agreement now before the Court.

## III.   THE SETTLEMENT AGREEMENT

### A.   The Proposed Class

The Settlement Agreement contemplates certification of the following Settlement Class for settlement purposes only:

> (a) The D.C. Class is defined as all persons (1) with a residential mortgage loan securing a property in the District of Columbia, (2) serviced or sub-serviced by Nationstar, (3) who paid a fee to Nationstar for making a loan payment by telephone or interactive voice recognition (IVR) during the applicable statute of limitations. The D.C. Class consists of borrowers on 780 accounts, who in 5,767 instances paid convenience fees to make payment by telephone.
>
> (b) The Nationwide Class is defined to include all borrowers on residential mortgage loans secured by properties in the United States (other than the District of Columbia) which were:
>
> > (i) 30 days or more delinquent on loan payment obligations when Mr. Cooper acquired servicing rights;
> >
> > (ii) 30 days or more delinquent on loan payment obligations when any of Mr. Cooper's predecessors in interest acquired servicing rights; and/or

(iii) insured by the Federal Housing Administration.[2]

Simplicio Decl. Ex. 1; Settlement Agreement at §4.1.

### 1. __Monetary Benefits__

The Settlement Agreement provides monetary benefits in the form of a Common Fund of $3,587,254, from which shall be paid (1) all payments to Settlement Class members, (2) all Administrative Costs, (3) any taxes owed by the Gross Settlement Amount (but not any taxes owed by any individual Class Counsel, Plaintiffs, or Settlement Class Members), (4) any Fee and Expense Award approved by the Court, and (5) any Service Awards to the Class Representatives approved by the Court. *See* SA at § 5. The Settlement consists of three parts: (1) a "D.C. Component" of $1,441,750, which represents $250 for each of the 5,767 instances in which a D.C. Class Member paid a Fee that are known to Defendant at the time of settlement; (2) a "Nationwide Component" of $1,966,213, which represents 35% of the $5,617,750 in Fees known to Defendant to have been paid by members of the Nationwide Class at the time of settlement; and (3) a "Residual Component" of $179,291 to be used to cover Administrative Costs and other court-approved attorneys' expenses. *Id.* at § 5.1. After payment of costs of administration and notice and any fees, expenses, and service award authorized by the Court, the Net Common Fund will be distributed to Settlement Class Members as described below. *Id.* at § 7.

Settlement Class Members do not have to submit claims or take any other affirmative step to receive benefits under the Settlement. Instead, Nationstar will provide the Settlement Administrator with a Settlement Class Member List that includes the names, last known mailing addresses, the last known email addresses of the Settlement Class Members (if the Court's

---

[2] The Settlement Class excludes deceased class members, class members in bankruptcy, and class members included in the settlements reached in the Contreras Action or the Vannest Action.

Preliminary Approval Order provides for email notice), and the dates and amounts of each Convenience Fee paid during the Class Period. *Id.* at § 10.1

### 2. <u>Injunctive Relief</u>

In addition to the monetary relief, the Settlement Agreement also includes important and valuable injunctive relief. Nationstar ceased charging or collecting Convenience Fees to certain FDCPA borrowers in or around May 2018, and as of July 1, 2022, Nationstar ceased the collection of Convenience Fees from any borrower in the country, in part because of this lawsuit. In addition to that one-year period, and as a result of this Settlement, Nationstar agrees to refrain from the charging or collection of Convenience Fees from borrowers for a period of at least six additional months after entry of the Final Approval Order, which constitutes approximately two years of injunctive relief in total.

As set forth in Appendix A, this settlement achieves a remarkable result. While most of the cases listed in Appendix A were resolved by Class Counsel involve similar results of around 30-35% of the amount of fees collected and 2-3 years of changed practices, and have been approved by courts around the country, here, we have secured approximately 35% of the amount of Fees paid by the Nationwide Class, as well as $250 per Fee paid by the members of the D.C. Class. The relief here stands in stark contrast to other cases, such as *McWhorter v. Ocwen Loan Servicing LLC,* No. 2:15-cv-01831 (N.D. Ala.) and *Morris v. PHH Mortg. Co.*, No. 0:20-cv-60633 (S.D. Fla.), where the settlements included amendments to class members' notes, permitting the fees to be charged going forward. *See* App'x A.

