## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JACKERLY MCFADDEN, CELINDA LAKE, MARY MONTGOMERY, and LILLIAN NELSON**, *on behalf of themselves and all others similarly situated*, | **Case No. 1:20-cv-00166** |
| Plaintiffs, | |
| v. | |
| **NATIONSTAR MORTGAGE LLC**, d/b/a MR. COOPER, | |
| Defendant. | |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**PLEASE TAKE NOTICE** that on March 8, 2024 at 1:00PM, at the United States District Court for the District of Columbia located at 333 Constitution Avenue N.W., Washington, D.C. 20001, before the Honorable Emmet G. Sullivan, Plaintiffs Jackerly McFadden, Celinda Lake, Mary Montgomery, and Lillian Nelson, respectfully move this court to finally approve the Class Action Settlement which this Court preliminarily approved by Order of November 8, 2023 (ECF No. 76).

Dated: February 7, 2024

Respectfully submitted,

/s/ James L. Kauffman
James L. Kauffman
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street, NW
Washington, D.C. 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
jkauffman@baileyglasser.com

Hassan A. Zavareei
Kristen G. Simplicio
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: 202-973-0900
Facsimile: 202-973-0950
hzavareei@tzlegal.com
ksimplicio@tzlegal.com
drasinariu@tzlegal.com

*Attorneys for Plaintiffs*

# <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................... 3

    A.    Factual and procedural background ........................................................ 3

    B.    The Settlement Agreement ...................................................................... 4

        1.    The Settlement Class.................................................................. 4

        2.    Monetary Benefits and Direct Payments ................................... 5

        3.    Injunctive Relief........................................................................ 6

        4.    Settlement Administrator and Administration Costs.................. 7

        5.    Class Member Release ............................................................... 7

        6.    Notice to Settlement Class and request for exclusion................ 8

III.  ARGUMENT ........................................................................................................ 9

    A.    Because the settlement provides an exceptional recovery for the class, the Court should approve the settlement.................................................. 9

    B.    The class representatives and class counsel have vigorously represented the class throughout this litigation. .......................................................... 10

    C.    The Settlement Is the Result of Arm's-Length Negotiations. ................. 11

    D.    The Settlement Relief Provided to Class Members Is Exceptional Under the Circumstances. ................................................................................. 12

    E.    The Settlement Agreement Treats Class Members Equitably................. 14

    F.    The Plaintiffs and Class Counsel Support The Settlement. .................... 14

    G.    The notice and notice programs provided class members with the best notice practicable under the circumstances. ................................................... 15

IV.   CONCLUSION................................................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abraha v. Colonial Parking, Inc.*,
    2020 WL 4432250 (D.D.C. July 31, 2020)...............................................................14

*Banks v. Booth*,
    2022 WL 1091212 (D.D.C. Apr. 12, 2022) ...............................................................10

*Blackman v. Dist. of Columbia*,
    454 F. Supp. 2d 1 (D.D.C. 2006) ............................................................................12

*Ciapessoni v. United States*,
    145 Fed. Cl. 685 (2019) .......................................................................................9, 10

*Cobell v. Salazar*,
    679 F.3d 909 (D.C. Cir. 2012) ................................................................................14

*Cohen v. Chilcott*,
    522 F.Supp.2d 105 (D.D.C. 2007) ..........................................................................15

*In re Domestic Airline Travel Antitrust Litig.*,
    378 F. Supp. 3d 10 (D.D.C. 2019) .......................................................................9, 12

*Eisen v. Carlisle and Jacquelin*,
    417 U.S. 156 (1974)................................................................................................15

*Jones v. Chopra*,
    No. 18-2132, 2023 WL 6037295 (D.D.C. Sept. 15, 2023) .......................................9

*Keepseagle v. Vilsack*,
    102 F. Supp. 3d 205 (D.D.C. 2015) ........................................................................11

*McWhorter v. Ocwen Loan Servicing LLC*,
    No. 2:15-cv-01831 (N.D. Ala.)..................................................................................7

*Morris v. PHH Mortg. Co.*,
    No. 0:20-cv-60633 (S.D. Fla.) ..................................................................................7