### B. Settlement Administrator and Administration Costs

Subject to Court approval, the Settlement Administrator is EAG Gulf Coast, LLC ("EAG"), a leading class action administration firm in the United States. Simplicio Decl. ¶ 32. While the

parties reviewed proposals from two prominent settlement administrators before deciding on EAG based on overall cost and value to the Settlement Class, Class Counsel's decision-making was informed by their experience consulting numerous prominent settlement administrators while managing other similar settlements against other mortgage servicers. *Id.* The proposals included proposals for email and postcard notice, as well as a long form notice to be available on a settlement website, along with a toll-free number for Settlement Class Members to call for information about the Settlement. *Id.* EAG is able to offer the option for Settlement Class Members to elect to receive their distributions via digital payment as well as paper check. *Id.* This option will reduce the cost of administration and increase the speed at which Settlement Class members can be paid. *Id.*

All Administrative Costs shall be paid from the Gross Common Fund. SA at § 5.1(c). Currently, the costs of notice are estimated to be approximately $150,000, though this amount may increase or decrease, depending on things like the rate of digital payment election and notice bouncebacks.  Simplicio Decl. ¶ 33. The Settlement Administrator will oversee the provision of Class Notice to the Settlement Class Members and administration of the Common Fund, and handle the CAFA Notices

### C.    Class Member Release

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released the Released Entities from all claims that were or could have been asserted by the Class Representatives or Settlement Class Members arising out of, based upon, or related to the charging, collection, or attempted collection of Convenience Fees, up until the Effective Date, which the Settlement Class Member ever had or may discover in the future. SA at

7

§ 17.1-17.4. The release is appropriately tailored, in that it covers claims arising from the identical factual predicate to the claims asserted in the operative Complaint.

### D.    Proposed Plan of Notice

The parties' proposed Notice Plan is designed to reach as many Settlement Class Members as possible and is the best notice practicable under the circumstances of the instant case. Simplicio Decl. ¶¶ 31, 34. Within 14 days or such other time as provided in the Preliminary Approval Order, Nationstar, at its own expense, will compile the Settlement Class Member List and provide it to the Settlement Administrator and Class Counsel. SA at § 8.4. As soon as practicable but starting no later than thirty (30) days after receipt of the Settlement Class Member List, the Settlement Administrator shall cause the Email Notice to be sent to all Settlement Class Members for whom the Settlement Class Member List includes an email address. *Id.*

As soon as practicable but starting no later than twenty-one (21) days of the entry of an order granting preliminary approval of the Settlement, the Settlement Administrator shall cause the Postcard Notice to be sent to all Settlement Class Members for whom no email address appears on the Settlement Class Members List. *Id.* at § 10.1. If the Postcard Notice is returned with a forwarding address, the Settlement Administrator shall promptly remail the Postcard Notice to that forwarding address. *Id.* If the Postcard Notice is returned undeliverable without a forwarding address, the Administrator shall perform a National Change of Address Registry and LexisNexis/Death Records Search, and the Settlement Administrator shall remail such Postcard Notices upon discovery of a valid mailing address for the Settlement Class Member. *Id.* The Settlement Administrator shall also mail or email the Long Form Notice to any Settlement Class member who requests a copy. *Id.* at § 3.22.

Prior to the date on which the Settlement Administrator mails the Postcard Notice, the Settlement Administrator shall establish the Settlement Website. *Id.*  Class Counsel will ensure that the Settlement Website shall contain: (1) the Long Form Notice in downloadable PDF format in both English and Spanish; (2) the Long Form Notice in HTML format with a clickable table of contents, described as answers to frequently asked questions; (3) contact information for the Settlement Administrator, and addresses and telephone numbers for Class Counsel and Nationstar' Counsel; (4) the Settlement Agreement; (5) the signed Preliminary Approval Order and publicly filed motion papers and declarations in support thereof; (6) the operative complaints; and (7) when they become available, the Fee and Service Award Application, the motion for entry of the Final Approval Order, and any motion papers and declarations filed publicly in support thereof. The Settlement Website shall remain accessible until 30 days after the Settlement Administrator has completed its obligations under the Settlement Agreement.