*Nat'l Veterans Legal Servs. Program v. United States*,
    235 F. Supp. 3d 32 (D.D.C. 2017) ..........................................................................11

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)................................................................................................15

*Phillips v. Caliber Home Loans, Inc.*,
  Case No. 0:19-cv-2711, 2022 WL 832085 (D. Minn. Mar. 21, 2022) ....................................16

*Prince v. Aramark Corp.*,
  257 F. Supp. 3d 20 (D.D.C. 2017) ...........................................................................................15

*Radosti v. Envision EMI, LLC*,
  760 F. Supp. 2d 73 (D.D.C. 2011) ...........................................................................................14

*Rogers v. Lumina Solar, Inc.*,
  2020 WL 3402360 (D.D.C. June 19, 2020)..................................................................................9

*Ross v. Lockheed Martin Corp.*,
  267 F. Supp. 3d 174 (D.D.C. 2017) .............................................................................................9

**Statutes**

15 U.S.C. § 1692, *et seq.*........................................................................................................2, 6, 13

D.C. Code § 28-3905(k)(1)(A)(i).....................................................................................................13

W. Va. Code § 46A-5-101(1) ..........................................................................................................13

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................10, 14, 15

Fed. R. Civ. P. 23(a)(4) .....................................................................................................................11

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................................................................15

Fed. R. Civ. P. 23(e) ...........................................................................................................................9

Fed. R. Civ. P. 23(e)(1)(B) .................................................................................................................9

Fed. R. Civ. P. 23(e)(2)..............................................................................................................9, 10, 12

Fed. R. Civ. P. 23(e)(3).....................................................................................................................12

I.    **INTRODUCTION**

Plaintiffs ask the Court to grant final approval of this class action settlement. Since the Court granted preliminary approval on November 8, 2023, the claim administrator has carried out the Court-approved notice program, sending individualized notice to 72,555 class members. The reception so far has been universally positive; as of this filing, the administrator has received zero objections to the settlement and one exclusion request. EAG Decl. ¶¶ 18, 19.[1]

As Plaintiffs explained in their preliminary approval motion, while there have been a large number of settlements against mortgage servicers over their practice of charging "convenience fees" or "Pay-to-Pay fees" on borrowers who pay their mortgage online or over the phone, the settlement reached here is one of the most notable to date.

The Settlement Agreement (the "SA"), if finally approved, will establish (a) DC Class is limited to borrowers on residential mortgage loans on properties located in the District of Columbia, estimated to be 5,767 separate Convenience Fees (the "DC Class"); and (b) Nationwide Class for borrowers on residential mortgage loans on properties in the United States (other than the District of Columbia) (the "Nationwide Class"), and will provide (c) injunctive relief from charges going forward.

First, the Parties' settlement agreement contains a total Class Cash Settlement Amount of $3,587,214 (the "Common Fund"), inclusive of all costs including class administration costs (including CAFA notices), attorney fees and costs, and class representative service awards. The Settlement consists of three parts: (1) a "D.C. Component" of $1,441,750, which represents $250 for each of the 5,767 instances in which a D.C. Class Member paid a Fee that are known to

---

[1] The Court-appointed Settlement Administrator is EAG Gulf Coast. As the Declarant Administrator attests in his declaration, "as of May 21, 2023, the Directors & employees of Postlethwaite & Netterville, APAC (P&N) joined EisnerAmper as EAG Gulf Coast, LLC. Where P&N is named as an entity, EAG Gulf Coast, LLC employees will service work contracted with P&N."

Defendant at the time of settlement; (2) a "Nationwide Component" of $1,966,213, which represents 35% of the $5,617,750 in Fees known to Defendant to have been paid by members of the Nationwide Class at the time of settlement; and (3) a "Residual Component" of $179,291 to be used to cover Administrative Costs and other court-approved attorneys' expenses. SA at § 5.1. While the amounts to be paid to the two groups of Class Members differ, the value that each group is receiving is at the higher range of comparable settlements, and exceeds the amounts that Nationstar paid in comparable settlements in the last several years.