Class Counsel has also asked that the Settlement Administrator to establish a 24-hour toll-free telephone line with information about frequently asked questions about the Settlement. The number shall be included in the Class Notice and posted on the Settlement Website.

The Settlement Administrator will also ensure that the necessary notice is provided to any state and federal officers as required by the Class Action Fairness Act, 28 U.S.C. § 1715. *Id.*

The Notices will also apprise the Settlement Class Members of their right to receive their Settlement Payment via an electronic payment method. *Id.* at § 10.2. To incentivize the election of the electronic payment method, thereby reducing administrative costs associated with uncashed checks and promoting efficiency in the claims administration process, the Notices will advise that any Settlement Class Member who elects electronic payment will be eligible to receive a secondary distribution in the event funds remain in the Common Fund after payment of all attorneys' fees

and expenses, administrative costs, incentive awards, and the clearance/expiration of any payments and checks associated with the Settlement Payments. *Id.* In consultation with Class Counsel, the Settlement Administrator shall undertake reasonable, cost-effective efforts to provide additional reminders to encourage the election of electronic payment options.

E.      **Opt-Outs and Objections**

The Class Notice will advise Settlement Class Members of their right to opt out of the Settlement or to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs, and expenses and/or Service Award to the Class Representative, and of the associated deadlines. SA at § 10.3.

Settlement Class Members who choose to opt out must submit a written request for exclusion. *Id.* The Notices shall also apprise the Settlement Class Member of his/her right to opt out of the Settlement Class, of his/her right to object to the Class Settlement, of the fact that any objections or opt outs must be sent to the Administrator and postmarked no later than twenty-one (21) days prior to the Final Approval Hearing, and that any failure to object or to opt out in accordance with applicable deadlines for opt outs and objections constitutes a knowing and voluntary waiver of any right to opt out of the Settlement Class or to appeal from the Final Approval Order. *Id.* at § 10.3. Any request for exclusion must include the name of the case, and the name, address, phone number, and signature of the borrower or borrowers seeking exclusion and must contain language clearly indicating a request for exclusion. *Id.* If there are co-borrowers on the loan all co-borrowers must sign the request for exclusion. *Id.* Any Settlement Class Member who does not submit a request to opt out in accordance with the deadlines and other requirements will be bound by the Settlement absent a court order to the contrary. *Id.*

Settlement Class Members who wish to object to the Settlement must mail a written objection, postmarked on or before twenty-one (21) days prior to the Final Approval Hearing, to the Settlement Administrator. *Id.* at § 10.3. All objections must be in writing and personally signed by the Settlement Class Member and include: (1) the objector's name, address, email address if any, and telephone number; (2) the case caption; (3) the specific factual basis and legal grounds for the objection; (4) a list of all cases in which the objector has objected to a class action settlement, including case name, court, and docket number; (5) if the objector is represented by counsel, a list of all cases in which the objector's counsel has represented an objector in objecting to a class action settlement, case name, court, and docket number; (6) a statement indicating whether the Settlement Class Member and/or their lawyer(s) intend to appear at the Final Fairness Hearing; (7) a list of witnesses, if any, that the objecting Settlement Class Member intends to call; and (8) whether the objection relates only to the objector, or to a subset of the Settlement Class, or to the entire Settlement Class.

Any Settlement Class Member who has not submitted a timely request for exclusion may appear at the Final Fairness Hearing either in person or through an attorney. However, if the Settlement Class Member intends to appear through counsel, the Settlement Class Member must have submitted a written objection pursuant to this section. Any lawyer who intends to appear at the Final Fairness Hearing also must enter a written Notice of Appearance of Counsel with the Clerk of the Court no later than the Response Deadline. Any Settlement Class Member who intends to request the Court to allow him or her to call witnesses at the Final Fairness Hearing must make such a request in a written brief, which contains a list of such witnesses and a summary of their requested testimony.