Second, the Settlement includes valuable non-monetary injunctive relief. Nationstar ceased charging or collecting Convenience Fees to certain FDCPA borrowers in or around May 2018— and as of July 1, 2022, it ceased the collection of Convenience Fees from any borrower in the country, in part because of this lawsuit. In addition to that one-year period, and as a result of this Settlement, Nationstar agrees to refrain from the charging or collection of Convenience Fees from borrowers for a period of at six additional months after entry of the Final Approval Order, which constitutes approximately two years of injunctive relief in total.

The proposed Settlement should be finally approved. The settlement provides substantial monetary relief to the DC Class and Nationwide Classes, as well as significant injunctive relief stopping a major mortgage loan servicer from charging of Convenience Fees for approximately two years while continuing to offer free electronic payment services to borrowers. Indeed, the injunctive relief will save Settlement Class Members significant monetary expense as they pay their mortgages in the future. This relief was secured by experienced and informed counsel after nine months of settlement negotiations, including two mediations before an independent mediator.

This Court has already found that, "[a]fter a preliminary review, the Settlement appears to be fair reasonable, and adequate" because it "(a) resulted from arm's-length negotiations between

experienced counsel overseen by an experienced mediator; (b) eliminates the risk, costs, delay, inconvenience, and uncertainty of continued litigation; (c) does not provide undue preferential treatment to Class Representatives or to segments of the Nationwide Class or the D.C. Class (collectively, the "Class"); (d) does not provide excessive compensation to counsel for the Classes; and (e) is therefore sufficiently fair, reasonable, and adequate to warrant providing notice of the Settlement to the Class." ECF No. 76 at 1. Because a final review only confirms these findings, the Plaintiffs respectfully request that that Court enter an order giving final approval to the settlement.[2]

## II.    BACKGROUND

### A.    Factual and procedural background

To challenge Nationstar's practice of charging and collecting illegal processing fees from borrowers paying their monthly mortgage by phone or online, Plaintiffs commenced an action in the District of Columbia.  On January 22, 2020, Plaintiffs McFadden and Wilson initiated a class action lawsuit in the District Court of the District of Columbia. *See* ECF No. 1. Nationstar moved to dismiss the complaint on March 30, 2020. ECF No. 13. Plaintiffs opposed Nationstar's motion to dismiss on April 13, 2020 (ECF No. 15), and Nationstar filed its reply in support of its motion to dismiss on April 20, 2020. ECF No. 18. On July 30, 2021, Magistrate Judge Faruqui issued a report and recommendation denying Nationstar's motion to dismiss (ECF No. 42), which the Court adopted on March 31, 2022. ECF No. 51. Plaintiff Wilson passed away, ECF No. 59, and on December 16, 2022, Plaintiffs Lake, Montgomery, and Nelson joined the lawsuit, and along with McFadden, they filed the First Amended Complaint. *See* ECF No. 64.

---

[2] Plaintiffs are concurrently submitting a [Proposed] Final Judgment and Order on Final Approval of Class Settlement, Attorneys' Fees, Costs, and Service Awards.

On March 23, 2023, the parties mediated before Stephen J. Dalesio. SA at § 2.3. The mediation began at 9 AM (Eastern time) and continued for approximately 6 hours. In the months preceding this mediation, the parties had had numerous discussions and Nationstar undertook efforts to compile data on the class size and fees paid. Although this mediation did not resolve the claims in this case, the parties continued to negotiate over the next several months, exchanging information, additional discovery, and legal argument. The parties again formally mediated Plaintiffs' claims before Stephen J. Dalesio on July 12, 2023 for another four hours, and in the days that followed, reached an agreement on all material terms. *Id.* Class Counsel entered the mediation fully informed of the merits and disadvantages of settling Class members' claims and were prepared to continue to litigate rather than accept a settlement that was not in the Plaintiffs' and Settlement Class's best interests. After these hard-fought negotiations, where both sides made presentations to the mediator and all attendees, the parties reached an agreement on all material terms, including the amount of the Common Fund. Class Counsel prepared the first draft of the Settlement Agreement, and the parties then negotiated the precise terms and language of the Agreement the Court preliminarily approved and is now presented before the Court for final approval.