No person who has opted out of the Settlement may object to it. Any Settlement Class Member who does not provide a timely written objection or who does not make a record of his or her objection at the Final Approval Hearing shall be deemed to have waived any objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement, Fee and Service Awards Application, or the Fee and Expense Award or Service Awards.

### F.      Attorneys' Fees and Costs and Service Award

The Settlement Agreement contemplates Class Counsel petitioning the Court for attorneys' fees, as well as documented, customary costs incurred by Class Counsel. SA at § 15.1. The Settlement Agreement provides that Class Counsel may seek attorneys' fees in an amount not to exceed one third (33.33%) of the Gross Common Fund as well as reasonable expenses incurred in the litigation subject to Court approval. *Id.* § 7.7. Any approved Fee and Expense Award will be paid from the Gross Common Fund prior to distribution to the Settlement Class Members. *Id.* at § 7.1.

On or before sixty (60) days prior to the Final Approval Hearing, Class Counsel will file a petition for attorneys' fees and costs explaining why the requested Fee and Expense Award is reasonable. Class Counsel will provide lodestar information sufficient for the Court to perform a lodestar cross-check should the Court choose to exercise its discretion to perform one. Nationstar has not agreed to any award of attorneys' fees or expenses and may respond to the Fee and Service Award Application as it sees fit.

Class Counsel may also petition the Court for up to $7,000 each for Plaintiffs Jackerly McFadden, Celinda Lake, Mary Montgomery, and Lillian Nelson as Service Awards as

compensation for their time and effort in the Action. *Id.* at § 7.8. Any approved awards will be deducted from the Gross Common Fund prior to distribution to the Settlement Class Members. *Id.* at § 7.1. Plaintiffs will submit declarations detailing their participation in the Action along with the Fee and Service Award Application.

## IV.   LEGAL STANDARD FOR PRELIMINARY APPROVAL

Rule 23(e) requires court approval of a class-action settlement. This entails a "three-stage process, involving two separate hearings." *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 189–90 (D.D.C. 2017). Before the Court may approve a class-action settlement, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(e)(2), in turn, requires that the settlement be "fair, reasonable, and adequate." *Id.*

Under the first stage, the Court "make[s] a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms," *Ross*, 267 F. Supp. 3d at 194—often referred to as preliminary approval. *See Manual for Complex Litig.* § 21.632 (4th ed. updated 2022).  If the Court preliminarily approves the settlement, the next stage is to direct that notice be "sent to the class describing the terms of the proposed settlement and explaining class members' options with respect to the settlement agreement . . . including the right to object to the proposed settlement." *Ross*, 267 F. Supp. 3d at 190; *see* William B. Rubenstein, *Newberg on Class Actions* § 13:1 (5th ed. updated 2022). The third and final stage involves a fairness hearing during which the Court examines the settlement and any objections to it, followed by a decision on whether to approve the settlement. *Id.*

A. **The Settlement Provides an Exceptional Recovery for the Class. Thus, the Court Should Find That Approval of the Settlement is Very Likely And Direct That Notice Be Provided To Class Members Under Rule 23(E)(1).**

Whether to grant preliminarily approval a proposed class action settlement "lies within the sound discretion of the district court." *Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476, 482 (D.D.C. 2019). That discretion, however, "is constrained by the principle of preference favoring and encouraging settlement in appropriate cases." *In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 16 (D.D.C. 2019); *see also id.* ("Class action settlements are favored as a matter of public policy."); *United States v. MTU Am. Inc.*, 105 F. Supp. 3d 60, 63 (D.D.C. 2015) ("Settlement is highly favored.").