      **B.**     **The Settlement Agreement**

          **1.**     **The Settlement Class**

The Court has preliminarily certified the following class defined in the Settlement Agreement for settlement purposes only:

> (a) The D.C. Class is defined as all persons (1) with a residential mortgage loan securing a property in the District of Columbia, (2) serviced or sub-serviced by Nationstar, (3) who paid a fee to Nationstar for making a loan payment by telephone or interactive voice recognition (IVR) during the applicable statute of limitations. The D.C. Class consists of borrowers on 780 accounts, who in 5,767 instances paid convenience fees to make payment by telephone.

(b) The Nationwide Class is defined to include all borrowers on residential mortgage loans secured by properties in the United States (other than the District of Columbia) which were:

(i) 30 days or more delinquent on loan payment obligations when Mr. Cooper acquired servicing rights;

(ii) 30 days or more delinquent on loan payment obligations when any of Mr. Cooper's predecessors in interest acquired servicing rights; and/or

(iii) insured by the Federal Housing Administration.[3]

The Nationwide Class consists of borrowers who paid convenience fees to make payment by telephone, less refunds in the amount of $5,617,750.

ECF No. 76 at 3.

## 2.    Monetary Benefits and Direct Payments

The Settlement Agreement provides monetary benefits in the form of a Common Fund of $3,587,214, from which shall be paid (1) all payments to Settlement Class members, (2) all Administrative Costs, (3) any taxes owed by the Gross Settlement Amount (but not any taxes owed by any individual Class Counsel, Plaintiffs, or Settlement Class Members), (4) any Fee and Expense Award approved by the Court, and (5) any Service Awards to the Class Representatives approved by the Court. *See* SA at § 5. The Settlement consists of three parts: (1) a "D.C. Component" of $1,441,750, which represents $250 for each of the 5,767 instances in which a D.C. Class Member paid a Fee that are known to Defendant at the time of settlement; (2) a "Nationwide Component" of $1,966,213, which represents 35% of the $5,617,750 in Fees known to Defendant to have been paid by members of the Nationwide Class at the time of settlement; and (3) a "Residual Component" of $179,291 to be used to cover Administrative Costs and other court-approved attorneys' expenses. *Id.* at § 5.1. After payment of costs of administration and notice and

---

[3] The Settlement Class excludes deceased class members, class members in bankruptcy, and class members included in the settlements reached in the Contreras Action or the Vannest Action.

any fees, expenses, and service award authorized by the Court, the Net Common Fund will be distributed to Settlement Class Members as described below. *Id.* at § 7.

Settlement Class Members do not have to submit claims or take any other affirmative step to receive benefits under the Settlement. Instead, Nationstar provided the Settlement Administrator with a Settlement Class Member List that includes the names, last known mailing addresses, the last known email addresses of the Settlement Class Members, and the dates and amounts of each Convenience Fee paid during the Class Period. *Id.* at § 10.1

Now that the Notice Period has concluded, the Settlement Administrator has stated that it anticipates issuing electronic payments to at least 12,060 Class Members and paper checks to 60,495 Class Members. EAG Decl. at ¶ 17. Assuming Class Counsel are awarded their requested fees and costs and Plaintiffs are awarded their requested Service Awards, and with consideration to the costs of notice and administration, the Settlement Administrator estimates that D.C. Class Members will receive $142.70 per instance of convenience fees paid and Nationwide Class Members will receive at least $5.00 based on the amount of fees paid. *Id.*

### 3.    Injunctive Relief

In addition to the monetary relief, the Settlement Agreement also includes important and valuable injunctive relief. Nationstar ceased charging or collecting Convenience Fees to certain FDCPA borrowers in or around May 2018, and as of July 1, 2022, Nationstar ceased the collection of Convenience Fees from any borrower in the country, in part because of this lawsuit. In addition to that one-year period, and as a result of this Settlement, Nationstar agrees to refrain from the charging or collection of Convenience Fees from borrowers for a period of six additional months after entry of the Final Approval Order, which constitutes approximately two years of injunctive relief in total.