The criteria guiding the preliminary-approval determination are supplied by Rule 23(e)(2), which requires consideration of whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate"; and "(D) the proposal treats class members equitably relative to each other." In considering these factors, the Court will also look to "the opinion of experienced counsel." *Stephens*, 329 F.R.D. at 486; *see also* Fed. R. Civ. P. 23, Advisory Committee Note, 2018 Amendments (observing that the Rule's enumerated factors were not intended to "to displace any factor" rooted in the case law). Each of these factors strongly supports preliminary approval here.

B. **The Class Representatives and Class Counsel Have Vigorously Represented Both Classes Throughout This Litigation Resulting in a Fair and Adequate Settlement.**

The first factor examines the adequacy of representation.  The adequacy requirement is satisfied when the class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a) (4). Adequacy requires that the named plaintiffs "must not have antagonistic or conflicting interests with the unnamed members of the class" and "must appear able to vigorously prosecute the interests of the class through qualified counsel." *Nat'l Veterans*

*Legal Servs. Program v. United States*, 235 F. Supp. 3d 32, 41 (D.D.C. 2017). Only conflicts that are "fundamental to the suit and . . . go to the heart of the litigation" prevent named plaintiffs from satisfying the adequacy requirement. *Keepseagle v. Vilsack*, 102 F. Supp. 3d 205, 216 (D.D.C. 2015). Further, "conflicts will not defeat the adequacy requirement if they are speculative or hypothetical." *Nat'l Veterans Legal Servs. Program*, 235 F. Supp. 3d at 41.

Here, the Plaintiffs have no conflicts of interest with other class members, and they and their counsel will and have vigorously prosecuted this case on behalf of the class. *See* Simplicio Decl. ¶¶ 4-14; 24-29 (describing Class Counsel's extensive experience litigating over proposed class actions against mortgage servicers). As previously noted, Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases, and mortgage fee cases in particular. Simplicio Decl. ¶¶ 28-29. Given their understanding of the intricacies of consumer finance and mortgage servicing, Class Counsel are qualified, experienced, and able to conduct this litigation. Adequacy is satisfied here.

### C.   The Settlement is the Result of Arm's-Length Negotiations.

The next factor examines the negotiation process. It asks whether the negotiations were made at arm's length or whether there is instead some indication that the settlement could have been the product of collusion between the parties.

Here, "both sides negotiated at arms-length and in good faith," and "the interests of the class members were adequately and zealously represented in the negotiations." *Blackman v. District of Columbia*, 454 F. Supp. 2d 1, 9 (D.D.C. 2006) (Friedman, J.). The plaintiffs were represented by class counsel, while lawyers for Nationstar were represented by Troutman Pepper Hamilton Sanders LLP. "Although the mediation occurred before formal fact discovery began," there had been "significant informal discovery," which ensured that "the parties were well-

positioned to mediate their claims." *Radosti v. Envision EMI, LLC*, 717 F.Supp.2d 37, 56 (D.D.C. 2010); *see also Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 26 (D.D.C. 2011) (explaining that "formal discovery is not . . . required even for final approval of a proposed settlement" if "significant factual investigation [had been] made prior to negotiating a settlement"). "[T]he parties reached a settlement only after a lengthy mediation session that was presided over by an experienced mediator," *Radosti*, 717 F.Supp.2d at 56. Where a settlement is "reached in arm's length negotiations between experienced, capable counsel after meaningful discovery," there is a "presumption of fairness, adequacy, and reasonableness." *Kinard v. E. Capitol Fam. Rental, L.P.*, 331. F.R.D. 206, 215 (D.D.C. 2019).

### D.   The Settlement Relief Provided to Class Members is Exceptional Under the Circumstances.

The third factor examines "how the relief secured by the settlement compares to the class members' likely recovery had the case gone to trial." *Blackman*, 454 F. Supp. 2d at 9–10. This factor focuses in particular on "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2); *see also In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d at 16.

The relief provided to class members is exceptional. The settlement provides substantial monetary relief to the DC Class and Nationwide Class, as well as significant injunctive relief stopping a major mortgage loan servicer from charging of Convenience Fees for approximately two years while continuing to offer free electronic payment services to borrowers. Indeed, the injunctive relief will save Settlement Class Members significant monetary expense as they pay

their mortgages in the future.