As set forth in Appendix A to the Preliminary Approval Motion, ECF No. 75-2, this settlement achieves a remarkable result. While most of the cases listed in Appendix A were resolved by Class Counsel involve similar results of around 30-35% of the amount of fees collected and 2-3 years of changed practices, and have been approved by courts around the country, here, we have secured approximately 35% of the amount of Fees paid by the Nationwide Class, as well as $250 per Fee paid by the members of the D.C. Class.  The relief here stands in stark contrast to other cases, such as *McWhorter v. Ocwen Loan Servicing LLC,* No. 2:15-cv-01831 (N.D. Ala.) and *Morris v. PHH Mortg. Co.*, No. 0:20-cv-60633 (S.D. Fla.). where the settlements included amendments to class members' notes, permitting the fees to be charged going forward. *See* App'x A.

### 4.    Settlement Administrator and Administration Costs

The Court-appointed Settlement Administrator is EAG Gulf Coast, LLC ("EAG"), a leading class action administration firm in the United States. ECF No. 76 at ¶ 10.

All administrative Costs shall be paid from the Gross Common Fund. SA at § 5.1(c). Currently, the Settlement Administrator estimates that the costs of notice will be approximately $143,013.14, though this amount may increase or decrease, depending on things like the rate of digital payment election and notice bouncebacks.  The Settlement Administrator will oversee the provision of Class Notice to the Settlement Class Members and administration of the Common Fund.

### 5.    Class Member Release

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released the Released Entities from all claims that were or could have been asserted by the Class Representatives or Settlement Class Members arising out of, based upon, or

related to the charging, collection, or attempted collection of Convenience Fees from the Effective Date, which the Settlement Class Member ever had or may have in the future. SA at § 18.1-18.4. The release is appropriately tailored, in that it covers claims arising from the identical factual predicate to the claims asserted in the operative Complaint.

### 6.    Notice to Settlement Class and Request for Exclusion

Over the past two months, EAG has sent court-approved settlement notice to 72,555 Settlement Class Members. EAG Decl. ¶ 14. Beginning on November 28, 2023, EAG caused the Short Form Notice to be sent via email to the 65,178 email addresses for Settlement Class Members that passed the Settlement Administrator's hygiene and verification process. *Id.* at ¶ 7. The Email Notice was successfully delivered to 64,391 email addresses. *Id.* EAG then coordinated and caused the Postcard Notice to be mailed via U.S. First-Class Mail to Settlement Class Members for whom (a) an Email address was not available or did not pass the verification process, (b) and Email Notice was not successfully delivered and (c) a mailing address was available from the class data. *Id.* at ¶ 8. The Postcard Notice was sent to a total of 8,086 Settlement Class Members. *Id.* at ¶ 9. **Through these methods, the Notice Program reached a total of 72,477 Settlement Class Members, or 99.69% of the Settlement Class.** *Id.* at ¶ 14.

In addition, EAG published the Settlement Website, www.MortgageFeeClassAction.com, at which visitors can download the Long Form Notice as well as Court Documents, such as the Class Action Complaint, the Settlement Agreement, Order of the Court, and other relevant documents. *Id.* at ¶ 11. As of February 6, 2024, the Settlement Website has received 14,274 unique visitors and 23,066 page views. *Id.* EAG also established a toll-free telephone number and an Email address which offer Settlement Class Members additional support. *Id.* at ¶¶ 12-13.

As of the deadline of February 16, 2024, the Settlement Administrator had only received one exclusion request and no objections from any Settlement Class Members. *Id.* at ¶¶ 18-19.

### III.    ARGUMENT

#### A.    Because the Settlement Provides an Exceptional Recovery for the Class, the Court should Approve the Settlement.

Rule 23(e) requires court approval of a class-action settlement. This entails a "three-stage process, involving two separate hearings." *Jones v. Chopra*, No. 18-2132, 2023 WL 6037295, at *3 (D.D.C. Sept. 15, 2023), quoting *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 189–90 (D.D.C. 2017) (cleaned up). Before the Court may approve a class-action settlement, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2), in turn, requires that the settlement be "fair, reasonable, and adequate."