This would be an excellent outcome for the class even if it were achieved after trial, but it is especially remarkable given the significant costs, risks, and delays posed by pursuing further litigation in the federal court system. As noted above, the Common Fund of $3,587,214 consists of three parts, representing (1) $250 for each of the 5,767 instances in which a D.C. Class Member paid a Fee (the D.C. Component of $1,441,750); (2) 35% of the $5,617,750 in Fees (the Nationwide Component of $1,966,213); and (3) $179,291 to cover Administrative Costs and other court-approved attorneys' expenses (the Residual Component). Without a settlement, the case would be headed for years of litigation and likely appeal, with no guarantee that the class would wind up with any recovery, not to mention the inherent benefits provided by avoiding protracted and costly litigation and time-and-resource-intensive discovery into the remaining issues.

The difference in compensation to the two Settlement Classes is fair and reasonable, and based on informed decisions about the nature of the claims asserted, as well as an analysis of comparable settlements. The DC Class asserts claims under the DC Consumer Protection Procedures Act ("CPPA"), which authorizes statutory damages of $1,500 per violation. *See* D.C. Code § 28-3905(k)(1)(A)(i). In similar settlements against mortgage servicers in West Virginia, which has a debt collection statute authoring similar statutory damages,[3] borrowers have received $216 or $220 per violation. *See* Appendix A, Chart 2. In its own settlement of claims involving a West Virginia Class, Nationstar paid class members $220 per violation, less than what they have agreed to pay DC Class members. *See id.,* Row 17.

The Nationwide Class is also treated fairly. Those Class Members have claims under the

---

[3] The West Virginia Consumer Credit and Protection Act provides for a uniform $1000 per violation penalty. W. Va. Code § 46A-5-101(1).

FDCPA and for breach of contract; in similar settlements against mortgage servicers for those claims, borrowers have tended to receive between 30-35% of fees paid, with a few higher or lower than that range. *See id.*, Chart 1. Indeed, Nationstar's agreement here to set aside 35% of fees paid is more than what it agreed to pay in other comparable settlements. For example, Nationstar settled a similar lawsuit in 2018 involving FDCPA borrowers at a rate of 32% of fees paid, and another involving borrowers in California, Illinois, and Florida in 2022 at a rate of 22.5% fees paid. S*ee id.*, Rows 16 and 17.  And while class members in a few settlements received more than 35%, these settlements by and large tended to be smaller, single state settlements, and higher percentages are needed to account for higher per-person costs of administration that comes with smaller settlements. *See id.*, Rows 8 and 10.  Notably, here, the amounts allotted in each of the components are after the costs of administration, not before.

Thus, both Classes are not only receiving settlements at the high end of the range of comparable settlements, but they are receiving more than what Nationstar itself has paid in comparable settlements, evidencing that neither Class was shortchanged as a result of the other Class's settlement.

The settlement's provision for attorneys' fees and service awards is also reasonable. The settlement provides that the total amount requested in attorneys' fees and expenses will be no more than 33.33% of the aggregate amount of the Common Fund. SA at § 7.7. The settlement further provides that the plaintiffs will request service awards of no more than $7,000 per class representative. *Id.* at § 7.8.

This Court will have the opportunity to assess the reasonableness of any requested award once it is made. For now, it is enough to note that these provisions ensure that class counsel will request an amount in fees that is reasonable relative to the relief they obtained for the Class.

E.      **The Settlement Agreement Treats Class Members Equitably.**

The fourth factor examines whether the settlement treats class members equitably. This settlement does. It reimburses the DC class on a per transaction basis and Nationwide Class members as a percentage of the net amount collected.  This formula for calculating payments is reasonable under the circumstances of this case.