The settlement in this case has advanced past the first and second stages, with this Court having preliminarily approved it and notice having now been provided to the class. The third stage involves a fairness hearing during which the Court examines the settlement and any objections to it, followed by a decision on whether to approve the settlement. *Ross*, 267 F. Supp. 3d at 190. In considering whether to give final approval to a settlement, the court's discretion is constrained by the "long-standing judicial attitude favoring class action settlements" and "the principle of preference favoring and encouraging settlement in appropriate cases." *Rogers v. Lumina Solar, Inc.*, 2020 WL 3402360, at *4 (D.D.C. June 19, 2020) (Brown, J.); *see In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 16 (D.D.C. 2019) ("Class action settlements are favored as a matter of public policy."); *Ciapessoni v. United States*, 145 Fed. Cl. 685, 688 (2019) ("Settlement is always favored, especially in class actions where the avoidance of formal litigation can save valuable time and resources.")

The criteria guiding the final-approval determination are supplied by Rule 23(e)(2), which requires consideration of whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate"; and "(D) the proposal treats class members equitably relative to each other." In considering these factors, the Court will also look to "the opinion of experienced counsel." *Banks v. Booth*, 2022 WL 1091212, at *2 (D.D.C. Apr. 12, 2022); *see also* Fed. R. Civ. P. 23, Advisory Committee Note, 2018 Amendments (observing that the Rule's enumerated factors are not indented to "displace any factor" rooted in the case law). Because these are the same factors considered at the preliminary-approval stage, "settlement proposals enjoy a presumption of fairness afforded by a court's preliminary fairness determination." *Ciapessoni*, 145 Fed. Cl. at 688.

In its preliminary-approval order, this Court found that the settlement ""(a) resulted from arm's-length negotiations between experienced counsel overseen by an experienced mediator; (b) eliminates the risk, costs, delay, inconvenience, and uncertainty of continued litigation; (c) does not provide undue preferential treatment to Class Representatives or to segments of the Nationwide Class or the D.C. Class (collectively, the "Class"); (d) does not provide excessive compensation to counsel for the Classes; and (e) is therefore sufficiently fair, reasonable, and adequate to warrant providing notice of the Settlement to the Class." ECF No. 76 at 1. Nothing has happened in the three months since this Court made those preliminary findings that would justify a contrary conclusion. Indeed, closer examination only confirms that each factor strongly supports final approval.

## B.    The Class Representatives and Class Counsel have Vigorously Represented the Class Throughout this Litigation.

The first factor examines the adequacy of representation. The adequacy requirement is satisfied when the class representatives will "fairly and adequately protect the interests of the

class." Fed. R. Civ. P. 23(a) (4). Adequacy requires that the named plaintiffs "must not have antagonistic or conflicting interests with the unnamed members of the class" and "must appear able to vigorously prosecute the interests of the class through qualified counsel." *Nat'l Veterans Legal Servs. Program v. United States*, 235 F. Supp. 3d 32, 41 (D.D.C. 2017). Only conflicts that are "fundamental to the suit and . . . go to the heart of the litigation" prevent named plaintiffs from satisfying the adequacy requirement. *Keepseagle v. Vilsack*, 102 F. Supp. 3d 205, 216 (D.D.C. 2015). Further, "conflicts will not defeat the adequacy requirement if they are speculative or hypothetical." *Nat'l Veterans Legal Servs. Program*, 235 F. Supp. 3d at 41.

Here, the Plaintiffs have no conflicts of interest with other class members, and they and their counsel will and have vigorously prosecuted this case on behalf of the class.  *See* ECF. No. 75-3, Simplicio Decl. ¶¶ 24; 27 (describing Class Counsel's extensive experience litigating over proposed class actions against mortgage servicers). As previously noted, Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases, and mortgage fee cases in particular. *Id.,* Simplicio Decl. ¶¶ 27-29. Given their understanding of the intricacies of consumer finance and mortgage servicing, Class Counsel are qualified, experienced, and able to conduct this litigation. Adequacy is satisfied here.