In addition, the settlement is equitable in allowing the class representatives to seek service awards of up to $7,000, while recognizing that this Court has discretion to award a smaller amount. *See Cobell v. Salazar*, 679 F.3d 909, 922 (D.C. Cir. 2012); *Abraha v. Colonial Parking, Inc.*, 2020 WL 4432250, at *6 (D.D.C. July 31, 2020) (preliminarily approving settlement where "all parties will receive payments according to the same distribution plan and formulas, except for a relatively small additional payment" of $15,000 per named plaintiff "to compensate them for their time and effort in this litigation"). Service awards "are not uncommon in common-fund-type class actions and are used to compensate plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 79 (D.D.C. 2011).

F.      **The Plaintiffs and the Class Counsel Support the Settlement.**

The final relevant factor is not enumerated in the text of Rule 23, but it is well-settled in the case law. Under this Court's cases, "the opinion of experienced and informed counsel should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *Prince v. Aramark Corp.*, 257 F. Supp. 3d 20, 26 (D.D.C. 2017). Counsel for both parties "are clearly of the opinion that the settlement in this action is fair, adequate, and

reasonable," which only further confirms its reasonableness. *Cohen v. Chilcott*, 522 F.Supp.2d 105, 121 (D.D.C. 2007).

**G.    The Court Should Approve the Proposed Notice Plan as the Notice and Notice Programs Will Provide Class Members the Best Notice Practicable Under the Circumstances.**

The parties' proposed notice plan is formulated to conform with the procedural and substantive requirements of Rule 23. Due process under Rule 23 requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175-76 (1974) ("[I]ndividual notice must be provided to those class members who are identifiable through reasonable effort.").

The proposed Notice meets these requirements. It describes the lawsuit in plain English, including the key terms of the settlement, the procedures for objecting to it, and the date of the fairness hearing. SA at § 10. The Notice will also inform them of their right to opt out and the procedures through which they may exercise that right. *Id.* Further, the notices will be distributed in a way that is designed to reach all class members: email notice to all class members for whom the Nationstar has an email address on file, and postcard notice to all class members for whom Nationstar does not have an email address or for whom email delivery was unsuccessful. *Id.* at § 10.1. Relevant case documents will also be available on the settlement website. *Id.* at 3.3 The Class Notice is comprised of direct notice in the form of Email Notice and Postcard Notice. In addition, the Settlement Administrator will establish the Settlement Website, where the Long Form Notice will be available, along with important case documents. And a toll-free telephone number will be available to Settlement Class Members with questions. The operative notice plan is the best notice

practicable and is reasonably designed to reach the Settlement Class Members. *See* Simplicio Decl. ¶¶ 31, 34. And the Notice Plan will be overseen by EAG, a reputable settlement administrator.

Class Counsel have overseen several other settlements against mortgage loan servicers for similar practices for which email notice was used and final approval granted. *See*, *e.g.*, *Phillips v. Caliber Home Loans, Inc.*, Case No. 0:19-cv-2711, 2022 WL 832085, at *5 (D. Minn. Mar. 21, 2022).

Here, contact information will initially be provided by Nationstar, which, as a mortgage servicer regularly issuing statements to class members, is highly likely to have the most accurate contact information. When combined with a process to confirm addresses through NCOA before sending notice and subsequent skip tracing in the unlikely instance that any notice is returned as undeliverable, the notice program should cause nearly every class member to receive actual notice.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs Jackerly McFadden, Celinda Lake, Mary Montgomery, and Lillian Nelson request that the Court preliminarily approve the Settlement, enter the Preliminary Approval Order, appoint them as Class Representatives, appoint Tycko & Zavareei LLP and Bailey & Glasser LLP as Class Counsel, direct that Notice be distributed to the Settlement Class, and schedule a Fairness Hearing.

Dated: September 28, 2023                                         Respectfully submitted,

*/s/ Kristen G. Simplicio*
Hassan A. Zavareei
Kristen G. Simplicio
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Ave NW, Suite 1000
Washington, D.C. 20006
Telephone: 202-973-0900
Facsimile: 202-973-0950
hzavareei@tzlegal.com

ksimplicio@tzlegal.com

James L. Kauffman
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street, NW
Washington, D.C. 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
jkauffman@baileyglasser.com

*Attorneys for Plaintiffs*