### C.    The Settlement Is the Result of Arm's-Length Negotiations.

The next factor examines the negotiation process. It asks whether the negotiations were made at arm's length or whether there is instead some indication that the settlement could have been the product of collusion between the parties. The Court already found when preliminarily approving the Settlement that it "resulted from arm's-length negotiations between experienced counsel overseen by an experienced mediator." ECF No. 76 at 1.

**D.      The Settlement Relief Provided to Class Members Is Exceptional Under the Circumstances.**

The third factor examines "how the relief secured by the settlement compares to the class members' likely recovery had the case gone to trial." *Blackman v. Dist. of Columbia*, 454 F. Supp. 2d 1, 9-10 (D.D.C. 2006). This factor focuses in particular on "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2); *see also In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d at 16.

The relief provided to class members is exceptional. The settlement provides substantial monetary relief to the DC Class and Nationwide Class, as well as significant injunctive relief stopping a major mortgage loan servicer from charging of Convenience Fees for approximately two years while continuing to offer free electronic payment services to borrowers. Indeed, the injunctive relief will save Settlement Class Members significant monetary expense as they pay their mortgages in the future.

This would be an excellent outcome for the class even if it were achieved after trial, but it is especially remarkable given the significant costs, risks, and delays posed by pursuing further litigation against the federal court system. As noted above, the Common Fund of $3,587,214 consists of three parts, representing (1) $250 for each of the 5,767 instances in which a D.C. Class Member paid a Fee (the D.C. Component of $1,441,750); (2) 35% of the $5,617,750 in Fees (the Nationwide Component of $1,966,213); and (3) $179,291 to cover Administrative Costs and other court-approved attorneys' expenses (the Residual Component). Without a settlement, the case would be headed for years of litigation and likely appeal, with no guarantee that the class

would wind up with any recovery, not to mention the inherent benefits provided by avoiding protracted and costly litigation and time-and-resource-intensive discovery into the remaining issues.

The difference in compensation to the two Settlement Classes is fair and reasonable, and based on informed decisions about the nature of the claims asserted, as well as an analysis of comparable settlements. The DC Class asserts claims under the DC Consumer Protection Procedures Act ("CPPA"), which authorizes statutory damages of $1,500 per violation. *See* D.C. Code § 28-3905(k)(1)(A)(i). In similar settlements against mortgage servicers in West Virginia, which has a debt collection statute authoring similar statutory damages,[4] borrowers have typically received between $200-$220 per violation. *See* ECF No. 75-2, Appendix A. In its own settlement of claims involving a West Virginia Class, Nationstar paid class members $220 per violation, less than what they have agreed to pay DC Class members. *See id.,* Row 17.

The Nationwide Class is also treated fairly. Those Class Members have claims under the FDCPA and for breach of contract; in similar settlements against mortgage servicers for those claims, borrowers have tended to receive between 30-37% of fees paid. *See id*. Indeed, Nationstar's agreement here to set aside 35% of fees paid is more than what it agreed to pay in other comparable settlements. For example, Nationstar settled a similar lawsuit in 2018 involving FDCPA borrowers at a rate of 32% of fees paid, and another involving borrowers in California, Illinois, and Florida in 2022 at a rate of 22.5% fees paid. S*ee id*., Rows 16 and 17. And while a class members in a few settlements received more than 37%, these settlements by and large tended to be smaller, single state settlements, and higher percentages are needed to account for higher per-person costs of administration that comes with smaller settlements. Notably, here, the

---

[4] The West Virginia Consumer Credit and Protection Act provides for a uniform $1000 per violation penalty. W. Va. Code § 46A-5-101(1).

amounts allotted in each of the components are after the costs of administration, not before.

Thus, both Classes are not only receiving settlements at the high end of the range of comparable settlements, but they are receiving more than what Nationstar itself has paid in comparable settlements, evidencing that neither Class was shortchanged as a result of the other Class's settlement.

**E.    The Settlement Agreement Treats Class Members Equitably.**

The fourth factor examines whether the settlement treats class members equitably. This settlement does. It reimburses the DC class on a per transaction basis and Nationwide Class members as a percentage of the net amount collected. This formula for calculating payments is reasonable under the circumstances of this case.

In addition, the settlement is equitable in allowing the class representatives to seek service awards of up to $7,000, while recognizing that this Court has discretion to award a smaller amount. *See Cobell v. Salazar*, 679 F.3d 909, 922 (D.C. Cir. 2012); *Abraha v. Colonial Parking, Inc.*, 2020 WL 4432250, at *6 (D.D.C. July 31, 2020) (preliminarily approving settlement where "all parties will receive payments according to the same distribution plan and formulas, except for a relatively small additional payment" of $15,000 per named plaintiff "to compensate them for their time and effort in this litigation"). Service awards "are not uncommon in common-fund-type class actions and are used to compensate plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 79 (D.D.C. 2011).

**F.    The Plaintiffs and Class Counsel Support The Settlement.**

The final relevant factor is not enumerated in the text of Rule 23, but it is well-settled in the case law. Under this Court's cases, "the opinion of experienced and informed counsel should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed

settlement." *Prince v. Aramark Corp.*, 257 F. Supp. 3d 20, 26 (D.D.C. 2017). Counsel for both parties "are clearly of the opinion that the settlement in this action is fair, adequate, and reasonable," which only further confirms its reasonableness. *Cohen v. Chilcott*, 522 F.Supp.2d 105, 121 (D.D.C. 2007).

### G.  The Notice and Notice Programs Provided Class Members with the Best Notice Practicable Under the Circumstances.

Due process under Rule 23 requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175-76 (1974) ("[I]ndividual notice must be provided to those class members who are identifiable through reasonable effort.").

The Notice met these requirements. It described the lawsuit in plain English, including the key terms of the settlement, the procedures for objecting to it, and the date of the fairness hearing. SA at § 10. The Notice also informed them of their right to opt out and the procedures through which they may exercise that right. ECF Nos. 75-2, 75-3, *Id.* Further, the notices were distributed in a way that was designed to reach all class members: email notice to all class members for whom Nationstar has an email address on file, and postcard notice to all class members for whom Nationstar does not have an email address or for whom email delivery was unsuccessful. EAG Decl. at ¶¶ 7-8. The Class Notice is comprised of direct notice in the form of Email Notice and Postcard Notice. *Id.* at ¶¶ 7-8. In addition, the Settlement Administrator established the Settlement Website, where the Long Form Notice is to be available, along with important case documents. *Id.* at ¶ 11. And a toll-free telephone number is available to Settlement Class Members with questions. *Id.* at ¶ 12. The operative notice plan was the best notice practicable and is reasonably designed to

reach the Settlement Class Members. And the Notice Plan was overseen by EAG, a reputable settlement administrator.

Class Counsel have overseen several other settlements against mortgage loan servicers for similar practices for which email notice was used and final approval granted. *See*, *e.g.*, *Phillips v. Caliber Home Loans, Inc.*, Case No. 0:19-cv-2711, 2022 WL 832085, at *5 (D. Minn. Mar. 21, 2022).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs Jackerly McFadden, Celinda Lake, Mary Montgomery, and Lillian Nelson request that the Court finally approve the Settlement, and enter the Final Approval Order.

Dated: February 7, 2024                    Respectfully submitted,

                                           */s/ James L. Kauffman*
                                           James L. Kauffman
                                           **BAILEY & GLASSER LLP**
                                           1055 Thomas Jefferson Street, NW
                                           Washington, D.C. 20007
                                           Telephone: (202) 463-2101
                                           Facsimile: (202) 463-2103
                                           jkauffman@baileyglasser.com

                                           Hassan A. Zavareei
                                           Kristen G. Simplicio
                                           **TYCKO & ZAVAREEI LLP**
                                           1828 L Street NW, Suite 1000
                                           Washington, D.C. 20036
                                           Telephone: 202-973-0900
                                           Facsimile: 202-973-0950
                                           hzavareei@tzlegal.com
                                           ksimplicio@tzlegal.com
                                           drasinariu@tzlegal.com

                                           *Attorneys for Plaintiffs*